UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

WILLIAM I. KOCH, an individual,                        :

        Plaintiff,                                              :

    vs.                                                          :

ERIC GREENBERG, an individual, ZACHYS              :
WINE & LIQUOR STORE, INC., a New York
corporation; and ZACHYS WINE AUCTIONS,             :
INC., a New York corporation,

        Defendants.

-------------------------------------- X

**No.: 07 Civ. 9600 (BSJ) (DCF)**
**ECF Case**

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ERIC GREENBERG'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FEDERAL RULE 12(b)(1) OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE 12(b)(6)

ANTHONY P. COLES (AC 7942)
DLA PIPER US LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Of Counsel*
ARTHUR J. SHARTSIS
TRACY L. SALISBURY
RICHARD F. MUNZINGER
AMY L. HESPENHEIDE
SHARTSIS FRIESE LLP
1800 Maritime Plaza, 18th Floor
San Francisco, California 94111
(415) 421-6500

Attorneys for Defendant
ERIC GREENBERG

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

ARGUMENT ........................................................................................................5

I.     GREENBERG TENDERED PAYMENT OF ALL PLAINTIFF'S
      RECOVERABLE DAMAGES WHICH MOOTS THIS CASE AND REQUIRES
      DISMISSAL UNDER RULE 12(b)(1) ............................................................. 5

     A.    A Defendant's Offer to Pay All of a Plaintiff's Damages Moots the Case .......... 5

     B.    Greenberg's Tender Compensated Koch For All Of His Recoverable
          Damages, Plus Interest and Costs ......................................................... 7

          1.    Plaintiff has obtained full recovery for his actual damages,
               rescission, interest and costs .................................................... 8

          2.    Plaintiff's treble damage claim under New York General Business
               Law sections 349 and 350 has been satisfied.............................. 9

          3.    Plaintiff's claims under New York General Business Law sections
               349 and 350 are moot notwithstanding his prayer for attorneys'
               fees and injunctive relief ....................................................... 11

          4.    Plaintiff's claims are moot notwithstanding his punitive damage
               claim because he is not entitled to punitive damages as a matter of
               law................................................................................... 12

               a.    Koch contractually agreed that any damages from the
                    wine auction would be limited to his purchase price....................12

               b.    Koch agreed that he purchased all wine "AS IS." .........................14

               c.    Koch may not re-cast his breach of contract claim as a
                    fraud claim to seek punitive damages..............................17

               d.    Koch cannot meet the standard under New York law for
                    an award of punitive damages for fraud .........................20

II.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF
      AGAINST GREENBERG UNDER FEDERAL RULE OF CIVIL PROCEDURE
      12(b)(6) AND SHOULD BE DISMISSED WITH PREJUDICE.................................... 22

**TABLE OF CONTENTS**
(continued)

                                                                                    **Page**

A.    Koch Has Failed to State a Claim for Fraud ........................................................ 23

B.    Koch Has Failed to State a Claim Under New York General Business Law
      Sections 349 and 350. ......................................................................................... 24

CONCLUSION ............................................................................................................... 27

## TABLE OF AUTHORITIES

Page

## Cases

*Abrahms v. Interco Inc.*,
719 F.2d 23 (2d Cir. 1983) ................................................................. 6

*Ambalu v. Rosenblatt*,
194 F.R.D. 451 (E.D.N.Y. 2000) ........................................................ 5, 6

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) ............................................................................ 2

*Associated Gen. Contractors v. California State Council of Carpenters, Inc.*,
459 U.S. 519 (1983) ............................................................................ 22

*Barbara Z. v. Obradovich*,
937 F. Supp. 710 (N.D. Ill. 1996) ...................................................... 6

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc.*,
98 F.3d 13 (2d Cir. 1996) .................................................................. 19, 23

*Canario v. Gunn*,
300 A.D.2d 332, 751 N.Y.S.2d 310 (2d Dep't 2002) ........................ 25, 27

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .............................................................................. 11

*City of New York v. Coastal Oil New York Inc.*,
1999 U.S. Dist. LEXIS 10458 (S.D.N.Y. July 12, 1999) .................... 9

*Connecticut v. Massachusetts*,
282 U.S. 660 (1931) ............................................................................ 12

*Cresswell v. Prudential-Bache Sec., Inc.*,
675 F. Supp. 106 (S.D.N.Y. 1987) ..................................................... 6, 7

*Diaz v. Paragon Motors of Woodside Inc.*,
2007 U.S. District LEXIS 73230 (E.D.N.Y. Sept. 28, 2007) ............. 11

*DynCorp v. GTE Corp.*,
215 F. Supp. 2d 308 (S.D.N.Y. 2002) ................................................ 14

*Elsky v. KM Ins. Brokers*,
139 A.D.2d 691, 527 N.Y.S.2d 446 (2d Dep't 1988) ........................ 23

*Foman v. Davis*,
371 U.S. 178 (1962) ............................................................................ 22

**TABLE OF AUTHORITIES**

Page

*Foxley v. Sotheby's Inc.*,
   893 F. Supp. 1224 (S.D.N.Y 1995) ............................................................. 15, 17, 23

*Gardiner Stone Hunter Int'l v. Iberia LaNais Aereas de Espania, S.A.*,
   896 F. Supp. 125 (S.D.N.Y. 1995) ........................................................................... 9

*Gates v. Tawry*,
   456 F. Supp. 2d 953 (N.D. Ill. 2006) ...................................................................... 6

*Genesco Entertainment v. Koch*,
   593 F. Supp. 743 (S.D.N.Y. 1984) ........................................................................ 25

*Griffin-Amiel v. Frank Terris Orchestras*,
   178 Misc. 2d 71, 677 N.Y.S.2d 908 (N.Y. City Ct. 1998) ..................................... 10

*Grumman v. Allied Indus. v. Rohr Indus.*,
   748 F.2d 729 (2d Cir. 1984) ................................................................................... 17

*Hart v. Moore*,
   155 Misc. 2d 203, 587 N.Y.S.2d 477 (N.Y. Sup. Ct. 1992) .................................... 9

*Hessel v. Christie's Inc.*,
   399 F. Supp. 2d 506 (S.D.N.Y. 2005) .................................................................... 12

*Holcombe v. The Mortgage House Inc.*,
   2006 U.S. Dist. LEXIS 94926 (M.D. Fla. Dec. 21, 2006) ........................................ 6

*Holstein v. City of Chicago*,
   29 F.3d 1145 (7th Cir. 1994) .................................................................................... 6

*In re DeLorean Motor Co.*,
   991 F.2d 1236 (6th Cir. 1993) ................................................................................ 22

*In re Evergreen Mut. Funds Fee Litig.*,
   423 F. Supp. 2d 249 (S.D.N.Y. 2006) .................................................................... 24

*Indep. Living Aid Inc. v. Maxi-Aids Inc.*,
   25 F. Supp. 2d 127 (E.D.N.Y. 1998) ...................................................................... 11

*Kelly v. Brooks*,
   1993 U.S. Dist. LEXIS 3385 (S.D.N.Y. Mar. 19, 1993) ........................................ 16

*Koch v. Rodenstock*,
   Case No. 06-CV-6586 (S.N.D.Y) ............................................................................. 3

*Krantz v. Chateau Stores of Canada, Ltd.*,
   256 A.D.2d 186, 683 N.Y.S.2d 24 (4th Dep't 1998).......................................... 18, 23

**TABLE OF AUTHORITIES**

Page

*Kregos v. Associated Press,*
  3 F.3d 656 (2d Cir. 1993) ................................................................ 8

*Ladenburg Thalmann & Co., Inc. v. Imaging Diagnostic Systems, Inc.,*
  176 F. Supp. 2d 199 (S.D.N.Y. 2001) ............................................. 21

*Lama Holding Co. v. Smith Barney Inc.,*
  88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996) ........................................... 8

*Leeds v. Meltz,*
  85 F.3d 51 (2d Cir. 1996) .............................................................. 22

*Leider v. Ralfe,*
  387 F. Supp. 2d 283 (S.D.N.Y. 2005) ............................................ 26

*Leonelli v. Pennwalt Corp.,*
  887 F.2d 1195 (2d Cir. 1989) ........................................................ 22

*Luckett v. Bure,*
  290 F.3d 493 (2d Cir. 2002) ............................................................ 2

*Maltz v. Union Carbide Chems. & Plastics Co.,*
  992 F. Supp. 286 (S.D.N.Y. 1998) ................................................. 15

*Matusovsky v. Merrill Lynch,*
  186 F. Supp. 2d 397 (S.D.N.Y. 2002) ............................................ 22

*McKernin v. Fanny Farmer Candy Shops, Inc.,*
  176 A.D.2d 233, 574 N.Y.S.2d 58 (2d Dep't 1991) ..................... 18, 23

*Mendelovitz v. Cohen,*
  37 A.D.3d 670, 830 N.Y.S.2d 577 (2d Dep't 2007) ....................... 19

*Metro. Transit Auth. v. Triumph Adver. Prods., Inc.,*
  116 A.D.2d 526, 497 N.Y.S.2d 673 (1st Dep't 1986) ..................... 18

*Murphy v. Equifax Check Servs., Inc.,*
  35 F. Supp. 2d 200 (D. Conn. 1999) ......................................... 5, 6, 7, 11

*Naftilos Painting, Inc. v. Cianbro Corp.,*
  275 A.D.2d 975, 713 N.Y.S.2d 626 (4th Dep't 2000) ................... 15, 19

*New York University v. Continental Ins. Co.,*
  87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) .................................. 20, 26

*New York v. Feldman,*
  210 F. Supp. 2d 294 (S.D.N.Y. 2002) ....................................... 25, 26

## TABLE OF AUTHORITIES

Page

*Novosel v. Northway Motor Car Corp.*,
 460 F. Supp. 541 (N.D.N.Y. 1978) ................................................................ 14

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
 85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) ....................................................... 25

*Pelman v. McDonald's Corp.*,
 237 F. Supp. 2d 512 (S.D.N.Y. 2003) ..................................................... 26, 27

*R.H. Damon & Co., Inc. v. Softkey Software Prods., Inc.*,
 811 F. Supp. 986 (S.D.N.Y. 1993) ................................................................ 17

*Rand v. Monsanto Co.*,
 926 F.2d 596 (7th Cir. 1991) .......................................................................... 6

*Real Prop. Acquisitions, Inc. v. Christie's, Inc.*,
 2005 N.Y. Misc. LEXIS 3285, 233 N.Y.L.J. 59 (N.Y. Sup. Ct. 2005) ...... 16, 17, 23

*Reno v. Bull*,
 226 N.Y. 546, 124 N.E. 144 (N.Y. 1919) ....................................................... 8

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*,
 893 F. Supp. 285 (S.D.N.Y. 1995) ................................................................ 21

*Rocanova v. Equitable Life Assur. Soc'y*,
 83 N.Y.2d 603, 612 N.Y.S.2d 339 (1994) ............................................... 19, 23

*Rossi v. Twenty-First Century Concepts Inc.*,
 162 Misc. 2d 932, 618 N.Y.S.2d 182 (N.Y. City Court 1994) ..................... 10

*Shipping Fin. Servs. Corp. v. Drakos*,
 140 F.3d 129 (2d Cir. 1998) ........................................................................... 2

*Sichel v. Unum Provident Corp.*,
 230 F. Supp. 2d 325, (S.D.N.Y. 2002) .......................................................... 25

*T.T. Exclusive Cars, Inc. v. Christie's, Inc.*,
 1996 U.S. Dist. LEXIS 19055 (S.D.N.Y. Dec. 24, 1996) ...................... 16, 17, 24

*Teller v. Hayes*,
 213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995) ............................... 25, 26

*Tesoro Petroleum Corp. v. Holborn Oil Co. Ltd.*,
 108 A.D.2d 607, 484 N.Y.S.2d, 834 (1st Dep't 1985) ................................. 18

*TVT Records v. Island Def Jam Music Group*,
 412 F.3d 82 (2d Cir. 2005) ........................................................................... 20

## TABLE OF AUTHORITIES

Page

*Walker v. Sheldon,*
    10 N.Y.2d 401, 223 N.Y.S.2d 488 (1961) .................................................................. 19, 20, 21

*Weiss v. Fein, Such, Kahn & Shepard P.C.,*
    2002 U.S. Dist. LEXIS 4783 (S.D.N.Y. Mar. 22, 2002) ........................................... 6

*X-Men Sec., Inc. v. Pataki,*
    196 F.3d 56 (2d Cir. 1999) ....................................................................................... 22

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,*
    215 F.3d 247 (2d Cir. 2000) ..................................................................................... 2

## Statutes and Other Authorities

Federal Rule of Civil Procedure 12(b)(1) ...................................................................... 5, 6, 9

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... passim

Federal Practice & Procedure § 1350 (2004) ................................................................ 2

New York U.C.C. §§ 2-102 (McKinney 2002) ............................................................. 14

New York U.C.C. §§ 2-105(1) (McKinney 2002) ......................................................... 14

New York U.C.C. § 2-316 (McKinney 2002) ................................................................ 15, 16, 17

New York U.C.C. § 2-719 (McKinney 2002) ................................................................ 14

New York General Business Law § 349(a) (McKinney 2004) ........................................ 9

New York General Business Law § 349(h) (McKinney 2004) ........................................ 8, 9, 25

New York General Business Law § 350-e(3) (McKinney Supp. 2008) ......................... 8, 10

New York General Business Law section 349 (McKinney 2004) ................................... passim

New York General business Law section 350 (McKinney 2004) ................................... passim

NY Civil Practice Law and Rules, Art. 50, § 5004 ....................................................... 4

## PRELIMINARY STATEMENT

This court has jurisdiction only over a live "case or controversy." In this case, defendant Eric Greenberg ("Greenberg") has delivered to plaintiff William I. Koch ("Koch") full payment, plus interest and costs, for all damages he legally may recover under the claims alleged in his complaint. Accordingly, this case against Greenberg is now moot, there is no subject matter jurisdiction over this action and the claims against Greenberg must be dismissed under Rule 12(b)(1). Koch's claims also must be dismissed under Rule 12(b)(6) because he cannot state fraud or consumer protection claims against Greenberg as a matter of law.

In October 2005, pursuant to the terms of an express auction agreement, Koch bought $3.7 million of wine consigned to auction by Greenberg. Koch was invited to inspect the wine before bidding and purchased the wine "'AS IS' without any representations or warranties." If there were any problems with Koch's purchase, the sole remedy to which he agreed was return of the wine and refund of his money. Notwithstanding his auction agreement, Koch has asserted, among other things, a claim for fraud against Greenberg asserting that seven of the bottles he purchased were counterfeit and four were "possibly counterfeit." Koch is attempting to turn a contract claim into a fraud claim.

Koch never made a demand on Greenberg for a refund, but instead first notified Greenberg of the eleven bottle claim by suing him. Greenberg has no interest in being involved in costly and senseless litigation with Koch. He would simply take his bottles back pursuant to the terms of the auction agreement and Koch's claim for rescission. Accordingly, he sent a check to Mr. Koch to compensate him fully for returning the disputed bottles. While a number of Koch's claims do not apply as a matter of law, whether or not they do, Greenberg's delivery of full payment makes them all moot.

Koch's claims against Greenberg for selling counterfeit wine also should be dismissed under Rule 12(b)(6). Koch cannot state a claim as a consumer under New York General Business Law sections 349 and 350. Both of these statutes provide protection to individuals victimized in small, "consumer oriented" transactions directed at the general public. Koch's purchase of $3.7 million in wine at an exclusive auction, including eleven bottles purchased for $228,603.33, cannot possibly state a claim under these statutes. Koch's common law fraud claim also is fatally defective because it is, in fact, a contract claim mischaracterized as a fraud claim for the sole purpose of seeking punitive damages. Finally, Koch has failed to allege adequate facts to support injunctive relief. For these and other reasons set forth below, Koch's complaint against Eric Greenberg should be dismissed.

## STATEMENT OF FACTS[1]

Defendant Greenberg is a California entrepreneur and philanthropist, with an extensive wine collection. In 2005, Greenberg consigned 17,000 bottles (as noted on the auction catalog cover) to a single-seller auction conducted by Zachys Wine Auction ("Zachys"), then the largest wine auction house in the world. Declaration of Eric Greenberg ("Greenberg Decl.") ¶ 2 and Exh. A (relevant pages of auction catalog). Zachys prepared the auction catalog, which contains among other things the "Conditions of Sale & Limited Warranty." "By participating in an

---

[1]    A defect in subject matter jurisdiction may exist despite the formal sufficiency of the Rule 8(a)(1) allegations in the complaint. C. Wright & A. Miller, Federal Practice and Procedure at 154-55 § 1350 (2004). *See Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("When the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."). Accordingly, a party challenging subject matter jurisdiction may use affidavits and other matters outside the complaint to support the motion, and the district court has broad discretion to consider the evidence and resolve factual issues. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002); *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

The party asserting that subject matter jurisdiction exists has the burden of proof by a preponderance of the evidence. *Luckett*, 290 F.3d at 496-97 ("In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.")

auction," Koch agreed "to be bound by the Conditions of Sale and Limited Warranty" as printed

in the auction catalog. *Id.* at 233. Koch alleges that he "studied" the catalog. Complaint ¶ 41.[2]

The Conditions of Sale & Limited Warranty constitute the entire agreement among

Zachys, Koch (as Buyer) and Greenberg (as Consignor) with respect to wine purchased by Koch

at the auction ("Agreement").[3] Greenberg Decl. ¶ 2 and Exh. A at 238 (Preamble). This

Agreement provides that Koch purchased all wine at the auction "AS IS" and gave him the right

to inspect the wine before bidding, as follows:

> The authenticity of property listed in the catalog is guaranteed only as stated
> herein and otherwise ***all property is sold "AS IS" without any representations or
> warranties by Zachys Wine Auctions or the Consignor*** as to merchantability,
> fitness for a particular purpose, ***correctness of catalog, description***, size, quality,
> condition, ***rarity, importance, provenance***, exhibition history, literature, previous
> storage conditions or ***historical relevance of any property***. No statement set forth
> in this catalog, made at the auction or in the bill of sale, posting, announcement or
> otherwise, whether oral or written, shall be deemed such a warranty,
> representation or assumption of liability. . . . Neither Zachys Wine Auctions nor
> the Consignor is responsible for errors or omissions in the catalog, glossary or any
> supplemental material. ***Prospective bidders are invited to inspect the property
> before bidding***.

Greenberg Decl. ¶ 2 and Exh. A at 238 ¶ 1 (emphasis added). Consistent with these limitations

and the Buyer's inspection rights, the Agreement provides the following express limitation on

the Buyer's recoverable damages:

> ***The Buyer expressly agrees*** that (i) neither Zachys Wine Auctions nor the
> Consignor shall be liable, in whole or in part, for any special, indirect or

---

[2]    For the convenience of the Court, a copy of the complaint filed by plaintiff on October 26, 2007 has been
attached as Exhibit B to the Declaration of Arthur J. Shartsis submitted herewith.

[3]    Plaintiff Koch is a billionaire collector of art, antiques and wine. Approximately 19 years ago, Koch was
the victim of a counterfeit wine hoax when he paid approximately $500,000 for four bottles of wine reputedly
owned by Thomas Jefferson. *See Koch v. Rodenstock*, Case No. 06-CV-6586 (S.N.D.Y), filed August 31, 2006. In
2006, Koch sued the alleged perpetrator of the fraud, reportedly spending twice as much on legal fees as he spent on
the wine, and embarked on a well-publicized crusade against counterfeit wine. Patrick Radden Keefe, *The Jefferson
Bottles*, The New Yorker, Sept. 3, 2007; John R. Wilke, *Wine Lover's Nose For Fraud Sparks International
Investigation*, (Wall St. J.) Napa Valley Register, Sept. 22, 2006.

3

consequential damages, including, without limitation, loss of profits, and (ii) *the Buyer's damages are limited exclusively to the original purchase price paid for the lot*.

*Id*. at 240 ¶ 11 (emphasis added).  The rights and obligations of the parties with respect to the Agreement and the conduct of the auction are governed by New York law.  *Id*.

Koch bought $3.7 million worth of the Greenberg wine collection at the Zachys auction. Compl. ¶ 42.  In the complaint, Koch identifies seven bottles of wine as "counterfeit" and four as "possibly counterfeit," which he purchased in total for $228,603.33.  Compl. ¶¶ 44-51.  Even though Koch cannot allege that he made demand for the eleven bottles on Greenberg before filing suit, Koch seeks, among other things, rescission of the purchase price.  Compl. at 16 and Prayer § g.  The complaint does not provide specific detail about why each specific bottle is counterfeit or "possibly counterfeit," and Greenberg cannot determine whether the eleven bottles are counterfeit.

Greenberg strenuously denies Koch's baseless allegations that he knowingly or intentionally consigned counterfeit wine for auction.  Nonetheless, because Koch has (or claims to have) concerns about the genuineness of some of the wine he purchased, and to terminate this litigation in the manner contemplated by the auction agreement, Greenberg sent Koch a personal letter with a check (to take back the wine) on November 27, 2007, for $272,555.72, which represents Koch's total purchase price plus nine percent (9%) interest from the date of purchase through November 28, 2007, and $1,000 for court costs.[4]  Declaration of Arthur J. Shartsis ("Shartsis Decl.") ¶ 2 and Exh. A (copy of letter and check).  Koch has rejected Greenberg's tender but has not returned the check.  *Id*. ¶ 3.

---

[4] Under NY Civil Practice Law and Rules, Art. 50, § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute.").

4

**ARGUMENT**

I.  **GREENBERG TENDERED PAYMENT OF ALL PLAINTIFF'S RECOVERABLE DAMAGES WHICH MOOTS THIS CASE AND REQUIRES DISMISSAL UNDER RULE 12(b)(1).**

Koch has pleaded claims against Greenberg for common law fraud and violations of New York General Business Law sections 349 and 350 and has prayed for rescission. Because Greenberg's tender provides Koch the complete relief to which he legally would be entitled at trial, this case is moot and must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

A.  **A Defendant's Offer to Pay All of a Plaintiff's Damages Moots the Case.**

Federal courts have jurisdiction only over live "claims or controversies." U.S. Const., Art. III, § 2. "A federal court may only be called upon to adjudge the legal rights of litigants in actual controversies. Whenever it appears that the court lacks subject matter jurisdiction, the court must dismiss the action." *Murphy v. Equifax Check Servs., Inc.*, 35 F. Supp. 2d 200, 203 (D. Conn. 1999) (internal citations omitted). Here there is no live case or controversy because the matter is moot. "A claim becomes moot when 'the parties lack a legally cognizable interest in the outcome.' ... 'The required legally cognizable interest has . . . been described as a requirement that a plaintiff have a 'personal stake' in the litigation.' ... Without such a personal stake, a court lacks subject matter jurisdiction and the case must be dismissed." *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 452 (E.D.N.Y. 2000) (internal citations omitted). Thus, the "Second Circuit has recognized that when a defendant tenders all that a plaintiff could recover if his or her claim were fully litigated, a justiciable case or controversy no longer exists and the case should be dismissed for lack of subject matter jurisdiction." *Murphy*, 35 F. Supp. at 203 (defendant's offer by letter to pay total remaining relief available to plaintiff mooted the case). *See also*

*Cresswell v. Prudential-Bache Sec., Inc.*, 675 F. Supp. 106, 108 (S.D.N.Y. 1987) (fraud claim dismissed as moot when claim for punitives dismissed and defendant tendered alleged out-of-pocket losses). A plaintiff's personal interest ends when the "party seeking to litigate can no longer show damage." *Id. See also Barbara Z. v. Obradovich*, 937 F. Supp. 710, 717 (N.D. Ill. 1996) (plaintiffs' personal interest ends when defendant "offers to satisfy the plaintiff's entire demand"); *Gates v. Tawry*, 456 F. Supp. 2d 953, 960 (N.D. Ill. 2006) ("A plaintiff cannot preserve its interest merely by refusing the offer.").

Accordingly, "[o]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate . . . ***and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake.***" *Ambalu*, 194 F.R.D. at 453, quoting *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991) (emphasis added). *See also Cresswell*, 675 F. Supp. at 108; *Murphy*, 35 F. Supp. 2d at 203-04; *Weiss v. Fein, Such, Kahn & Shepard P.C.*, 2002 U.S. Dist. LEXIS 4783, at *9 (S.D.N.Y. Mar. 22, 2002) (offer of judgment containing all available relief sought by plaintiff mooted plaintiff's entire claim; court therefore lacked subject matter jurisdiction over the action and motion to dismiss granted); *Abrahms v. Interco Inc.*, 719 F.2d 23, 33-34 (2d Cir. 1983) (affirming dismissal of plaintiff's suit after defendant offered judgment of three times total amount of plaintiff's stock purchases and reasonable attorneys' fees).[5] Accordingly, Koch cannot keep this case alive by

---

[5]     *See also Holstein v. City of Chicago*, 29 F.3d 1145, 1147, 1149 (7th Cir. 1994) (dismissing complaint as moot because of defendant's offer to pay all damages due plaintiff); *Rand*, 926 F.2d at 597-98 (district court properly entered judgment against plaintiff when he refused an offer to pay all his damages plus costs; judgment reversed on other grounds); *Gates*, 456 F. Supp. 2d at 969 (restitution-based claims mooted by tender of payment made before suit filed, so claims dismissed with prejudice); *Holcombe v. The Mortgage House Inc.*, 2006 U.S. Dist. LEXIS 94926, at *3-4, 7 (M.D. Fla. Dec. 21, 2006) (recommending dismissal of plaintiff's overtime claims as moot based on acceptance of defendant's tender of full amount of overtime claimed; jurisdiction reserved over attorneys' fees claims); *Barbara Z.*, 937 F. Supp. at 717 (two counts dismissed as moot because defendants previously offered to reimburse plaintiff for all damages claimed and changed certain policies).

rejecting Greenberg's offer, which would compensate him fully for all his recoverable damages, as follows.[6]

**B.      Greenberg's Tender Compensated Koch For All Of His Recoverable Damages, Plus Interest and Costs.**

Koch's complaint against Greenberg seeks rescission (the amount he paid for the eleven bottles of wine he claims are counterfeit or "possibly" counterfeit), treble damages, injunctive relief and attorneys' fees under New York General Business Law sections 349 and 350, punitive damages, pre-judgment interest and costs.  Greenberg has tendered to Koch full compensation for the relief to which he is legally entitled:  rescission, actual damages, interest and court costs.  As discussed in detail in Section II, *infra,* in the context of Greenberg's Rule 12(b)(6) motion, Koch cannot state a claim as a matter of law under New York General Business Law sections 349 and section 350.  Accordingly, plaintiff is not entitled to any relief, including treble damages, attorneys' fees, or injunctive relief, under these statutes, and the Court need not consider these claims in determining whether plaintiff's complaint against Greenberg is moot.  Even assuming those statutes could apply, Greenberg's tender satisfies any claim for monetary damages thereunder.  Finally, Koch is not entitled to any recovery on his fraud claim beyond the amount of Greenberg's tender of Koch's alleged out-of-pocket losses.  The recovery of punitive damages is barred by the terms of the auction Agreement, which limits Koch's recovery to his purchase price.  Moreover, Koch cannot obtain punitive damages as a matter of law because his "fraud" claim is nothing but a contract claim, for which punitive damages are not recoverable.

---

[6]      Although in some cases discussed above the defendant made a formal Rule 68 offer of judgment, an offer by letter also is sufficient to moot a case when it offers full compensation for the plaintiff's losses. *See, e.g., Cresswell*, 675 F. Supp. at 107 (defendant offered to tender plaintiff all his alleged damages plus pre-judgment interest and sought leave to pay tender into court under Rule 67); *Murphy*, 35 F. Supp. 2d at 201, n5 (offer made by letter from counsel). *See also* cases cited in footnote 5, *supra*.  Greenberg does not request leave to deposit his tender with the Court in this case because plaintiff, despite having rejected the offer, has not returned Greenberg's check for $272,555.72. Shartsis Decl. ¶ 3.

For these same reasons, Koch's complaint against Greenberg should be dismissed under Rule 12(b)(6), as discussed in Section II.

### 1.     Plaintiff has obtained full recovery for his actual damages, rescission, interest and costs.

Koch seeks rescission and the recovery of his out-of-pocket loss, *i.e.*, his purchase price, under his fraud and New York General Business Law ("GBL") claims, plus pre-judgment interest. Compl. ¶¶ 66, 81 and 88 and Prayer. "New York law awards only 'out-of-pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual pecuniary losses." *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993). *See also, e.g., Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80 (1996) (measure of damages for a fraud claim is "'the actual pecuniary loss sustained as the direct result of the wrong' or what is known as the 'out-of-pocket' rule," quoting *Reno v. Bull*, 226 N.Y. 546, 553, 124 N.E. 144 (N.Y. 1919)). Under GBL section 349, an injured person may recover the greater of actual damages or $50; under GBL section 350, injured parties may recover the greater of their actual damages or $500. N.Y. Gen. Bus. Law §§ 349(h) (McKinney 2004) and 350-e(3) (McKinney Supp. 2008).

Greenberg has delivered to Koch the full amount of his alleged out-of-pocket loss, plus interest, plus an additional $1,000 for court costs. Koch therefore has been fully compensated for his alleged actual damages and the additional amounts for interest and costs to which he might be entitled if he prevailed at trial.[7] He also has been granted rescission of the purchase agreement, as requested in his Prayer, by Greenberg's tender of his full purchase price. As established below, Koch is not entitled to any other relief as a matter of law.

---

[7]     Greenberg calculated the interest at nine percent (9%) from October 28, 2005, the date of the auction, through November 28, 2007, the day after the check for $272,555.72 was sent by Federal Express to Koch's counsel. Shartsis Decl. ¶ 2. $1,000 is a generous estimate for filing and service fees.

2.    **Plaintiff's treble damage claim under New York General Business Law sections 349 and 350 has been satisfied.**

As established in Section II.B, *infra*, Koch cannot state a claim under New York GBL sections 349 and 350 and is not entitled to any relief under either of them as a matter of law.[8] Even if these laws might apply, however, Greenberg's payment of $272,555.72 well exceeds the maximum amounts recoverable under these statutes for compensatory and treble damages.

Under GBL section 349, an injured person may recover the greater of actual damages or $50 for "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a) and (h) (McKinney 2004). When a defendant "willfully or knowingly" violates the statute, a successful plaintiff, in the court's discretion, may receive an increased "award of damages to an amount not to exceed three times the actual damages up to one thousand dollars." *Id.* § 349(h).

The prevailing view in New York is that the treble damages provision only applies where plaintiff's actual damages are less than $1,000: "[O]nce actual damages exceed $1,000, there can be no increase for punitive [treble] damages. It appears that punitive damages may only be awarded where the total award, together with the punitive damages, does not exceed $1,000." *Hart v. Moore*, 155 Misc. 2d 203, 207, 587 N.Y.S.2d 477, 480 (N.Y. Sup. Ct. 1992). *See also City of New York v. Coastal Oil New York Inc.*, 1999 U.S. Dist. LEXIS 10458, at *47 (S.D.N.Y. July 12, 1999) (any punitive damages under GBL section 349 cannot "increase the award to plaintiffs on this claim to an amount over $1,000"); *Gardiner Stone Hunter Int'l v. Iberia LaNais Aereas de Espania, S.A.*, 896 F. Supp. 125, 128 (S.D.N.Y. 1995) ("while the statute also provides for punitive damages, those damages are only available to increase an award up to $1,000");

---

[8]    Accordingly, for the purposes of its mootness analysis under Rule 12(b)(1), the Court need not consider Koch's claims for fees, an injunction or any other relief under GBL sections 349 and 350.

*Griffin-Amiel v. Frank Terris Orchestras*, 178 Misc. 2d 71, 79, 677 N.Y.S.2d 908, 913 (N.Y. City Ct. 1998) (refusing to treble plaintiff's actual damages of $2,137.50 because this amount exceeded the maximum $1,000 permissible); *Rossi v. Twenty-First Century Concepts Inc.*, 162 Misc. 2d 932, 940, 618 N.Y.S.2d 182, 187 (N.Y. City Court 1994) (refusing to treble plaintiff's actual damages of $1,555.33 because this amount exceeded the maximum of $1,000 permissible).

GBL section 350 is a false advertising statute, under which injured parties may recover the greater of their actual damages or $500. N.Y. Gen. Bus. Law § 350-e(3) (McKinney Supp. 2008). The court at its discretion may "increase the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars" if the defendant "willfully or knowingly" engaged in false advertising. *Id.* This language closely resembles the treble damages provision of GBL section 349, so the case law interpreting section 349, and the courts' reasoning in those opinions, is equally applicable to section 350. Accordingly, treble damages, including punitive damages, are not available under section 350 where the claimed actual damages are greater than $10,000.

Thus, the most Koch can recover under sections 349 and 350, assuming *arguendo* he can state a claim under them, is $1,000 and $10,000, respectively. Greenberg's tender far exceeds the maximum recoverable under these statutes. Koch's claims under GBL sections 349 and 350 are therefore moot and must be dismissed.

**3.    Plaintiff's claims under New York General Business Law sections 349 and 350 are moot notwithstanding his prayer for attorneys' fees and injunctive relief.**

Plaintiff seeks recovery of his attorneys' fees and injunctive relief under GBL sections 349 and 350.  Because plaintiff cannot state a claim under the GBL, however (see Section II.B, *infra*), he is not entitled to any relief, including attorneys' fees or an injunction, under either statute.  In any event, the existence of a statutory attorneys' fee claim does not create a live case or controversy when the underlying claim is moot; rather, the court dismisses the moot claim and reserves jurisdiction over the attorneys' fee issue.  *See Murphy*, 35 F. Supp. 2d at 202.  Should the Court find that Koch has stated or might state a claim under the GBL and theoretically could recover attorneys' fees, Greenberg hereby offers to pay reasonable attorneys' fees as determined by the Court.[9]

Koch is not entitled to injunctive relief as a matter of law.  Greenberg already has offered to unwind entirely the one-time transaction at issue here.  Therefore, Koch cannot possibly show that he is at risk of imminent harm.  Moreover, Koch has made no allegation whatsoever that the wine in question did cause or would cause physical injury to someone if it were opened and consumed.  An award of injunctive relief requires a finding by the Court that the plaintiff is threatened by some injury for which there is no adequate legal remedy, and there must be real danger that the act complained of will take place.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that

---

[9]    Attorneys' fees may be awarded to a successful plaintiff under sections 349 and 350 only for legal work performed *after* filing the complaint, and not for pre-litigation work.  *See Diaz v. Paragon Motors of Woodside Inc.*, 2007 U.S. District LEXIS 73230, at *31 (E.D.N.Y. Sept. 28, 2007).  *See also Indep. Living Aid Inc. v. Maxi-Aids Inc.*, 25 F. Supp. 2d 127, 134 (E.D.N.Y. 1998) (GBL sections 349 and 350 do not provide for recovery of "costs" other than attorneys' fees).  Here, of course, Greenberg promptly offered to make Koch whole, so no attorneys' fees were necessary after the complaint was filed.

the plaintiff will be wronged again"); *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) ("[An injunction] will not be granted against something merely feared as liable to occur at some indefinite time in the future."). Koch cannot meet this standard. The sale in question occurred more than two years ago. Koch also has an entirely adequate legal remedy in the form of money damages – damages that already have been tendered to him. Injunctive relief simply does not apply here, is not properly pled, and could never be granted based on the facts alleged. Accordingly, it need not be considered in this Court's mootness analysis.

> **4.      Plaintiff's claims are moot notwithstanding his punitive damage claim because he is not entitled to punitive damages as a matter of law.**

Plaintiff's final demand is for an unspecified amount of punitive damages. This claim does not create a "live" case or controversy, however, because Koch cannot recover punitive damages as a matter of law.

Koch's punitive damage claim fails as a matter of law for at least four reasons. First, Koch's recoverable damages are limited to his purchase price under the express terms of his Agreement with Greenberg and Zachys. Second, under the express terms of the Agreement, the wine Koch purchased was sold by Zachys "AS IS." Third, under New York state law, Koch may not re-cast a basic breach of contract claim as "fraud" to seek punitive damages. Finally, even if Koch could succeed in pleading a fraud claim separate and apart from the alleged breach of contract here, he cannot satisfy the New York state standard for an award of punitive damages.

> **a.      Koch contractually agreed that any damages from the wine auction would be limited to his purchase price.**

By bidding at auction, a bidder "consent[s] to be bound by the terms in the catalog governing the auction." *Hessel v. Christie's Inc.*, 399 F. Supp. 2d 506, 514 (S.D.N.Y. 2005).

Koch, therefore, is bound by the parties' Agreement whether or not he actually reviewed it. *Id.* In this case, Koch admits that he read the Zachys auction catalog and in fact "studied [it]." Compl. ¶ 41.

Under the Agreement's clear terms, Koch's damages are limited to the amount he paid for the goods he received:

> ***The Buyer [Koch] expressly agrees*** that (i) neither Zachys Wine Auctions nor the Consignor [Greenberg] shall be liable, in whole or in part, for any special, indirect or consequential damages, including, without limitation, loss of profits, and (ii) ***the Buyer's damages are limited exclusively to the original purchase price paid for the lot.***

Greenberg Decl., Exh. A at 240 ¶ 11 (emphasis added). *See also id.* at 238 (Agreement (Preamble), by which Koch expressly consented to be bound: "These Conditions of Sale and Limited Warranty, together with any Glossary which may appear in these catalog pages, are Zachys Wine Auctions and the Consignor's entire agreement with the Buyer with respect to the property listed in this catalog. . . . By participating in an auction, you agree to bound by these terms and conditions.").

This express limitation of the damages available to Koch as "Buyer" is authorized and enforceable under the New York Uniform Commercial Code:

> (1)    Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,
>
>> (a)    the agreement may provide for remedies in addition to or in substitution for those provided in this Article ***and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the good and repayment of the price*** or to repair and replacement of non-conforming goods or parts; and
>>
>> (b)    resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, ***in which case it is the sole remedy***;

\*       \*       \*

(3)    Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.  Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but *limitation of damages where the loss is commercial is not*.

New York U.C.C. § 2-719 (McKinney 2002) (emphases added).[10]  *See also DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 323 (S.D.N.Y. 2002) ("Where there is no suggestion that unequal bargaining power coerced contractual disclaimers or other concessions, a court should not rewrite the allocations of risks, rights and obligations agreed to by the parties.").  *Cf. Novosel v. Northway Motor Car Corp.*, 460 F. Supp. 541, 545 (N.D.N.Y. 1978) (confirming that New York Uniform Commercial Code sections governing damages in breach of warranty cases contain no indication that punitive damages are recoverable).

Here, Koch voluntarily participated in an exclusive private auction of high-end luxury goods governed by explicit written terms and conditions under which he is limited to the *sole* remedy of recovery of his purchase price.  Koch was a very sophisticated purchaser of rare wine sold for thousands of dollars per bottle, with full rights and opportunity to inspect each bottle before bidding.    Clearly there is nothing "unconscionable" about enforcing a contractual limitation on any damages incurred in this commercial transaction.

### b.    Koch agreed that he purchased all wine "AS IS."

The parties' Agreement expressly states:

The authenticity of property listed in the catalog is guaranteed only as stated herein and otherwise *all property is sold "AS IS" without any representations or warranties by Zachys Wine Auctions or the Consignor* as to merchantability, fitness for a particular purpose, *correctness of catalog, description*, size, quality,

---

[10]    The Uniform Commercial Code as enacted in New York state law is applicable to this transaction because wine is a "good." New York U.C.C. §§ 2-102 and §§ 2-105(1) (McKinney 2002).

condition, *rarity, importance, provenance*, exhibition history, literature, previous storage conditions or *historical relevance of any property*. No statement set forth in this catalog, made at the auction or in the bill of sale, posting, announcement or otherwise, whether oral or written, shall be deemed such a warranty, representation or assumption of liability . . . . *Prospective bidders are invited to inspect the property before bidding*.

Greenberg Decl., Exh A at 238 ¶ 1 (emphases added). This exclusion of warranties, both express and implied, is enforceable under New York's Uniform Commercial Code. New York U.C.C. § 2-316 (McKinney 2002). *See also Naftilos Painting, Inc. v. Cianbro Corp.*, 275 A.D.2d 975, 976, 713 N.Y.S.2d 626, 627 (4th Dep't 2000) (court below erred in failing to dismiss causes of action for breach of express and implied warranties of fitness because invoices contained conspicuous and effective disclaimer of all warranties); *Maltz v. Union Carbide Chems. & Plastics Co.*, 992 F. Supp. 286, 304 (S.D.N.Y. 1998) (where warranties alleged by plaintiff were specifically disclaimed in parties' agreement, breach of warranty claims failed as a matter of law); *Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224, 1231 (S.D.N.Y 1995) (fraud claim based on provenance precluded because auction catalog stated that auction house made no representations or warranties of provenance).

Both the "AS IS" provision and the invitation to inspect contained within the Agreement have special significance under the Uniform Commercial Code:

(a)     unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain there is no implied warranty; and

(b)    when the buyer before entering into the contract *has examined the goods* or the sample or model as fully as he desired *or has refused to examine the goods* there is no implied warranty with regard to defects *which an examination ought in the circumstances to have revealed to him* . . . .[11]

*Id.* § 2-316(3) (emphases added).  The courts have enforced "as is" disclaimers in auction house cases.  *See, e.g., Real Prop. Acquisitions, Inc. v. Christie's, Inc.*, 2005 N.Y. Misc. LEXIS 3285, at *8, 233 N.Y.L.J. 59 (N.Y. Sup. Ct. 2005) (auction house entitled to judgment on motion to dismiss breach of contract cause of action where catalog included "as is" provision and made clear that auction house made no warranties of any kind with respect to antique sideboard purchased by plaintiff); *T.T. Exclusive Cars, Inc. v. Christie's, Inc.*, 1996 U.S. Dist. LEXIS 19055, at *7 (S.D.N.Y. Dec. 24, 1996) (express "as is" provision in auction catalog effectively disclaimed warranties alleged by plaintiff and sophisticated buyer such as plaintiff therefore could not rely on any such warranties); *Kelly v. Brooks*, 1993 U.S. Dist. LEXIS 3385, *3 (S.D.N.Y. Mar. 19, 1993) (express "AS IS" provision in auction disclaimer signed by plaintiff absolved defendants from any liability).  Here the "AS IS" clause appeared in a short, three-page document under the bold and large-print heading "Conditions of Sale & Limited Warranty."  Koch is bound by this "AS IS" provision.

Koch's contractual right, opportunity and invitation to inspect the wine he purchased from Zachys before making any bid also defeats his claim.  Reasonable reliance is a necessary element of any fraud claim, and where a plaintiff alleging fraud had the chance to inspect the item in question before making a purchase at auction, he or she cannot later claim reliance on any alleged misrepresentations by the seller:

---

[11]    Koch does not allege that he discovered the wine was counterfeit or "possibly counterfeit" by tasting it. Apparently he physically examined it after he bought it, something he could have done before he bought it.

> Moreover, as [plaintiff] was a sophisticated purchaser engaged in a business transaction, access to information acts as a bar to any claims of reliance on misrepresentations. "When sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance."

> [Plaintiff] was encouraged to arrange for its own inspection before making its decision to purchase. When eventually performed, it was just such an inspection that uncovered the alleged defects in the Automobile. As an experienced wholesaler and dealer, [plaintiff] should have been aware that its purchase was at its own risk when it failed to inspect the Automobile before making a bid.

*T.T. Exclusive Cars, Inc.*, 1996 U.S. Dist. LEXIS 19055, at *17-18, quoting *Grumman v. Allied Indus. v. Rohr Indus.*, 748 F.2d 729, 737 (2d Cir. 1984) (internal citations omitted). *See also Foxley*, 893 F. Supp. at 1229 (plaintiff could not prove justifiable reliance in context of fraud claim based on omission because he had equal access to facts allegedly withheld); *Real Prop. Acquisitions, Inc.*, 2005 N.Y. Misc. LEXIS 3285, at *8 (plaintiff had opportunity to inspect item before auction and therefore could not maintain fraud claim). Likewise, under New York Uniform Commercial Code section 2-316(3)(b), there could be no implied warranty as to the alleged defect Koch now claims. There is nothing in the complaint to indicate that had Koch exercised his right to inspect the wine prior to his purchase, he would have been unable to see whatever it is that has now caused him to bring suit.

### c.    Koch may not re-cast his breach of contract claim as a fraud claim to seek punitive damages.

Koch's fraud claim actually is a contract claim for which punitive damages are not recoverable. New York courts preclude fraud claims where the only fraud alleged relates to a breach of contract. *See R.H. Damon & Co., Inc. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986, 992-93 (S.D.N.Y. 1993) (dismissing fraud cause of action with prejudice and dismissing

punitive damage demand).  A fraud claim "relates to" a breach of contract where, as here, the

only damages claimed accrue from the agreement:

> Such a relationship exists where the fraud claims do not allege facts extraneous
> and collateral to the contract.  To determine whether the fraud claims allege facts
> extraneous and collateral to the contract, courts should look to the source of the
> damages alleged.  ***Thus, where a fraud claim seeks to enforce no more than the
> breached promises and obligations of a contract, rather than additional
> damages incurred as a result of the breach, the claims are merely redundant
> and must be dismissed.***  To defeat a motion to dismiss common law fraud and
> misrepresentation claims, therefore, a plaintiff must allege that [he or she]
> sustained damages in addition to those they could have anticipated in the event of
> a breach.

*Id.* at 992 (internal citations omitted) (emphasis added).  *See also Krantz v. Chateau Stores of*

*Canada, Ltd.*, 256 A.D.2d 186, 187, 683 N.Y.S.2d 24, 25 (4th Dep't 1998) (fraud claim should

have been dismissed because breach of duty alleged by plaintiff was not collateral or extraneous

to the contract and because "with the exception of the unelaborated request for punitive damages

on the fraud claim, plaintiff has not claimed any special damages proximately caused by the false

representation that are not recoverable under the contract measure of damages"); *Metro. Transit*

*Auth. v. Triumph Adver. Prods., Inc.*, 116 A.D.2d 526, 527-28, 497 N.Y.S.2d 673, 674-75 (1st

Dep't 1986) (reversing lower court's denial of motion to dismiss and granting motion); *Tesoro*

*Petroleum Corp. v. Holborn Oil Co. Ltd.*, 108 A.D.2d 607, 607, 484 N.Y.S.2d, 834, 834 (1st

Dep't 1985) (reversing lower court's denial of motion to dismiss cause of action for fraud in the

inducement) ("[a] cause of action for fraud does not arise when the only fraud charged relates to

a breach of contract."); *McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 234,

574 N.Y.S.2d 58, 59 (2d Dep't 1991) ("[I]t is well settled that where, as here, a claim to recover

damages for fraud is premised upon an alleged breach of contractual duties ***and the supporting***

***allegations do not concern representations which are collateral or extraneous to the terms of***

***the parties' agreement***, a cause of action sounding in fraud does not lie.") (internal citations

omitted) (emphasis added); *Mendelovitz v. Cohen*, 37 A.D.3d 670, 671, 830 N.Y.S.2d 577, 578

(2d Dep't 2007); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc.*, 98 F.3d 13, 20 (2d

Cir. 1996) (vacating district court's finding of fraud following trial).[12]

Here, Koch has not alleged (and cannot allege) that he has sustained any damages falling

outside the scope of his claim that he did not receive what he contracted to receive when he

purchased wine at auction.  He has not alleged representations "collateral or extraneous" to the

auction catalog.  Because Koch's "fraud" claim is actually a breach of contract claim, he cannot

recover punitive damages.  Punitive damages are not recoverable for an ordinary breach of

contract because the purpose of punitive damages is not to remedy private wrongs but rather to

vindicate public rights.  *Rocanova v. Equitable Life Assur. Soc'y*, 83 N.Y.2d 603, 613, 612

N.Y.S.2d 339, 342 (1994).  While there may be limited exceptions to this rule outside the context

of an ordinary breach of contract, those exceptions unquestionably do not apply here.  Punitive

damages cannot be awarded on a breach of contract unless the breach also involves a fraud

evincing a "high degree of moral turpitude" and demonstrating "such wanton dishonesty as to

imply a criminal indifference to civil obligations," and the misconduct was "aimed at the public

generally."  *Walker v. Sheldon*, 10 N.Y.2d 401, 404-405, 223 N.Y.S.2d 488, 490-91 (1961).

This standard recently was restated and explained by the New York Court of Appeals in

*Rocanova*:

> Punitive damages are available where the conduct constituting, accompanying, or
> associated with the breach of contract is first ***actionable as an independent tort***
> for which compensatory damages are ordinarily available, and is sufficiently
> egregious under the *Walker* standard to warrant the additional imposition of

---

[12]     Koch cannot avoid this rule of law by virtue of his strategic decision not to include a "breach of contract" count in his complaint.  *Cf. Naftilos Painting, Inc.*, 275 A.D.2d at 976, 713 N.Y.S.2d at 627 (negligent misrepresentation claim in case lacking any breach of contract cause of action should have been dismissed since it was not predicated on any duty independent of the parties' contract).

exemplary damages. Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was *part of a pattern of similar conduct directed at the public generally*.

83 N.Y.2d at 613 (emphasis added). *See also New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 287 (1995) (identifying identical four factors); *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 93-96 (2d Cir. 2005) (reversing award of punitive damages to plaintiff on breach of contract claim because conduct of defendant was not aimed at general public).

Koch has not pled and cannot plead facts that would establish either an independent tort by Greenberg over and above the alleged breach of contract, or that the one-time sale of rare and extremely expensive wines to a single buyer constituted a "pattern" of conduct directed "at the public generally." Moreover, the sale of wine that Koch alleges is "possibly" counterfeit simply cannot constitute the egregious and pervasive conduct necessary for an award of punitive damages.

> **d.    Koch cannot meet the standard under New York law for an award of punitive damages for fraud.**

Even if this Court allows Koch's fraud cause of action to proceed, Koch cannot meet the standard for recovery of punitive damages:

> Punitive damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future. . . .

*Walker*, 10 N.Y.2d at 404, 406, 223 N.Y.S.2d at 490, 492 (affirming lower court's refusal to strike punitive damage allegations because pleading alleged that defrauding the general public

was the basis of the defendants' business and alleged more than an "isolated transaction incident to an otherwise legitimate business").

"[U]nder New York law, punitive damages are not available in an ordinary fraud case." *Ladenburg Thalmann & Co., Inc. v. Imaging Diagnostic Systems, Inc.*, 176 F. Supp. 2d 199, 207 (S.D.N.Y. 2001) (granting motion to strike punitive damage request because plaintiff had alleged no public wrong or injury).   To warrant punitive damages in fraud or deceit actions, the defendant must exhibit "fraud aimed at the public generally," evincing a "high degree of moral turpitude," and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations." *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 291-92 (S.D.N.Y. 1995) (citing *Walker*, 10 N.Y.2d at 405).  *See also Ladenburg*, 176 F. Supp. 2d at 207 (to be awarded punitive damages on fraud claim, plaintiff must show that fraud involved egregious conduct directed not only at plaintiff but also at public at large).

As discussed above, Koch has not pleaded and cannot plead facts establishing his entitlement to punitive damages against Greenberg under this standard.  The complaint does not, and cannot, plead that any demand was made and refused for refund of the eleven bottles at issue before plaintiff filed suit.  Nevertheless, once he learned about the claim, Greenberg promptly offered to refund those purchases in accordance with the Agreement.  This responsible response by Greenberg is wholly inconsistent with "evil and reprehensible" motives or "criminal indifference to civil obligations."  Moreover, only 11 out of 17,000 bottles are involved in this claim, including the "possibly counterfeit" bottles.

In conclusion, plaintiff cannot recover punitive damages on his fraud claim, regardless of how it is styled.  Greenberg's tender of $272,555.72 provided plaintiff with all the relief to which

he is legally entitled, plaintiff's case is moot and the claims against Greenberg should be dismissed.

## II.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AGAINST GREENBERG UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) AND SHOULD BE DISMISSED WITH PREJUDICE.

In reviewing a Rule 12(b)(6) motion, the Court must accept all material allegations of the complaint as true. *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 60 (2d Cir. 1999). However, the Court need not accept as true conclusory allegations or legal characterizations. It also need not accept unreasonable inferences or unwarranted deductions of fact. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) (bald assertions and conclusions of law will not suffice). The Court need not assume that the plaintiff can prove facts different from those he or she has alleged. *Associated Gen. Contractors v. California State Council of Carpenters, Inc.*, 459 U.S. 519, 526 (1983). Finally, the Court may disregard allegations in the complaint that are contradicted by facts established by reference to documents referenced in or integral to the complaint. *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("[A] court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading. If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss."). The Court may deny leave to amend a complaint dismissed under Rule 12(b)(6) where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1198-99 (2d Cir. 1989) (affirming lower court's denial of leave to amend).

A.      **Koch Has Failed to State a Claim for Fraud.**

As discussed in greater detail in Section I.B.4.c, *supra*, Koch's "fraud" claim is merely a breach of contract claim dressed up with fraud allegations. The only damages Koch has alleged or can allege in this matter arise directly from the specific commercial transaction at issue here, which was governed by a written agreement setting out the terms and conditions of sale. By participating in the Zachys auction, Koch agreed to be bound by these terms and conditions. He cannot now be heard to argue that he was defrauded. The wine he has challenged was the exact subject of this written contract. Its condition, and any alleged statements about its condition, cannot be "collateral" or "extraneous" to the contract. *Cf. Krantz*, 256 A.D.2d at 186-87; *McKernin*, 176 A.D.2d at 234; *Bridgestone/Firestone, Inc.*, 98 F.3d at 20. Despite plaintiff's best efforts to muddle the issues, this is a garden-variety breach of contract action. New York law bars such "fraud" claims, and Koch's common-law fraud cause of action should be dismissed.[13]

The common-law fraud count also should be dismissed on the independent ground that plaintiff cannot prove justifiable reliance, a necessary element of any fraud claim. As set out in Section I.B.4.b, *supra*, plaintiff had the right to inspect all wine from Greenberg's collection before bidding at auction. Whatever observations have led plaintiff to his present belief that certain bottles of wine are counterfeit or "possibly" counterfeit were equally available and accessible to him prior to the auction. As a matter of law, therefore, plaintiff cannot possibly

---

[13]    Once Koch's fraud cause of action is dismissed, punitive damages cannot be awarded on the basis of that cause of action, because "[a] demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action such as fraud. . . ." *Rocanova*, 83 N.Y.2d at 614. *See also Elsky v. KM Ins. Brokers*, 139 A.D.2d 691, 692, 527 N.Y.S.2d 446, 447 (2d Dep't 1988) ("[S]ince the plaintiffs' cause of action for punitive damages was dependent upon the viability of their cause of action to recover damages for fraud, once the fraud claim was dismissed the claim for punitive damages also had to be dismissed."). Therefore, the request for punitive damages should be dismissed as well.

reasonably have relied on any alleged representations to the contrary. *See T. T. Exclusive Cars, Inc.*, 1196 U.S. Dist. LEXIS 19055, at *17-18; *Foxley*, 893 F. Supp. at 1229; *Real Prop. Acquisitions, Inc.*, 2005 N.Y. Misc. LEXIS 3285, at *8.

Any request by plaintiff for leave to state a breach of contract cause of action should be denied. As established above, any claim based on the parties' contract is moot. The contract's terms expressly limit the damages available to plaintiff, and Greenberg already has tendered to plaintiff all damages and relief he possibly could be awarded under any contract claim. Plaintiff should not be granted leave to amend, since any amendment would be futile.

**B.    Koch Has Failed to State a Claim Under New York General Business Law Sections 349 and 350.**

As a matter of law, Koch cannot state a claim and is not entitled to any relief under either section 349 or section 350 of the New York General Business Law. These consumer statutes are not intended to afford a remedy to vastly wealthy, sophisticated magnates such as the plaintiff who choose to engage in private transactions involving huge sums of money. Rather, the statutes are intended to afford protection to individuals – particularly the "disadvantaged" – who suffer a disparity in bargaining power, and who are victimized in small "consumer oriented" transactions that have a broad impact on the public at large.

To state a claim for deceptive practices under GBL section 349, a plaintiff must prove that the defendant's act was "consumer oriented." *See In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006). Consumer-oriented conduct exists when "the challenged conduct has a broader impact on consumers at large." *See id.* (internal quotations omitted). To satisfy the broader impact requirement, a plaintiff's allegations of injury to the public interest must include "repeated acts of deception directed at a broad group of individuals."

24

*New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002). A "single shot transaction"

that is unique to the parties does not create an actionable claim. *See Oswego Laborers' Local*

*214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-26, 623 N.Y.S.2d 529, 532-

33 (1995) (internal quotations omitted). As noted in *Genesco Entertainment v. Koch*:

> The New York cases where plaintiffs have recovered under section 349(h) further
> reflect its consumer orientation since they uniformly involve transactions where
> the amount in controversy is small . . . . Private transactions not of a recurring
> nature or without ramifications for the public at large are not a proper subject [of
> the statute].

593 F. Supp. 743, 752 (S.D.N.Y. 1984).

In *Sichel v. Unum Provident Corp.*, the plaintiff sued his insurance carriers under GBL

section 349 for conspiring to deprive him of disability payments by causing the doctors who

examined him falsely to attest to his fitness for work. *See* 230 F. Supp. 2d 325, 330, 331

(S.D.N.Y. 2002). The court dismissed the GBL section 349 claim because the injury belonged to

plaintiff alone, who could not establish a "national policy" or "extensive scheme" by the

insurance companies to falsify disability examinations. *Id.* (internal quotations omitted).

Similarly, in *Canario v. Gunn*, the appeals court dismissed a GBL section 349 claim that affected

only one party, the buyer in a single real estate deal with a "single unique piece of property."

300 A.D.2d 332, 333, 751 N.Y.S.2d 310, 311 (2d Dep't 2002). The court held that defendant

real estate agents, in their misrepresentation of the property's size, did not violate GBL section

349 because there was no impact on the greater public. *Id. See also Feldman*, 210 F. Supp. 2d at

301 (GBL section 349 applies only when a matter affects public interest in New York and not

simply when one consumer brings a suit over a single deceptive act); *Teller v. Hayes*, 213

A.D.2d 141, 145, 630 N.Y.S.2d 769, 772 (2d Dep't 1995) ("[T]he deceptive act or practice may

not be limited to just the parties.").

Transactions that involve large sums of money exchanged by private parties are not cognizable under GBL section 349. Although the statute is remedial, it is intended to protect individuals with modest amounts of money at stake in order "to even the playing field in [consumers'] disputes with better funded and superiorly situated fraudulent businesses." *Teller*, 213 A.D.2d at 147-48 (stating that the statute's provisions allowing the greater of actual damages or $50 and its limit of $1,000 for treble damages indicate this goal). In *Teller*, the court dismissed the GBL section 349 claim because the plaintiff's dispute with her home improvement contractor over a bill of approximately $1 million was not the type of dispute covered by the section and because the plaintiff, with hundreds of thousands of dollars of renovations at stake, should have educated herself about the risks. *Id.* at 149. Likewise, in *Genesco*, the court dismissed a GBL claim arising out of the rental of Shea Stadium for a one-night concert because it involved sophisticated parties, and because a "breach of a private contract affecting no one but the parties to the contract . . . is not an act or practice affecting the public interest." 593 F. Supp. at 752 (stating that GBL section 349 does not protect "complex arrangements, knowledgeable and experienced parties and large sums of money"). *See also New York Univ.*, 87 N.Y.2d at 321, 639 N.Y.S.2d at 290 (section does not apply to claim involving complex insurance coverage matter involving sophisticated parties).[14]

As with GBL section 349, a claim under GBL section 350 must involve a consumer-oriented act. *See Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005) (citing *Pelman v.*

---

[14]    Plaintiff may cite *New York v. Feldman*, 210 F. Supp. 2d 294, 297 (S.D.N.Y. 2002), to the contrary, but that case is readily distinguishable. In *Feldman*, the defendants allegedly had conspired to rig public stamp auctions for at least seventeen years in three states, a very different circumstance than plaintiff's one-time purchase of wine from Greenberg's collection at a single auction. *Id.* at 298. Further, in *Feldman*, the "*[i]njured parties included, among others, unsophisticated individuals*," such as the elderly and one-time participants." *Id.* at 302 (emphasis added). The court therefore allowed the Attorneys General of three states to bring claims under GBL section 349 based on the defendants' alleged rigging of the bidding process that deprived sellers, auction houses and others of the advantages of a competitive market place. *Id.* at 297.

*McDonald's Corp.*, 237 F. Supp. 2d 512, 525 (S.D.N.Y. 2003); *Canario*, 300 A.D.2d at 333, 751 N.Y.S. 2d at 311 ("Private transactions without ramifications for the public at large are not the proper subject of a claim [under GBL section 350]."). Koch's allegation that he was sold counterfeit wine (averaging over $20,000 per bottle) from Greenberg's collection at one auction directed at an exclusive group of wealthy collectors involved only a one-time transaction and that was not a "consumer oriented act."

Koch cannot state a claim under either section 349 or section 350. His claims under these statutes should be dismissed with prejudice and without leave to amend.

## CONCLUSION

For all the foregoing reasons, this case is moot and the Court is without subject matter jurisdiction. At the same time, plaintiff has failed to state a claim for relief against Greenberg under Federal Rule of Civil Procedure 12(b)(6). His complaint should be dismissed with prejudice and without leave to amend.

Dated: New York, New York.
    this 19 day of December, 2007

Respectfully submitted,

        _s/_
Anthony P. Coles (AC 7942)
DLA PIPER US LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Of Counsel*
Arthur J. Shartsis
Tracy L. Salisbury
Richard F. Munzinger
Amy L. Hespenheide
SHARTSIS FRIESE LLP
1800 Maritime Plaza, 18th Floor
San Francisco, California 94111
(415) 421-6500

NEWY1\8180853.3

27