**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIAM I. KOCH, an individual, ) | Case No. 07 Civ. 9600 (BSJ)(DCF) |
| ) | |
| Plaintiff, ) | ECF Case |
| ) | |
| vs. ) | |
| ) | |
| ERIC GREENBERG, an individual; ZACHYS ) | |
| WINE & LIQUOR STORE, INC., a New York ) | |
| corporation; and ZACHYS WINE AUCTIONS, ) | |
| INC., a New York corporation, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF**
**DEFENDANTS ZACHYS WINE & LIQUOR STORE, INC. AND**
**ZACHYS WINE AUCTIONS, INC. TO DISMISS THE COMPLAINT**

DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500
Attorneys for Defendants Zachys Wine &
Liquor Store, Inc. and Zachys Wine Auctions, Inc.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... iii

STATEMENT OF FACTS .............................................................................................. 1

ARGUMENT ................................................................................................................... 4

I.  THE GOVERNING STANDARD ...................................................................... 4

II.  PLAINTIFF'S PARTICIPATION IN THE AUCTIONS AND PURCHASE OF
    ALMOST $4 MILLION WORTH OF WINE WAS DONE PURSUANT TO THE
    TERMS AND CONDITIONS GOVERNING THE AUCTIONS; THESE
    TERMS AND CONDITIONS PRECLUDE PLAINTIFF FROM
    ESTABLISHING RELIANCE, THEREBY UNDERMINING PLAINTIFF'S
    CLAIMS FOR COMMON LAW FRAUD AND NEGLIGENT
    MISREPRESENTATION .................................................................................. 5

    A.  By Placing Bids At The Auctions, Plaintiff Agreed To Be Bound By The
        Terms Governing The Auctions ............................................................... 5

    B.  The Terms Governing The Auctions Preclude Plaintiff's Claim Of
        Reliance, And The Fraud And Negligent Misrepresentation Claims Must
        Therefore Be Dismissed As A Matter Of Law ........................................ 7

III.  PLAINTIFF'S CONCLUSORY ALLEGATION OF A SPECIAL
     RELATIONSHIP AND FAILURE TO ALLEGE THE REQUISITE
     EXCLUSIVE POSSESSION OF MATERIAL INFORMATION BY ZACHYS
     ARE FATAL TO HIS NEGLIGENT MISREPRESENTATION CLAIM, WHICH
     SHOULD THEREFORE BE DISMISSED IN ITS ENTIRETY ..................................... 11

     A.  The Relationship Between Plaintiff And Zachys Was Not A "Special"
         Relationship; It Was Merely That Of An Ordinary Buyer And Seller ................. 12

     B.  Zachys Did Not Possess Knowledge That Was Unavailable To Plaintiff ........... 13

IV.  PLAINTIFF'S FRAUD CLAIM IS NOTHING MORE THAN IMPROPER
    BOOT STRAPPING OF A BREACH OF CONTRACT CLAIM ................................... 15

V.  PLAINTIFF'S COMPLAINT RELATES TO A PRIVATE CONTRACT
    DISPUTE THAT DOES NOT HAVE AN IMPACT ON CONSUMERS AT
    LARGE; PLAINTIFF'S CLAIMS FOR VIOLATIONS OF SECTIONS 349
    AND 350 OF THE NEW YORK GENERAL BUSINESS LAW SHOULD
    THEREFORE BE DISMISSED IN THEIR ENTIRETY ................................................. 16

i

Page

 A. The Transactions At Issue Are Private Contract Disputes And Do Not Rise To The Level Of A Claim Under NYGBL ............................................................ 17

 B. The Transactions At Issue Do Not Have A Broader Impact On "Consumers At Large" .......................................................................................... 19

CONCLUSION ........................................................................................................... 22

DOCSNY-282261

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                          <u>Page(s)</u>

<u>Am. Protein Corp. v. AB Volvo</u>, 844 F.2d 56 (2d Cir. 1988) ......................................12

<u>Arista Records LLC v. Lime Group LLC</u>, No. 06 Civ. 5936,
    2007 WL 4267190 (S.D.N.Y. Dec. 3, 2007) ............................................................4

<u>Belin v. Weissler</u>, No. 97 Civ. 8787, 1998 WL 391114 (S.D.N.Y. July 14, 1998)........7

<u>Blumenthal v. Sea Hotel Co.</u>, No. 99 Civ. 4881, 2000 WL 1349249
    (S.D.N.Y. Sept. 19, 2000) ......................................................................................16

<u>Bologna v. Allstate Ins. Co.</u>, 138 F. Supp. 2d 310 (E.D.N.Y. 2001)............................18

<u>Canario v. Gunn</u>, 300 A.D.2d 332, 751 N.Y.S.2d 310 (2d Dep't 2002) .......................17

<u>Champion Home Builders Co. v. ADT Sec. Servs., Inc.</u>, 179 F. Supp.2d 16
    (N.D.N.Y. 2002) ......................................................................................................18

<u>Cortec Indus., Inc. v. Sun Holding, L.P.</u>, 949 F.2d 42 (2d Cir. 1991)..............................2

<u>Csaky v. Meyer</u>, No. 94 Civ. 8117, 1995 WL 494574 (S.D.N.Y. Aug. 18, 1995).........6

<u>In re Evergreen Mut. Funds Fee Litig.</u>, 423 F. Supp. 2d 249 (S.D.N.Y. 2006)......................20, 21

<u>ExxonMobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.</u>,
    328 F. Supp. 2d 443 (S.D.N.Y. 2004).............................................................20, 22

<u>Feick v. Fleener</u>, 653 F.2d 69 (2d Cir. 1981)................................................................11

<u>Finnish Fur Sales Co. v. Juliette Shulof Furs, Inc.</u>, 770 F. Supp. 139 (S.D.N.Y. 1991) ................6

<u>Foxley v. Sotheby's Inc.</u>, 893 F. Supp. 1224 (S.D.N.Y. 1995) .........................................9, 12, 13

<u>Genesco Entm't v. Koch</u>, 593 F. Supp. 743 (S.D.N.Y. 1984)......................................20

<u>Grumman Allied Indus. v. Rohr Indus., Inc.</u>, 748 F.2d 729 (2d Cir. 1984) .................14

<u>Hart v. Moore</u>, 155 Misc. 2d 203, 587 N.Y.S.2d 477 (Sup. Ct. Westchester County 1992).........22

<u>Hessel v. Christie's Inc.</u>, 399 F. Supp. 2d 506 (S.D.N.Y. 2005) .....................................6

<u>Kelly v. Brooks</u>, No. 92 Civ. 729, 1993 WL 88259 (S.D.N.Y. Mar. 19, 1993)......................9, 10

<u>L'Europeenne de Banque v. La Republica de Venezuela</u>, 700 F. Supp. 114
    (S.D.N.Y. 1988) ........................................................................................................4

iii

CASES (cont.)                                                                                    Page(s)

Lava Trading Inc. v. Hartford Fire Ins. Co., 326 F. Supp. 2d 434 (S.D.N.Y. 2004) ...............19, 20

Lefkowitz v. Alexanders Dep't Store, Inc., 42 A.D.2d 532, 344 N.Y.S.2d 719
    (1st Dep't 1973) ...............................................................................................22

Leider v. Ralfe, 387 F. Supp. 2d 283 (S.D.N.Y. 2005) ...............................................17

Levin v. Gallery 63 Antiques Corp., No. 04 Civ. 1504, 2006 WL 2802008
    (S.D.N.Y. Sept. 28, 2006)......................................................................................7

Lopes v. Mellon Investor Servs. LLC, No. 07 Civ. 5928, 2007 WL 4258189
    (S.D.N.Y. Dec. 3, 2007)..................................................................................4, 11

In re MarketXT Holdings Corp., No. 04-12078, 2006 WL 2864963
    (Bankr. S.D.N.Y. Sept. 29, 2006) ..........................................................................16

N.Y. Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) ...........................18

Nadel v. Play By Play Toys & Novelties, Inc., 34 F. Supp. 2d 180 (S.D.N.Y. 1999),
    rev'd on other grounds, 208 F.3d 368 (2d Cir. 2000) ...............................................18

Real Prop. Acquisitions Inc. v. Christie's Inc., No. 601943/04,
    2005 N.Y. Misc. LEXIS 3285 (Sup. Ct. N.Y. County Mar. 29, 2005) .......................6, 10, 14

Riel v. Morgan Stanley, No. 06 Civ. 524, 2007 WL 541955 (S.D.N.Y. Feb. 16, 2007)................7

Rosen v. Spanierman, 711 F. Supp. 749 (S.D.N.Y. 1989), vacated in part and remanded
    on other grounds, 894 F.2d 28 (2d Cir. 1990) ...................................................12, 13

Sazerac Co. v. Falk, 861 F. Supp. 253 (S.D.N.Y. 1994) ...........................................2, 5, 11

Sichel v. Unum Provident Corp., 230 F. Supp. 2d 325 (S.D.N.Y. 2002) ...............................15, 18

T.T. Exclusive Cars, Inc. v. Christie's Inc., No. 96 Civ. 1650, 1996 WL 737204
    (S.D.N.Y. Dec. 24, 1996) .................................................................... passim

Teller v. Bill Hayes, Ltd., 213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995).........................21

U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158 (S.D.N.Y. 2001).............................17

United States ex rel. Sommer v. Dixon, 524 F. Supp. 83 (N.D.N.Y. 1981),
    aff'd, 709 F.2d 173 (2d Cir.), cert. denied, 464 U.S. 857 (1983) ...........................11

Virgilio v. City of N.Y., 407 F.3d 105 (2d Cir. 2005), cert. denied, 546 U.S. 1146 (2006) ..........4

World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 425 F. Supp. 2d 484 (S.D.N.Y. 2006)...............4

DOCSNY-282261

Page(s)

STATUTES

N.Y. Gen. Bus. Law § 349(h) (McKinney 2004) ............................................................22

N.Y. Gen. Bus. Law § 350-e (McKinney 2004) ............................................................22

DOCSNY-282261

Defendants Zachys Wine & Liquor Store, Inc. and Zachys Wine Auctions, Inc. (together, "Zachys"), by their attorneys Dickstein Shapiro LLP, respectfully submit this memorandum of law in support of their motion to dismiss the Complaint (the "Complaint"),[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") on the ground that the Complaint fails to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

Plaintiff, a self-described "serious" "purchaser[ ] and collector[ ] of rare wines" (Compl. ¶¶ 41, 61), accuses Zachys of fraud, negligent misrepresentation and deceptive consumer-related trade practices arising out of Plaintiff's purchase of $3,700,000 worth of wine at a single auction in October 2005 (id. ¶ 42), with eleven bottles totaling almost $230,000 of that $3,700,000 forming the basis of Plaintiff's charges (id. ¶¶ 44-51), and his purchase of another eight bottles of wine for almost $127,000 at an auction a year earlier (id. ¶¶ 53-59). Zachys conducted both the October 2004 and October 2005 auctions (the "Auctions") (Compl. ¶¶ 41, 52). Years after the Auctions, in 2007, during an inspection of his wine cellar, Plaintiff alleges that he discovered that some of the wine he purchased at the Auctions was counterfeit or "possibly counterfeit." Id. ¶¶ 1, 51. Plaintiff further alleges that his investigation revealed that some of the allegedly counterfeit wine had been consigned to Zachys by defendant Eric Greenberg who, according to Plaintiff, knowingly injected counterfeit wine into the marketplace. Id. ¶ 1.

Plaintiff received catalogues for each of the Auctions prepared by Zachys (the "Catalogues") identifying the wine that would be offered at each of the Auctions.[2] Id. ¶¶ 41, 53-59. Plaintiff further alleges, with regard to the 2005 Catalogue, that "[t]his catalogue, by its

---

[1]     A true and correct copy of the Complaint is annexed hereto as Exhibit A.

[2]     A true and correct copy of the 2004 and 2005 Catalogues is annexed hereto as Exhibits B and C, respectively.

nature, constituted representations that the wine being auctioned was genuine and described accurately." Id. Plaintiff states that he studied and relied on the 2005 Catalogue in deciding what wines to bid on at the Auction. Id. ¶ 41. Throughout the Complaint, Plaintiff quotes from and includes descriptions contained in the 2004 and 2005 Catalogues to support his accusations that such wines were not the wines that were described in the Catalogues and were, therefore, allegedly counterfeit or "possibly counterfeit." See generally Compl. ¶¶ 44-59.

By participating in the 2004 and 2005 Auctions, Plaintiff agreed to be bound by the "Conditions of Sale & Limited Warranty" (the "Conditions of Sale") contained in the Catalogues (Ex. B at 215, Ex. C at 233) – the same Catalogues upon which Plaintiff extensively relies to support the allegations in his Complaint. See Compl. ¶¶ 44-51, 53-59.[3] The first of the Conditions of Sale states, in pertinent part:

> The authenticity of property listed in the catalog [sic] is guaranteed only as stated herein and otherwise all property is sold "AS IS" without any representations or warranties by Zachys Wine Auctions or the Consignor as to merchantability, fitness for a particular purpose, correctness of catalog [sic], description, size, quality, condition, rarity, importance, provenance, exhibition history, literature, previous storage conditions or historical relevance of any property. No statement set forth in this catalog [sic], made at the auction or in the bill of sale, posting, announcement or otherwise, whether oral or written, shall be deemed such a warranty, representation or assumption of liability.

Ex. B at 220; Ex. C at 238.

---

[3]    The "Buying & Bidding Information" and the Conditions of Sale contained in the Catalogues, while outside the four corners of the Complaint, are nonetheless appropriate to consider on a Rule 12(b)(6) motion because the content of the Catalogues is integral to the Complaint and was relied on by Plaintiff in drafting the Complaint. See Sazerac Co. v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) ("In the event that a plaintiff alleges a claim based on a written instrument, as is the case here, the court may consider such an instrument [a stock purchase agreement] in ruling on a Rule 12(b)(6) motion even if it was not attached to the complaint and made a part thereof . . . ."); Cortec Indus., Inc. v. Sun Holding, L.P., 949 F.2d 42 (2d Cir. 1991) (holding that court could consider documents – a stock purchase agreement, an offering memorandum and a warrant to convert shares of stock – of which plaintiffs had notice and which were integral to their claim in ruling on motion to dismiss even though those documents were neither incorporated into the complaint by reference nor attached to the complaint).

2

Plaintiff accepted the terms of this disclaimer when he placed bids at the Auctions, since the Catalogues expressly mandate, in two separate places, that by participating in the auction, the auction participant agrees to be bound by the terms and conditions set forth in the catalogue.  Ex. B at 215, 220; Ex. C at 233, 238.  Specifically, the "Buying & Bidding Information" states:

> By participating in an auction, an auction participant agrees to be bound by the Conditions of Sale and Limited Warranty, printed in this catalog [sic].

Ex. B at 215; Ex. C at 233.  Likewise, the Conditions of Sale reiterate:

> By participating in an auction, you agree to be bound by these terms and conditions.

Ex. B at 220; Ex. C at 238.

In addition, as set forth in the Catalogues in two separate provisions, prior to submitting bids at the 2004 and 2005 Auctions, prospective buyers such as Plaintiff were invited by Zachys to examine the wine prior to purchase.  Ex. B at 215, 220; Ex. C at 233, 238.  The Buying And Bidding Information states:

### EXAMINATION OF WINES

> Prospective Buyers are invited by appointment to examine any lots prior to the auction at our temperature-controlled warehouse.  Please contact our office at 310.446.6622 to set up an appointment.

Ex. B at 215; see also Ex. C at 233.  The Conditions of Sale again emphasize that "Prospective bidders are invited to inspect the property before bidding."  Ex. B at 220; Ex. C at 238.

Plaintiff apparently opted not to take advantage of such invitations, as the Complaint does not contain a single allegation stating that he did anything beyond rely on the Catalogues in deciding what wines to bid on and purchase at the Auctions.  Compl. ¶¶ 41-50 (2005 Catalogue), ¶¶ 53-59 (2004 Catalogue).

DOCSNY-282261

Plaintiff purchased $3,700,000 worth of wine at the 2005 Auction alone, and contends that approximately $228,600 of that total amount was spent on eleven bottles of allegedly counterfeit or "possibly counterfeit" wine. Compl. ¶¶ 42, 45-51. Plaintiff also asserts that he spent approximately $126,500 on another eight bottles of allegedly counterfeit wine at the 2004 Auction. Id. ¶¶ 53-59.

## ARGUMENT

## I. THE GOVERNING STANDARD

Plaintiff's Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). Even assuming arguendo that all the factual allegations in the Complaint are true (which they are not), Plaintiff's claims are not viable as a matter of law. See Virgilio v. City of N.Y., 407 F.3d 105, 111 (2d Cir. 2005) (holding that dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate if, accepting the factual allegations in the complaint as true, there are no legal grounds upon which relief may be granted), cert. denied, 546 U.S. 1146 (2006); World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 425 F. Supp. 2d 484, 493 (S.D.N.Y. 2006) (same).

Moreover, it is well settled that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." Lopes v. Mellon Investor Servs. LLC, No. 07 Civ. 5928, 2007 WL 4258189, at *1 (S.D.N.Y. Dec. 3, 2007) (internal quotation marks omitted); see also Arista Records LLC v. Lime Group LLC, No. 06 Civ. 5936, 2007 WL 4267190, at *5 (S.D.N.Y. Dec. 3, 2007) ("[C]onclusory statements cannot substitute for minimally sufficient factual allegations." (internal quotation marks omitted)). Thus, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." L'Europeenne de Banque v. La Republica de Venezuela, 700 F. Supp. 114, 122 (S.D.N.Y. 1988) (internal quotation marks omitted).

4

In addition, "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint."  <u>Sazerac Co. v. Falk</u>, 861 F. Supp. 253, 257 (S.D.N.Y. 1994).

Because Plaintiff's Complaint suffers from an abundance of conclusory allegations and an absence of factually supported, legally viable claims, Zachys' motion to dismiss should be granted.

**II.    PLAINTIFF'S PARTICIPATION IN THE AUCTIONS AND PURCHASE OF ALMOST $4 MILLION WORTH OF WINE WAS DONE PURSUANT TO THE TERMS AND CONDITIONS GOVERNING THE AUCTIONS; THESE TERMS AND CONDITIONS PRECLUDE PLAINTIFF FROM ESTABLISHING RELIANCE, THEREBY UNDERMINING PLAINTIFF'S CLAIMS FOR COMMON LAW FRAUD AND NEGLIGENT MISREPRESENTATION**

The "as is" Condition of Sale, combined with full access and inspection rights – both expressly set forth in the 2004 and 2005 Catalogues – preclude Plaintiff from establishing the requisite reliance based on those Catalogues to sustain his claims for fraud and negligent misrepresentation.  As described below, such claims must therefore fail as a matter of law.

**A.    By Placing Bids At The Auctions, Plaintiff Agreed To Be Bound By The Terms Governing The Auctions**

It is undisputed that Plaintiff received and read the 2004 Catalogue:  he quotes extensively from the Catalogue to describe particular bottles of wine, and identifies the specific bottles of wine that he alleges are counterfeit by their lot number in the Catalogue.  <u>See</u> Compl. ¶¶ 53-59.  Plaintiff also concedes that he received and read the 2005 Catalogue prior to submitting bids at the Auction:

> Prior to the 2005 Zachys auction, Koch received a catalogue prepared by Zachys identifying the wine that would be offered at the auction. . . .  The Zachys' catalogue was designed to be read by serious collectors of wine like Koch, it was widely disseminated, and it was, in fact, read by Koch. Koch studied the catalogue and relied on it in making decisions as to which wines he wanted to bid on at the auction.

5

Id. ¶ 41.  It is also undisputed that Plaintiff placed numerous bids at both the 2004 and 2005 Auctions (indeed, winning bids totaling almost $4 million), as evidenced by the Catalogue description in the Complaint of each and every bottle purchased that Plaintiff now alleges is counterfeit or "possibly counterfeit."  See id. ¶¶ 44-51, 53-59.

Under the express terms set forth in the Catalogues, Plaintiff agreed to be bound by the terms governing both Auctions.  The "Buying & Bidding Information," included in the 2004 and 2005 Catalogues, states:

> By participating in an auction, an auction participant agrees to be bound
> by the Conditions of Sale and Limited Warranty, printed in this catalog
> [sic].

Ex. B at 215; Ex. C at 233.  Likewise, the Conditions of Sale contained in each Catalogue states: "[b]y participating in an auction, you agree to be bound by these terms and conditions."  Ex. B at 220; Ex. C at 238.

It is well settled under New York law, that "by placing a bid in an auction, the bidder consents to be bound by the terms in the catalog governing the auction."  Hessel v. Christie's Inc., 399 F. Supp. 2d 506, 514 (S.D.N.Y. 2005) (finding that catalogue term providing that "by bidding at auction the buyer agrees to be bound" was sufficient to bind bidder to the conditions of sale.  See also Csaky v. Meyer, No. 94 Civ. 8117, 1995 WL 494574, at *1 (S.D.N.Y. Aug. 18, 1995) ("By placing her bid in the auction, defendant consented to be bound by the terms in the catalog governing the auction."); Finnish Fur Sales Co. v. Juliette Shulof Furs, Inc., 770 F. Supp. 139, 145 (S.D.N.Y. 1991) (binding bidder to conditions of sale in auction catalogue when catalogue was made available to the bidder prior to the auction and the bidder was a "sophisticated defendant accustomed to bidding at . . . auctions").  Accord Real Prop. Acquisitions Inc. v. Christie's Inc., No. 601943/04, 2005 N.Y. Misc. LEXIS 3285, at * 6-7 (Sup. Ct. N.Y. County Mar. 29, 2005) ("The catalogue, under the section entitled 'Conditions of Sale

6

and Limited Warranty' puts potential bidders on notice that, by bidding on a lot, they have agreed to the terms and conditions printed within the catalogue's pages . . . .").

Therefore, Plaintiff, by submitting bids at the 2004 and 2005 Auctions, and receiving and relying on the contents of the Catalogues, agreed to be bound by the terms governing the Auctions.

**B.    The Terms Governing The Auctions Preclude Plaintiff's Claim Of Reliance, And The Fraud And Negligent Misrepresentation Claims Must Therefore Be Dismissed As A Matter Of Law**

In support of his common law fraud and negligent misrepresentation claims against Zachys, Plaintiff claims that Zachys made material misrepresentations in the 2004 and 2005 Catalogues upon which he relied in purchasing the purportedly counterfeit or "possibly counterfeit" wine. See, e.g., Compl. ¶ 41 ("Koch studied the catalogue and relied on it in making decisions as to which wines he wanted to bid on at the auction.").

In order to sustain a claim of fraud, Plaintiff must adequately establish each of the five fundamental elements, namely: (i) misrepresentation of a material fact; (ii) the falsity of that misrepresentation; (iii) scienter, or intent to defraud; (iv) reasonable reliance on that representation; and (v) damage caused by such reliance. Levin v. Gallery 63 Antiques Corp., No. 04 Civ. 1504, 2006 WL 2802008, at *8 (S.D.N.Y. Sept. 28, 2006). Similar to fraud, a claim of negligent misrepresentation likewise requires reliance. See Riel v. Morgan Stanley, No. 06 Civ. 524, 2007 WL 541955, at *13 (S.D.N.Y. Feb. 16, 2007). The absence of reasonable or justifiable reliance is fatal to Plaintiff's claims of fraud and negligent misrepresentation. See, e.g., Belin v. Weissler, No. 97 Civ. 8787, 1998 WL 391114, at *9 (S.D.N.Y. July 14, 1998).

As set forth above, the 2004 and 2005 Catalogues contain an express disclaimer of any representations or warranties as to merchantability or fitness for a particular purpose – a

7

disclaimer that binds Plaintiff – specifically disclaiming not only the "correctness of [the] catalog [sic]," but also the:

> description, size, quality, condition, rarity, importance, provenance, exhibition history, literature, previous storage conditions or historical relevance of any property.

Ex. B at 220; Ex. C at 238. The disclaimer further states:

> No statement set forth in this catalog [sic], made at the auction or in the bill of sale, posting, announcement or otherwise, whether oral or written, shall be deemed such a warranty, representation or assumption of liability.

Ex. B at 220; Ex. C at 238.

Under New York law, express disclaimers such as Zachys that are contained within auction house catalogues have been held to be sufficient to preclude a claim for fraudulent misrepresentation. In T.T. Exclusive Cars, Inc. v. Christie's Inc., No. 96 Civ. 1650, 1996 WL 737204 (S.D.N.Y. Dec. 24, 1996), for example, defendant Christie's, a well known auction house that auctions, among other things, classic cars on behalf of individuals, companies and organizations (id. at *1), advertised the classic cars to be auctioned through a nationally distributed catalogue which contained a description of the cars, including the car purchased by plaintiff, and also contained the following disclaimer, or "as is" clause:

> All property is sold "as is" and neither Christie's nor the seller makes any express or implied warranty or representations of any kind or nature with respect to the property. In no event shall Christie's or the seller be responsible for the correctness of, or be deemed to have made any representations or warranty of merchantability, fitness for purpose, description, size, genuineness, attribution, provenance or condition concerning the property….Except for warranties to be made to the purchasers of lots designated with an *, no warranties are or will be made that any of the property is roadworthy….Christie's makes no representations or warranty as to the accuracy of "mileage" or odometer readings.

Id. at *2 (alterations in original). The Court found that the terms of this disclaimer were accepted by the plaintiff bidder when it placed a bid, because the catalogue explicitly stated (like

DOCSNY-282261

the Zachys' Catalogues) that "'[b]y bidding at auction . . . the buyer agrees to be bound by these conditions of sale.'"  Id. at *3 (first alteration in original).  Subsequent to the sale, plaintiff alleged that an appraisal was performed that disclosed that the car, contrary to the description contained in the catalogue, "had mileage in excess of 100,000 miles, had been repainted, had new hoses, screw clamps, brush touch-up under the hood, and a creased and dirty interior."  Id. at *1.  The Court dismissed the intentional misrepresentation claim and held:

> An express disclaimer contained within an auction house catalogue has been held to be sufficient to preclude such a claim [for fraudulent misrepresentation].
>
> [And because plaintiff] was a sophisticated purchaser engaged in a business transaction, access to information acts as a bar to any claims of reliance on misrepresentations.

Id. at *6.  See also Foxley v. Sotheby's Inc., 893 F. Supp. 1224, 1230 (S.D.N.Y. 1995) (holding that plaintiff failed to state a claim for fraud because such claim "is precluded because . . . Sotheby's made no representations or warranties of provenance" in connection with the sale of a painting; the disclaimer stated, "neither we nor the Consignor make any warranties or representations of the correctness of the catalogue or other description [including] ... provenance ... and no statement anywhere, whether written or oral, shall be deemed such a warranty or representation" (second, third and fourth alterations in original)); Kelly v. Brooks, No. 92 Civ. 729, 1993 WL 88259 (S.D.N.Y. Mar. 19, 1993) (dismissing fraud claim where plaintiffs discovered that seven paintings purchased at auctions were not authentic, but the statement recording the purchase included a printed "as is" disclaimer signed by plaintiffs).[4]

---

[4]    The disclaimer in Kelly v. Brooks stated:

> All property is sold "AS IS", and neither State Line Auctions nor the Consignor(s) make any guarantees, warranties or representations, expressed or implied, with respect to property purchased, and in no event shall the seller nor the consignor be responsible for genuineness, authorship, attribution, provenance, period, culture, source, origin, or condition of the purchased property  . . . either

DOCSNY-282261

Likewise, in <u>Real Property Acquisitions</u>, plaintiff submitted a bid for a sideboard that was described in the catalogue as an "original," "highly important" piece. 2005 N.Y. Misc. LEXIS 3285, at *1. Subsequent to his purchase of the sideboard, plaintiff's president learned that the damage and restoration work to the sideboard made it worth significantly less than he believed at the time of the auction. <u>Id.</u> at *2. However, the court dismissed the claims for fraudulent concealment, fraudulent inducement and negligent misrepresentation in finding that, <u>inter alia</u>, the following terms and warnings printed in the catalogue were clear and binding upon all parties to the transactions:

> "The authenticity of the authorship of property listed in the catalogue is guaranteed only as stated in the Limited Warranty and otherwise all property is sold 'AS IS' without any representations or warranties by us or the Consignor as to merchantability, fitness for a particular purpose, description, size, quality, condition, rarity, importance, medium provenance, exhibition history, literature or historical relevance of any property. No statement set forth in this catalogue or made at the auction or in the bill of sale of [sic] otherwise, whether oral or written, shall be deemed such a warranty, representation or assumption of liability… Prospective bidders should inspect the property before bidding to determine its condition size [sic], and whether or not it has been repaired or restored."

<u>Id.</u> at *7 (second alteration in original).

Therefore, Plaintiff cannot transform the descriptions of the wine contained in the Catalogues – which were specifically disclaimed – into warranties or certifications of authenticity. Moreover, where, as here, Plaintiff's allegations in the Complaint "are contradicted by documents made a part thereof, the document controls and the court need not accept as true

---

> before or after the sale of the stated property, or in this bill of sale, or invoice or catalogue or advertisement or elsewhere shall be deemed such a guarantee of genuineness.
>
> The purchaser, by signing this Bill of Sale agrees to the above stated terms and conditions of sale without exceptions.

1993 WL 88259, at *1 n. 3.

DOCSNY-282261

the allegations of the complaint." Sazerac, 861 F. Supp. at 257; see also Feick v. Fleener, 653 F.2d 69, 75 (2d Cir. 1981) ("[s]ince the documents upon which appellants based their claim show on their face absence of any grounds for relief, dismissal was proper."); United States ex rel. Sommer v. Dixon, 524 F. Supp. 83, 85 (N.D.N.Y. 1981) (dismissing complaint where the "submission of exhibits by the plaintiff contradict[ed] . . . the allegations of plaintiff in the complaint that he was deprived of due process and fair hearing at the . . . [p]roceeding"), aff'd, 709 F.2d 173 (2d Cir.) (per curiam), cert. denied, 464 U.S. 857 (1983). Plaintiff's claim that he relied on the descriptions in the Catalogues ignores the specific disclaimers set forth in those Catalogues. Accordingly, Plaintiff's allegations of reliance (and therefore his fraud and negligent misrepresentation claims) cannot withstand scrutiny under the applicable law.

### III. PLAINTIFF'S CONCLUSORY ALLEGATION OF A SPECIAL RELATIONSHIP AND FAILURE TO ALLEGE THE REQUISITE EXCLUSIVE POSSESSION OF MATERIAL INFORMATION BY ZACHYS ARE FATAL TO HIS NEGLIGENT MISREPRESENTATION CLAIM, WHICH SHOULD THEREFORE BE DISMISSED IN ITS ENTIRETY

In order to sustain a claim for negligent misrepresentation, Plaintiff must show either: (1) the existence of a fiduciary or special relationship between the parties; or, absent a special relationship, (2) that defendant possessed material information unavailable to the plaintiff and knew that plaintiff was acting on the basis of mistaken knowledge. T.T. Exclusive Cars, 1996 WL 737204. Plaintiff alleges only that a "special relationship of trust and confidence" existed (Compl. ¶ 68). This is not only a "conclusory allegation [ ] or legal conclusion[ ] masquerading as [a] factual conclusion" (Lopes, 2007 WL 4258189 at *1), but an incorrect legal conclusion, contrary to well-established law. Moreover, the Complaint is silent as to any material information within the exclusive possession of Zachys, which is not surprising given Plaintiff's right to inspect any of the wine on which he wished to bid. Unable to establish either of the prerequisites, Plaintiff's negligent misrepresentation claim should therefore be dismissed.

11

### A.   The Relationship Between Plaintiff And Zachys Was Not A "Special" Relationship; It Was Merely That Of An Ordinary Buyer And Seller

Plaintiff's claim that "[a] special relationship of trust and confidence existed between Zachys and purchasers and collectors of rare wines due to Zachys' specialized ability to ascertain, and investigate, the history and authenticity of the wine and overall knowledge of wine" (Compl. ¶ 68) is belied by New York law.  Plaintiff's contention that Zachys had superior knowledge with regard to wine is also contradicted by the fact that Plaintiff describes himself as a "serious collector[] of wine" and has spent millions of dollars adding to his collection at wine auctions.  Compl. ¶¶ 41-42.  Plaintiff clearly does not lack sophistication or familiarity with wine.

Under New York law, "generally there is no liability for words negligently spoken but . . . there is an exception when the parties' relationship suggests a closer degree of trust and reliance than that of the ordinary buyer and seller."  Am. Protein Corp. v. AB Volvo, 844 F.2d 56, 63 (2d Cir. 1988) (internal quotation marks omitted).  Negligent misrepresentation claims arising out of ordinary arm's length negotiations fail as a matter of law.  Id. at 64.  Generally, a special relationship requires prior or ongoing interaction.  Foxley, 893 F. Supp. at 1232.  In sum, there must be a "closer degree of trust than that of the ordinary buyer and seller."  T.T. Exclusive Cars, 1996 WL 737204, at *4.  And "[i]n defining the special relationship necessary to maintain a cause of action for negligent misrepresentation involving goods, the relationship 'implying a closer degree of trust' is generally a previous or continuing relationship between the parties."  Rosen v. Spanierman, 711 F. Supp. 749, 758 (S.D.N.Y. 1989), vacated in part and remanded on other grounds, 894 F.2d 28 (2d Cir. 1990) (citations omitted).

Plaintiff's conclusory allegation falls far short of the requisite "closer degree of trust" with Zachys.  Indeed, Plaintiff's Complaint does not even allege the necessary relationship with

Plaintiff himself.  Rather the Complaint makes a generalized conclusion as to the relationship between Zachys and "purchasers and collectors of rare wines."  Compl. ¶ 68.  Such a vague and conclusory allegation concerning an amorphous group of wine "purchasers and collectors" fails to satisfy the specific showing of a special relationship with a closer degree of trust.

Further, "the general rule in New York is that an auction house acts as an agent on behalf of its consignors, not its bidders."  T.T. Exclusive Cars, 1996 WL 737204, at *4 (dismissing negligent misrepresentation claims pursuant to Fed. R. Civ. P. 12(b)(6) and finding no evidence of a special relationship between bidder and auction house because as an agent for the consignor, the auction house's fiduciary duties, if any, were owed to the consignor, not its bidders).  See also Foxley, 893 F. Supp. at 1232 (holding that a "special relationship" sufficient to state a claim for negligent misrepresentation was not created between a bidder and an auction house through personal visits, viewings of the bidder's personal collection, introductions to Sotheby's key personnel and private luncheons); Rosen, 711 F. Supp. at 758 (holding that the mere purchase of a painting from defendant gallery owner and subsequent appraisals with "no bearing on the relationship between the parties at the relevant time" did not create the special relationship necessary to maintain a negligent misrepresentation claim).

Nothing in the Complaint suggests that the general rule under New York law does not apply to Plaintiff.  To the contrary, Plaintiff lumps himself in with the group of "purchasers and collectors" of wine.  Compl. ¶ 68.  This vague, conclusory allegation is insufficient as a matter of law to establish the requisite relationship for a negligent misrepresentation claim.

**B.    Zachys Did Not Possess Knowledge
        That Was Unavailable To Plaintiff**

Absent a "special relationship" between Plaintiff and Zachys (which Plaintiff has failed to properly allege), in order to maintain a claim for negligent misrepresentation, Plaintiff must

DOCSNY-282261

allege that Zachys had knowledge, unavailable to Plaintiff, that the wine was counterfeit. The conclusory allegations in the Complaint concerning Zachys' knowledge are Plaintiff's blanket contention that "Zachys knew, or was reckless or negligent in not knowing, that some of the wine it was auctioning . . . was counterfeit or of questionable authenticity" (Compl. ¶ 5)[5] and that Zachys had a "specialized ability to ascertain, and investigate, the history and authenticity of the wine and overall knowledge of wine" (Compl. ¶ 68). However, the fact that Plaintiff, a sophisticated wine purchaser, failed to avail himself of the opportunity to inspect the wine he now contends is fraudulent, bars his claim of reliance on Zachys' "exclusive" information.

"The principle that access bars claims of reliance on misrepresentations has been expressly recognized by this Court. [And] [w]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." Grumman Allied Indus. v. Rohr Indus., Inc., 748 F.2d 729, 737 (2d Cir. 1984) (citations omitted) (holding that actions for misrepresentation could not be maintained where plaintiff enjoyed absolute access to all relevant information and the business expertise necessary to confirm the validity of those representations). "A defendant's knowledge is not considered superior when the information was not pursued by the plaintiffs." T.T. Exclusive Cars, 1996 WL 737204, at *4-6 (holding that since plaintiff "was a sophisticated purchaser engaged in a business transaction, access to information acts as a bar to any claims of reliance on misrepresentations"); Real Prop. Acquisitions, 2005 N.Y. Misc. LEXIS 3285, at *9-10 (dismissing negligent misrepresentation

---

[5]     It is worth noting that Plaintiff's contention that the representations made by Zachys in the 2005 Catalogue were made with reckless disregard for indicators that such representations were false because, inter alia, they "were made without regard to, or investigation of, the existence or purpose of the Edgerton stickers," is misleading. Compl. ¶ 43. As Plaintiff admits, such stickers simply meant that William Edgerton, an alleged wine expert whom Plaintiff retained in 2007, had inspected the bottles. Id. ¶ 17. The stickers were placed on the bottles regardless of whether the wine was genuine, counterfeit or questionable. Id. (emphasis added).

14

claim and rejecting plaintiff's contention that he relied on defendant's expertise in appraising and evaluating the furniture because he was not a sophisticated purchaser with experience in the field as "disingenuous and unavailing" because the Christie's catalogue "encouraged [plaintiff] to examine lots thoroughly and to request condition reports" prior to bidding (alteration in original)).

Plaintiff is a sophisticated wine connoisseur, having his own "staff" to handle his wine cellar (Compl. ¶ 26), having access to at least one "noted wine expert" (id. ¶¶ 17, 24) and having the wherewithal to spend millions of dollars at a wine auction (id. at ¶ 42).  And he apparently opted not to inspect any of the wine in the 2004 and 2005 Auctions prior to bidding, notwithstanding Zachys' express invitation in two separate provisions of the Catalogues to do so. Ex. B at 215, 220; Ex. C at 233, 238.  Therefore, Plaintiff's decision not to inspect the wine is fatal to his negligent misrepresentation claim.

## IV.    PLAINTIFF'S FRAUD CLAIM IS NOTHING MORE THAN IMPROPER BOOT STRAPPING OF A BREACH OF CONTRACT CLAIM

Plaintiff's fraud claim is nothing more than a breach of contract claim that Plaintiff has (transparently) attempted to turn into a tort claim.  The essence of Plaintiff's claim is that for a handful of his purchases of wine at two Zachys' Auctions, he allegedly did not get the benefit of his bargain, i.e., he bought wine based on the descriptions contained in the Catalogues that he now contends is not the same wine that was advertised.  This is nothing more than a breach of contract action.

"New York law precludes fraud actions where the only fraud charged relates to a breach of contract."  Sichel v. Unum Provident Corp., 230 F. Supp. 2d 325, 328 (S.D.N.Y. 2002).  "A contract action cannot be converted into one for fraud, merely by alleging that the contracting party did not intend to meet its contractual obligations."  Id.  "New York law, however, does not

15

permit a cause of action for fraud when the only fraud charged relates to a breach of contract. [M]ere failure of promised performance has never permitted a factual finding that defendants never intended to perform." Blumenthal v. Sea Hotel Co., No. 99 Civ. 4881, 2000 WL 1349249, at *4 (S.D.N.Y. Sept. 19, 2000) (alteration in original) (internal quotation marks omitted).  Here, Plaintiff alleges that Zachys sold him counterfeit or "possibly counterfeit" wine in breach of the contracts of sale for the bottles of wine.

At best, "all that we have is a breach of contract dressed up in fraud clothing." See, e.g., id.  Of course, Plaintiff's breach of contract action (should he choose to bring one) is likewise foreclosed by the existence of the "as is" disclaimer provision in the Catalogues. See, e.g., T.T. Exclusive Cars, 1996 WL 737204 at *3 ("Under New York law, [w]here the contract specifically disclaims the existence of any such warranties or representations, an action for breach of contract cannot be maintained.") (alteration in original) (internal quotation marks omitted).  Thus, Plaintiff's attempt to transform his garden variety contract claim into a tort should not be permitted.  Plaintiff's fraud claim (including his claim for exemplary damages)[6] should be dismissed in its entirety.

**V.    PLAINTIFF'S COMPLAINT RELATES TO A PRIVATE CONTRACT DISPUTE THAT DOES NOT HAVE AN IMPACT ON CONSUMERS AT LARGE; PLAINTIFF'S CLAIMS FOR VIOLATIONS OF SECTIONS 349 AND 350 OF THE NEW YORK GENERAL BUSINESS LAW SHOULD THEREFORE BE DISMISSED IN THEIR ENTIRETY**

Plaintiff's Complaint consists of nothing more than a private contract dispute that does not have a broader impact on consumers at large and, therefore, fails to state valid claims under

---

[6]    Plaintiff's claim for exemplary, or punitive, damages should be dismissed as a matter of law. Compl. at 15.  "Under New York law, punitive damages are not available in the ordinary fraud and deceit case."  In re MarketXT Holdings Corp., No. 04-12078, 2006 WL 2864963, at *23 (Bankr. S.D.N.Y. Sept. 29, 2006).  Rather, in order to demand punitive damages, two elements must be alleged "(i) gross, wanton or willful fraud or other morally culpable conduct to a degree sufficient to justify an award of punitive damages; and (ii) fraud aimed at the public generally."  Id. (internal quotation marks omitted).  Plaintiff has failed to allege facts sufficient to justify the recovery of punitive damages.

DOCSNY-282261

the New York General Business Law ("NYGBL").  "General Business Law article 22-A, of which [New York] General Business Law §§ 349 and 350 are a part, is addressed to practices which have a broader impact on consumers at large."  Canario v. Gunn, 300 A.D.2d 332, 332, 751 N.Y.S.2d 310, 311 (2d Dep't 2002) (internal quotation marks omitted).  "Private contract disputes, unique to the parties … would not fall within the ambit of the statute."  Id. at 332, 751 N.Y.S.2d 310 (alteration in original) (internal quotation marks omitted).

To state a claim under NYGBL section 349 or 350, a plaintiff must show:  "(1) that the act, practice or advertisement was consumer-oriented; (2) that the act, practice or advertisement was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive practice, act or advertisement."  Leider v. Ralfe, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005).  "In addition, the gravamen of the complaint must be consumer injury or harm to the public interest."  U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158, 175 (S.D.N.Y. 2001)  "In other words, a violation of either section requires that the defendant's conduct deceive a reasonable consumer in a material respect, work a harm to the public at large, and directly cause the plaintiff's injury."  Leider, 387 F. Supp. 2d at 292.  "In addition, § 350 requires – unlike § 349 – that the plaintiff must demonstrate reliance on the allegedly false advertising."  Id. Plaintiff's allegations fail to state a claim under either section 349 or section 350 of the NYGBL.

### A.    The Transactions At Issue Are Private Contract Disputes And Do Not Rise To The Level Of  A Claim Under NYGBL

Plaintiff's allegations relate to certain specified transactions between Plaintiff and Zachys at the two Auctions.  See generally Compl. ¶¶ 45-51, 53-59.  Such private contract disputes do not fall within the realm of the NYGBL, and Plaintiff's claims under Sections 349 and 350 should be dismissed.

17

Under New York law, "private contract disputes, unique to the parties . . . [do] not fall within the ambit of [section 349]." Sichel, 230 F. Supp.2d at 330 (alterations in original) (internal quotation marks omitted) (stating that courts dismiss claims under section 349 that are a "garden variety breach of contract action" instead of a "national policy" applicable to consumers throughout the country). See also Champion Home Builders Co. v. ADT Sec. Servs., Inc., 179 F. Supp.2d 16, 27 (N.D.N.Y. 2002) (holding that the allegations that ADT did not provide the system and service it agreed to provide was not sufficient to state a cause of action under section 349).

Thus, conduct sufficient to constitute a violation of NYGBL section 349 "need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large; [p]rivate contract disputes unique to the parties...would not fall within the ambit of the statute." N.Y. Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 289 (1995) (alterations in original) (internal quotation marks omitted). Similar to a claim under section 349, "[p]rivate transactions not of a recurring nature or without ramifications for the public at large are not a proper subject of a claim under Section 350." Bologna v. Allstate Ins. Co., 138 F. Supp. 2d 310, 324 (E.D.N.Y. 2001) (internal quotation marks omitted). Thus, "[p]rivate contract disputes that are unique to the parties involved . . . do not fall within the ambit of sections 349 and 350." Nadel v. Play By Play Toys & Novelties, Inc., 34 F. Supp. 2d 180, 186 (S.D.N.Y. 1999), rev'd on other grounds, 208 F.3d 368 (2d Cir. 2000).

Plaintiff's allegations are limited to the authenticity of nineteen extraordinarily expensive bottles of rare wines that were purchased at two isolated Auctions, not to the conduct of wine auctions at large. Accordingly, Plaintiff's claims amount to a private contract dispute that do not fall within Sections 349 and 350 of the NYGBL.

18

**B.    The Transactions At Issue Do Not Have A
Broader Impact On "Consumers At Large"**

The only transactions involving the purchase of allegedly counterfeit or "possibly counterfeit" wine contained in Plaintiff's Complaint relate to wine that he purchased. Compl. ¶¶ 44-59. Such purportedly counterfeit wine was not even "typical" of the wine he purchased at the Auctions at issue, as the bottles he contends are counterfeit are only a small fraction – approximately $230,000 of the $3.7 million Plaintiff spent at the 2005 Auction, for example – of the total wine that he purchased at the Auctions. Id. ¶ 42. Plaintiff has failed to set forth any factual allegation illustrating that purportedly counterfeit sales, such as those alleged in the Complaint, have an impact on any other consumer – never mind "consumers at large" – or that they are common in the industry.

In a transparent attempt to show impact on other consumers, the Complaint contains the conclusory allegations that "[t]here may be many other victims" (Compl. ¶ 40) and "there likely are many other victims" (id. ¶ 34) of the purported wrongdoing described in the Complaint. Such conclusory allegations are insufficient as a matter of law to withstand a motion to dismiss. In Lava Trading Inc. v. Hartford Fire Insurance Co., 326 F. Supp. 2d 434, 439 (S.D.N.Y. 2004), for example, the Court, in dismissing the NYGBL claim on a 12(b)(6) motion held that:

> Here, Lava has failed to offer any but conclusory allegations with respect to defendant's allegedly deceptive 'consumer oriented' practices. . . . Instead, Lava's allegations suggest nothing more than a dispute between private parties. Such allegations are insufficient to state a claim under Section 349:
>
>> "When one properly disregards plaintiff's conclusory assertion that defendant's conduct was consumer-oriented…plaintiff claims, at most, that defendant breached his obligation to pay him insurance benefits die under the insurance benefits due under the insurance policy …Although such conflicts are the sort that could potentially arise between any insured and insurer, the specific allegations at issue here are 'unique to the parties' and do

19

> not have any broader impact on consumers at large.'…It is
> well settled that such allegations are insufficient to state a
> cause of action under GBL § 349."

Id. (second, third and fourth alterations in original) (citation omitted).

The same reasoning applies in this case: the transactions at issue – the purchase of a handful of extremely expensive bottles of rare wine at two Auctions in 2004 and 2005 – are unique to the parties to this case and do not have any impact on "consumers at large" sufficient to state a claim under the NYGBL. Plaintiff's vague, conclusory allegation that there "may be many other victims" or "there likely are many other victims" does not overcome this deficiency. Compl. ¶¶ 38, 40.

"Consumer," for purposes of NYGBL has been defined as one "who purchase[s] goods and services for personal, family or household use." ExxonMobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc., 328 F. Supp. 2d 443, 448 (S.D.N.Y. 2004) (alteration in original). Indeed, "[t]he goals of [§ 349] were major assaults upon fraud against consumers, particularly the disadvantaged." Id. (alterations in original) "[L]iability attaches primarily where a party's misrepresentations are boilerplate and have the potential to be repeated in order to deceive numerous similarly situated buyers." Id. at 449. Thus, the purview of section 349 is "an ordinary, recurring consumer transaction," not a "'single shot transaction' involving complex arrangements, knowledgeable and experienced parties and large sums of money." Genesco Entm't v. Koch, 593 F. Supp. 743, 752 (S.D.N.Y. 1984).

Thus, in order to invoke section 349, Plaintiff must allege that the alleged conduct – his purchase of purportedly counterfeit wine – "has a broader impact on consumers at large, i.e., it potentially affects similarly situated consumers in New York." In re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006) (internal quotation marks omitted). In

20

Evergreen Mutual, the Court found that section 349 was inapplicable to claims concerning securities because such claims were not the purchase of "traditional goods or services":

> [P]eople do not generally buy securities in the same way that they buy an automobile, a television set, or the myriad consumer goods found in supermarkets. For one thing, securities are purchased as investments, not as goods to be "consumed" or "used."

Id. See also Teller v. Bill Hayes, Ltd., 213 A.D.2d 141, 146, 630 N.Y.S.2d 769, 773 (2d Dep't 1995) ("That General Business Law § 349 was primarily intended to apply to more modest transactions is evidenced by the remedies it provides. Section 349(h) provides parties with the opportunity to receive the greater of actual damages or $50." (internal quotation marks omitted)).

The purportedly counterfeit wine transactions detailed in Plaintiff's Complaint – a handful of transactions between Plaintiff and Zachys – are transactions that, by definition, only impact Plaintiff. Plaintiff, an extremely wealthy individual who spends million of dollars at wine auctions is hardly a "typical" consumer; nor are the transactions at issue likely to impact "numerous similarly situated buyers." Your average consumer does not spend $355,000 on nineteen bottles on wine – averaging almost $20,000 per bottle. Moreover, much like securities, fine, rare wines are frequently bought by individuals such as Plaintiff as investments, not as a common good to be "consumed" or "used" like a television, a box of cereal or even a $10 bottle of white table wine. Thus, Plaintiff has failed to properly allege how his purchase of very costly bottles of rare wine from two specific Auctions from 2004 and 2005 could feasibly have an impact on "consumers at large." Plaintiff's claims under the NYGBL (including his request for treble damages, attorneys' fees[7] and injunctive relief[8]) should therefore be dismissed in their entirety.

---

[7]    Sections 349 and 350 of the NYGBL contain identical provisions regarding treble damages which state: "The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or

DOCSNY-282261

<u>**CONCLUSION**</u>

For the foregoing reasons, defendants Zachys Wine & Liquor Store, Inc. and Zachys Wine Auctions, Inc. respectfully request that this Court enter an order dismissing the Complaint against them in its entirety with prejudice and granting such other and further relief as it may deem proper.

Dated: New York, New York            Respectfully submitted,
       December 19, 2007

                                      DICKSTEIN SHAPIRO LLP


                                      By:___s/Deborah A. Skakel_____
                                          Deborah A. Skakel (DS8599)
                                          Lindsay A. Bush (LB0391)
                                    1177 Avenue of the Americas
                                    New York, New York 10036
                                    (212) 277-6500
                                    Attorneys for Defendants Zachys Wine & Liquor Store, Inc. and Zachys Wine Auctions, Inc.

---

knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff."  N.Y. Gen. Bus. Law §§ 349(h), 350-e (McKinney 2004) (emphasis added).  Thus, setting aside that Zachys did not violate at all, let alone "willfully or knowingly" violate, the NYGBL and thus no trebling or attorneys' fees are warranted, since Plaintiff's alleged actual damages well exceed $1,000, there can be no increase for punitive damages.  <u>See, e.g.</u>, <u>ExxonMobil Inter-Am., Inc.</u>, 328 F. Supp. 2d at 448 ("Indeed it has been observed [that the NYGBL] should not be permitted to become an adjunct to ordinary commercial litigation, arbitrarily raising the stakes through their one-way attorney's fees provisions."); <u>Hart v. Moore</u>, 155 Misc. 2d 203, 207, 587 N.Y.S.2d 477, 480 (Sup. Ct. Westchester County 1992).

[8]    Injunctive relief in the context of the NYGBL is analyzed under the traditional test for injunctive relief; thus, since the purported violation sought to be enjoined were one time sales that occurred in 2004 and 2005, no injunctive relief is warranted.  <u>See, e.g.</u>, <u>Lefkowitz v. Alexanders Dep't Store, Inc.</u>, 42 A.D.2d 532, 532, 344 N.Y.S.2d 719, 719 (1st Dep't 1973) ("The purported violation herein sought to be enjoined is apparently a single offense unlikely to be repeated by the respondent.  Furthermore, since the act involved occurred in December, 1971, and the instant proceeding for an injunction was not commenced until seven months after the offending conduct, in the absence of any indication of threatened or probable repetition, no useful purpose will be served by granting injunctive relief [under section 349 of the NYGBL].").

DOCSNY-282261