# EXHIBIT A

Layn R. Phillips (to be admitted *pro hac vice*)
Bruce A. Wessel (to be admitted *pro hac vice*)
Melissa R. McCormick (to be admitted *pro hac vice*)
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
(949) 760-0991

-and-

Shawn Patrick Regan
Thomas G. Slater (to be admitted *pro hac vice*)
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0136
(212) 309-1000

*Attorneys for Plaintiff*
WILLIAM I. KOCH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

WILLIAM I. KOCH, an individual,

        Plaintiff,

vs.

ERIC GREENBERG, an individual; ZACHYS WINE & LIQUOR STORE, INC., a New York corporation; and ZACHYS WINE AUCTIONS, INC., a New York corporation.

        Defendants.

------------------------------------------------X



07 CIV 9600

07 Civ. _____

COMPLAINT FOR FRAUD, NEGLIGENT MISREPRESENTATION, AND VIOLATIONS OF SECTIONS 349 AND 350 OF NEW YORK GENERAL BUSINESS LAW

# COMPLAINT

Plaintiff William I. Koch ("Koch"), by counsel, as and for his Complaint against defendants Eric Greenberg ("Greenberg") and Zachys Wine Auctions, Inc. and Zachys Wine & Liquor Store, Inc. (together "Zachys") (Greenberg and Zachys referred to collectively as "Defendants"), alleges upon personal knowledge as to himself and upon information and belief as to Defendants:

## PRELIMINARY STATEMENT

1. Koch has purchased wine at various Zachys auctions. In 2007, during an inspection of his wine cellar, Koch discovered that some of the wine that he purchased from Zachys was counterfeit. Koch's investigation revealed that some of this counterfeit wine had been consigned to Zachys by Greenberg, and that Greenberg had knowingly injected counterfeit wine into the marketplace.

2. The allegations in this complaint pertaining to Greenberg are based on non-confidential sources, including non-confidential depositions from other legal proceedings.

3. In or around 2002, Greenberg had one of the largest wine cellars in the United States. Greenberg decided that he wanted to sell part of his cellar and he contacted internationally known auction house Sotheby's to handle the auction. Because Greenberg's cellar contained tens of thousands of bottles, Sotheby's sent Serena Sutcliffe, the head of Sotheby's international wine department, to examine the wine. Sutcliffe is one of the world's leading authorities on wine.

4. Upon examination of the Greenberg cellar, Sutcliffe told Greenberg that a significant number of the bottles in his cellar were counterfeit and that Sotheby's was not interested in auctioning counterfeit or questionable wine. Sutcliffe's conclusion that Greenberg's cellar contained counterfeit wine was thereafter corroborated by another wine expert, William Edgerton.

5.  Despite knowing that he owned counterfeit wine, in 2005 (and perhaps at other times as well) Greenberg auctioned part of his wine collection through Zachys, including counterfeits. Greenberg knew that he was selling counterfeit bottles of wine. Zachys knew, or was reckless or negligent in not knowing, that some of the wine it was auctioning for Greenberg was counterfeit or of questionable authenticity. Zachys also auctioned counterfeit wine from sources other than Greenberg. Greenberg claims that Zachys certified to him that the wine Zachys was offering for sale on his behalf was genuine and that he relied on Zachys' certification. Zachys denies this.

6.  This lawsuit is being pursued to demonstrate the culpability of, and recover damages from, Greenberg and Zachys, both of whom deny responsibility.

## PARTIES

7.  Plaintiff William I. Koch is a resident of the State of Florida.

8.  Defendant Eric Greenberg is a resident of the State of California.

9.  Defendants Zachys Wine & Liquor Store, Inc. and Zachys Wine Auctions, Inc. are corporations organized under the laws of the State of New York with their principal places of business in Scarsdale, New York.

## JURISDICTION AND VENUE

10.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332 as the matter is between citizens of different states and the amount in controversy exceeds $75,000.

11.  Venue is proper in this district under 28 U.S.C. § 1391. The acts giving rise to the claims in this action occurred in this district and Zachys conducts wine auctions in New York, New York, including the 2005 auction described in this complaint. Greenberg consigned wines to Zachys to be auctioned in this district.

12.  In addition, Greenberg acquired certain of the wines identified in this complaint from Royal Wine Merchants, Ltd. ("Royal"), which is located in New York, New York.

# FACTUAL ALLEGATIONS

## I. Greenberg's Wine Cellar and His Decision to Sell

13. In the late 1990s, Greenberg was a successful and wealthy entrepreneur. He founded two internet companies taken public on the NASDAQ – Scient and Viant – serving as the Chairman and Chief Executive Officer of both. Greenberg amassed one of the largest wine collections in the United States consisting of tens of thousands of bottles of wine, which he kept in a wine cellar next to his home in Ross, California.

14. Royal assisted Greenberg in building his massive wine collection, including taking him on buying trips to Europe.

15. The NASDAQ peaked in early 2000 and then dropped steadily over the next several years. Greenberg's fortune shrank. In 2002, one of his companies, Scient, filed for bankruptcy. That same year his other company, Viant, which at one time had a market capitalization of over $2 billion, was sold for less than $100 million. Greenberg decided to sell part of his wine collection, which he believed to be worth millions of dollars.

## II. Sotheby's Rejects Greenberg's Collection and Greenberg Pursues Royal and Settles

16. Greenberg approached Sotheby's to handle the sale. Sotheby's sent Serena Sutcliffe, the head of its wine department, to Greenberg's California cellar to inspect the collection. After reviewing the collection, she concluded that many of the bottles of wine in Greenberg's collection were counterfeit. Sotheby's refused to auction Greenberg's counterfeit wine.

17. Stung by the news that he had purchased counterfeit wine, Greenberg retained counsel to pursue claims against Royal, the company that sold him the wine. Greenberg also retained William Edgerton, a noted wine expert. Edgerton inspected certain bottles in Greenberg's cellar in Ross, California. He confirmed Sutcliffe's conclusion that Greenberg's cellar contained counterfeit wine. Edgerton placed a numbered sticker on each bottle that he

inspected (the "Edgerton Stickers"). He then recorded on a spreadsheet, using the number on the sticker for identification, whether the wine was genuine, counterfeit, or questionable.

18. After Edgerton inspected Greenberg's cellar, Greenberg resolved matters with Royal and Greenberg told others that he had done so.

19. Greenberg and Royal are now taking the position, in tandem and through their respective counsel, that they can "neither confirm nor deny" the existence of a settlement agreement between them.

20. Until recently, Greenberg was not shy about discussing the settlement. For example, Greenberg discussed the Royal settlement with his cellar master Thierry Lovato and Lovato then told Edward Gelsman, who owns a wine store in Northern California, that Greenberg had returned bottles to Royal and been refunded his money.

21. Greenberg also discussed Royal with Lawrence Stone, a master sommelier. Greenberg told Stone that Sotheby's had determined that certain wines in Greenberg's cellar, which Greenberg had obtained from Royal, were counterfeit. Greenberg also told Stone that he had hired nuclear scientists and chemists to analyze the bottles and labels, and that they determined that the bottles had been tampered with.

22. It does not appear that Greenberg claimed confidentiality until Koch began asking questions about how Greenberg's counterfeit wine ended up in Koch's cellar. Only then, as Greenberg's wrongdoing was coming to light, did Greenberg begin hiding behind a claim of confidentiality.

23. Greenberg recently instructed Lovato not to discuss Greenberg's wines in response to a subpoena Lovato received earlier this year in a different counterfeit wine lawsuit. All this suggests an ongoing cover-up by Greenberg of whatever arrangements he made with Royal and Zachys to sell his counterfeit wine to unsuspecting victims.

III. **Greenberg's Counterfeit Wine Bottles End Up in Koch's Cellar**

24. In 2007, Koch hired Edgerton to review the wine in Koch's wine cellar to determine whether any of the bottles were counterfeit. During that inquiry, Edgerton was

stunned to find in Koch's cellar at least two of the bottles that Edgerton had inspected in Greenberg's cellar in 2002. Edgerton knew that these bottles were from Greenberg's cellar because they still bore the Edgerton Stickers -- the stickers that Edgerton had placed on the bottles in 2002. Somehow bottles that were in Greenberg's cellar in 2002 had made their way into Koch's cellar.

25. The two bottles with the Edgerton Stickers, numbered 41 and 42, were both Chateau Latour 1928, which, if authentic, would have a market value of more than $2,000 a bottle. One of these bottles (number 41) was counterfeit and one (number 42) was genuine. Edgerton told Greenberg these facts in 2002.

26. Edgerton also discovered other counterfeit wine bottles in Koch's cellar. Koch's staff traced some of these bottles, including the two with the Edgerton Stickers, back to Zachys. Specifically, Koch purchased some of the counterfeit wine in his cellar at a Zachys auction held on October 28, 2005 in New York. Further investigation revealed that Greenberg had consigned wine for sale at that October 28, 2005 Zachys auction.

## IV. Greenberg and Zachys Attempt To Explain How Greenberg's Counterfeit Bottles Ended Up In Koch's Cellar

27. Koch has given both Zachys and Greenberg an opportunity to explain how Zachys ended up selling Greenberg's counterfeit bottles of wine at auction.

28. Zachys contends, through its counsel, that a majority of the counterfeit or questionable bottles came from Greenberg but that Greenberg did not tell Zachys that Greenberg's cellar had been inspected by Sutcliffe and Edgerton or that those individuals had concluded that there were counterfeit bottles of wine in Greenberg's cellar. Zachys also contends that it owes a duty of confidentiality to Greenberg not to provide additional information to Koch about the Greenberg consignment, which effectively makes Zachys part of the Greenberg cover-up.

29. Greenberg contends, through his counsel, that "all wine from Mr. Greenberg's collection that was injected into the marketplace through consignment to Zachys for auction was

authenticated by Zachys on at least two occasions prior to sale. Mr. Greenberg only consigned wine which he believed to be authentic and which was reviewed by Zachys, and which Zachys determined to be authentic."

30. In short, Greenberg is pointing the finger at Zachys and Zachys is pointing the finger at Greenberg.

31. Greenberg contends that when he auctioned off parts of his cellar through Zachys, Zachys authenticated the wines and, therefore, Greenberg cannot be held responsible.

32. Zachys contends that it was auctioning off Greenberg's wines as a mere consignee and it should not be held responsible for Greenberg's malfeasance in not disclosing to Zachys and the other bidders at the Zachys auction that Sutcliffe and Edgerton had concluded that Greenberg's cellar contained counterfeit wine.

33. Koch contends that both Greenberg and Zachys are responsible. Having learned in 2002 that his cellar contained counterfeit wine, Greenberg apparently settled with Royal and then dumped some of his counterfeit bottles on Zachys for auction. That was wrong. Zachys either knew the Greenberg wine was counterfeit or was reckless in not knowing. That, too, was wrong.

34. Koch was victimized by Greenberg's and Zachys' misconduct and there likely are many other victims as well.

V. **Greenberg's 2006 Contact with Koch**

35. In July of 2006, before Koch knew anything about Greenberg's wrongdoing, Koch was investigating certain counterfeit wine that originated with German wine aficionado and con man Hardy Rodenstock ("Rodenstock"). Koch has sued Rodenstock in a separate action currently pending in this district.

36. One counterfeit wine in Koch's cellar is a Petrus 1921, which Koch bought from Zachys. Zachys had identified Greenberg as the source of the Petrus 1921 that Zachys sold to Koch. In July of 2006, knowing nothing about Sutcliffe's and Edgerton's inspections of Greenberg's cellar or that Koch's cellar contained other counterfeits that had been in Greenberg's

- 7 -

cellar, Koch contacted Greenberg to learn where Greenberg had obtained the counterfeit Petrus 1921 and whether it had any connection to Rodenstock.

37. In that conversation, Greenberg told Koch that he believed that he had obtained the Petrus 1921 from Royal. Greenberg also told Koch that representatives from Royal were friendly with Hardy Rodenstock and that Rodenstock may have been the source of the Petrus 1921.

38. Greenberg then told Koch about Greenberg's decision to settle with Royal rather than proceed with litigation. Greenberg claimed that his investigator, former CIA agent Jack Devine, told him certain information about Royal's connections to Russian organized crime that made Greenberg reluctant to pursue a lawsuit against Royal. Koch has no way of knowing what portions, if any, of Greenberg's story about Royal are true.

## VI. Koch's Purchase of Counterfeit Wine from Zachys

39. After Greenberg settled with Royal, Greenberg injected at least some of his counterfeit wine into the marketplace for sale.

40. Koch now knows that he bought counterfeit wine that originated from Greenberg at the Zachys 2005 auction. Koch does not know whether other participants in that Zachys auction also bought counterfeit wine that originated from Greenberg. That may have occurred. Koch is one victim of this wrongdoing. There may be many other victims.

41. Prior to the 2005 Zachys auction, Koch received a catalogue prepared by Zachys identifying the wine that would be offered at the auction. This catalogue, by its nature, constituted representations that the wine being auctioned was genuine and described accurately. There was no reason to believe that that the statements in the catalogue concerning the identity and the vintage of the wine were inaccurate. The Zachys' catalogue was designed to be read by serious collectors of wine like Koch, it was widely disseminated, and it was, in fact, read by Koch. Koch studied the catalogue and relied on it in making decisions as to which wines he wanted to bid on at the auction.

42. At the Zachys 2005 auction, Koch purchased $3.7 million worth of wine, including many counterfeits. At least some of the counterfeits came from Greenberg's cellar and were consigned by Greenberg to Zachys.

43. The representations by Zachys in the 2005 Catalogue were made either with knowledge of their falsity or with reckless disregard for the indicators that such representations were false, and were made without adequate investigation or authentication. For example, the representations made by Zachys in the 2005 Catalogue were made without regard to, or investigation of, the existence or purpose of the Edgerton stickers on some of the Greenberg wines, and without apparent regard for the widespread allegations of counterfeiting then extant in the wine community that had prompted other auction houses, such as Sothebys, to more closely scrutinize wines it offered for auction.

44. At the Zachys October 28, 2005 auction, Koch purchased two bottles of Chateau Latour 1928. They were both part of Lot 409 at that auction and he paid $2,873 for each bottle. These two bottles came from Greenberg's cellar and had been labeled 41 and 42 by Edgerton in Greenberg's cellar. The Edgerton Stickers were affixed to these bottles with Edgerton's handwritten initials on them. One bottle, labeled 41, is counterfeit. The other bottle, labeled 42, is genuine. The Zachys catalogue describes these two bottles as Chateau Latour 1928 and explains: "A famously tannic wine, yet it's now mellowed wonderfully."

45. At Zachys' October 28, 2005 auction, Koch purchased a magnum of Chateau Lafleur 1921 for $18,564. The Zachys catalogue represented that this bottle was a Chateau Lafleur 1921. It is counterfeit. This bottle came from the Greenberg cellar. This bottle was Lot 479 in the October 28, 2005 auction.

46. At Zachys' October 28, 2005 auction, Koch purchased a magnum of Chateau Petrus 1928 for $17,238. It is counterfeit. This bottle came from the Greenberg cellar. This bottle was Lot 446 in the Zachys catalogue.

47. At Zachys' October 28, 2005 auction, Koch purchased a bottle of Chateau Lafite 1811 for $29,172. This bottle was Lot 380 in the Zachys catalogue. It is counterfeit. It came from the Greenberg cellar.

48. At Zachys' October 28, 2005 auction, Koch purchased a bottle of Chateau Lafite Rothschild 1870 for $18,564. It was Lot 386 in the Zachys catalogue and was described as "one of the all time greats . . . ." This bottle came from Greenberg's cellar. It is counterfeit.

49. At Zachys' October 28, 2005 auction, Koch purchased a magnum of Chateau Lafite Rothschild 1870 for $33,150. This was Lot 389 in the Zachys catalogue. The magnum is counterfeit. It is from Greenberg's cellar.

50. At Zachys' October 28, 2005 auction, Koch purchased a magnum of Chateau Petrus 1921 for $29,500. This was Lot 443 in the Zachys catalogue. The magnum is counterfeit. It is from Greenberg's cellar.

51. Koch made additional purchases of possibly counterfeit wine at the October 28, 2005 Zachys auction including: three magnums of Chateau Lafleur 1945, which were Lots 481, 482, and 483, for a total of approximately $57,000; and a bottle of Chateau Lafite Rothschild 1805, which was Lot 379, for $22,542.33.

52. Koch also was misled into buying counterfeit wine at a prior Zachys auction held in California.

53. At the October 8, 2004 Zachys auction, Koch purchased a bottle of Chateau Lafite Rothschild 1784 for $29,375. This bottle was advertised as an "extremely rare bottle." Zachys stated: "The 1984 vintage was reported to be the greatest of the last two decades of the eighteenth century." This bottle, with a suggested price of $30,000 - $60,000, was Lot 1182 at the auction. This Chateau Lafite Rothschild 1784 is counterfeit.

54. At the October 8, 2004 Zachys auction, Koch purchased a bottle of Chateau Lafite Rothschild 1799 for $29,276. The Zachys catalogue listed the 1799 vintage as "the oldest in the library of Chateau Lafite." The bottle, Lot 1183 at the auction, is counterfeit.

55. At the October 8, 2004 Zachys auction, Koch purchased a bottle of Chateau Lafite Rothschild 1800 for $31,937. This bottle was described as "an extremely rare example." The bottle, Lot 1184 in the auction, is counterfeit.

56. At the October 8, 2004 Zachys auction, Koch purchased a bottle of Chateau Mouton Rothschild 1899 for $4,295. This was Lot 1201 in the catalogue. The bottle is counterfeit.

57. At the October 8, 2004 Zachys auction, Koch purchased a bottle of Chateau Lafite Rothschild 1899 for $9,581. This was Lot 1205 in the catalogue. The bottle is counterfeit.

58. At the October 8, 2004 Zachys auction, Koch purchased a bottle of Chateau Lafite Rothschild 1900 for $11,977. This was Lot 1209 in the catalogue. The bottle is counterfeit.

59. At the October 8, 2004 Zachys auction, Koch purchased two bottles of Chateau Mouton Rothschild 1900 for $5,057 each. These were Lots 1216 and 1217 in the catalogue. The bottles are counterfeit.

## FIRST CLAIM

### (COMMON LAW FRAUD)

### (AGAINST ALL DEFENDANTS)

60. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 59 of this Complaint as if set forth in full herein.

61. Defendants made material misrepresentations to and concealed or suppressed material facts from Plaintiff, third parties, and purchasers and collectors of rare wines, a group that includes Plaintiff. Such misrepresentations and suppressed material facts include those listed in paragraphs 1 through 59. Specifically, such misrepresentations included Greenberg's representations to Zachys that the wines he was offering for sale to the public, including those ultimately purchased by Plaintiff, were genuine when they were not, and Zachys' representations to the public, including Plaintiff, that the wines it was offering for sale, including those supplied by Greenberg on consignment, were genuine when they were not.

62. The omissions or representations by Defendants were material and were false and misleading, and Defendants knew they were material and were false and misleading at the time they were made, or, at a minimum, acted with reckless disregard for the truth or falsity of the representations made about the authenticity of the wines offered at auction, including those sold to Plaintiff.

63. Defendants misrepresented, concealed, or suppressed these facts with the intent to influence the actions of Plaintiff and purchasers and collectors of rare wines, a group that includes Plaintiff, including intending to influence purchases of wine sold by Defendants.

64. Plaintiff reasonably and justifiably relied on Defendants' misrepresentations in purchasing the counterfeit wine.

65. At the time Plaintiff acted, Plaintiff was unaware of the concealed or suppressed facts and would have acted differently if Plaintiff had known the true facts.

66. Each of the counterfeit wines purchased by Koch is essentially worthless. As a result of Plaintiff's reliance upon Defendants' misrepresentations, Plaintiff has suffered damages in an amount to be proved at trial.

## SECOND CLAIM
### (NEGLIGENT MISREPRESENTATION)
### (AGAINST ZACHYS)

67. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 59 of this Complaint as if set forth in full herein.

68. Zachys represented the wine purchased by Plaintiff at the October 28, 2005 auction to be part of "a very deep incredible collection of pre-1962 vintages from all major producers." Zachys further represented: "Wines from the 18th and 19th centuries in such good condition rarely appear in auction any more." A special relationship of trust and confidence existed between Zachys and purchasers and collectors of rare wines due to Zachys' specialized ability to ascertain, and investigate, the history and authenticity of the wine and overall

knowledge of wine. This special relationship imposed upon Zachys a duty to provide truthful, complete, and non-misleading information about the wine offered at auction, including disclosures as to doubts as to authenticity.

69. If Zachys' misrepresentations were not intentionally or recklessly made, then Zachys was negligent in making false, incomplete, and misleading statements about bottles and magnums of wine that, in fact, were not what they were represented them to be. Plaintiff relied on those misrepresentations.

70. The factual representations by Zachys were material and were false and misleading. Zachys failed to exercise reasonable care or competence in making these representations and in ascertaining or failing to ascertain the truth or falsity of its representations.

71. Zachys made these false, misleading, and incomplete representations of fact with the intent to influence the actions of Plaintiff and other purchasers and collectors of rare wines.

72. Zachys stood to gain financially if Plaintiff and others bought the counterfeit wines described in this Complaint, and did indeed benefit from Plaintiff's purchase of these wines.

73. Zachys knew that Plaintiff and other purchasers and collectors of rare wines would rely on Zachys' false representations in purchasing the counterfeit wine.

74. Plaintiff reasonably and justifiably relied on Zachys' misrepresentations in purchasing the counterfeit bottles of wine described in the Complaint and Zachys knew that Plaintiff and other bidders would rely on such representations.

75. At the time Plaintiff acted, Plaintiff was unaware of the true facts and would have acted differently if he had known the true facts.

76. Each of the counterfeit wines identified herein is essentially worthless. As a result of Plaintiff's reliance upon Zachys' misrepresentations, Plaintiff has suffered damages in an amount to be proved at trial.

## THIRD CLAIM

### (VIOLATION OF SECTION 349 OF THE NEW YORK GENERAL BUSINESS LAW)

### (AGAINST ALL DEFENDANTS)

77. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 58 of this Complaint as if set forth in full herein.

78. New York General Business Law ("GBL") § 349 prohibits any business or person from engaging in deceptive business practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York state.

79. As alleged herein, Defendants have engaged in material deceptive or misleading consumer-related business practices that affected consumers, including purchasers and collectors of rare wines, a group that includes Plaintiff, in violation of GBL § 349. Defendants' deceptive or misleading business practices alleged herein are likely to mislead, and have misled, reasonable purchasers and collectors of rare wines.

80. The source of many of the bottles auctioned by Zachys was Greenberg, although this was not disclosed by Zachys. Greenberg consigned counterfeit wines to Zachys knowing that such wines were not genuine and would be offered for sale by Zachys in New York. Zachys offered Greenberg's counterfeit wines for sale in New York either with the knowledge that they were not genuine or with reckless disregard as to their authenticity. Accordingly, both Greenberg and Zachys violated GBL § 349.

81. Defendants' violation of GBL § 349 has caused Plaintiff to suffer injury including, *inter alia*, paying for counterfeit wine at Zachys auctions, including wine consigned by Greenberg. As a result of Defendants' violation of GBL § 349, Plaintiff has suffered damages in an amount to be proved at trial.

82. Defendants willfully and knowingly engaged in the conduct alleged herein.

83. Plaintiff is entitled to damages, including treble damages, injunctive relief, and attorneys' fees pursuant to New York GBL § 349(h).

- 14 -

## FOURTH CLAIM

### (VIOLATION OF SECTION 350 OF THE NEW YORK GENERAL BUSINESS LAW)

### (AGAINST ALL DEFENDANTS)

84. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 58 of this Complaint as if set forth in full herein.

85. GBL § 350 prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in New York state.

86. As alleged herein, Defendants have engaged in material deceptive, misleading or false advertising that was directed at and which affected consumers, including purchasers and collectors of rare wines, a group that includes Plaintiff, in violation of GBL § 350 and § 350-a. Defendants' deceptive, misleading or false advertising alleged herein are likely to mislead, and have misled, reasonable purchasers and collectors of rare wines.

87. Plaintiff reasonably and justifiably relied on Defendants' deceptive, misleading or false advertising in purchasing the counterfeit wine.

88. Defendants' violation of GBL § 350 has caused Plaintiff to suffer injury including paying for counterfeit wine. As a result of Defendants' violation of GBL § 350, Plaintiff has suffered damages in an amount to be proved at trial.

89. Defendants willfully and knowingly engaged in the conduct described above.

90. Plaintiff is entitled to damages, including treble damages, injunctive relief, and attorneys' fees pursuant to New York GBL § 350-e.

**WHEREFORE**, Plaintiff prays for judgment in his favor as follows:

    a. Injunctive relief to prohibit further wrongdoing by Defendants;

    b. Damages for all injuries suffered as a result of Defendants' unlawful conduct;

    c. Exemplary damages in an amount to be determined at trial;

        d.       Treble damages as appropriate under New York GBL §§ 349(h) and 350-e;

        e.       Attorney's fees as appropriate under New York GBL §§ 349(h) and 350-e;

        f.       Pre-judgment interest; and

        g.       Such other and further legal and equitable relief (including rescission as appropriate) as may be just and proper.

Dated: New York, New York

October 26, 2007

Respectfully submitted,

By: _____
Shawn Patrick Regan
Thomas G. Slater (to be admitted *pro hac vice*)
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0136
(212) 309-1000
sregan@hunton.com

-and-

Layn R. Phillips (to be admitted *pro hac vice*)
Bruce A. Wessel (to be admitted *pro hac vice*)
Melissa R. McCormick (to be admitted *pro hac vice*)
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
(949) 760-0991

*Attorneys for Plaintiff*
WILLIAM I. KOCH