Layn R. Phillips (*pro hac vice*)
Bruce A. Wessel (*pro hac vice*)
Melissa McCormick (*pro hac vice*)
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
(949) 760-0991

-and-

Shawn Patrick Regan
Thomas G. Slater (to be admitted *pro hac vice*)
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0136
 (212) 309-1000

*Attorneys for Plaintiff*
*WILLIAM I. KOCH*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
WILLIAM I. KOCH, an individual,          :
                                         :
            Plaintiff,                    :
                                         :
                vs.                       :   07 Civ.  9600 (BSJ) (DCF)
                                         :   ECF Case
ERIC GREENBERG, an individual; ZACHYS    :
WINE & LIQUOR STORE, INC., a New York    :   Hon. Barbara S. Jones
corporation; and ZACHYS WINE AUCTIONS,   :
INC., a New York corporation.            :
                                         :
            Defendants.                   :
                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT ZACHYS' MOTION TO DISMISS**

<u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................ 1

THE ALLEGATIONS OF THE COMPLAINT ................................................. 2

LEGAL STANDARD ........................................................................................ 5

ARGUMENT ..................................................................................................... 6

I.    ZACHYS' ARGUMENT THAT THE "AS IS" CONDITION OF
      SALE DISCLAIMER VITIATES THE FRAUD AND
      NEGLIGENT MISREPRESENTATION CLAIMS FAILS. ......................... 6

      A.    The Disclaimer in Zachys' Catalogue Is Insufficient To
            Preclude Koch's Reasonable Reliance On Zachys'
            Representations................................................................................ 7

      B.    The Disclaimer in Zachys' Auction Catalogue Also Does Not
            Preclude Koch's Claims, As Facts Disclaimed Were
            Particularly Within Zachys' Knowledge And Not Reasonably
            Available To Koch. .......................................................................... 8

      C.    Dismissal Of This Claim Upon A Motion To Dismiss Is
            Inappropriate, Since, Taking All Factual Allegations As
            True, Koch's Claims Are Viable As A Matter of Law. .................... 14

      D.    Despite Zachys' Attempts To Re-characterize Koch's
            Allegations, Koch Has Alleged A Cause of Action For
            Fraud, Not Breach Of Contract. ...................................................... 15

II.   THE COMPLAINT STATES A CAUSE OF ACTION AGAINST
      ZACHYS FOR NEGLIGENT MISREPRESENTATION........................... 19

      A.    The Relationship Between Zachys and Purchasers Like Koch
            Is A "Special Relationship." ............................................................ 20

      B.    Zachys Possessed Material Information Not Available To
            Koch. ............................................................................................... 23

III.  KOCH IS ENTITLED TO RELIEF UNDER NEW YORK
      GENERAL BUSINESS CODE SECTIONS 349 AND 350, AS HIS
      COMPLAINT CONCERNS FRAUD THAT AFFECTS
      CONSUMERS AT LARGE. ..................................................................... 24

CONCLUSION ................................................................................................. 28

<u>TABLE OF AUTHORITIES</u>

Page(s)

**<u>Cases</u>**

*AT&T Info. Sys., Inc. v. LcLean Bus. Servs., Inc.*,
    175 A.D.2d 652, 572 N.Y.S.2d 582 (4th Dep't 1991) ................................................19

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ...........................................................................................6

*Brass v. American Film Technologies, Inc.*,
    987 F.2d 142 (2d Cir. 1993) ...................................................................................16

*Bridger v. Goldsmith*,
    143 N.Y. 424, 38 N.E. 458 (1894) ..........................................................................18

*Channel Master Corp. v. Aluminium Ltd. Sales, Inc.*,
    4 N.Y.2d 403, 151 N.E.2d 833 (1958) .....................................................................17

*Christie's, Inc. v. Dominica Holding Corp.*,
    No. 05 Civ. 8728 (NRB), 2006 WL 2012607 (S.D.N.Y. Jul. 18, 2006) ..........9, 11, 14

*Danann Realty Corp. v. Harris*,
    5 N.Y.2d 317, 157 N.E.2d 597 (1959) .....................................................................11

*Dangler v. New York City Off Track Betting Corp.*,
    193 F.3d 130 (2d Cir. 1999) .....................................................................................5

*Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*,
    68 N.Y.2d 954, 502 N.E.2d 1003 (1986) ..................................................................17

*DIMON, Inc. v. Folium, Inc.*,
    48 F. Supp. 2d 359 (S.D.N.Y. 1999) .........................................................................9

*Donovan v. Aeolian Co.*,
    270 N.Y. 267, 200 N.E. 815 (1936) .........................................................................16

*Foxley v. Sotheby's, Inc.*,
    893 F. Supp. 1224 (S.D.N.Y. 1995) ....................................................................12, 22

*Friedman v. O'Connell*,
    18 Misc. 2d 975, 190 N.Y.S.2d 439 (N.Y. Sup.Ct. 1959)...........................................19

*Gant v. Wallingford Bd. of Educ.*,
    69 F.3d 669 (2d Cir. 1995) .......................................................................................5

Page(s)

*Genesco Entertainment v. Koch*,
    593 F. Supp. 743 (S.D.N.Y. 1984) ..........................................................26

*Grammer v. Turits*,
    271 A.D.2d 644, 706 N.Y.S.2d 453 (2d Dep't 2000) .........................................19, 21

*Grumman Allied Industries v. Rohr Industries, Inc.*,
    748 F.2d 729 (2d Cir. 1984) ...............................................................11, 12

*In re Evergreen Mut. Funds Fee Litig.*,
    423 F. Supp. 2d 249 (S.D.N.Y. 2006) .........................................................24, 25, 26

*International Prods. Co. v. Erie R. R. Co.*,
    244 N.Y. 331, 155 N.E. 662 (1927) ..........................................................20

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir. 2007) ...................................................................6

*Kelly v. Brooks,*
    No. 92 Civ. 729, 1993 WL 88259 (S.D.N.Y. Mar. 19, 1993) ...................................12

*Kimmell v. Schaefer*,
    89 N.Y.2d 257, 675 N.E.2d 450 (1996) .......................................................20

*King v. Simpson*,
    189 F.3d 284 (2d Cir. 1999) ....................................................................5

*Krantz v. Chateau Stores of Can., Ltd.*,
    256 A.D.2d 186, 683 N.Y.S.2d 24 (1st Dep't 1998)............................................15

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
    108 F.3d 1531 (2d Cir. 1997) ...............................................................9, 11

*Mathis v. Yondata Corp.*,
    125 Misc. 2d 383, 480 N.Y.S.2d 173 (Sup. Ct. 1984) .........................................19

*Mendelovitz v. Cohen*,
    37 A.D.3d 670, 830 N.Y.S.2d 577 (2d Dep't 2007) ...........................................15

*Metropolitan Transp. Auth. v. Triumph Adver. Prods., Inc.*,
    116 A.D.2d 526, 497 N.Y.S.2d 673 (1st Dep't. 1986)..........................................15

*Muhlfield v. Bak*,
    174 Misc.2d 396, 664 N.Y.S.2d 427 (N.Y.Sup.Ct. 1997)........................................19

Page(s)

*New York v. Feldman,*
    210 F. Supp. 2d 294 (S.D.N.Y. 2002) .......................................................................26

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
    85 N.Y.2d 20, 647 N.E.2d 741 (1995) ...........................................................25, 26, 27

*R.H. Damon & Co., Inc. v. Softkey Software Prods., Inc.,*
    811 F. Supp. 986 (S.D.N.Y. 1993) ...........................................................................15

*Ravenna v. Christie's, Inc.,*
    289 A.D.2d 15, 734 N.Y.S.2d 21 (1st Dep't 2001).....................................................22

*Real Property Acquisitions, Inc. v. Christie's,Inc.,*
    No. 601943/04, 2005 N.Y. Misc. LEXIS 3285 (Sup. Ct. Mar. 29, 2005)..........7, 8, 12

*Rosen v. Spanierman,*
    711 F. Supp. 749 (S.D.N.Y. 1989) ...........................................................................21

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,*
    84 F.3d 629 (2d Cir. 1996) ......................................................................................25

*SD Protection, Inc. v. Del Rio,*
    498 F. Supp. 2d 576 (E.D.N.Y. 2007).................................................................6, 14

*Securitron Magnalock Corp. v. Schnabolk,*
    65 F.3d 256 (2d Cir. 1995) ......................................................................................27

*Sichel v. Unum Provident Corp.,*
    230 F. Supp. 2d 325 (S.D.N.Y. 2002) ...............................................................15, 16

*Steinhardt Group, Inc. v. Citicorp,*
    272 A.D.2d 255, 708 N.Y.S.2d 91 (N.Y. App. Div. 1st Dep't 2000).........................9

*Sterling Nat'l Bank & Trust Co. of New York v. Giannetti,*
    53 A.D.2d 533, 384 N.Y.S. 2d 176 (1st Dep't 1976) ................................................18

*Stewart v. Jackson & Nash,*
    976 F.2d 86 (2d Cir. 1992) ...............................................................................17, 22

*Struna v. Wolf,*
    126 Misc. 2d 1031, 484 N.Y.S.2d 392 (Sup. Ct. 1985) ............................................22

*T.T. Exclusive Cars, Inc. v. Christie's Inc.,*
    No. 96 Civ. 1650, 1996 WL 737204 (S.D.N.Y Dec. 24, 1996) .................7, 8, 12, 20

Page(s)

*Tahini Invs., Ltd. v. Bobrowsky,*
    99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dep't 1984) .....................................................9

*Teller v. Hayes,*
    213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995) ................................................26

*Tesoro Petroleum Corp. v. Holborn Oil Co.,*
    108 A.D.2d 607, 484 N.Y.S.2d 834 (1st Dep't 1985)...............................................15

*Todd v. Pearl Woods, Inc.,*
    20 A.D.2d 911, 248 N.Y.S.2d 975 (2d Dep't 1964) .....................................................9

*Turkish v. Kasnetz,*
    27 F.3d 23 (2d Cir. 1994) ...........................................................................................18

*TVT Records v. Island Def Jam Music Group,*
    412 F.3d 82 (2d Cir. 2005) ...........................................................................15, 16, 17

*Walker v. Sheldon,*
    10 N.Y.2d 401, 179 N.E.2d 497 (1961) .....................................................................19

*Warner Theatres Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co.,*
    149 F.3d 134 (2d Cir. 1998) .........................................................................................9

*Weisman v. LeLandis,*
    532 F.2d 308 (2d Cir. 1976) .........................................................................................5

*Word Mgmt. Corp. v. AT&T Info. Sys., Inc.,*
    135 A.D.2d 317, 525 N.Y.S.2d 433 (3d Dep't 1988) ................................................16

**Rules**

Fed. R. Civ. Proc. 12(b)(6) .............................................................................................5, 6

**Other Authorities**

60 N.Y. Jur. 2d, *Fraud and Deceit* § 206 (1987) ..................................................................17

60A N.Y. Jur. 2d, *Fraud and Deceit* § 130 .........................................................................20

New York City Admin. Code § 20-288..................................................................................19

## INTRODUCTION

Plaintiff William I. Koch ("Koch"), by and through his undersigned counsel, respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss ("Motion") filed by Defendants Zachys Wine & Liquor Store and Zachys Wine Actions, Inc. ("Zachys").

Zachys' Motion[1] assumes, as it must, that Koch bought counterfeit wine from Zachys. Zachys nevertheless seeks dismissal of Koch's Complaint (the "Complaint"). Its primary argument is that Koch's reliance on Zachys' catalogue was unreasonable because of a disclaimer in the "Conditions of Sale & Limited Warranty," found on page 238 of the catalogue. Zachys' argument fails because: the language of the disclaimer is limited; there were extensive representations on the other pages of the catalogue making reliance reasonable; and cases hold a party's reliance to be reasonable—despite a disclaimer—where the plaintiff could not have ascertained the true facts without great difficulty or expense. The logic of Zachys' argument is that it could have auctioned 17,000 bottles of fake wine for tens of millions of dollars without any exposure to its customers, because of the disclaimer on page 238. That argument, particularly given the nature of the representations in this catalogue and other unique facts in this case, is without merit. Similarly, Zachys' argument that it owes no duty to its customers even here – where the seller expressly asked Zachys to authenticate the wine – is wrong. Auction houses that hold themselves out as having great expertise and knowledge in the field of wine should not be permitted to argue that they owe no duty whatsoever to buyers, when tens of thousands of bottles are sold. The argument that buyers

---

[1] References in the text of this Memorandum to Zachys' "Motion" are references to the arguments made by Zachys in the Memorandum of Law in Support of their Motion to Dismiss. Citations to Zachys' Memorandum of Law are designated as "Mem."

should have inspected the 17,000 bottles, but that Zachys itself could not be expected to do so, gets things backwards. Zachys should have some obligation to review what it is selling, particularly where, as here, it told the consignor that it would do so.

Zachys' additional argument that this is a private contract dispute that does not trigger consumer protection laws also fails. Zachys itself labels its auction processes "democratic" and encourages and receives widespread public participation in such events. The New York consumer protection laws apply.

## THE ALLEGATIONS OF THE COMPLAINT

During the late 1990s, defendant Eric Greenberg amassed one of the largest wine cellars in the United States, consisting of tens of thousands of bottles of wine. Complaint ¶ 13. When Greenberg decided to sell part of his wine collection, he was told by at least two wine experts (Serena Sutcliffe and William Edgerton) that bottles in his wine cellar were counterfeit. Sotheby's refused to auction Greenberg's counterfeit wines. *Id*. ¶¶ 3, 4, 15, 16, 17. Having learned that his cellar contained counterfeit wine, Greenberg contacted Royal Wine, the company that sold him the wine (or at least helped him acquire it) and made or threatened legal claims against Royal. The dispute between Greenberg and Royal about his counterfeit wine was resolved, but the nature of the resolution has been kept confidential by Greenberg and Royal. *Id.* ¶¶ 18-23. (When discovery is permitted, Koch will learn what happened between Greenberg and Royal as to the bottles that Koch ultimately bought.)

Thereafter, Zachys agreed to auction Greenberg's wine, including, it turns out, at least some of his counterfeit wine. *Id.* ¶¶ 25, 39, 41. According to Greenberg, every one of the 17,000 bottles he offered for sale through Zachys was "authenticated by Zachys on at least two occasions prior to sale." *Id.* ¶ 29. It is thus Greenberg's position (and it is alleged in the

Complaint) that:  1) he knew he had counterfeit wine in his cellar; 2) he did not want to sell counterfeit wine; 3) he asked Zachys to authenticate the 17,000 bottles of wine; and 4) he only sold wine that Zachys told him was authentic.  Stated differently, Greenberg contends that he relied on Zachys' authentication of his wine.  *Id.* ¶ 31.

Prior to the Zachys' 2005 auction, Koch received a catalogue prepared by Zachys identifying the wine that would be offered at the auction.  *Id.* ¶ 41.  The descriptions of the wines offered for auction in Zachys' catalogue constituted representations that the wine being auctioned was as stated in the catalogue.  *Id.*  Koch studied the catalogue and relied on it in making decisions as to which wines he wanted to bid on at the auction.  *Id.*  Koch had no reason to doubt the statements in the catalogue concerning the identity and the vintage of the wine.  *Id.*  There were additional representations of fact in the catalogue.

The 2005 catalogue is Exhibit C to Zachys' Motion.  The catalogue begins with a letter from Zachys' president Jeff Zacharia that demonstrates that it was reasonable for Koch and others to rely on the catalogue.  This is some of what Zachys said to prospective buyers:

- Zachys was offering an "extraordinary collection of wine" that was "a best of the best collection."

- "[M]uch of the 'sizzle' [of the collection] is provided by older and often extremely rare examples of wines made by previous generations . . ."

- "Everything offered below shows the demanding nature of a collector in pursuit of quality."

- "Most unusual  . . . is the selection of 19th Century Bordeaux . . ."

- "[E]xtremely rare magnums of Bordeaux" are offered.

- "Scrolling through the 2,000-plus lots in the catalogue, one is struck by the quality of the producers."

- This is "one of the greatest consignments ever auctioned" and "[c]hances like this only come around once in a lifetime."

- Zacharia personally visited the "consignor's cellar" and tasted the wine, which he describes as "magical."

*See* Zachys Mem. Ex. C at 4-5.  The catalogue was more than a mere list of wines.  It was preceded by an extensive and glowing introduction to the collection of 17,000 bottles.

Induced by Zachys' catalogue, Koch purchased wine at this auction believing it to be genuine.  *Id.* ¶¶ 40, 42, 64.  He has since discovered that many of the bottles he purchased were counterfeit.  *Id.* ¶¶ 44-59.

Koch alleges that Zachys made the representations in its 2005 auction catalogue either with knowledge of their falsity or with reckless disregard for the indicators that such representations were false.  *Id.* ¶ 43.  Zachys either knew Greenberg's representations that the wines he was offering for sale to the public were genuine were false or failed to investigate this claim.  *Id.* ¶ 61.  Zachys either knew that Greenberg's wines had already been inspected by and were believed to be counterfeit by two renowned experts or failed to investigate the wines' authenticity.  *Id.* ¶¶ 28, 32, 43, 61.  The representations in Zachys' catalogue were made with disregard for the potential that a cellar as large as Greenberg's might contain counterfeit wine.  *Id.* ¶ 43.  At least according to Greenberg, Greenberg specifically asked Zachys to authenticate the wine before offering it for sale and Zachys did so.  *Id.* ¶ 29.  For the purposes of this motion, the Court must assume this allegation to be true – that, at the

consignor/sellers' request, Zachys authenticated the entire collection of 17,000 bottles before offering the collection for sale.

Because the Zachys' catalogue was widely disseminated, there is a high probability that other participants in that Zachys auction also bought counterfeit wine that originated from Greenberg. *Id.* ¶¶ 7, 8, 34, 40, 41. In the catalogue, Zachys' President, Zacharia, confirms that Zachys intended a wide audience to review the catalogue and participate in the auction: He explains, the Zachys' "auction is democratic, and affords all of us (who can afford) the opportunity to pursue one or many lots of the magnificent wines offered in this collection." Zachys Mem. Ex. C at 5.

## **LEGAL STANDARD**

There is a "generous standard" governing motions to dismiss. *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). This standard has been summarized as follows:

> [A] dismissal [under Rule 12(b)(6)] is not warranted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In ruling on such a motion, the court is to look only to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint, to assume all well-pleaded factual allegations to be true, and to view all reasonable inferences that can be drawn from such allegations and documents in the light most favorable to the plaintiff.

*Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999) (citations and internal quotations omitted); *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995). The court's inquiry is not "whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed[,] it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant*, 69 F.3d at 673 (quoting *Weisman v. LeLandis*, 532 F.2d 308, 311 (2d Cir. 1976)).

A complaint will survive a Rule 12(b)(6) motion if it meets the "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *See Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007); *see also Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A complaint will be dismissed under Rule 12(b)(6) *only* if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974. If the relevant facts are uncertain, unknown, or disputed, a motion to dismiss is inappropriate, as "[m]ore information is needed . . . , which discovery could very well provide," and the plaintiff "could conceivably present facts" that would establish the claim. *SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576, 583 (E.D.N.Y. 2007).

Here, discovery will shed light on what Zachys knew about the prior inspections of Greenberg's cellar and Greenberg's settlement with Royal. It will show what Greenberg asked Zachys to do in connection with the auction of Greenberg's 17,000 bottles. Discovery will undoubtedly add more information to the allegations that are currently before the Court.

## ARGUMENT

## I. ZACHYS' ARGUMENT THAT THE "AS IS" CONDITION OF SALE DISCLAIMER VITIATES THE FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS FAILS.

In its Motion to Dismiss, Zachys argues that Koch cannot show, as a matter of law, that he reasonably relied on Zachys' representations, because of the "as is" condition of sale on page 238 of Zachys' catalogue and because Koch could have inspected the wine before the auction. Zachys Mem. at 5-11. There are three flaws in this argument. First, the language of the sale provision on which Zachys relies does not support Zachys' argument. Second, the elaborate catalogue, if nothing else, constitutes a representation that Zachys had taken great

- 6 -

care in reviewing the collection and its authenticity. The boilerplate limited disclaimer should be read in that context. Third, cases hold that disclaimers are ineffective where the auction house has peculiar knowledge of the facts and the ability to correct misrepresentations.

**A.    The Disclaimer in Zachys' Catalogue Is Insufficient To Preclude Koch's Reasonable Reliance On Zachys' Representations.**

As demonstrated in the Factual Allegations section of this brief, in the Complaint, and in Zachys' catalogue itself, Zachys made many glowing representations about the wine that it was offering at the auction. The catalogue was over 200 pages long.

Zachys argues that no one could have reasonably relied on anything stated in those 200-plus pages because of this sentence on page 238 of the catalogue: "The authenticity of property listed in this catalogue is guaranteed only as stated herein and otherwise all property is sold 'AS IS' without any representations or warranties by Zachys Wine Auction or the Consignor as to merchantability, fitness . . . , correctness of catalogue, description, size, . . . [etc.]" (emphasis added). The underlined section of the provision on its face states that authenticity is guaranteed is some sense – "as stated herein" – which is to say that a bottle of Mouton Rothschild 1947 is guaranteed to be a bottle of Mouton Rothschild 1947. The "as is" provision in the contract is not as all-encompassing as Zachys contends. Zachys wants this Court to add the word "not" between the words "is" and "guaranteed." It is Koch's position that a disclaimer that begins "authenticity . . . is guaranteed" should be read differently than a disclaimer that begins "authenticity is not guaranteed."

Zachys' disclaimer is narrower than the disclaimers in several of the cases that Zachys cites. In both *T.T. Exclusive Cars, Inc. v. Christie's Inc.,* No. 96 Civ. 1650, 1996 WL 737204 (S.D.N.Y Dec. 24, 1996) and *Real Property Acquisitions, Inc. v. Christie's, Inc*., No. 601943/04, 2005 N.Y. Misc. LEXIS 3285 (Sup. Ct. Mar. 29, 2005), the disclaimers were

broader.  In *Real Property Acquisitions*, a case about furniture purchased at auction, the court

dismissed the plaintiff's action because plaintiff admitted to having received specific

information from a Christie's employee about the damage to, and the restoration of, the

furniture purchased.  2005 N.Y. Misc. LEXIS 3285, at *2.  And, in *T.T. Exclusive Cars*, the

"as is" clause disclaimed in detail the very defects complained of by the plaintiff, stating:

> Buyers are specifically warned that any vehicles sold as such may well have parts
> replaced and paint renewed or be made up of parts from other vehicles the condition
> of which may be difficult to establish. Christie's has to rely on information as to date,
> condition and authenticity provided by the seller, and cannot undertake a level of
> inspection of the vehicle to establish whether or not the vehicle corresponds to any
> relative description of condition in the catalogue.

1996 WL 737204, at *3.  Because of this disclaimer, the court refused to allow the plaintiff to

rely on the catalogue description of the car in pursuing a fraud claim.  As demonstrated by the

disclaimer in *T.T. Exclusive Cars*, when an auction house has not conducted an inspection of

the goods offered for sale, such failure is easily noted in the catalogue.  1996 WL 737204, at

*3 ("Christie's has to rely on information as to date, condition and authenticity provided by

the seller . . . .").

Finally, the cases Zachys cites concern unique items – one piece of furniture, a

painting, and a car.  Here thousands of bottles of wine were auctioned.  While expensive,

wine is more of a commodity than other items that are auctioned, so it is reasonable and to

place greater burdens on Zachys than was placed on the auction houses in the cited cases.

**B.    The Disclaimer in Zachys' Auction Catalogue Also Does Not Preclude Koch's
Claims, As Facts Disclaimed Were Particularly Within Zachys' Knowledge
And Not Reasonably Available To Koch.**

Even if Zachys catalogue had an all-encompassing disclaimer, it would not vitiate

Koch's fraud and negligent misrepresentation claims because the representations in question –

the authenticity of the wine – were particularly within Zachys' knowledge both because

Greenberg asked Zachys to inspect the wine and because of Zachys' expertise as a major auctioneer of wines. *See generally Steinhardt Group, Inc. v. Citicorp*, 272 A.D.2d 255, 256, 708 N.Y.S.2d 91 (N.Y. App. Div. 1st Dep't 2000); *Tahini Invs., Ltd. v. Bobrowsky*, 99 A.D.2d 489, 490, 470 N.Y.S.2d 431 (2d Dep't 1984); *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997); *DIMON, Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 368 (S.D.N.Y. 1999); *Christie's, Inc. v. Dominica Holding Corp.*, No. 05 Civ. 8728 (NRB), 2006 WL 2012607, at *4 (S.D.N.Y. Jul. 18, 2006) ("*Dominica*"). When the facts that are disclaimed in a contract are in the exclusive possession of the seller, or where they may be available to a purchaser, but would be unreasonably difficult to ascertain, such a disclaimer does not preclude the purchaser from reasonably relying on the seller's representations. *Warner Theatres Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998) ("[T]he peculiar-knowledge exception is designed to address circumstances where a party would face high costs in determining the truth or falsity of an oral representation . . . and those costs are sufficiently great to render reliance upon the representation reasonable") (citations omitted); *DIMON, Inc.*, 48 F. Supp. 2d at 368 (doctrine applies "where the truth theoretically might have been discovered, though only with extraordinary effort or great difficulty"). Where the facts were within the seller's peculiar knowledge and the seller misrepresented them, the exception applies even where the facts are a matter of public record and could have been discovered by a review of the record. *Todd v. Pearl Woods, Inc.*, 20 A.D.2d 911, 911, 248 N.Y.S.2d 975 (2d Dep't 1964).

Applicability of the peculiar knowledge exception depends upon two factors: (1) the sophistication of the buyer and (2) the accessibility of the underlying information. *DIMON, Inc.*, 48 F. Supp. 2d at 368. In this case, although Koch is certainly a wine collector, he does

not have the expertise required to determine a wine's authenticity, particularly from an unopened bottle. Indeed, as Koch's Complaint states, it was not until he hired William Edgerton, a noted wine expert, to review the wines in his cellar, that he discovered that the wines that he had purchased at Zachys' auctions were counterfeit. Complaint ¶¶ 17, 24-26. The authenticity of the wine auctioned by Zachys was not reasonably accessible to individuals well-versed in the enjoyment, as opposed to the science, of fine wine. Nor is the counterfeit nature of an unopened bottle of wine readily apparent to lay consumers of wine. Recall here that Zacharia, in his letter to prospective bidders, not only extolled the historic nature of the wines being offered, but explained that he had tasted them. Tasting was not something that was available to the prospective bidders. In addition, certain underlying knowledge were clearly not accessible through an inspection of the bottles, because such an inspection could not have revealed that Greenberg's collection had been previously inspected and found to contain counterfeit wine.

### 1. The "Peculiar Knowledge" Exception Applies In The Context Of Auction-House Catalogue Disclaimers.

In *Dominica,* the court applied the "peculiar knowledge" exception in the context of auction-house catalogue disclaimers. 2006 WL 2012607 at *4. In that case, which concerned the purchase at auction of a set of Andy Warhol prints, the buyer had personally attended the auction, but did not conduct a detailed examination of the prints in question. *Id*. at *1. Instead, the buyer relied on the auction catalogue, which stated that the prints were taped to their support—as is typical in the fine arts auction trade, so that they can be removed from particular frames without damage to the print. *Id*. However, as he discovered after purchasing the prints at auction, the artworks were glued to their supports, which made the prints significantly less valuable. *Id*. The buyer refused to pay for the prints, and, when

- 10 -

Christie's sued for breach of contract, the buyer cross-claimed for fraud. *Id*. at *2.  Like Zachys here, Christie's claimed that the buyer's reliance on its catalogue descriptions was not reasonable in light of its disclaimers and invitation to inspect before bidding.

In *Dominica*, the court reasoned that, although "a specific disclaimer normally bars" a fraud claim, "an exception to this rule exists where the misrepresented facts are peculiarly within the knowledge of the seller." *Id* at *4; *see also Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 322, 157 N.E.2d 597 (1959) (limiting the use of contractual disclaimers to preclude fraud claims to situations where "the facts represented are not matters peculiarly within the party's knowledge").  While the *Dominica* court acknowledged that the defendant had not engaged in the "kind of careful examination typically required by courts before a buyer can claim that the defects were peculiarly within the seller's knowledge," *Dominica*, 2006 WL 2012607, at *5 (citing *Lazard Freres*, 108 F.3d at 1543), the court reasoned that "we cannot conclude as a matter of law that [the defendant] could have undertaken a sufficiently thorough inspection of the [artwork] without extraordinary difficulty, or that even if he had, he necessarily would have detected the flaws at issue." *Id*.  Thus, for the purposes of the plaintiff's dispositive motion, the court rejected the plaintiff's argument that the defendant's failure to conduct a more detailed inspection barred the defendant's claim. *Id*.

The cases cited by Zachys are inapposite.  For example, the "access to critical information" enjoyed by the "sophisticated businessmen" in *Grumman Allied Industries v. Rohr Industries, Inc.* included a 15-month-long investigation, prior to the purchase of a bus manufacturing company at a cost of $55 million, which employed many "seasoned negotiators, sophisticated engineers, experienced executives" and others, who repeatedly toured the manufacturing plants in question and had unrestricted access to all personnel and

records. 748 F.2d 729, 730-31 (2d Cir. 1984). The 85-page final purchase contract included, among many written representations, a disclaimer of any oral representations not set forth in the written contract. *Id*. In dismissing the claim in *Grumman*, therefore, the Second Circuit had before it a very different set of facts than those at issue in this case.

Similarly, although both *T.T. Exclusive Cars, Inc. v. Christie's Inc.,* No. 96 Civ. 1650, 1996 WL 737204 (S.D.N.Y Dec. 24, 1996) and *Real Property Acquisitions, Inc. v. Christie's, Inc.*, No. 601943/04, 2005 N.Y. Misc. LEXIS 3285 (Sup. Ct. Mar. 29, 2005) involved goods purchased at auction, the defects at issue would have been clearly discoverable by the purchaser upon inspection.[2] In *T.T. Exclusive Cars*, the defects complained of were that the car "had mileage in excess of 100,000 miles, had been repainted, had new hoses, screw clamps, brush touch-up under the hood, and a creased and dirty interior." 1996 WL 737204, at *1. In *Real Property Acquisitions*, the plaintiff complained that the damage and restoration work to a piece of furniture purchased had been "more extensive than he had understood it to be," despite the fact that a Christie's employee had specifically told the plaintiff, prior to the purchase, that "rumors [of damage to] the sideboard 'may' be true." 2005 N.Y. Misc. LEXIS 3285, at *2. In contrast, in this case, there is no indication that the defects in the wine

---

[2] Zachys also cites *Foxley v. Sotheby's, Inc.*, 893 F. Supp. 1224 (S.D.N.Y. 1995), Zachys Mem. at 9. In *Foxley*, the court ruled that the facts that plaintiffs asserted as fraudulent misrepresentations were "not matters peculiarly within the [defendant]'s knowledge." *Id*. at 1229. Because the plaintiffs had equal access to the facts, the court enforced the auction house's disclaimer. *Id*. at 1230. Here, unlike *Foxley*, Zachys misrepresented facts that were not reasonably available to Koch.

Defendants' final case, cited as authority for their argument that the disclaimer clause prohibits reasonable reliance, is irrelevant. In *Kelly v. Brooks,* No. 92 Civ. 729, 1993 WL 88259 (S.D.N.Y. Mar. 19, 1993), the plaintiffs alleged reliance on representations that the defendant specifically disclaimed, but did not allege that the defendant had any "peculiar knowledge" that was unavailable to them. *Kelly*, therefore, cannot govern the facts of the instant case, where Koch has alleged that Zachys had "peculiar knowledge" not available to him.

purchased by Koch would have been apparent upon merely viewing the bottles. Koch held the wine in his cellar for years without knowing that it was counterfeit, as did Greenberg before him. For collectors of wine like Koch and Greenberg, it is not easy to spot unopened bottles of counterfeit wine.

### 2. Koch's Complaint Falls Squarely Within The *Dominica* Exception; Therefore, He Has Properly Alleged Reasonable Reliance.

Taking as true the allegations in Koch's Complaint, Zachys either *knew* that the Greenberg wine was counterfeit, and made statements in its catalogues with knowledge of this falsity, *or* failed to adequately inspect the wine that it offered at auction and did not mention this failure in its catalogue. Complaint ¶¶ 33, 43. In either case, the misrepresentation or omission constitutes actionable fraud, because, under the *Dominica* exception, Koch was entitled to rely on Zachys' statements. Zachys places much emphasis on a statement in the catalogue that bidders had the opportunity to inspect the wine bottles prior to purchase. That does not negate Koch's allegation that Zachys had a "specialized ability to ascertain, and investigate, the history and authenticity of the wine." Complaint ¶ 68. Despite its repeated assertions that Koch had access to "all relevant information," Zachys Mem. at 14, but "opted not to inspect" the wines in question, *id.* at 15, Zachys has provided no basis for concluding that a mere visual inspection of bottles in an auction showroom would have determined the authenticity of the wines at issue or that, in practice, anyone actually inspects wine before auctions. As the *Dominica* Court recognized, the judgments that would need to be made to address these issues cannot be made on a motion to dismiss.

The representations that Zachys' catalogues disclaim were within its own "peculiar knowledge"—as between bidders at the auction and Zachys, only Zachys knew, or should have known, that Greenberg's collection contained counterfeit wine, that Greenberg himself

knew these wines to be counterfeit, and that Zachys either inspected or failed to inspect the collection for authenticity. The disclaimers in Zachys' auction catalogue and the invitations to inspect, therefore, are insufficient to establish, as a matter of law, that Koch's reliance on Zachys' representations was unreasonable.

**C. Dismissal Of This Claim Upon A Motion To Dismiss Is Inappropriate, Since, Taking All Factual Allegations As True, Koch's Claims Are Viable As A Matter of Law.**

To the extent that relevant facts—such as whether or not Koch would have been able to discover the defects in the wine offered at Zachys' auction by the type of inspection permitted by Zachys—are uncertain, dismissal of Koch's Complaint is inappropriate at this stage. "More information is needed . . . , which discovery could very well provide," and, after such discovery is conducted, the plaintiff "could conceivably present facts" that would establish the claim. *SD Protection, Inc.*, 498 F. Supp. 2d at 583. Thus, the *Dominica* court, in denying the plaintiff's pre-discovery motion for summary judgment, emphasized that, on the record, it could not "conclude as a matter of law that [the defendant] could have undertaken a sufficiently thorough inspection . . . without extraordinary difficulty, or that [such an inspection] would have detected the flaws at issue." *Dominica*, 2006 WL 2012607, at *5.

Similarly, in this case, on the face of the pleadings, there is no evidence that Koch could have undertaken an inspection that would have revealed that Greenberg's wines were counterfeit. A simple provision for an inspection, such as that contained in the Zachys' catalogue, and in the Christie's catalogue at issue in *Dominica*, does not describe the type of inspection available to the purchaser. Neither does the mere provision for inspection establish that the inspection would have revealed the information that was fraudulently misrepresented or withheld from the purchaser. *See* Complaint ¶ 43. Finally, in the context of massive wine

- 14 -

auction where the seller asks the auction house to inspect the wine before sale, information is uniquely in the possession of the auction house and a disclaimer should not bar claims for misrepresentation.

### D. Despite Zachys' Attempts To Re-characterize Koch's Allegations, Koch Has Alleged A Cause of Action For Fraud, Not Breach Of Contract.

Zachys' attempt to dismiss Koch's fraud cause of action as "nothing more than improper boot strapping of a breach of contract claim" ignores both the substance of Koch's Complaint and applicable law. Zachys Mem. at 15. Koch's Complaint does not merely allege that the wines he purchased at Zachys' auctions were counterfeit; the gravamen of the Complaint is that it was known that bottles were counterfeit, but they were offered at auction anyway without disclosing that the bottles were counterfeit or that Zachys had been asked by the consignor to authenticate the bottles.

### 1. Koch Has Alleged Fraudulent Misrepresentations Extraneous To The Contract Between Himself And Zachys.

In its argument, Zachys relies on the premise that a fraud claim cannot be based upon an allegation that "the contracting party did not intend to meet its contractual obligations," *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 328 (S.D.N.Y. 2002).[3] However, while such a claim, absent misrepresentations "collateral or extraneous to the contract," is merely a breach of contract claim, *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82,

---

[3] Zachys relies on cases that support the proposition that a refusal to perform, even where the plaintiffs claim that the promise of performance was made without intent to perform, is not an act of fraud. *See, e.g.*, *R.H. Damon & Co., Inc. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986 (S.D.N.Y. 1993); *Krantz v. Chateau Stores of Can., Ltd.*, 256 A.D.2d 186, 683 N.Y.S.2d 24 (1st Dep't 1998); *Metropolitan Transp. Auth. v. Triumph Adver. Prods., Inc.*, 116 A.D.2d 526, 497 N.Y.S.2d 673 (1st Dep't 1986); *Tesoro Petroleum Corp. v. Holborn Oil Co.*, 108 A.D.2d 607, 484 N.Y.S.2d 834 (1st Dep't 1985); *TVT Records*, 412 F.3d at 85; *Mendelovitz v. Cohen*, 37 A.D.3d 670, 830 N.Y.S.2d 577 (2d Dep't 2007). None of these cases are governing authority here, where the fraud alleged goes to a misrepresentation of material facts underlying the purchase—not merely to the seller's intent not to perform.

91 (2d Cir. 2005), *Sichel*'s rule expressly does not apply where, as here, a plaintiff was induced to purchase an item because the defendant concealed material information that, if known by the plaintiff, would have lessened the value of the item purchased. *TVT Records*, 412 F.3d at 92; *see also Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 151-152 (2d Cir. 1993) (fraud cause of action valid where broker concealed from buyer that securities in question were encumbered, because broker had "superior knowledge" and the buyer likely would not have bought the securities had he known of the encumbrance); *Donovan v. Aeolian Co.*, 270 N.Y. 267, 272, 200 N.E. 815 (1936) (fraud claim properly alleged where piano salesman failed to disclose that piano had been used and rebuilt, when advertisement gave impression that it was new). Here, as in *Brass* and *Donovan*, Koch's fraud claim is not based on any undisclosed intent by Zachys not to perform its future obligations under the auction agreement (that is, to deliver the wines once the bidders paid for them). Rather, as the Complaint alleges, Zachys did not disclose to those members of the public interested in bidding on Greenberg's wines either that (1) it knew that experts had already examined the wines and concluded some bottles were counterfeit, or that (2) it had failed to authenticate the wines as requested by the consignor. Complaint ¶¶ 28, 32, 43. Indeed, Koch's Complaint alleges that Zachys knowingly hid these fact from bidders, because bidders, including Koch, would otherwise have been dissuaded from bidding on the wines. Complaint ¶¶ 63, 65.

Furthermore, allegations of affirmative misrepresentations of fact suffice to state a fraud claim even where it is related to a contract. *Word Mgmt. Corp. v. AT&T Info. Sys., Inc.*, 135 A.D.2d 317, 320-21, 525 N.Y.S.2d 433 (3d Dep't 1988) (affirming denial of seller's motion for summary judgment where plaintiff alleged that seller's representative made intentionally or carelessly false statements about the nature of the article offered for sale and

- 16 -

that plaintiff was induced to rely on these statements in deciding to purchase); *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (representations of present fact give rise to a separate fraud claim); *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956, 502 N.E.2d 1003 (1986) (representation of present fact that induced contract was collateral thereto and sufficed for separate fraud claim); *Channel Master Corp. v. Aluminium Ltd. Sales, Inc.*, 4 N.Y.2d 403, 407, 151 N.E.2d 833 (1958) (false statement of existing fact permits recovery under fraud theory). It "'is elementary that where a contract or transaction was induced by false representations, the representations and the contract are distinct and separable.'" *Stewart*, 976 F.2d at 88-89 (quoting 60 N.Y. Jur. 2d, *Fraud and Deceit* § 206 (1987)).

Koch's Complaint alleges sufficient factual misrepresentations "collateral or extraneous to the contract" to survive a motion to dismiss. *TVT Records*, 412 F.3d at 91.[4] For instance, Zachys' 2005 auction catalogue contained, at least implicitly, representations that the wine being auctioned had been verified by Zachys' experts as genuine and was described accurately. Complaint ¶ 41. The representations were either knowingly false—that is, Zachys knew the wines to be counterfeit, either based on Greenberg's information or its own investigation, *id*. ¶¶ 29, 43—or the representations were made, without any independent

---

[4] The fact that certain of the defendants' misrepresentations were set forth in the auction catalogue does not defeat the "collateral or extraneous" requirement. First, the catalogue was circulated to the public long before Koch's purchase, and the very purpose of the representations was to induce and solicit bids. Second, "[t]he recital of a fact in a written contract . . . calculated to convey a misleading impression under the circumstances would be considered actionable misrepresentation." 14 N.Y. Prac., *New York Law of Torts* § 1:70 (2008).

verification, *id*. ¶ 43, and without any disclaimer that it had not inspected the bottles for authenticity.[5]

### 2. Zachys May Not Avoid Liability For Its Fraudulent Acts By Hiding Behind Its Contractual Language.

It is well established in New York law that a contractual limitation of liability clause does not allow a party who fraudulently induces another to enter into a contractual relationship to shield itself from the consequences—that is, liability—for its fraudulent conduct. For over 100 years, New York courts have refused to "temporize with trickery or duplicity. A contract, the making of which was induced by deceitful methods or crafty device, is nothing more than a scrap of paper . . . . A rogue cannot protect himself from liability for his fraud by inserting a printed clause in his contract." *Bridger v. Goldsmith*, 143 N.Y. 424, 428, 38 N.E. 458 (1894). *See also Turkish v. Kasnetz*, 27 F.3d 23, 27-28 (2d Cir. 1994) ("It is well settled that parties cannot use contract limitation of liability clauses to shield themselves from liability for their own fraudulent conduct"); *Sterling Nat'l Bank & Trust Co. of New York v. Giannetti*, 53 A.D.2d 533, 533, 384 N.Y.S. 2d 176 (1st Dep't 1976) ("[A] written waiver in any form cannot operate to shield a party from his own fraud. For the courts to give effect to such a clause would be violative of both public policy and morality, since an ultimate finding of fraud must of necessity vitiate the contract relied upon.").

In short, while fraud may vitiate a contract, contractual disclaimers cannot vitiate a fraud claim. Zachys' attempt to dismiss Koch's fraud claim, on the basis that it is only a

---

[5] Specifically, the 2005 catalogue falsely represented one of Greenberg's fake bottles as being a Chateau Latour 1928, and described it as "[a] famously tannic wine, yet it's now mellowed wonderfully." Complaint ¶ 44. The catalogue made similar misrepresentations of existing facts about Greenberg's wines alleged to be Chateau Lafleur 1921, Chateau Petrus 1928, Chateau Lafite 1811, Chateau Lafite Rothschild 1870, and Chateau Petrus 1921. *Id.* ¶¶ 45-50.

breach of contract claim, is legally and factually incorrect, and ignores the allegations of the

Complaint itself.  Thus, Zachys' motion to dismiss Koch's fraud claim (and his claim for

exemplary damages)[6] should be denied.

## II.    THE COMPLAINT STATES A CAUSE OF ACTION AGAINST ZACHYS FOR NEGLIGENT MISREPRESENTATION.

Koch's Complaint properly alleges the elements for a cause of action against Zachys

for negligent misrepresentation.  To allege negligent misrepresentation, a plaintiff must show

(1) the existence of a special relationship giving rise to a duty to impart truthful information;

(2) non-intentional representation of a material incorrect or false fact; (3) reasonable reliance;

and (4) injury.  *Grammer v. Turits*, 271 A.D.2d 644, 645, 706 N.Y.S.2d 453 (2d Dep't 2000);

*Mathis v. Yondata Corp.*, 125 Misc. 2d 383, 387, 480 N.Y.S.2d 173 (Sup. Ct. 1984).  In its

motion to dismiss, Zachys argues that a plaintiff must show "*either*:  (1) the existence of a

fiduciary *or* special relationship between the parties; or, absent a special relationship, (2) that

---

[6] Zachys' reasoning in support of its contention that Koch's punitive damages claim should be dismissed as a matter of law misstates the relevant law.  Under New York law, in order to receive punitive damages, a plaintiff must demonstrate "that defendant's conduct involves 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Muhlfield v. Bak*, 174 Misc.2d 396, 398, 664 N.Y.S.2d 427 (Sup.Ct. N.Y. Co. 1997), *citing Walker v. Sheldon*, 10 N.Y.2d 401, 405, 179 N.E.2d 497 (1961).  Certain claims also require a showing that the defendant's conduct "amounts to an attack upon a fundamental public interest." *Muhlfield*, 174 Misc.2d at 399.  Where these requirements are met, "there is no need to show a 'pattern' of similar conduct toward others." *Id*.

In this case, Koch has alleged that Zachys, an auction house, made knowing, fraudulent misrepresentations regarding material facts about the items it offered for sale.  Complaint ¶ 43.  In New York, it is a misdemeanor for an auctioneer to knowingly make "any false or fraudulent representations or statements or [to cause] any such statements to be made in respect to the character of any sale, . . . or the quality, condition, ownership, situation, or value of any property, real or personal, exposed, put up, or offered by him or her for sale at public auction . . . ."  New York City Admin. Code § 20-288; *see also Friedman v. O'Connell*, 18 Misc.2d 975, 190 N.Y.S.2d 439 (Sup.Ct. N.Y. Co. 1959).  Koch has also alleged that this conduct was directed by Zachys towards members of the relevant public, Complaint ¶ 61, and that others may have been harmed as well.  Complaint ¶ 34.  Thus, as a matter of law, Koch has alleged sufficient facts to sustain an award of punitive damages.  At the *very* least, this is a question of fact that must survive a motion to dismiss. *AT&T Info. Sys., Inc. v. LcLean Bus. Servs., Inc.*, 175 A.D.2d 652, 653, 572 N.Y.S.2d 582 (4th Dep't 1991).

defendant possessed material information unavailable to the plaintiff and knew that plaintiff was acting on the basis of mistaken knowledge." Zachys Mem. at 11 (emphasis added), *citing T.T. Exclusive Cars*, 1996 WL 737204. Zachys argues that Koch has alleged only a "special relationship of trust and confidence," and that the Complaint is "silent as to any material information within the exclusive possession of Zachys." Zachys Mem. at 11. In making this argument, Zachys mistakes the relevant caselaw and ignores the relevant allegations of Koch's Complaint. Koch's Complaint plausibly establishes both of Zachys' stated "prerequisites," and should not be dismissed for failure to state a claim upon which relief may be granted.

### A.    The Relationship Between Zachys and Purchasers Like Koch Is A "Special Relationship."

Zachys, as a wine auction house employing many trained specialists and a rare wine consultant, *see* Zachys Mem. Ex. C at 231, stood in a special relationship to Koch and other purchasers like him. At a minimum, at the Greenberg auction, where Greenberg asked Zachys to auction only the authentic wine in his collection, Zachys owed a duty not only to Greenberg but also to buyers to conduct this authenticity inspection competently. Zachys could have refused Greenberg's request, but according to Greenberg, Zachys did not. It agreed to authenticate the collection. Under New York law, highly-trained professionals clearly fall into the category of persons who "in morals and good conscience . . . owe[] a duty to give [information] with care." *See* 60A N.Y. Jur. 2d, *Fraud and Deceit* § 130; *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 675 N.E.2d 450 (1996) (citing *International Prods. Co. v. Erie R. R. Co.*, 244 N.Y. 331, 338, 155 N.E. 662 (1927)). Additionally, the relationship between a highly-trained professional and a purchaser has been recognized as a "special relationship" that justifies reliance by a purchaser on the representations of the professional. *See Kimmell*, 89 N.Y.2d at 263 (finding that the CFO and chairman of a company had a unique ability to

- 20 -

evaluate a particular project; thus, plaintiffs were justified in relying on his rosy statements when deciding to invest in the company).  As Koch alleges in the Complaint, Zachys possessed specialized and unique expertise in the marketplace for fine wines, beyond that possessed by even the most dedicated wine enthusiast.  Complaint ¶ 68 (alleging Zachys' "specialized ability to ascertain, and investigate, the history and authenticity of the wine").  Particularly in the context of the 2005 auction of Greenberg's wines, the auction catalogue did not disclose the source of the wine, although it clearly indicated that Zachys representatives had visited the consignor's cellar and prepared the wines for auction.  Zachys Mem. Ex. C at 5.  Further, there were 17,000-plus bottles, making it almost impossible for prospective bidders to inspect, and only Zachys knew that Greenberg specifically asked Zachys to authenticate the wine.  Zachys owed a duty to the buyers at this auction.

    The cases that Zachys cites illustrate that Koch's interaction with Zachys was more than "merely a contractual relationship, insufficient to sustain a cause of action for negligent misrepresentation." *Rosen v. Spanierman*, 711 F. Supp. 749, 758 (S.D.N.Y. 1989), *vacated by* 894 F.2d 28 (2d Cir. 1990) (holding that plaintiffs had stated a cause of action for fraud).  In *Rosen*, the plaintiffs merely purchased a painting from the defendant, without solicitation by the defendant.  711 F. Supp. at 751.  In contrast to the plaintiffs in *Rosen*, Koch's participation in Zachys' wine auctions was actively solicited by Zachys, which sent him catalogues prepared purposely to entice Koch, and others similarly situated, to bid on the wines offered for purchase.  Complaint ¶ 41.

    Additionally, the relationship between Zachys and Koch should properly be classified as a "special relationship," because Zachys was aware that Koch would use the auction catalogues for a specific purpose.  *See Grammer*, 271 A.D. at 645; *see contra Struna v. Wolf*,

- 21 -

126 Misc. 2d 1031, 1036, 484 N.Y.S.2d 392 (Sup. Ct. N.Y. Co. 1985) (holding that plaintiff could not state a claim for negligent misrepresentation where curator did not know that the plaintiff was seeking an appraisal for potential resale value). Indeed, Koch has alleged that Zachys intended that Koch would use the catalogues to determine which wine he would seek to purchase at the auctions. Complaint ¶ 41. In *Ravenna v. Christie's, Inc.*, 289 A.D.2d 15, 16, 734 N.Y.S.2d 21 (1st Dep't 2001), the court held that, *where the facts did not establish prior or subsequent dealings between the parties*, the defendant's mere knowledge that the plaintiffs would rely on his information did not, standing alone, establish a "special relationship." Here, in contrast to *Ravenna*, however, Koch has alleged *both* that he had an ongoing relationship with Zachys *and* that Zachys was aware that its catalogue would be used by potential bidders (like Koch) to determine which wines they would bid upon. Thus, Koch's Complaint alleges facts sufficient to show a "special relationship."

Finally, Zachys' inference that a "special relationship" cannot be found here, because Zachys was Greenberg's – rather than Koch's – fiduciary, mistakes the relevant law. Zachys' argument relies heavily on the reasoning in *Foxley v. Sotheby's, Inc.*, 893 F. Supp. 1224, 1232 (S.D.N.Y. 1995), in which the court refused to find a "special relationship" despite the fact that "[i]nteractions between the two parties included personal visits, viewings of [the plaintiff's] personal collection, introductions to Sotheby's key personnel, private luncheons and various representations." *Id.* The *Foxley* court, however, applied an unduly narrow definition of special relationship, insisting that the issue was "clearly controlled by *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992)," in which the Second Circuit stated that a claim for negligent misrepresentation can only occur when the parties are in a fiduciary relationship. To the contrary, the Second Circuit rule is broader than stated in *Stewart*. A

"special relationship" occurs when parties stand in a "fiduciary *or confidential* relationship with each other." *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 45 (2d Cir. 1991) (emphasis added); *cited with approval in Brass v. American Film Technologies, Inc*., 987 F.2d at 150-151 ("We previously have observed in looking to New York law that a fiduciary relationship embraces not only those the law has long adopted—such as trustee and beneficiary—but also more informal relationships where it can be readily seen that one party reasonably trusted another.").

Under the Second Circuit's rule, Koch has alleged sufficient facts to survive a motion to dismiss. The Complaint amply supports Koch's claim that he reasonably relied upon the representations made by Zachys in the auction catalogs, *see* Part I.A., *supra*; he reasonably trusted Zachys, as is commonly done in the wine auction trade. The relationship between Zachys and Koch falls squarely within this Circuit's definition of "special relationship." Thus, Koch has properly stated a claim against Zachys for negligent misrepresentation, and this Court should deny Zachys' motion to dismiss this claim.

### B.    Zachys Possessed Material Information Not Available To Koch.

Additionally, Koch has alleged that Zachys possessed material information not available to him. As Koch's Complaint states, it was not until he hired a noted wine expert to review the wines in his cellar that he discovered the wines he had purchased at Zachys' auctions were fake. Complaint ¶¶ 17, 24-26. The expertise of specialists is often required to determine the authenticity of the wine. Complaint ¶¶ 17, 21. Information about the authenticity of the wine auctioned by Zachys was in Zachys' knowledge, as it employed specialists and experts to perform such an analysis. *See* Zachys Mem. Ex. C at 231; *see also*

Complaint ¶¶ 43, 68 (alleging that Zachys had special knowledge about the wines it offered for sale as a result of its superior ability to investigate the authenticity of the wine).

Zachys insists that it could not have had information unavailable to Koch, because Koch had the opportunity to inspect the bottles being auctioned prior to his purchase. Zachys Mem. at 14-15. However, as noted in Part I above, there is no indication such an inspection would have revealed that the wine was inauthentic, or that Greenberg had been told he had counterfeit wine, or that Greenberg specifically asked Zachys' to inspect the collection to check authenticity. Zachys had material information about the Greenberg auction that it failed to disclose to prospective buyers, and, even if Zachys' misrepresentations were entirely negligent, the misrepresentations should nevertheless be actionable.

## III.  KOCH IS ENTITLED TO RELIEF UNDER NEW YORK GENERAL BUSINESS CODE SECTIONS 349 AND 350, AS HIS COMPLAINT CONCERNS FRAUD THAT AFFECTS CONSUMERS AT LARGE.

Zachys claims that Koch has failed to sufficiently plead a claim under New York General Business Law Sections 349 and 350 ("Sections 349 and 350") because Koch's Complaint concerns a private contract dispute and does not involve conduct directed at consumers at large. Zachys' "private contract" argument has been addressed above. Despite Zachys' assertion that Koch's "allegations are limited," the gravamen of Koch's complaint concerns Zachys' conduct and fraudulent wine auction practices. Zachys' arguments to the contrary on this point therefore fail.

Zachys' "consumers at large" argument also fails. A claim under Sections 349 and 350 must allege deceptive conduct that was "consumer-oriented." *See*, *e.g.*, *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006). This requirement is broadly interpreted, and is met where "the acts . . . complain[ed] of are consumer-oriented in the sense

that they potentially affect similarly situated consumers." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 647 N.E.2d 741 (1995) (emphasis added); *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996) (conduct is consumer-oriented for purposes of Section 349 where it "'potentially affects similarly situated consumers'" (quoting *Oswego*, *supra*)); *In re Evergreen*, 423 F. Supp. 2d at 264 ("Plaintiffs must allege facts sufficient to show that the challenged conduct has a broader impact on consumers at large, *i.e.*, it potentially affects similarly situated consumers in New York." (internal quotations and citations omitted))  In short, contrary to Zachys' implication, *see* Zachys Mem. at 19 ("Plaintiff has failed to set forth any factual allegation [that the auctions] . . . have an impact on <u>any</u> other consumer . . . ."),  Koch was not required to plead that Zachys' deceptive acts *did* affect other similarly situated consumers (although there were many purchasers at the auction in addition to Koch).  To state a claim under Sections 349 and 350, Koch need only allege that Zachys' deceptive acts *potentially* affected other auction participants.  This Koch has done.

The Complaint alleges that there is a strong likelihood that other similarly-situated consumers were also victims of Zachys' deceptive acts.  *See*, *e.g.*, Complaint ¶ 34 ("Koch was victimized by Greenberg's and Zachys' misconduct and there likely are many other victims as well."); *id*. at ¶¶ 7, 8, 40.  Moreover, Koch purchased only a fraction of the 17,000 bottles Greenberg consigned for the auction in question.  Zachys Mem. at 19.  To date, Koch's expert has identified eleven of those bottles as counterfeit.  Complaint ¶¶ 44-51.  It would be beyond the range of statistical probability if – through some bizarre coincidence – Koch somehow purchased every single counterfeit bottle that Greenberg consigned for auction.  It is highly likely that other bidders similarly ended up with fake bottles.  Thus, the allegations in Koch's

Complaint satisfy "the threshold test in that the acts . . . are consumer-oriented in the sense that they potentially affect similarly situated consumers." *Oswego*, 85 N.Y.2d at 25.

Moreover, Zachys' Motion ignores the fact that a plaintiff may also state a claim under Sections 349 and 350 by alleging "any . . . harm to the public interest." *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (internal quotes and citations omitted). Deceptive practices that affect participants in public auctions "undermine[] New York's interest in an honest marketplace in which economic activity is conducted in a competitive manner" and, therefore, constitute misconduct within the meaning of Section 349. *Id*. 301-302 (internal quotes omitted). Here, Koch has alleged that Zachys engaged in deceptive practices in public auctions that affected the participants. Complaint ¶¶ 7, 8, 34, 40, 79-82 & 86-89. Like the defendants in *Feldman*, Zachys has injured the public interest in a competitive, honest marketplace.

While Zachys correctly points out that conduct is not "consumer-oriented" where the claim concerns a "single shot transaction" that is unique to the parties, *see, e.g.*, *Oswego*, 85 N.Y.2d at 25, Zachys' authority illustrates that this is simply not the case here. *Genesco Entertainment v. Koch*, 593 F. Supp. 743 (S.D.N.Y. 1984) and *Teller v. Hayes*, 213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995) involved complicated contracts between parties, negotiated at arm's length, for unique services or real property, which affected only the parties to the dispute, and *In re Evergreen*, 423 F. Supp. 2d at 264, from the very language cited by Zachys, concerned a dispute over the purchase of securities. Here, in contrast, Zachys auctioned wines to any member of the public who was interested and could afford the price. Complaint ¶ 41; *see also* Zachys Mem. Ex. C at 4-5. Indeed, the language in the auction catalogue was identical for every recipient and—far from being negotiated in individual

instances—was filled with boilerplate language governing the transactions of all participants in (presumably) *any* of Zachys' wine auctions.  *See* Zachys Mem. Ex. C.  This, by its nature, demonstrates that Zachys' auction practices constitute "recurring consumer transactions" that are within the scope of Sections 349 and 350.

Finally, to the extent Zachys implies that Koch's wealth and the size of the transaction compel a conclusion that Zachys' conduct was not consumer-oriented, binding and persuasive authority hold otherwise.  In *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995), the Second Circuit upheld claims under Section 349 despite the fact that the plaintiff was a wealthy corporation and the damages award included $200,000, for the Section 349 claims, and attorneys' fees in excess of $280,000.  *Id.* at 263.  Similarly, in *Oswego*, although the plaintiff had assets worth millions of dollars and the damages exceeded $30,000, the court found the deceptive acts to be consumer-oriented.  85 N.Y.2d at 22-24.  Accordingly, Koch's claims under Sections 349 and 350 do not fail, as a matter of law, simply because he is a wealthy individual.

Under the applicable law, Koch has pled sufficient facts to demonstrate that Zachys' deceptive acts were directed toward consumers at large, because Zachys' conduct potentially affected similarly situated consumers.  Thus, Zachys' motion to dismiss Koch's Sections 349 and 350 claims should be denied.

**<u>CONCLUSION</u>**

For each of the foregoing reasons, the Court should deny Defendant Zachys' Motion to Dismiss the Complaint in its entirety.  Should this Court be inclined to grant any portion of Zachys' Motion, it should also grant Koch leave to amend his Complaint.


Dated: January 22, 2008          Respectfully submitted,
Newport Beach, California

                                By:   s/Melissa R. McCormick
                                      Melissa R. McCormick (*pro hac vice*)
                                      Layn R. Phillips (*pro hac vice*)
                                      Bruce A. Wessel (*pro hac vice*)
                                      IRELL & MANELLA LLP
                                      840 Newport Center Drive, Suite 400
                                      Newport Beach, California 92660-6324
                                      (949) 760-0991


                                      -and-


                                      Shawn Patrick Regan (SR-0925)
                                      Thomas G. Slater (to be admitted *pro hac vice*)
                                      HUNTON & WILLIAMS LLP
                                      200 Park Avenue, 52nd Floor
                                      New York, New York 10166-0136
                                      (212) 309-1000
                                      sregan@hunton.com

                                      *Attorneys for Plaintiff*
                                      *WILLIAM I. KOCH*