Layn R. Phillips (*pro hac vice*)
Bruce A. Wessel (*pro hac vice*)
Melissa R. McCormick (*pro hac vice*)
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
(949) 760-0991

-and-

Shawn Patrick Regan
Thomas G. Slater (to be admitted *pro hac vice*)
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0136
(212) 309-1000

*Attorneys for Plaintiff*
*WILLIAM I. KOCH*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| WILLIAM I. KOCH, an individual, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | 07 Civ. 9600 (BSJ) (DCF) |
| | : | ECF Case |
| ERIC GREENBERG, an individual; ZACHYS | : | |
| WINE & LIQUOR STORE, INC., a New York | : | Hon. Barbara S. Jones |
| corporation; and ZACHYS WINE AUCTIONS, | : | |
| INC., a New York corporation. | : | |
| | : | |
| Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT GREENBERG'S MOTION TO DISMISS**

1801229

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................1

THE ALLEGATIONS OF THE COMPLAINT ........................................................1

LEGAL STANDARDS ............................................................................................3

ARGUMENT ............................................................................................................4

I.     AS A MATTER OF LAW, GREENBERG'S SETTLEMENT OFFER DOES NOT DEPRIVE THE COURT OF JURISDICTION OR "MOOT" THIS CASE. ..........................................................................4

II.    UNDER CONTROLLING LAW, KOCH'S CLAIMS ARE NOT BARRED BY ZACHYS' AUCTION CATALOGUE.........................................7

     A.    A Disclaimer In An Auction Catalogue Does Not Bar A Fraud Claim Where Material Information Was Within The Peculiar Knowledge Of The Defendants. ..............................................................8

     B.    Koch's Allegations Go Beyond A Breach Of Contract Claim And State A Separate Fraud Claim Against Greenberg.........................15

     C.    Koch States A Claim For Punitive Damages Under Contract And Tort Law.............................................................................19

III.   KOCH HAS STATED A CLAIM UNDER NEW YORK GENERAL BUSINESS LAW SECTIONS 349 AND 350....................................................20

     A.    Koch Has Pled Sufficient Facts To Show That Defendants' Deceptive Acts Were Consumer-Oriented................................................21

     B.    Koch Is Entitled To Pursue Injunctive Relief Under The Facts Pled In The Complaint. ..........................................................................24

CONCLUSION....................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### <u>Cases</u>

*ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*,
    485 F.3d 85 (2d Cir. 2007)........................................................................ 5, 6

*Abrams v. Interco, Inc.*,
    719 F.2d 23, 25-26 (2d Cir. 1983) ............................................................ 5, 6

*Ambalu v. Rosenblatt*,
    194 F.R.D. 451 (E.D.N.Y. 2000) ................................................................ 6

*AT&T Info. Sys., Inc. v. McLean Bus. Servs. Inc.*,
    175 A.D.2d 652, 572 N.Y.S.2d 582 (4th Dep't 1991) ................................. 20

*Barbara Z. v. Obradovich*,
    937 F. Supp. 710 (N.D. Ill. 1996) .............................................................. 6

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)............................................................................... 4

*Brass v. American Film Technologies, Inc.*,
    987 F.2d 142 (2d Cir. 1993)....................................................................... 16

*Bridger v. Goldsmith*,
    143 N.Y. 424, 38 N.E. 458 (1894)............................................................. 7

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996) .......................................................................... 15, 18

*Canario v. Gunn*,
    300 A.D.2d 332, 751 N.Y.S.2d 310 (2d Dep't 2002)................................... 23

*Channel Master Corp. v. Aluminium Ltd. Sales, Inc.*,
    4 N.Y.2d 403, 151 N.E.2d 833 (1958)........................................................ 17

*Christie's, Inc. v. Dominica Holding Corp.*,
    No. 05 Civ. 8728 (NRB), 2006 WL 2012607 (S.D.N.Y. Jul. 18, 2006)................... passim

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..................................................................................... 24

*Cresswell v. Prudential-Bache Sec., Inc.*,
    675 F. Supp. 106 (S.D.N.Y. 1987).............................................................. 6

**Page(s)**

*Danann Realty Corp. v. Harris*,
    5 N.Y.2d 317, 157 N.E.2d 597 (1959) ........................................................... 10

*Dangler v. New York City Off Track Betting Corp.*,
    193 F.3d 130 (2d Cir. 1999) ........................................................................... 4

*Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*,
    68 N.Y.2d 954, 502 N.E.2d 1003 (1986) ................................................... 17, 18

*Dellarussiani v. Ed Donnelly Enters., Inc.*,
    No. 2:07-CV-00253, 2007 WL 3025340 (S.D. Ohio Oct. 15, 2007) ................ 6

*DIMON Inc. v. Folium, Inc.*,
    48 F. Supp. 2d 359 (S.D.N.Y. 1999) ......................................................... 8, 9

*Donovan v. Aeolian Co.*,
    270 N.Y. 267, 200 N.E. 815 (1936) ............................................................ 16

*Foxley v. Sotheby's, Inc.*,
    893 F. Supp. 1224 (S.D.N.Y. 1995) ............................................................ 13

*FTC v. Minuteman Press*,
    53 F. Supp. 2d 248 (E.D.N.Y. 1998) ........................................................... 24

*Gant v. Wallingford Bd. of Educ.*,
    69 F.3d 669 (2d Cir. 1995) ........................................................................... 4

*Gates v. Tawry*,
    456 F. Sup. 2d 953 (N.D. Ill. 2006) ............................................................. 6

*Genesco Entertainment v. Koch*,
    593 F. Supp. 743 (S.D.N.Y. 1984) .................................................... 22, 23, 24

*Grumman Allied Industries v. Rohr Industries, Inc.*,
    748 F.2d 729 (2d Cir. 1984) ......................................................................... 12

*Holcomb v. Mortgage House, Inc.*,
    No. 6:06-cv-45-Orl-22DAB, 2006 U.S. Dist. LEXIS 94926
    (M.D. Fla. Dec. 21, 2006) ............................................................................. 6

*Holstein v. City of Chicago*,
    29 F.3d 1145 (7th Cir. 1994) ........................................................................ 6

*In re Evergreen Mut. Funds Fee Litig.*,
    423 F. Supp. 2d 249 (S.D.N.Y. 2006) .......................................................... 21

**Page(s)**

*Iqbal v. Hasty,*
    490 F.3d 143 (2d Cir. 2007)...........................................................................4

*King v. Simpson,*
    189 F.3d 284 (2d Cir. 1999)...........................................................................3

*Krantz v. Chateau Stores of Can., Ltd.,*
    256 A.D.2d 186, 683 N.Y.S.2d 24 (4th Dep't 1998) .......................................15

*Langenberg v. Sofair,*
    No. 03 Civ. 8339 (KMK) (FM), 2006 WL 3518197 (S.D.N.Y. Dec. 7, 2006) ...............19

*Lazard Freres & Co. v. Protective Life Ins. Co.,*
    108 F.3d 1531 (2d Cir. 1997)....................................................................8, 10

*McDonald v. North Shore Yacht Sales, Inc.*
    134 Misc. 2d 910, 513 N.Y.S.2d 590 (Sup. Ct. 1987)....................................25

*McKernin v. Fanny Farmer Candy Shops, Inc.,*
    176 A.D.2d 233, 574 N.Y.S.2d 58 (2d Dep't 1991)........................................15

*Mendelovitz v. Cohen,*
    37 A.D.3d 670, 830 N.Y.S.2d 577 (2d Dep't 2007)........................................16

*Metropolitan Transp. Auth. v. Triumph Adver. Prods., Inc.,*
    116 A.D.2d 526, 497 N.Y.S.2d 673 (1st Dep't 1986) .....................................15

*Murphy v. Equifax Check Servs. Inc.,*
    35 F. Supp. 2d 200 (D. Conn. 1999)...........................................................6, 7

*New York Univ. v. Continental Ins. Co.,*
    87 N.Y.2d 308, 662 N.E.2d 763 (1995).............................................16, 19, 23

*New York v. Feldman,*
    210 F. Supp. 2d 294 (S.D.N.Y. 2002)............................................................22

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
    85 N.Y.2d 20, 647 N.E.2d 741 (1995).................................................21, 22, 23

*R.H. Damon & Co., Inc. v. Softkey Software Prods., Inc.,*
    811 F. Supp. 986 (S.D.N.Y. 1993).................................................................15

*Rand v. Monsanto Co.,*
    926 F.2d 596 (7th Cir. 1991) ..........................................................................6

*Real Prop. Acquisitions, Inc. v. Christie's Inc.,*
    2005 N.Y. Misc. LEXIS 3285 (Sup. Ct. Mar. 29, 2005) .....................11, 12, 13

**Page(s)**

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.,*
    893 F. Supp. 285 (S.D.N.Y. 1995)................................................................. 19

*Rocanova v. Equitable Life Assur. Soc'y,*
    83 N.Y.2d 603, 634 N.E. 2d 940 (1994)......................................................... 15

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,*
    84 F.3d 629 (2d Cir. 1996)............................................................................ 21

*Samsung Elecs. Co., Ltd. v. Rambus, Inc.,*
    398 F. Supp. 2d 470 (E.D. Va. 2005) .............................................................. 6

*SD Protection, Inc. v. Del Rio,*
    498 F. Supp. 2d 576 (E.D.N.Y. 2007) ...................................................... 4, 14

*Securitron Magnalock Corp. v. Schnabolk,*
    65 F.3d 256 (2d Cir. 1995)............................................................................ 23

*Steinhardt Group, Inc. v. Citicorp,*
    272 A.D.2d 255, 708 N.Y.S.2d 91 (1st Dep't 2000) ......................................... 8

*Sterling Nat'l Bank & Trust Co. of New York v. Giannetti,*
    53 A.D.2d 533, 384 N.Y.S.2d 176 (1st Dep't 1976) ......................................... 8

*Stewart v. Jackson & Nash,*
    976 F.2d 86 (2d Cir. 1992)............................................................................ 17

*T.T. Exclusive Cars, Inc. v. Christie's Inc.,*
    No. 96 Civ. 1650, 1996 WL 737204 (S.D.N.Y. Dec. 24, 1996)...................... 11, 12, 13

*Tahini Invs., Ltd. v. Bobrowsky,*
    99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dep't 1984).......................................... 8

*Teller v. Hayes,*
    213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995)....................................... 23

*Tesoro Petroleum Corp. v. Holborn Oil Co.,*
    108 A.D.2d 607, 484 N.Y.S.2d 834 (1st Dep't 1985)...................................... 15

*Todd v. Pearl Woods, Inc.,*
    20 A.D.2d 911, 248 N.Y.S.2d 975 (2d Dep't 1964).......................................... 9

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.,*
    380 F. Supp. 2d 250 (S.D.N.Y. 2005).......................................................... 19

*Turkish v. Kasnetz,*
    27 F.3d 23 (2d Cir. 1994) .............................................................................. 7

**Page(s)**

*TVT Records v. Island Def Jam Music Group,*
    412 F.3d 82 (2d Cir. 2005).......................................................................... 15, 16, 17

*Walker v. Sheldon,*
    10 N.Y.2d 401 (1961) ............................................................................... 19

*Waltree Ltd. v. ING Furman Selz LLC,*
    97 F. Supp. 2d 464 (S.D.N.Y. 2000)............................................................ 20

*Warner Theatres Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co.,*
    149 F.3d 134 (2d Cir. 1998)......................................................................... 8

*Weisman v. LeLandis,*
    532 F.2d 308 (2d Cir. 1976).......................................................................... 4

*Weiss v. Fein, Such, Kahn & Shepherd P.C.,*
    No. 01 Civ. 1086(AGS), 2002 WL 449653 (S.D.N.Y. Mar. 22, 2002)............................ 6

*Word Mgmt. Corp. v. AT&T Info. Sys., Inc.,*
    135 A.D.2d 317, 525 N.Y.S.2d 433 (3d Dep't 1988)........................................ 16

## Statutes

N.Y. Gen. Bus. Law §§ 349(a), (h) and 350-e(3) ........................................... 20

N.Y. Gen. Bus. Law § 349(h) ........................................................................... 24

## Rules

Fed. R. Civ. Proc. 68............................................................................................... 4, 5

Fed. R. Civ. Proc. 12(b)(6) ................................................................................. 3, 4

## Other Authorities

14 N.Y. Prac., *New York Law of Torts* § 1:70 (2008)................................................ 17

60 N.Y. Jur. 2d, *Fraud and Deceit* § 206 (1987)......................................................... 17

## INTRODUCTION

Plaintiff William I. Koch ("Koch"), by and through his undersigned counsel, respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss ("Motion") filed by defendant Eric Greenberg ("Greenberg").

Greenberg's Motion to Dismiss asserts numerous grounds for dismissal, all of which are based upon misreading the complaint in this action (the "Complaint") or applicable law. The Motion should be denied.

Greenberg claims that his offer to reimburse Koch robs this Court of jurisdiction. Not so. Even if Koch could not recover more damages than reflected in Greenberg's settlement offer (which is not the case), Greenberg's informal settlement offer, without a formal offer of judgment, does not moot this case.

Greenberg claims that Koch's reliance on the auction catalogue's descriptions of the wine that was being sold was unreasonable because the catalogue also contained a disclaimer and a suggestion that the bidders inspect the wine. This argument is without merit. It does not apply in cases of intentional fraud. Additionally, reliance is reasonable—despite a catalogue disclaimer—where, as here, the plaintiff could not ascertain the true facts without great difficulty or expense. *See Christie's, Inc. v. Dominica Holding Corp.*, No. 05 Civ. 8728 (NRB), 2006 WL 2012607 (S.D.N.Y. Jul. 18, 2006). Moreover, here there were material facts known to Greenberg that an inspection would not show—for example, two noted wine experts concluded Greenberg's cellar contained counterfeit wine and Greenberg complained to Royal Wine that it had sold him counterfeit wine, the very wine that was being auctioned at Zachys.

## THE ALLEGATIONS OF THE COMPLAINT

During the late 1990s, Eric Greenberg amassed one of the largest wine cellars in the United States. Complaint ¶ 13. When he decided to sell part of his collection, he approached

Sotheby's to handle the sale. *Id.* ¶¶ 15, 16. Sotheby's sent Serena Sutcliffe, the head of its wine department and one of the world's leading authorities on wine, to inspect Greenberg's collection. *Id.* ¶¶ 3, 16. After her review, she concluded that some of the bottles of wine were counterfeit and told Greenberg. *Id.* ¶¶ 4, 16. Sotheby's refused to auction Greenberg's counterfeit wine. *Id.* ¶¶ 4, 16. Greenberg then retained William Edgerton, a noted wine expert. *Id.* ¶ 17. Edgerton inspected certain bottles in Greenberg's cellar and confirmed Sutcliffe's conclusion that there was counterfeit wine in Greenberg's cellar. *Id.* ¶¶ 4, 17.

After these inspections, Greenberg threatened claims against Royal Wine Merchants, Ltd. ("Royal Wine"), which had sold him the wine. *Id.* ¶ 17. Exactly how that dispute was resolved is currently unknown to Koch. Thereafter, Greenberg injected counterfeit wine from his cellar, wine that he bought from or with the assistance of Royal Wine, into the marketplace. *Id.* ¶ 39. He consigned wine to Zachys to sell at an auction on October 28, 2005—including wine that Edgerton had identified as counterfeit. *Id.* ¶¶ 25, 41. (Greenberg contends he consigned 17,000 bottles for sale at this auction. Greenberg Mem. at 2.) Prior to Zachys' auction, Koch received and read a catalogue describing the wine that was being offered for sale. *Id.* ¶ 41. The descriptions of the wines, by their nature, constituted representations that the wine being auctioned was genuine. *Id.* Koch relied on the catalogue in deciding which wines he wanted to bid on at the auction. *Id.* He had no reason to doubt the statements in the catalogue concerning the identity and the vintage of the wine. *Id.* Koch purchased many bottles at this auction, including counterfeits that came from Greenberg's cellar. Koch believed that the wine he was buying was genuine. *Id.* ¶¶ 40, 42, 64. The catalogue was widely disseminated and others participated in the auction. Koch did not buy all of Greenberg's 17,000 bottles. There is a high

probability that other participants in the auction also bought counterfeit wine from Greenberg. *Id.* ¶¶ 7, 8, 34, 40, 41.

Greenberg made his representations, through Zachys, with knowledge of their falsity. *Id.* ¶ 43. Greenberg's misrepresentations include statements that the wines he was offering for sale to the public were genuine when they were not, *id.* ¶ 61, and not disclosing that two experts had confirmed that there was counterfeit wine in his collection. *Id.* ¶ 28.

In 2007, Koch hired Edgerton to inspect Koch's cellar. *Id.* ¶ 24. Edgerton was surprised to find some of Greenberg's bottles, including a counterfeit bottle, in Koch's collection. *Id.* It was only then that Koch discovered the problems with the wine he had purchased. Koch did communicate with Greenberg prior to filing this suit, but Greenberg would not tell Koch complete and accurate information about where the counterfeit wine came from and the circumstances of Greenberg's dealings with Royal Wine in particular. *Id.* ¶¶ 27-38.

Koch filed this action alleging causes of action for fraud and violation of New York's consumer protection statutes against Greenberg. After the lawsuit was filed, Greenberg offered to settle by reimbursing Koch for those counterfeit bottles listed in the Complaint, provided that Koch return the bottles to Greenberg. Greenberg specifically told Koch that Greenberg's plan was to take the counterfeit wine and "use these bottles in a charity wine tasting for a [charity] in New York City." Declaration of Arthur J. Shartsis in Support of Motion to Dismiss, Ex. A (Greenberg letter to Koch). Koch rejected Greenberg's offer and returned his check. Declaration of Bruce A. Wessel in Opp. to Greenberg Mot. ¶¶ 3, 4.

## LEGAL STANDARDS

Motions to dismiss are governed by a "generous standard." *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). In deciding a motion to dismiss under Rule 12(b)(6), a court must

1801229

accept all material facts alleged in the complaint as true, and must "view all reasonable inferences that can be drawn . . . in the light most favorable to the plaintiff." *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999) (citations and internal quotations omitted); *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995). The court's inquiry is not "whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed[,] it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant*, 69 F.3d at 673 (quoting *Weisman v. LeLandis*, 532 F.2d 308, 311 (2d Cir. 1976)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it meets the "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007); *see also Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Thus, if the relevant facts are uncertain, unknown, or disputed, a motion to dismiss is inappropriate, as "[m]ore information is needed . . . , which discovery could very well provide," and the plaintiff "could conceivably present facts" that would establish the claim. *SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576, 583 (E.D.N.Y. 2007). Thus, dismissal under Rule 12(b)(6) is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Dangler*, 193 F.3d at 138.

## ARGUMENT

## I.    AS A MATTER OF LAW, GREENBERG'S SETTLEMENT OFFER DOES NOT DEPRIVE THE COURT OF JURISDICTION OR "MOOT" THIS CASE.

Greenberg's position that his settlement offer causes this court to lose subject matter jurisdiction over this case is inconsistent with Second Circuit law. A formal offer of judgment under Federal Rule of Civil Procedure 68 ("Rule 68"), tendering as much as the plaintiff could

1801229                                                    - 4 -

indisputably claim to recover, may result in a case's resolution through an entry of judgment. *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 94-96 (2d Cir. 2007) ("*ABN Amro*"); *Abrams v. Interco, Inc.*, 719 F.2d 23, 25-26, 32-34 (2d Cir. 1983). But Greenberg's offer to settle is not an offer of judgment under Rule 68; it is a settlement offer in which Greenberg seeks to recover the counterfeit wine and offer it to the public yet again. Additionally, under the allegations of his Complaint, Koch is entitled to more than the offered reimbursement of the purchase price of the counterfeit wines listed in the Complaint.

The Second Circuit recently examined this issue *ABN Amro*. In *ABN Amro*, the district court granted partial summary judgment for the defendants, ruling that their liability was limited to $50 each. 485 F.3d at 89. Subsequently, the defendants offered to have judgment entered against them and tendered $50 each to the plaintiffs, but the plaintiffs rejected the offer. *Id*. The district court then ruled that, because the defendants had tendered the maximum amount plaintiffs could recover, there was no longer a case or controversy as required by Article III of the Constitution. *Id*. The Second Circuit disagreed. It held that a justiciable case or controversy remained and reversed the district court's decision. *Id*. at 96.

The *ABN Amro* court discussed *Abrams v. Interco, Inc.*, 719 F.2d 23 (2d Cir. 1983), a case relied on by Greenberg. Greenberg Mem. at 6. In *Abrams*, the Second Circuit found that a claim was moot and the court lacked subject matter jurisdiction where the defendant had made a formal offer of judgment under Rule 68. 719 F.2d at 25-26. The offer was for all of plaintiff's claimed damages, including attorneys' fees and costs. *Id*. at 25-26. The *ABN Amro* court distinguished *Abrams* on the basis that in *Abrams* the "defendants tendered every cent (and more) to which the plaintiffs claimed entitlement." 485 F.3d at 96. In contrast, the *ABN Amro* plaintiffs, like Koch here, claimed entitlement to more than the defendants had offered. *Id*.

1801229

Thus, under *ABN Amro*, a court does not lose subject matter jurisdiction simply because a defendant makes a settlement offer.

Greenberg relies on cases from the Seventh Circuit. *Holstein v. City of Chicago*, 29 F.3d 1145 (7th Cir. 1994); *Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir. 1991); *Gates v. Tawry*, 456 F. Sup. 2d 953 (N.D. Ill. 2006); *Barbara Z. v. Obradovich*, 937 F. Supp. 710 (N.D. Ill. 1996). But, as courts have noted, the Seventh Circuit has taken a different approach on the issue of mootness in these circumstance than the Second Circuit. *Dellarussiani v. Ed Donnelly Enters., Inc.*, No. 2:07-CV-00253, 2007 WL 3025340, at *7 (S.D. Ohio Oct. 15, 2007). The Second Circuit requires a formal offer of judgment under Rule 68 leading to entry of judgment; the Seventh Circuit simply dismisses cases without an entry of judgment. *Id.* Seventh Circuit law does not apply here.

Moreover, the Second Circuit cases cited by Greenberg are distinguishable. In *Abrams, supra*, *Ambalu v. Rosenblatt*, 194 F.R.D. 451 (E.D.N.Y. 2000), and *Weiss v. Fein, Such, Kahn & Shepherd P.C.*, No. 01 Civ. 1086(AGS), 2002 WL 449653 (S.D.N.Y. Mar. 22, 2002), the defendants made a formal offer of judgment pursuant to Rule 68. Greenberg has not made an offer of judgment here. The court in *Cresswell v. Prudential-Bache Sec., Inc.* ordered the defendant to submit a proposed judgment and order in resolving the case. 675 F. Supp. 106, 108 (S.D.N.Y. 1987). In *Holcomb v. Mortgage House, Inc.*, No. 6:06-cv-45-Orl-22DAB, 2006 U.S. Dist. LEXIS 94926 (M.D. Fla. Dec. 21, 2006), the plaintiff accepted the defendants' offer. *Id*. at *3. And *Murphy v. Equifax Check Servs. Inc.*, 35 F. Supp. 2d 200 (D. Conn. 1999) simply fails to conform with Second Circuit law and has been criticized for that reason. *See Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 398 F. Supp. 2d 470, 485-86 (E.D. Va. 2005) ("Except for *Murphy*, there appears to be no authority for the proposition that a plaintiff can be compelled to accept an

offer of settlement absent a formal offer of judgment.  And, *Murphy* simply does not explain how

that can be done. . . .  *Murphy* is an outrider that has attracted no following . . . .").  In short,

Greenberg's settlement offer, contingent upon recovering the counterfeit wine, even if it *did*

equal Koch's maximum recovery (which it does not), does not "moot" this case.

## II.    UNDER CONTROLLING LAW, KOCH'S CLAIMS ARE NOT BARRED BY ZACHYS' AUCTION CATALOGUE.

Greenberg tries to limit his liability to no more than the purchase price of his counterfeit

bottles by pointing to language in Zachys' auction catalogue, claiming that Koch agreed that his

sole remedy is a refund of money.  Greenberg Mem. at 2.  But Greenberg runs afoul of the time

honored principle that "[a] rogue cannot protect himself from liability for his fraud by inserting a

printed clause in his contract."  *Bridger v. Goldsmith*, 143 N.Y. 424, 428, 38 N.E. 458 (1894);

*see also Turkish v. Kasnetz*, 27 F.3d 23, 27-28 (2d Cir. 1994) ("[P]arties cannot use contract

limitation of liability clauses to shield themselves from liability for their own fraudulent

conduct.  . . . [This] applies equally to the limitation of liability and to the exclusion of

liability.").  Disclaimers and limitations of liability clauses—such as those in the Zachys

catalogue—do not protect defendants from claims of intentional wrongdoing.

Greenberg seeks refuge in cases holding that, where a plaintiff could easily have

discovered the facts, a disclaimer of specific representations regarding those facts vitiates

reasonable reliance—a necessary element of any fraud claim.  He also asserts that, at most, he

breached a contract—and Koch's fraud claim is merely a disguised breach of contract claim.

Both arguments fail as a matter of law, in part because Greenberg both withheld and

misrepresented material facts indicating that his collection included counterfeit wines.  Reliance

on representations of facts within the peculiar knowledge of the party making them is reasonable,

in spite of any disclaimers, and the concealment of material facts constitutes fraud.  In short,

Greenberg's fraud vitiates the very contract he tries to hide behind.  *Sterling Nat'l Bank & Trust Co. of New York v. Giannetti*, 53 A.D.2d 533, 533, 384 N.Y.S.2d 176 (1st Dep't 1976).

> **A.    A Disclaimer In An Auction Catalogue Does Not Bar A Fraud Claim Where Material Information Was Within The Peculiar Knowledge Of The Defendants.**

The disclaimers contained in Zachys' auction catalogue do not vitiate Koch's fraud claims, because the representations in question—the lack of authenticity of the wines—were particularly within Greenberg's knowledge.  Koch's reliance on the representations was reasonable in spite of Zachys' disclaimer.  *See Steinhardt Group, Inc. v. Citicorp*, 272 A.D.2d 255, 256, 708 N.Y.S.2d 91 (1st Dep't 2000); *Tahini Invs., Ltd. v. Bobrowsky*, 99 A.D.2d 489, 490, 470 N.Y.S.2d 431 (2d Dep't 1984); *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997); *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 368 (S.D.N.Y. 1999); *Christie's, Inc. v. Dominica Holding Corp.*, No. 05 Civ. 8728 (NRB), 2006 WL 2012607, at *4 (S.D.N.Y. Jul. 18, 2006) ("*Dominica*").

This rule applies not only when the facts are in the exclusive possession of the seller, but also where it would be unreasonably difficult or expensive for the buyer to ascertain their true state.  *Warner Theatres Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998) ("[T]he peculiar-knowledge exception is designed to address circumstances where a party would face high costs in determining the truth or falsity of an oral representation . . . and those costs are sufficiently great to render reliance upon the representation reasonable" (citations omitted)); *DIMON Inc.*, 48 F. Supp. 2d at 368 (doctrine applies "where the truth theoretically might have been discovered, though only with extraordinary effort or great difficulty").  Where the facts were within the seller's peculiar knowledge and the seller misrepresented them, the exception applies even where the facts are a matter of public record and could have been

discovered by a review of the record. *Todd v. Pearl Woods, Inc.*, 20 A.D.2d 911, 911, 248 N.Y.S.2d 975 (2d Dep't 1964).

Applicability of the peculiar knowledge exception depends upon two factors: (1) the sophistication of the buyer and (2) the accessibility of the underlying information. *DIMON Inc.*, 48 F. Supp. 2d at 368.  Even though Koch is a major collector, he does not have the expertise to determine a wine's authenticity by looking at the bottle.  Indeed, as Koch's Complaint states, it was not until he hired wine expert William Edgerton to review the wines in his cellar that he discovered that the wines that he had purchased at Zachys' auction were fake.  Complaint ¶¶ 17, 24-26.  Information that these wines were counterfeit was not reasonably accessible to buyers at this auction.  Greenberg's own arguments prove this point.  He argues that he was selling 17,000 bottles of wine and could not possibly check their authenticity, so perhaps some number of counterfeit bottles were offered for sale.  Greenberg's excuse for what happened here is that the seller cannot be expected to keep track of his own counterfeit wine, but somehow buyers are supposed to be able to do so.  That argument defies logic.  As between Greenberg, who knew there was counterfeit wine in his collection, and the prospective buyers, who did not, the legal burden was on Greenberg to disclose the truth and not on the prospective buyers to discover it. This is particularly true where Greenberg had extensive information about the counterfeit bottles in his collection.  He had information from Sutcliffe and Edgerton and from Royal Wine.  And Greenberg knew that he had asked Zachys to authenticate the wine.  None of this information was known to prospective bidders on the collection.

     **1.**    **An Auction Bidder, Who Could Not Easily Have Discovered The True Facts, Is Justified In Relying On Statements In An Auction Catalogue.**

*Dominica* applied the "peculiar knowledge" exception in the context of auction-house catalogue disclaimers. *Dominica*, 2006 WL 2012607, at *4.  In that case, which concerned the

purchase at auction of a set of Andy Warhol prints, the buyer personally attended the auction, but did not conduct a detailed examination of the prints in question. *Id.* at *1. Instead, he relied on the auction catalogue, which stated that the prints were "taped" to their support—a standard practice in the trade that allows removal from particular frames without damage to the print. *Id.* However, he discovered after purchasing the prints that they were also *glued* to their supports, which made them significantly less valuable. *Id.* The buyer refused to pay for the prints, and, when Christie's sued for breach of contract, the buyer cross-claimed for fraud. *Id.* at *2. Like Greenberg here, Christie's claimed that the buyer's reliance on its catalogue descriptions was not reasonable in light of its disclaimers and invitation to inspect before bidding.

The court reasoned that, although "a specific disclaimer normally bars" a fraud claim, "an exception to this rule exists where the misrepresented facts are peculiarly within the knowledge of the seller." *Id* at *4; *see also Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 322, 157 N.E.2d 597 (1959) (limiting the use of contractual disclaimers to preclude fraud claims to situations where "the facts represented are not matters peculiarly within the party's knowledge"). While the *Dominica* Court acknowledged that the buyer had not engaged in the "kind of careful examination typically required by courts before a buyer can claim that the defects were peculiarly within the seller's knowledge," *Dominica*, 2006 WL 2012607, at *5 (citing *Lazard Freres*, 108 F.3d at 1543), the court reasoned that "we cannot conclude as a matter of law that [the buyer] could have undertaken a sufficiently thorough inspection of the [artwork] without extraordinary difficulty, or that even if he had, he necessarily would have detected the flaws at issue." *Id.* Thus, for the purposes of the plaintiff's dispositive motion, the court rejected the plaintiff's argument that the defendant's failure to conduct a more detailed inspection barred the defendant's claim. *Id.*

    **2.    Even If Koch Had Sent Experts To Inspect The Wines, He Could Not Have Discovered The True Facts.**

Greenberg argues that Koch was given an "opportunity and invitation to inspect" the wine bottles prior to purchase. Greenberg Mem. at 16. But Greenberg has provided no basis for concluding that a mere visual inspection of bottles in an auction showroom would have determined the authenticity of the wines at issue or revealed that experts had previously examined the bottles and found them counterfeit. Additionally, there is no indication in the catalogues (and Greenberg does not assert) that Koch would have been permitted to test the bottles, expose the cork, or siphon off some of the wine itself, in order to determine the authenticity of the wine. Because wine, even old wine, is a commodity compared to a single piece of art, the claimed "right to inspect" does not comport with the realities of the marketplace. Instead, buyers customarily rely on a catalogue's statement that a 1921 Petrus is, in fact, a 1921 Petrus.

Even *if* Koch had been permitted to bring experts to "inspect each bottle before bidding," Greenberg Mem. at 14, this would have been unreasonably difficult and expensive. Greenberg offered 17,000 bottles for auction. Greenberg Mem. at 2. Auctions of wine typically involve many bottles. An inspection of such a great number of bottles would be significantly more expensive and time consuming than an inspection of one or two pieces of art, as was the case in the majority of the auction cases on which Greenberg relies. *See*, *e.g.*, *Real Prop. Acquisitions, Inc. v. Christie's Inc.,* 2005 N.Y. Misc. LEXIS 3285, at *8 (Sup. Ct. Mar. 29, 2005) (one antique sideboard); *T.T. Exclusive Cars, Inc. v. Christie's Inc.,* No. 96 Civ. 1650, 1996 WL 737204, at *1 (S.D.N.Y. Dec. 24, 1996) (one historic car). On this record, there is no basis for concluding that Koch could have determined the authenticity of the wines without undergoing the "extraordinary difficulty" of examining hundreds or thousands of bottles of wine to determine whether they

were as they were represented to be. *Dominica*, 2006 WL 2012607, at *5. Nor on the record

before the Court is there any evidence that wine is inspected before auction by prospective

buyers.

Additionally, even if Koch had his experts examine the wines, he could not have learned

of Sutcliffe's and Edgerton's prior inspections and conclusions or the dealings between

Greenberg and Royal wine. Complaint ¶¶ 3, 4, 16, 17, 28, 43. These very material facts were

within Greenberg's knowledge and were not disclosed.

### 3.    Greenberg's Authority Does Not Compel A Different Result.

The cases cited by Greenberg are inapposite. For example, the "access to critical

information" enjoyed by the "sophisticated businessmen" in *Grumman Allied Industries v. Rohr

Industries, Inc.* included a 15-month-long investigation, prior to the purchase of a bus

manufacturing company at a cost of $55 million, which employed many "seasoned negotiators,

sophisticated engineers, experienced executives" and others, who repeatedly toured the

manufacturing plants in question and had unrestricted access to all personnel and records.

*Grumman*, 748 F.2d 729, 730-31 (2d Cir. 1984). The 85-page final purchase contract included,

among many written representations, a disclaimer of any oral representations not set forth in the

written contract. *Id*. In dismissing the claim in *Grumman*, therefore, the Second Circuit had

before it a very different set of facts than those at issue in this case.

Similarly, although both *T.T. Exclusive Cars,* 1996 WL 737204, and *Real Property

Acquisitions*, 2005 N.Y. Misc. LEXIS 3285, are cases which involve goods purchased at auction,

both cases involve defects that would clearly have been discoverable by the plaintiff upon

inspection.[1]  In *T.T. Exclusive Cars*, the defects complained of were that the car "had mileage in excess of 100,000 miles, had been repainted, had new hoses, screw clamps, brush touch-up under the hood, and a creased and dirty interior."  1996 WL 737204, at *1.  In *Real Property Acquisitions*, the plaintiff complained that the damage and restoration work to a piece of furniture purchased was "more extensive than he had understood it to be," despite the fact that a Christie's employee had specifically told the plaintiff, prior to the purchase, that "rumors [of damage to] the sideboard 'may' be true."  2005 N.Y. Misc. LEXIS 3285, at *20.  Here, in contrast, there were no disclosures regarding the suspicious nature of the wine.

Moreover, in both of those cases, the disclaimers were far more extensive than those contained in the Zachys catalogue, and each plaintiff was far more "on notice" of the defects complained of than Koch had reason to be.  The plaintiff in *Real Property Acquisitions* admitted to having received, prior to bidding, specific information from a Christie's employee about the damage and restoration to the furniture.  *Id*.  And in *T.T. Exclusive Cars*, the "as is" clause in the auction not only disclaimed *in detail* the defects complained of by the plaintiff, but also disclosed *expressly* that Christie's had not inspected the car prior to auction, stating:

> Buyers are specifically warned that any vehicles sold as such may well have parts replaced and paint renewed or be made up of parts from other vehicles the condition of which may be difficult to establish. ***Christie's has to rely on information as to date, condition and authenticity provided by the seller, and cannot undertake a level of inspection of the vehicle to establish whether or not the vehicle corresponds to any relative description of condition in the catalogue***.

---

[1] In *Foxley v. Sotheby's, Inc.*, 893 F. Supp. 1224 (S.D.N.Y. 1995), Greenberg Mem. at 15, 17, the court denied the plaintiffs' claims because the facts that they asserted as fraudulent misrepresentations were "not matters peculiarly within the [defendant]'s knowledge."  *Id*. at 1229.  Because the plaintiffs had equal access to the facts, the court enforced the auction house's disclaimer, precluding the plaintiff's fraud claim.  *Id*. at 1230.  Here, unlike *Foxley*, Greenberg hid facts that were not reasonably available to Koch.

1996 WL 737204, at *3 (emphasis added).  Here, Zachys' disclaimer was far less specific and

does not warn that Zachys failed to inspect the wines.[2]  *See* Ex. A to Greenberg Decl. in Support

of Mot. to Dismiss ("Greenberg Decl.") (Zachys' catalogue).  Simply put, Koch had no reason to

suspect that the offered wines were anything but genuine or that Greenberg was hiding his

peculiar knowledge of facts that, if known, would have dissuaded Koch from bidding on the

wines.

> **4.    Dismissal Of This Claim Upon A Motion To Dismiss Is Inappropriate, Since, Taking All Factual Allegations As True, Koch's Claim Of Fraud Is Viable As A Matter Of Law.**

As demonstrated above, the Complaint alleges sufficient facts to state a viable fraud

claim.  To the extent that relevant facts—such as whether or not Koch would have been able to

discover the defects in the wine, and its prior inspection and rejection by two separate experts, by

the type of inspection permitted by Zachys—are uncertain, dismissal of the Complaint is

inappropriate at this stage.  "More information is needed . . . , which discovery could very well

provide," and, after such discovery is conducted, Koch "could conceivably present facts that

would establish" the claim.  *SD Protection, Inc.*, 498 F. Supp. 2d at 583.

Thus, the *Dominica* court, in denying the plaintiff's pre-discovery motion for summary

judgment, emphasized that, on the record, it could not "conclude as a matter of law that [the

buyer] could have undertaken a sufficiently thorough inspection . . . without extraordinary

difficulty, or that [such an inspection] would have detected the flaws at issue."  *Dominica*, 2006

WL 2012607, at *5.  Here, similarly, on the face of the pleadings, there is no evidence that Koch

could have undertaken an inspection that would have revealed that Greenberg's wines were

counterfeit.  Greenberg himself bought these bottles believing them to be genuine and, like

---

[2] Zachys now apparently asserts that it did not conduct such a verification process, while Greenberg claims that Zachys did verify the wine.  *See* Complaint ¶ ¶ 28, 32.

Koch, became upset when he learned otherwise. And Greenberg, like Koch, looked to the seller
(in Greenberg's case, Royal Wine) to address the matter. Complaint at ¶¶ 17, 19, 33, 38.
Discovery will show exactly what Greenberg learned from Royal Wine about the source of the
counterfeit wine, and whether Koch could have detected the flaws in the wine through
inspection.

> **B.    Koch's Allegations Go Beyond A Breach Of Contract Claim And State A
> Separate Fraud Claim Against Greenberg.**

Greenberg's attempt to dismiss Koch's fraud cause of action as no more than "a garden-
variety breach of contract action" ignores both the substance of Koch's complaint and applicable
law. Greenberg Mem. at 23. The Complaint does not merely allege that the wines Koch
obtained from Greenberg were counterfeit; its gravamen is that Greenberg *knew* the bottles had
been previously deemed counterfeit, but he nevertheless offered them at auction as genuine.

Greenberg relies on the premise that a fraud claim based on a secret intent not to perform
a future contractual promise, absent misrepresentations "collateral or extraneous to the contract,"
is merely a breach of contract claim. *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82,
91 (2d Cir. 2005).[3] This rule does not apply where, as here, a plaintiff purchased an item

---

[3] Greenberg's authority is inapposite. In every case, the defendant had expressed his intent to
perform future contractual obligations. Upon the defendants' subsequent failure to perform, the
plaintiffs claimed the promise of performance, without intent to perform, was an act of fraud as
well as a breach of contract. *R.H. Damon & Co., Inc. v. Softkey Software Prods., Inc.*, 811 F.
Supp. 986, 989-90 (S.D.N.Y. 1993) (option agreement to buy stock in the future); *Krantz v.
Chateau Stores of Can., Ltd.*, 256 A.D.2d 186, 186, 683 N.Y.S.2d 24 (4th Dep't 1998)
(agreement to pay future bonus); *Metropolitan Transp. Auth. v. Triumph Adver. Prods., Inc.*, 116
A.D.2d 526, 526, 497 N.Y.S.2d 673 (1st Dep't 1986) (contract to print maps); *Tesoro Petroleum
Corp. v. Holborn Oil Co.*, 108 A.D.2d 607, 607, 484 N.Y.S.2d 834 (1st Dep't 1985) (contract to
perform future acts); *McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 235, 574
N.Y.S.2d 58 (2d Dep't 1991) (promise to hire plaintiff and sell him ownership interest);
*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 14 (2d Cir. 1996)
(agreement for collection services); *Rocanova v. Equitable Life Assur. Soc'y*, 83 N.Y.2d 603, 634
N.E. 2d 940 (1994) (disability insurance contract); *TVT Records*, 412 F.3d at 85 (agreement to
(continued…)

because the defendant concealed material information that, if known by the plaintiff, would have lessened the value of the item. *Id*. at 92; *see also Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 151-52 (2d Cir. 1993) (fraud cause of action valid where broker concealed from buyer that securities in question were encumbered because buyer likely would not have bought the securities had he known of the encumbrance); *Donovan v. Aeolian Co.*, 270 N.Y. 267, 200 N.E. 815 (1936) (fraud claim stated where piano salesman failed to disclose that piano was used and rebuilt when advertisement gave impression that it was new).

Here, as in *Brass* and *Donovan*, Koch's fraud claim is not based on any undisclosed intent by Greenberg not to perform his future obligations arising under the auction agreement (to deliver the wines once the bidders paid for them). Rather, as the Complaint alleges, Greenberg did not disclose to those members of the public who were interested in bidding on his wines either that Sotheby's experts had already examined those wines and rejected them as potentially counterfeit, or that the wines bore indicia of inauthenticity. Complaint ¶¶ 28, 43, 61. Greenberg hid these facts from bidders, including Koch, so as not to dissuade them from bidding on his wines. *Id*. ¶¶ 63, 65.

Further, allegations of affirmative misrepresentations of fact suffice to state a fraud claim even where it is related to a contract. *Word Mgmt. Corp. v. AT&T Info. Sys., Inc.*, 135 A.D.2d 317, 320-21, 525 N.Y.S.2d 433 (3d Dep't 1988) (affirming denial of seller's motion for summary judgment because allegations that seller's representative made intentionally or carelessly false statements about the nature of the article offered for sale, and that plaintiff was induced to rely

---

produce music album); *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 314, 662 N.E.2d 763 (1995) (commercial insurance contract); *Mendelovitz v. Cohen*, 37 A.D.3d 670, 670, 830 N.Y.S.2d 577 (2d Dep't 2007) (joint venture agreement). These cases do not control here, where the fraud alleged is a misrepresentation of existing facts preceding the purchase—not the seller's intent not to perform.

on these statements in deciding to purchase, sufficiently stated fraud claim); *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (representations of present fact give rise to a separate fraud claim); *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956, 502 N.E.2d 1003 (1986) (representation of present fact that induced contract was collateral thereto and sufficed for separate fraud claim); *Channel Master Corp. v. Aluminium Ltd. Sales, Inc.*, 4 N.Y.2d 403, 407, 151 N.E.2d 833 (1958) (false statement of existing fact permits recovery under fraud theory).  It "'is elementary that where a contract or transaction was induced by false representations, the representations and the contract are distinct and separable.'" *Stewart*, 976 F.2d at 88-89 (quoting 60 N.Y. Jur. 2d, *Fraud and Deceit* § 206 (1987)).

Here, the Complaint alleges sufficient factual misrepresentations "collateral or extraneous to the contract" to survive a motion to dismiss.  *TVT Records*, 412 F.3d at 91.[4]  For instance, Greenberg represented to Zachys "that the wines he was offering for sale to the public, including those ultimately purchased by Koch, were genuine when they were not."  Complaint ¶ 61.  Further, Zachys' 2005 auction catalogue contained implicit representations (by Zachys as Greenberg's conduit) that the wine being auctioned was genuine and described accurately.  Complaint ¶ 41.  Such representations were either knowingly false—that is, Greenberg knew his wines had failed two prior expert examinations—or made in disregard of their indicia of inauthenticity.  *Id.* ¶¶ 4, 16, 17.  Specifically, this catalogue falsely represented one of Greenberg's fake bottles as being a Chateau Latour 1928, and described it as "[a] famously tannic

---

[4] Even though certain of the defendants' misrepresentations were set forth in the auction catalogue, that does not defeat the "collateral or extraneous" requirement.  First, the catalogue was circulated to the public, including Koch, long before Koch bought the wines.  Second, "[t]he recital of a fact in a written contract . . . calculated to convey a misleading impression under the circumstances would be considered actionable misrepresentation."  14 N.Y. Prac., *New York Law of Torts* § 1:70 (2008).

wine, yet it's now mellowed wonderfully." *Id.* ¶ 44.  The catalogue made similar

misrepresentations of existing facts about Greenberg's wines alleged to be Chateau Lafleur 1921,

Chateau Petrus 1928, Chateau Lafite 1811, Chateau Lafite Rothschild 1870, and Chateau Petrus

1921.  *Id.* ¶¶ 45-50.

       Greenberg also claims that Koch's fraud claim cannot survive without alleging special

damages.  First, special damages is only an alternative to the collateral factual misstatement

requirement where the alleged fraud is predicated on an intent not to perform.  *Bridgestone/*

*Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) ('intent not to

perform' fraud can be based on a special relationship, collateral misrepresentations, *or* special

damages).  Here, Koch's fraud claim is not based on an intent not to perform, *and* it alleges

misrepresentations extraneous to the agreement.  Second, the measure of damages for fraudulent

inducement is "indemnity for [the] loss suffered through the inducement."  *Deerfield*, 68 N.Y.2d

at 1004 (quotes and citation omitted).  The Complaint's allegations make clear that, as a result of

Koch's reliance on Greenberg's misrepresentations, Koch later had to hire an expert to determine

whether or not Greenberg's bottles were authentic, Complaint ¶ 24, and he is now saddled with

storage and disposal costs for Greenberg's fake bottles.  *See*, *e.g.*, *Deerfield*, 68 N.Y.2d at 1004-

1005 (storage fees and disposal costs for mislabeled goods are proper damages under fraudulent

inducement claim).  Under the *Deerfield* standard, Koch will be able to show special reliance

damages.

       Greenberg's attempt to dismiss Koch's fraud claim on the basis that it is only a disguised

breach of contract claim is legally incorrect and ignores the allegations of the Complaint itself.

Greenberg's motion to dismiss on this ground should be denied.

1801229

### C.    Koch States A Claim For Punitive Damages Under Contract And Tort Law.

Koch has pleaded facts sufficient to sustain punitive damages for his fraud claim.
Greenberg tries to apply a standard—egregious conduct directed at the public at large—that
applies to claims arising out of a breach of contract.  *See New York Univ. v. Continental Ins. Co.*,
87 N.Y.2d 308, 315-16, 662 N.E.2d 763 (1995) (breach of contract remedy includes punitive
damages where defendant's conduct is "part of a pattern directed at the public generally").  Here,
because the fraud alleged occurred before the purchase, Koch need not prove a public wrong to
recover punitive damages.  *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 265
(S.D.N.Y. 2005); *Langenberg v. Sofair*, No. 03 Civ. 8339 (KMK) (FM), 2006 WL 3518197, at
*4-*5 (S.D.N.Y. Dec. 7, 2006) ("[T]here was no contractual relationship whatsoever until
[plaintiff] had been fraudulently induced to enter into one.  For this reason, [plaintiff] may
recover punitive damages without establishing a public wrong.").  More fundamentally, the facts
pleaded in the Complaint support both elements of Greenberg's standard.

First, Greenberg's fraudulent conduct was directed at the public because it involved
consignment of 17,000 bottles of wine for public auction, Greenberg Mem. at 2, and auction
catalogues were widely distributed to the public.[5]  Complaint ¶ 41.  Second, Greenberg's conduct
was egregious because he had been told by experts prior to the auction that some of the wine he

---

[5] Additionally, Greenberg's cases identify the importance of deterrence as a reason for punitive
damages, stating that, "'punitive damages have been allowed . . . not only to punish the defendant
but to deter him, as well as others who might otherwise be so prompted, from indulging in
similar conduct in the future. . .'" *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F.
Supp. 285, 291-92 (S.D.N.Y. 1995) (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 404 (1961)).
Here, deterrence is especially relevant because many of the auction participants who are potential
victims of Greenberg's fraud will likely never expend the resources to determine whether the
wine they bought is genuine.  Thus the only way that Greenberg's conduct will be adequately
deterred is through an award of punitive damages.

wished to consign was counterfeit. *Id.* ¶¶ 4-9.  Without disclosing these facts, Greenberg offered his 17,000 bottles for sale. *Id.* ¶ 28.

Greenberg attempts to downplay his culpability by pointing to his refund offer.  But the mere fact that Greenberg offered to refund Koch's purchases after being sued hardly suffices to vitiate his moral culpability any more than a bank robber is absolved of liability if he or she offers to return stolen funds after he is caught.  Moreover, Greenberg does not say that he has made efforts to locate other buyers who may have purchased counterfeit wine at this auction and offered similar settlements to them.

At the very least, Greenberg's culpability is a question of fact that cannot be decided on a motion to dismiss.  *See AT&T Info. Sys., Inc. v. McLean Bus. Servs. Inc.*, 175 A.D.2d 652, 653, 572 N.Y.S.2d 582 (4th Dep't 1991) ("Whether plaintiff's [fraudulent] conduct was so reprehensible as to warrant [punitive] damages is a question of fact to be determined at trial." (citations omitted)); *Waltree Ltd. v. ING Furman Selz LLC*, 97 F. Supp. 2d 464, 470 (S.D.N.Y. 2000) ("Whether to award punitive damages based on these factors is a question of fact for the jury.").  Accordingly, Koch's punitive damages claim, like his fraud claim, should survive this motion to dismiss.

## III.  KOCH HAS STATED A CLAIM UNDER NEW YORK GENERAL BUSINESS LAW SECTIONS 349 AND 350.

Greenberg admits that, if successful, Koch's claims under New York General Business Law Sections 349 and 350 ("Sections 340 and 350") entitle him to recover his actual damages. Greenberg Mem. at 9; *see also* N.Y. Gen. Bus. Law §§ 349(a), (h) and 350-e(3).  Yet Greenberg asserts that Koch failed to sufficiently plead a claim under Sections 340 and 350 because Greenberg's conduct was not "consumer oriented."  He further asserts that Koch is not entitled to seek injunctive relief under Sections 349 and 350.  He is wrong on both counts.

### A.    Koch Has Pled Sufficient Facts To Show That Defendants' Deceptive Acts Were Consumer-Oriented.

A claim under Sections 349 and 350 must allege deceptive conduct that was "consumer-oriented."  *See, e.g.*, *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006).  This requirement is broadly interpreted, and is met where "the acts . . . complain[ed] of are consumer-oriented in the sense that they ***potentially affect similarly situated consumers***."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 647 N.E.2d 741 (1995) (emphasis added); *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996) (conduct is consumer-oriented for purposes of Section 349 where it "'potentially affects similarly situated consumers'" (quoting *Oswego*, *supra*)); *In re Evergreen*, 423 F. Supp. 2d at 264 ("Plaintiffs must allege facts sufficient to show that the challenged conduct has a broader impact on consumers at large, *i.e.*, it potentially affects similarly situated consumers in New York." (internal quotations and citations omitted)).  In short, Koch need not plead that Greenberg's deceptive acts *did* affect other similarly situated consumers, only that Greenberg's deceptive acts *potentially* affected other auction participants.  Koch has done so.

He alleges that there is a strong likelihood that other similarly-situated consumers were also victims of Greenberg's deceptive acts.  *See, e.g.*, Complaint ¶ 34 ("Koch was victimized by Greenberg's and Zachys' misconduct and there likely are many other victims as well."); *id.* ¶¶ 7, 8, 40.  This is borne out by the facts:  Koch purchased only a fraction of the 17,000 bottles Greenberg consigned for the auction in question.  Greenberg Mem. at 2.  To date, Koch's expert has identified eleven as counterfeit.  Complaint ¶¶ 44-51.  It would be beyond the range of statistical probability if—through some bizarre coincidence—Koch somehow purchased every single counterfeit bottle that Greenberg consigned for auction.  It is highly likely that other bidders similarly ended up with fake bottles.  In short, Koch has "satisfied the threshold test in

that the acts . . . are consumer-oriented in the sense that they potentially affect similarly situated consumers." *Oswego*, 85 N.Y.2d at 25.

Greenberg ignores that this standard is also satisfied by "any . . . harm to the public interest." *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (internal quotes and citations omitted). Deceptive practices that affect participants in public auctions "undermine[] New York's interest in an honest marketplace in which economic activity is conducted in a competitive manner" and thus constitute misconduct within the meaning of Section 349. *Id*. 301-302 (internal quotes omitted). Here, Koch has alleged that Greenberg engaged in deceptive practices that affected participants in a public auction. Complaint ¶¶ 7, 8, 34, 40, 79-82 & 86-89. Like the defendants in *Feldman*, Greenberg has injured public interest in a competitive, honest marketplace.[6]

Greenberg tries to raise the bar for the "consumer-oriented" requirement, relying on *Feldman*, 210 F. Supp. 2d at 301 to assert that deceptive conduct is consumer-oriented *only* if it consists of "repeated acts of deception directed at a broad group of individuals." Greenberg Mem. at 24. This is a misstatement of the *Feldman* opinion, which observed only that this is one of the ways a plaintiff can satisfy the consumer-oriented requirement. 210 F. Supp. 2d at 301.[7]

---

[6] Greenberg attempts to distinguish himself from *Feldman* by citing to the fact that there, the deceptive conduct spanned 17 years and three states. But nowhere does the *Feldman* court mandate that conduct can be consumer-oriented only where it is of long duration or far-flung. Greenberg also makes much of the fact that the potential victims in *Feldman* included "unsophisticated individuals, such as the elderly and one-time participants." *Id*. at 302. Here, Plaintiff has alleged that other members of the public received the 2005 Zachys' catalogue. Complaint ¶ 41. Whether the defrauded persons can seek the protection of Sections 340 and 350 does not turn on their age or whether they frequented other auctions.

[7] Defendant also relies on *Genesco Entertainment v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984). That case was decided before *Oswego* and is no longer the governing standard.

As New York's high court has recognized, "[t]he conduct need not be repetitive or recurring" to be consumer-oriented. *N.Y. Univ.*, 87 N.Y.2d at 320.

Greenberg points out that conduct is not consumer-oriented where the claim concerns a private contract dispute over a single-shot transaction that is unique to the parties. *See*, *e.g.*, *Oswego*, 85 N.Y.2d at 25. Greenberg's authority illustrates that is simply not the case here. *Genesco Entertainment v. Koch*, 593 F. Supp. 743 (S.D.N.Y. 1984); *Canario v. Gunn*, 300 A.D.2d 332, 751 N.Y.S.2d 310 (2d Dep't 2002); and *Teller v. Hayes*, 213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995) all involve complicated contracts negotiated at arm's length for unique services or real property, which only affected the parties to the dispute. Here, in contrast, Greenberg offered his wines to any member of the public who was interested and could afford the price. Complaint ¶ 41. Koch is one of many similarly situated consumers who bought only a portion of the 17,000 bottles of wine consigned by Greenberg. The catalogue was identical for every recipient and, far from being negotiated, was filled with boilerplate language that applied to transactions with all auction participants. *See* Exh. A to Greenberg Decl. (Zachys' catalogue).

Finally, to the extent Greenberg claims that Koch's wealth and the size of the transaction compel the conclusion that Greenberg's conduct was not consumer-oriented, binding and persuasive authority hold otherwise. In *Securitron Magnalock Corp. v. Schnabolk*, the Second Circuit upheld claims under Section 349 despite the fact that the plaintiff was a wealthy corporation and the damages award included $200,000 for the Section 349 claims and attorneys' fees in excess of $280,000. 65 F.3d 256, 263 (2d Cir. 1995). Similarly, in *Oswego*, where the plaintiff had assets worth millions of dollars and the damages exceeded $30,000, the court found the deceptive acts to be consumer oriented. 85 N.Y.2d at 22-24. Accordingly, Koch's claims under Sections 349 and 350 do not fail simply because Koch is a wealthy individual.

1801229

Koch has pled sufficient facts to demonstrate that Greenberg's deceptive acts were consumer-oriented because Greenberg's conduct potentially affected similarly situated consumers. Greenberg's motion to dismiss should be denied.

**B.    Koch Is Entitled To Pursue Injunctive Relief Under The Facts Pled In The Complaint.**

When the New York Legislature provided a private right of action to consumers under Sections 349 and 350, it explicitly provided the remedy of injunctive relief. N.Y. Gen. Bus. Law § 349(h). "A permanent injunction may properly issue in those situations involving a cognizable danger of recurrent violations or some reasonable likelihood of future violations." *FTC v. Minuteman Press*, 53 F. Supp. 2d 248, 260 (E.D.N.Y. 1998) (internal quotations and citations omitted).[8] Koch has pled sufficient facts to support such a showing: Greenberg sold only a part of his massive wine collection, which consists of tens of thousands of bottles of wine. Complaint ¶¶ 13, 15. It is a reasonable inference that he still owns thousands, if not tens of thousands, of bottles. Greenberg is still in a position to commit future violations, and his knowing consignment of counterfeit wine in the past, coupled with his refusal to acknowledge any wrongdoing, demonstrates a reasonable likelihood that he will commit future violations absent an injunction preventing such conduct. *Id.* ¶¶ 4-11.

Injunctive relief generally requires "a showing of irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Mindful of the goals of deterring deceptive practices and encouraging private enforcement, New York courts interpret this standard broadly in the context of Sections 349 and 350:

---

[8] Since the New York consumer protection statutes are modeled on the Federal Trade Commission Act, *see Genesco*, 593 F. Supp. at 752, cases in that context are instructive as to the applicable standard for a permanent injunction of deceptive acts and practices.

> [I]t is highly unlikely that any person whose damage is less than $50
> could ever prove irreparable injury.  Therefore, to apply this criterion
> to each individual claim would render almost meaningless the right to
> injunctive relief for small claims which the statute clearly provides.
> Given the aforecited purpose of the statute . . . I hold that ***the
> Legislature intended the irreparable injury at issue to be
> irreparable injury to the public at large, not just to one consumer.***

*McDonald v. North Shore Yacht Sales, Inc.* 134 Misc. 2d 910, 916-17, 513 N.Y.S.2d 590 (Sup.

Ct. 1987) (emphasis added).  Under the allegations in the Complaint, irreparable injury seems

certain:  It took two world-renowned experts, as well as nuclear scientists and chemists, to

evaluate Greenberg's wines.  Complaint ¶¶ 16, 17, 21.  Many of his victims—present and

future—may not have the resources to muster such a team to determine whether they bought

counterfeit wine, and the cost of such an undertaking would likely eclipse the purchase price in

any event.  This lack of an adequate legal remedy for many members of the public, who may

never discover that they were wronged, constitutes an irreparable injury appropriate for the

issuance of an injunction to deter future deceptive acts.

## CONCLUSION

For the foregoing reasons, Greenberg's motion to dismiss Koch's Complaint should be denied in its entirety.  Should this Court be inclined to grant any portion of Greenberg's motion, it should also grant Koch leave to amend his Complaint.


Dated: January 22, 2008          Respectfully submitted,
Newport Beach, California

By:    s/Melissa R. McCormick
        Melissa R. McCormick (*pro hac vice*)
        Layn R. Phillips (*pro hac vice*)
        Bruce A. Wessel (*pro hac vice*)
        IRELL & MANELLA LLP
        840 Newport Center Drive, Suite 400
        Newport Beach, California 92660-6324
        (949) 760-0991

        -and-

        Shawn Patrick Regan (SR-0925)
        Thomas G. Slater (to be admitted *pro hac vice*)
        HUNTON & WILLIAMS LLP
        200 Park Avenue, 52nd Floor
        New York, New York 10166-0136
        (212) 309-1000
        sregan@hunton.com

        *Attorneys for Plaintiff*
        *WILLIAM I. KOCH*

1801229