**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIAM I. KOCH, an individual, | ) Case No. 07 Civ. 9600 (BSJ)(DCF) |
| Plaintiff, | ) ECF Case |
| vs. | ) |
| ERIC GREENBERG, an individual; ZACHYS WINE & LIQUOR STORE, INC., a New York corporation; and ZACHYS WINE AUCTIONS, INC., a New York corporation, | ) |
| Defendants. | ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION OF DEFENDANTS ZACHYS WINE & LIQUOR STORE, INC.
AND ZACHYS WINE AUCTIONS, INC. TO DISMISS THE COMPLAINT**

DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500
Attorneys for Defendants Zachys Wine &
Liquor Store, Inc. and Zachys Wine Auctions, Inc.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.  CONTRARY TO PLAINTIFF'S CONTENTION, THE DISCLAIMERS
    CONTAINED IN THE CONDITIONS OF SALE ARE BINDING ON
    PLAINTIFF AND ARE FATAL TO HIS FRAUD AND NEGLIGENT
    MISREPRESENTATION CLAIMS ..................................................................... 2

    A.  By Participating In The Auctions, Plaintiff Must Be Held To The Terms
        Of The Conditions Of Sale By Which He Agreed To Be Bound ........................... 2

    B.  Plaintiff's Claims For Fraud And Negligent Misrepresentation Are Barred
        By The Plain Language Of The Conditions Of Sale................................................ 5

    C.  Zachys Was Not In Possession Of Knowledge Unavailable To Plaintiff
        And Therefore The Peculiar Knowledge Exception Is Not Applicable ................ 8

II. PLAINTIFF'S FRAUD CLAIM DOES NOT CONTAIN
    MISREPRESENTATIONS EXTRANEOUS TO THE CONTRACT AND IS
    THEREFORE NOTHING MORE THAN AN ACTION FOR BREACH OF
    CONTRACT ....................................................................................................... 13

III. PLAINTIFF HAS FAILED TO SUFFICIENTLY ALLEGE A CLAIM FOR
     NEGLIGENT MISREPRESENTATION......................................................... 15

IV. PLAINTIFF'S FAILURE TO ALLEGE ANY IMPACT OR POTENTIAL
    IMPACT ON CONSUMERS AT LARGE IS FATAL TO HIS CLAIMS FOR
    VIOLATIONS OF SECTIONS 349 AND 350 OF THE NEW YORK GENERAL
    BUSINESS LAW................................................................................................ 19

CONCLUSION................................................................................................................... 22

i

# TABLE OF AUTHORITIES

CASES                                                                                           Page(s)

Baguer v. Spanish Broad. Sys., Inc., No. 04-CV-8393, 2007 WL 2780390
    (S.D.N.Y. Sept. 20, 2007) ........................................................................15

Bologna v. Allstate Ins. Co., 138 F. Supp. 2d 310 (E.D.N.Y. 2001).............................21

Canario v. Gunn, 300 A.D.2d 332, 751 N.Y.S.2d 310 (2d Dep't 2002) ......................20

Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403,
    151 N.E.2d 833, 176 N.Y.S.2d 259 (1958).............................................................15

Christie's Inc. v. Dominica Holding Corp., No. 05 Civ. 8728,
    2006 WL 2012607 (S.D.N.Y. Jul. 18, 2006) .........................................................12

Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954,
    502 N.E.2d 1003, 501 N.Y.S.2d 88 (1986).............................................................14

DIMON Inc. v. Folium, Inc., 48 F. Supp. 2d 359 (S.D.N.Y. 1999) ......................8, 9, 13

Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.,
    328 F. Supp. 2d 443 (S.D.N.Y. 2004)...............................................................19, 22

Foxley v. Sotheby's Inc., 893 F. Supp. 1224 (S.D.N.Y. 1995) ........................... passim

Hessel v. Christie's Inc., 399 F. Supp. 2d 506 (S.D.N.Y. 2005) ....................................3

In re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d 249 (S.D.N.Y. 2006)............20

Kelly v. Brooks, No. 92 Civ. 729, 1993 WL 88259 (S.D.N.Y. Mar. 19, 1993).........6, 8

Krahmer v. Christie's Inc., 903 A.2d 773 (Del. Ch. 2006).......................................9, 10

LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195
    (2d Cir. 2005)..............................................................................................................6

Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531 (2d Cir. 1997) .......8, 13

Leider v. Ralfe, 387 F. Supp. 2d 283 (S.D.N.Y. 2005) ................................................19

Mercury Partners LLC v. Pac. Med. Bldgs., L.P., No. 02 Civ. 6005,
    2007 WL 2197830 (S.D.N.Y. July 31, 2007) ........................................................4, 6

New York v. Feldman, 210 F. Supp. 2d 294 (S.D.N.Y. 2002).....................................21

Real Prop. Acquisitions Inc. v. Christie's Inc., No. 601943/04,
    2005 N.Y. Misc. LEXIS 3285 (Sup. Ct. N.Y. County Mar. 29, 2005)..................3, 7

i

CASES (cont.)                                                                  Page(s)

Rosen v. Spanierman, 711 F. Supp. 749 (S.D.N.Y. 1989),
     vacated in part and remanded on other grounds, 894 F.2d 28 (2d Cir. 1990) ..................17, 18

Sichel v. UNUM Provident Corp., 230 F. Supp. 2d 325 (S.D.N.Y. 2002)...................................13

Standard Chartered Bank v. AWB (USA) Ltd., No. 05 Civ. 2013,
     2008 WL 144698 (S.D.N.Y. Jan. 30, 2007) .............................................................................4

Steinhardt Group, Inc. v. Citicorp, 272 A.D.2d 255, 708 N.Y.S.2d 91 (1st Dep't 2000) ..............8

Stewart v. Jackson & Nash, 976 F.2d 86 (2d Cir. 1992) ..............................................................14

T.T. Exclusive Cars, Inc. v. Christie's Inc., No. 96 Civ. 1650,
     1996 WL 737204 (S.D.N.Y. Dec. 24, 1996) .................................................................. passim

Tahini Invs., Ltd. v. Bobrowsky, 99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dep't 1984)..................8

U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158 (S.D.N.Y. 2001)............................19

Weisz v. Parke-Bernet Galleries, Inc., 77 Misc. 2d 80,
     351 N.Y.S.2d 911 (1st Dep't 1974) .................................................................................4, 10

Word Mgmt. Corp. v. AT&T Info. Sys., Inc., 135 A.D.2d 317,
     525 N.Y.S.2d 433 (3d Dep't 1988)............................................................................14

OTHER AUTHORITIES

Jane Musgrave, 'Rare' wine buyer still after seller, Palm Beach Post, Jan. 17, 2008,
     http://www.palmbeachpost.com/search/content/local_news/epaper/2008/01/17/m4b_
     kochwines_0117.html ...............................................................................................9

DOCSNY-292830

Defendants Zachys Wine & Liquor Store, Inc. and Zachys Wine Auctions, Inc. (together, "Zachys"), by their attorneys Dickstein Shapiro LLP, respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint (the "Complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") on the ground that the Complaint fails to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

The contractual arrangement between Zachys and Plaintiff regarding the Auctions was very simple: by participating in the Auctions and successfully bidding on almost $4 million of wine, Plaintiff agreed to be bound by the Conditions of Sale set forth in the Catalogues. The Conditions of Sale expressly disclaim the "correctness of catalog" and, specifically, any "description…[or] provenance" contained in the Catalogue. Plaintiff, having contractually agreed to the Conditions governing the Auctions, and having failed to inspect or otherwise investigate any of the wine prior to purchase (including any of the nineteen bottles totalling almost $357,000 referenced in the Complaint), cannot rewrite the Conditions of Sale, to which he is contractually bound, by dressing up his contract claim as fraud or negligent misrepresentation. Plaintiff likewise cannot try to couch his private contract dispute over a few bottles of rare wine with an average bid price of almost $20,000 as a transaction causing "consumer injury or harm to the public" sufficient to state a claim under the New York General Business Law. Accordingly, for the reasons set forth below, Plaintiff's Complaint should be dismissed in its entirety.

<u>**ARGUMENT**</u>

I.    **CONTRARY TO PLAINTIFF'S CONTENTION, THE DISCLAIMERS
CONTAINED IN THE CONDITIONS OF SALE ARE BINDING ON PLAINTIFF
AND ARE FATAL TO HIS FRAUD AND NEGLIGENT MISREPRESENTATION
CLAIMS**

Plaintiff does not contest (because he cannot) that he agreed to be bound by the
Conditions of Sale[1] that are contained in the 2004 and 2005 Catalogues and govern the Zachys'
Auctions.  Rather, Plaintiff attempts to misconstrue the plain language of the Conditions of Sale
and, further, avoid his obligations thereunder by contending that Zachys was in possession of
knowledge not reasonably available to Plaintiff.  Plaintiff's conclusory accusation that "Zachys
either knew that the Greenberg wine was counterfeit, and made statements in its catalogues with
knowledge of this falsity, or failed to adequately inspect the wine that it offered at auction" (Pl.
Mem. at 13) is insufficient as a matter of law to vitiate the express terms of the Conditions of
Sale to which Plaintiff agreed to be bound – not once, but twice.[2]  Plaintiff's claims for fraud and
negligent misrepresentation should therefore be dismissed in their entirety.

A.    **By Participating In The Auctions, Plaintiff Must Be Held To The Terms Of
The Conditions Of Sale By Which He Agreed To Be Bound**

Plaintiff's argument that "[a]uction houses that hold themselves out as having great
expertise and knowledge in the field of wine should not be permitted to argue that they owe no
duty whatsoever to buyers, when tens of thousands of bottles are sold" (Pl. Mem. at 1) may well
be the opinion of Mr. Koch; however, such statement is at odds with the terms of the Conditions
of Sale, as well as the governing law that consistently upholds such disclaimers in the context of

---

[1]    All defined terms used herein are as defined in Zachys' moving papers.

[2]    In this regard, Plaintiff is wrong – both factually and legally – that "Zachys' Motion assumes, as
it must, that Koch bought counterfeit wine from Zachys." Pl. Mem. at 1.  The Complaint itself – lacking
the requisite "well-pleaded factual allegations" necessary to defeat a dismissal motion – instead relies on
vague, evasive accusations as to counterfeit or "possibly counterfeit" wine (Compl. ¶¶ 1, 51) that do not
satisfy the legal standard Plaintiff himself articulates (Pl. Mem. at 5).

DOCSNY-292830

auctions.  By participating in the October 2004 Auction and then participating again in the October 2005 Auction, Plaintiff agreed to be bound by those Conditions of Sale.  Years later, Plaintiff cannot attempt to rewrite those well-established and legally binding Conditions of Sale under the guise of a fraud claim.

Plaintiff, a "serious" "purchaser[ ] and collector[ ] of rare wines" (Compl. ¶¶ 41, 61) who has spent millions of dollars at wine auctions (id. ¶¶ 42, 44-51; 53-59), should be well aware that it is standard procedure for auction houses to include express disclaimers such as Zachys' Conditions of Sale.  He certainly was aware that it was Zachys' standard procedure insofar as he was a repeat participant in Zachys' Auctions.  See, e.g., T.T. Exclusive Cars, Inc. v. Christie's Inc., No. 96 Civ. 1650, 1996 WL 737204 (S.D.N.Y. Dec. 24, 1996); Foxley v. Sotheby's Inc., 893 F. Supp. 1224, 1230 (S.D.N.Y. 1995).  Nor does Plaintiff dispute that his consent to be bound by the Conditions of Sale was a prerequisite to submitting a bid at the Auctions.  See Ex. B at 215[3] ("By participating in an auction, an auction participant agrees to be bound by the Conditions of Sale and Limited Warranty, printed in this catalog."); Ex. C. at 233 (same); Ex. B at 220 ("By participating in an auction, you agree to be bound by these terms and conditions"); Ex. C at 238 (same).  It is common in the auction industry, and well-settled under New York law, that by placing a bid in an auction, the bidder consents to be bound by the terms in the catalogue governing the auction.  See Hessel v. Christie's Inc., 399 F. Supp. 2d 506, 514 (S.D.N.Y. 2005); Real Prop. Acquisitions Inc. v. Christie's Inc., No. 601943/04, 2005 N.Y. Misc. LEXIS 3285, at *6-7 (Sup. Ct. N.Y. County Mar. 29, 2005).

---

[3]    The exhibits referred to herein are annexed to Zachys' moving memorandum of law.

That auction houses do not generally "guarantee" the goods sold at auctions is instrumental to the way that auctions are conducted.  It is fundamental that, as described in the context of an art auction:

> One of the factors necessarily entering into the competition among bidders at the public auction was the variable value of the paintings depending upon the degree of certainty with which they could be authenticated and established as the works of the ascribed artist. . . . . [T]he purchasers assumed the risk that in judging the paintings as readily-identifiable, original works of the names artist, and scaling their bids accordingly, they might by mistaken.

Weisz v. Parke-Bernet Galleries, Inc., 77 Misc. 2d 80, 80, 351 N.Y.S.2d 911, 912 (1st Dep't 1974) (citation omitted).

Having participated more than once in the Auctions, thereby agreeing every time to be bound by the industry standard Conditions of Sale before placing bids totaling almost $4 million, Plaintiff cannot now be heard to complain about those Conditions of Sale.  "Under New York law, the courts may not rewrite the agreement to relieve a sophisticated contracting party from the terms that it later deems disadvantageous."  Mercury Partners LLC v. Pac. Med. Bldgs., L.P., No. 02 Civ. 6005, 2007 WL 2197830, at *14 (S.D.N.Y. July 31, 2007) (internal quotation marks omitted); Standard Chartered Bank v. AWB (USA) Ltd., No. 05 Civ. 2013, 2008 WL 144698, at *11 (S.D.N.Y. Jan. 30, 2007) ("The essence of contract law is the bargain: parties of equivalent bargaining power negotiate the terms of the transaction and each is then entitled to the benefit of the bargain." (internal quotation marks omitted)).  Thus, by placing bids at the Auctions, Plaintiff, in accordance with standard auction procedures, agreed to be bound by the Conditions of Sale and must be held to his agreement.

4

**B.     Plaintiff's Claims For Fraud And Negligent Misrepresentation Are Barred By The Plain Language Of The Conditions Of Sale**

Plaintiff does not deny that he agreed to be bound by the Conditions of Sale, however, he now attempts to avoid his contractual agreement with Zachys and negate the impact of such disclaimers by misconstruing the plain language contained in the Conditions of Sale, which states:

> The authenticity of property listed in the catalog is guaranteed only as stated herein and otherwise all property is sold "AS IS" *without any representations or warranties* by Zachys Wine Auctions or the Consignor *as to* merchantability, fitness for a particular purpose, *correctness of catalog*, *description*, size, quality, condition, *rarity*, importance, *provenance*, exhibition history, literature, previous storage conditions or historical relevance *of any property*.  *No statement set forth in this catalog*, made at the auction or in the bill of sale, posting, announcement or otherwise, whether oral or written, *shall be deemed such a warranty, representation or assumption of liability*.

Ex. B at 220; Ex. C at 238 (emphasis added).

Plaintiff argues that the phrase "as stated herein" implies that the Conditions of Sale guarantee the correctness of the descriptions contained in the Catalogues (i.e., the "glowing introduction to the collection of 17,000 bottles" indicated the genuineness of the wine; "that a bottle of Mouton Rothschild 1947 is guaranteed to be a bottle of Mouton Rothschild 1947").  Pl. Mem. at 3-4, 7.  Plaintiff's argument, however, is contradicted by the very terms of the Conditions of Sale, which expressly disclaim, inter alia, the "correctness of catalog" or "description . . . [or] provenance . . . of any property."  Ex. B at 220; Ex. C at 238.  Plaintiff's argument likewise turns in its head the very clear, very basic disclaimer that "[n]o statement set forth in this catalog . . . shall be deemed such a warranty, representation or assumption of liability."  Ex. B at 220; Ex. C at 238.

Thus, contrary to Plaintiff's contrived interpretation, the phrase "as stated herein" clearly refers to the contents of the Conditions of Sale & Limited Warranty, not the contents of the

Catalogues in their entirety.   See, e.g., Mercury Partners, 2007 WL 2197830, at *9 ("In

construing the provisions of a contract, courts are to give due consideration to the circumstances

surrounding its execution, to the purpose of the parties in making the contract and, if

possible, . . . give the agreement a fair and reasonable interpretation." (internal quotation marks

omitted)).  Plaintiff's wrongheaded reading of the Conditions of Sale would also run afoul of the

fundamental tenet of contract construction that all terms must be given meaning.  See LaSalle

Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) ("In

interpreting a contract under New York law . . . the contract should be construed so as to give

full meaning and effect to all of its provisions . . . [A]n interpretation of a contract that has the

effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be

avoided if possible." (alteration in original) (omissions in original) (internal quotation marks

omitted)).  Under Plaintiff's interpretation, significant provisions of the Conditions of Sale noted

above would be rendered meaningless and effectively written out of the agreement.  Such an

interpretation should therefore be rejected.

Under New York law, disclaimers such as the Conditions of Sale have consistently been

held to be sufficient to preclude claims of fraudulent and negligent misrepresentation in the

context of auction sales.  See, e.g., T.T. Exclusive Cars, 1996 WL 737204, at *6 (dismissing

intentional misrepresentation claim because the express disclaimer contained in the auction

house catalogue was sufficient to preclude such a claim); Foxley, 893 F. Supp. at 1230 (holding

that plaintiff failed to state a claim for fraud because the auction house made no representations

or warranties of the correctness of the catalogue or other description, including provenance);

Kelly v. Brooks, No. 92 Civ. 729, 1993 WL 88259 (S.D.N.Y. Mar. 19, 1993) (dismissing fraud

claim based on unauthentic paintings purchased at auction due to the existence of a printed "as

is" disclaimer signed by plaintiffs); Real Prop. Acquisitions, 2005 N.Y. Misc. LEXIS 3285 (dismissing claims for fraudulent concealment, fraudulent inducement and negligent misrepresentation in finding that the "as is" clause printed in the catalogue was clear and binding upon all parties to the transactions).

Plaintiff attempts to distinguish the cases cited above by arguing that the "Zachys' disclaimer is narrower than the disclaimers in several of the cases that Zachys cites." Pl. Mem. at 7.[4]  As evidenced by an examination of the disclaimers, however, Plaintiff's argument is flawed.  For example, the disclaimer included in the Christie's catalogue, described in Real Property Acquisitions as sufficient to negate claims of fraudulent concealment, fraudulent inducement and negligent misrepresentation, states:

> "The authenticity of the authorship of property listed in the catalogue is guaranteed only as stated in the Limited Warranty and otherwise all property is sold 'AS IS' without any representations or warranties by us or the Consignor as to merchantability, fitness for a particular purpose, description, size, quality, condition, rarity, importance, medium [,] provenance, exhibition history, literature or historical relevance of any property.  No statement set forth in this catalogue or made at the auction or in the bill of sale of [sic] otherwise, whether oral or written, shall be deemed such a warranty, representation or assumption of liability… Prospective bidders should inspect the property before bidding to determine its condition size [sic], and whether or not it has been repaired or restored."

2005 N.Y. Misc. LEXIS 3285, at *7 (omission in original).  The resemblance between this disclaimer and that of Zachys is self-evident.  The disclaimers contained in many of the other cases cited by Zachys are also substantially similar to Zachys' Conditions of Sale.  See, e.g., T.T. Exclusive Cars, 1996 WL 737204, at *2 ("All property is sold 'as is' and neither Christie's nor the seller makes any express or implied warranty or representations of any kind or nature with respect to the property.  In

---

[4]    Plaintiff also attempts to distinguish these cases by stating that such cases, unlike the case at hand, concern "unique" items.  This argument is likewise unavailing.  Plaintiff's contention that pieces of antique furniture or art are any more unique than a $30,000 bottle of wine from 1799 (Compl. ¶ 54), cannot withstand even cursory scrutiny.

DOCSNY-292830

no event shall Christie's or the seller be responsible for the correctness of, or be deemed to have made any representation or warranty of . . . description,  . . . genuineness, . . . provenance  or condition concerning the property."  (omissions in original)); <u>Kelly</u>, 1993 WL 88259, at *1 n.3 ("All property is sold 'AS IS', and neither State Line Auctions nor the Consignor(s) make any guarantees, warranties or representations, expressed or implied, with respect to property purchased, and in no event shall the seller nor the consignor be responsible for genuineness, . . . provenance, . . . source, origin, or condition of the purchased property . . . .").  As with the industry standard disclaimers discussed above, Zachys' Conditions of Sale should be given the same preclusive effect  with respect to the Complaint's claims of fraud and negligent representation.

### C.    Zachys Was Not In Possession Of Knowledge Unavailable To Plaintiff And Therefore The Peculiar Knowledge Exception Is Not Applicable

Plaintiff further contends that he should not be bound by the terms of the Conditions of Sale because the authenticity of the wine at the Auctions was capable of being ascertained by Zachys only – and information as to the authenticity was not reasonably accessible to individuals such as Plaintiff.[5]  Pl. Mem. at 10.  Plaintiff's argument is without merit.

As Plaintiff correctly notes, in order for the "peculiar knowledge" exception to vitiate the terms of an express disclaimer, courts consider two factors: (1) the sophistication of the buyer;

---

[5]    The cases upon which Plaintiff relies to support the notion that certain facts were particularly within Zachys' knowledge because "Greenberg asked Zachys to inspect the wine and because of Zachys' expertise as a major auctioneer of wines" (Pl. Mem. at 9) are readily distinguishable.  <u>See, e.g.</u>, <u>Steinhardt Group, Inc. v. Citicorp</u>, 272 A.D.2d 255, 256, 708 N.Y.S.2d 91, 92 (1st Dep't 2000) (holding that plaintiff was not bound by a disclaimer contained in a document to which plaintiff was not a party); <u>Tahini Invs., Ltd. v. Bobrowsky</u>, 99 A.D.2d 489, 490, 470 N.Y.S.2d 431, 432 (2d Dep't 1984) (claim involved alleged concealment by defendant of existence of dumping site on property that was sold to plaintiff); <u>Lazard Freres & Co. v. Protective Life Ins. Co.</u>, 108 F.3d 1531, 1542 (2d Cir. 1997) (contract did not include a disclaimer, and the court specifically noted that "where a party specifically disclaims reliance upon a representation in a contract, it cannot later assert that it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon"); <u>DIMON Inc. v. Folium, Inc.</u>, 48 F. Supp. 2d 359, 368 (S.D.N.Y. 1999) (holding that where plaintiff has the means of learning the facts, there "simply is no reason to relieve it of the consequences of both its failure to protect itself and its bargain to absolve the defendant of responsibility"; but if plaintiff had conducted the appropriate due diligence, a different result may be warranted).

8

and (2) the accessibility of the underlying information. Pl. Mem. at 9 (citing DIMON, 48 F. Supp. 2d at 368). As set forth below, the facts of this case do not fall within the "peculiar knowledge" exception. Plaintiff's claims of fraud and negligent misrepresentation are therefore barred by the Conditions of Sale, by which he is contractually bound.

It is beyond doubt that Plaintiff was a sophisticated buyer of wine. Plaintiff, a self-proclaimed serious purchaser and collector of rare wines (Compl. ¶¶ 41, 61), argues that he was not qualified to examine the wine to determine its authenticity because he, like other individuals, is "well-versed in the enjoyment, as opposed to the science, of fine wine." Pl. Mem. at 10. However, in addition to being "well-versed in the enjoyment" of fine, rare wine, Plaintiff also had access to the opinions of noted wine experts well-versed in the "science" of fine wine, such as William Edgerton (who previously inspected Greenberg's wine cellar and whom Plaintiff hired specifically to vet the authenticity of his extensive wine collection), should he have so desired. Compl. ¶¶ 17, 24. Indeed, in 2005, when Plaintiff first became aware that a bottle he had purchased at a different, non-Zachys auction for $156,000 (a bottle that purportedly belonged to Thomas Jefferson) may not be authentic, he "assembled a team of former FBI and Scotland Yard agents, engraving and glass experts and even a nuclear physicist" to try and authenticate the wine. Jane Musgrave, 'Rare' wine buyer still after seller, Palm Beach Post, Jan. 17, 2008, http://www.palmbeachpost.com/search/content/local_news/epaper/2008/01/17/m4b_kochwines_0117.html.

Thus, clearly Plaintiff had the sophistication and means to examine the wine before placing his bids (either personally or through one of his many wine experts), and it is not at all unreasonable to expect a prudent buyer to do so – particularly one who is bidding thousands of dollars on single bottles of wine and millions of dollars at auctions. In Krahmer v. Christie's

9

Inc., 903 A.2d 773 (Del. Ch. 2006), for example, the Delaware Court (applying New York substantive law) held:

> Furthermore, a prudent buyer of artwork, as in other commercial transactions of similar value, can safeguard his or her investment by verifying its authenticity with an independent third party appraisal. Particularly, a buyer at auction assumes a greater risk as to the authenticity of the work than a buyer who purchases directly from the artist -- a risk that is taken into account in the bid price . . . . For this reason, the [plaintiffs] cannot reasonably be found to be "blamelessly ignorant" of the authenticity of their painting in the same way that a patient is blamelessly ignorant of an instrument that is left in his body, a purchaser of an underground septic tank is blamelessly ignorant of its defects, or a building owner is blamelessly ignorant that his roofer installed a faulty roof.

Id. at 781 (citing Weisz) (footnote call numbers omitted).

Putting aside the sophistication and resources of Plaintiff, of greater significance is the undisputed fact that Plaintiff made no effort to access information regarding the authenticity of the wine before he placed bids totaling almost $4 million. Plaintiff acknowledges that he had the opportunity – and was specifically invited by Zachys – to inspect the wines before placing bids at the Auction. Ex. B at 215, 220; Ex. C at 233, 238; Pl. Mem. at 13. Nor does Plaintiff dispute that he opted not to inspect the wine. Pl. Mem. at 14. Plaintiff also could have asked questions of Zachys regarding the wine he intended to purchase, but apparently chose not to.

Instead, Plaintiff argues that "although [he] is certainly a wine collector, he does not have the expertise required to determine a wine's authenticity, ***particularly from an unopened bottle*** . . . the counterfeit nature of an unopened bottle of wine [is not] readily apparent to lay consumers of wine." Id. at 9-10 (emphasis added). Plaintiff then posits that he was at a comparative disadvantage to Zachys because, as a prospective bidder, he could not taste the wine prior to the Auctions. Id. at 10. Such a contention is misleading, at best. While it is true that, as is typical during events that take place on the eve of Zachys' auctions, representatives of Zachys

DOCSNY-292830

tasted some of the wines from Mr. Greenberg's wine cellar prior to the Auction (as did many of

the prospective bidders, including Plaintiff), Zachys, much like Plaintiff, obviously could not

taste the specific bottles of wine (including any of the rare wines of interest to Plaintiff) as a

means of ascertaining their authenticity and <u>then</u> place those same bottles up for auction.  Thus,

to the extent that Plaintiff is arguing that tasting the wine – as compared to inspecting the wine –

was the only way to ascertain the authenticity of the wine, Zachys was at the same

"disadvantage" as Plaintiff because they too could only inspect the wine – unopened – prior to

the Auctions.[6]

Plaintiff also attempts to justify his decision not to inspect the wine by arguing that there is

"no basis for concluding that a mere visual inspection of bottles in an auction showroom would have

determined the authenticity of the wines" (Pl. Mem. at 13), because "certain underlying knowledge

were [sic] clearly not accessible through an inspection of the bottles, because such an inspection

could not have revealed that Greenberg's collection had been previously inspected and found to

contain counterfeit wine" (<u>id.</u> at 10).  The flaws in Plaintiff's argument, however, are evidenced

by his Complaint itself.  Indeed, Plaintiff attempts to charge Zachys with knowledge that the

wine was purportedly fake because,

> [T]he representations made by Zachys in the 2005 Catalogue were made
> without regard to, or investigation of, the existence or purpose of the
> Edgerton stickers on some of the Greenberg wines, and without apparent
> regard for the widespread allegations of counterfeiting then extant in the
> wine community that had prompted other auction houses, such as
> Sothebys, to more closely scrutinize wines it offered for auction.

Compl. ¶ 43.

---

[6]    It is telling that nowhere in his Complaint does Plaintiff allege that he actually opened and tasted
any of the bottles of wine accused of being "counterfeit" or "possibly counterfeit."  It is also telling that,
notwithstanding having hired Edgerton, a "noted wine expert," to "review the wine in [his] cellar to
determine whether any of the bottles were counterfeit" (Compl. ¶¶ 4, 24), Plaintiff still has only been able
to determine that certain of the bottles that are the subject of his Complaint are "possibly counterfeit"
(Compl. ¶ 51).

However, Plaintiff's Complaint indicates that stickers were placed on <u>every</u> bottle in Greenberg's cellar that was inspected by William Edgerton (a noted wine expert), regardless of whether he deemed the specific bottle to be "genuine, counterfeit *or* questionable" (<u>id.</u> ¶ 17 (emphasis added)), thus rendering the existence of a sticker on the wine meaningless, since <u>all</u> of the wine in the 2005 Auction was from the Greenberg cellar.  Further, while Plaintiff accuses Zachys of acting in "reckless disregard" by not adequately investigating the wines in light of the "widespread allegations . . . then extant in the wine community" concerning counterfeit wine (Compl. ¶ 43), certainly Koch, an avid wine collector and frequent auction purchaser of rare wines, would likewise have been aware of such allegations in the wine community.

Thus, this case is readily distinguishable from <u>Christie's Inc. v. Dominica Holding Corp.</u>, No. 05 Civ. 8728, at *4-5, 2006 WL 2012607 (S.D.N.Y. Jul. 18, 2006), upon which Plaintiff heavily relies.  In <u>Dominica Holding</u>, Christie's specifically represented in the auction catalogue that the pictures at issue had been "examined out of the frames."  <u>Id.</u> at *1.  Had the pictures, in fact, been examined out of the frames, the defects would have been discoverable by Christie's. <u>Id.</u> at *5 ("[T]he defects were discoverable only if one attempted to remove the prints from their frames, detach them from their supports and examine them loose.").  Such defects, however, may not have been detected by a potential purchaser who, unlike the auction house, would have the opportunity of only viewing the pictures prior to the auction, not conducting the thorough inspection that Christie's represented it had done.  <u>Id.</u>

Contrary to the facts in <u>Dominica Holding</u>, in this case, Plaintiff (who certainly does not lack sophistication or familiarity with wine) had the ability to inspect the wine in the same manner as Zachys, but failed to do so.  Plaintiff's failure to inspect the wine is fatal to his argument that this case falls within the "peculiar knowledge" exception.  <u>See</u> <u>Foxley</u>, 893 F.

12

Supp. at 1229. Where, as here, Plaintiff "has the means of learning facts and disclaims reliance on the defendant's representations, there simply is no reason to relieve it of the consequences of both its failure to protect itself and its bargain to absolve the defendant of responsibility." DIMON, 48 F. Supp. 2d at 368 (emphasis added). Plaintiff must be held to his bargain – disclaiming reliance on the contents of the Catalogues and entitled to inspect any of the wine included in those Catalogues – and his fraud and negligent misrepresentation claims must therefore fail.

## II. PLAINTIFF'S FRAUD CLAIM DOES NOT CONTAIN MISREPRESENTATIONS EXTRANEOUS TO THE CONTRACT AND IS THEREFORE NOTHING MORE THAN AN ACTION FOR BREACH OF CONTRACT

As set forth in Zachys' moving papers, "New York law precludes fraud actions where the only fraud charged relates to a breach of contract." Sichel v. UNUM Provident Corp., 230 F. Supp. 2d 325, 328 (S.D.N.Y. 2002). Plaintiff's purported fraud claim relates to a few bottles of wine he purchased at Zachys' Auctions that he alleges were not, or "possibly" were not, the wine that was advertised in the Catalogues, i.e., that he allegedly did not get the benefit of his bargain.

Notably, the very "factual misrepresentations" that Plaintiff describes as sufficient to withstand a motion to dismiss his fraud claim – that Zachys "implicitly" represented that "the wine being auctioned had been verified by Zachys' experts as genuine and was described accurately" (Pl. Mem. at 17) – were never made to Plaintiff.[7] Indeed, the Catalogues containing the information Zachys provided to Plaintiff regarding the wine contain nothing that represents the authenticity or genuineness of the wine. To the contrary, the only "representation" made to

---

[7]    Plaintiff's argument that a party who fraudulently induces another to enter into a contractual relationship cannot "shield itself from the consequences . . . for its fraudulent conduct" is likewise flawed. Pl. Mem. at 18. Indeed, as Plaintiff's own authority states: "where a party specifically disclaims reliance upon a representation in a contract, it cannot later assert that it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon." Lazard Freres, 108 F.3d at 1542.

DOCSNY-292830

Plaintiff regarding the descriptions of the wine in the Catalogue was that "[n]o statement set forth in this catalog . . . shall be deemed such a warranty, representation or assumption of liability." Ex. B at 220; Ex. C at 238.

Plaintiff, in an effort to, once again, avoid the plain terms of the Conditions of Sale, attempts to premise his fraud claim on the "superior knowledge" that he alleges Zachys possessed, namely that "(1) it knew that experts had already examined the wines and concluded some bottles were counterfeit, or that (2) it had failed to authenticate the wines as requested by the consignor." Pl. Mem. at 16. However, as set forth above (see supra Point I.C), Plaintiff has failed to properly allege that Zachys was in the possession of any such "superior knowledge."

Plaintiff further relies on a string of cases for the proposition that "allegations of affirmative misrepresentations of fact suffice to state a fraud claim even where it is related to a contract." Pl. Mem. at 16. Plaintiff again ignores the salient fact that the Catalogue – which contained the only information disseminated to Plaintiff concerning the wine – contained an express disclaimer of any so-called "representations" in the Catalogues. Not surprisingly, the cases upon which Plaintiff relies do not contain specific disclaimers, such as the Conditions of Sale, that directly relate to the purported misrepresentation that formed the basis of a fraud claim and are therefore readily distinguishable. See, e.g., Word Mgmt. Corp. v. AT&T Info. Sys., Inc., 135 A.D.2d 317, 320-21, 525 N.Y.S.2d 433, 435-36 (3d Dep't 1988) (the court found that because the contract did not contain a merger clause, notwithstanding the disclaimer of any warranties, the plaintiff's allegations that defendant's representatives made statements about the capacity of the equipment known to be false, were sufficient for fraud claim to survive summary dismissal); Stewart v. Jackson & Nash, 976 F.2d 86, 89 (2d Cir. 1992) (where fraud claim was based on termination of at-will employee and therefore arose out of an oral contract); Deerfield

14

Commc'ns Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956, 502 N.E.2d 1003, 1004, 501 N.Y.S.2d 88, 89 (1986) (fraud claim was based on statements orally agreed to which were inducement for the contract); Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403, 407, 151 N.E.2d 833, 835, 176 N.Y.S.2d 259, 262 (1958) (fraud claim was based on false oral "promise" regarding defendant's ability to supply aluminum ingot to plaintiff).

In his Complaint, Plaintiff is seeking to obtain the value of the wine that he purchased from Zachys, that he now claims is counterfeit or "possibly counterfeit."  See Compl. ¶¶ 44-51, 53-59. "Where, as here, plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract [not a tort] theory."  Baguer v. Spanish Broad. Sys., Inc., No. 04-CV-8393, 2007 WL 2780390, at *4 (S.D.N.Y. Sept. 20, 2007).  Moreover, any attempt by Plaintiff to re-plead his fraud claim as a breach of contract would be futile since any breach of contract claim would likewise be disclaimed by the terms of the Conditions of Sale.  See T.T. Exclusive Cars, 1996 WL 737204, at *3 ("Under New York law, [w]here the contract specifically disclaims the existence of any such warranties or representations, an action for breach of contract cannot be maintained" ) (alteration in original) (internal quotation marks omitted).  Plaintiff's fraud claim should therefore be dismissed in its entirety.

## III.    PLAINTIFF HAS FAILED TO SUFFICIENTLY ALLEGE A CLAIM FOR NEGLIGENT MISREPRESENTATION

It is well-settled that a claim of negligent misrepresentation requires a showing of either: (1) the existence of "a fiduciary or special relationship between the parties suggesting a closer degree of trust than that of the ordinary buyer and seller"; or, absent such a fiduciary or special relationship, (2) "that the defendant possessed material information unavailable to the plaintiff and knew that the plaintiff was acting on the basis of mistaken knowledge." T.T. Exclusive Cars, 1996 WL 737204, at *4.  Plaintiff has failed to plead either a special relationship between

15

himself and Zachys or material information in the exclusive possession of Zachys, and his claim for negligent misrepresentation must therefore be dismissed in its entirety.

Plaintiff entirely misstates Zachys' argument as to why Plaintiff's negligent misrepresentation argument fails by stating that "Zachys argues that Koch has alleged only a 'special relationship of trust and confidence,' and that the Complaint is 'silent as to any material information within the exclusive possession of Zachys'" (Pl. Mem. at 20) – i.e., that Plaintiff has satisfied the first of the two alternative showings.  To the contrary, Zachys argued in its moving papers that Plaintiff's Complaint contained merely a single conclusory allegation that "'a special relationship of trust and confidence existed'" (Zachys Mem. at 11 (quoting Compl. ¶ 68)) and that such a conclusory allegation was itself insufficient to defeat a motion to dismiss and, in any event, contrary to well-established law.  Zachys further argued that the Complaint was devoid of any allegations concerning material information in the exclusive possession of Zachys.  Id. Thus, contrary to Plaintiff's mischaracterization, Zachys argued that Plaintiff was "[u]nable to establish either of the prerequisites" to establish a claim of negligent misrepresentation (not that Plaintiff established one, but not the other).  Id. (emphasis added).

In his opposition papers, Plaintiff goes to great lengths to try to fill the holes in his Complaint regarding the existence of a "special relationship" between himself and Zachys. Plaintiff's attempts are undermined by well-settled law.  First, Plaintiff argues that because Greenberg purportedly asked Zachys to authenticate the wine in his collection, a special relationship was formed between Zachys and "buyers" to "conduct this authenticity inspection competently."  Pl. Mem. at 20.  Indeed, it is not disputed that Zachys acted as an agent to Greenberg, its consignor, and therefore Zachys' fiduciary duties, if any, were to Greenberg. However, the relationship between Zachys and Greenberg (or any auction house and consignor)

16

is not imputed to bidders, such as Plaintiff. <u>T.T. Exclusive Cars</u>, 1996 WL 737204, at \*4. Rather Plaintiff, as a mere purchaser of wine at an auction, without more, has simply a relationship between buyer and seller, which does not rise to the level of a "special relationship" sufficient to form the predicate for a negligent misrepresentation claim. <u>See, e.g.</u>, <u>Rosen v. Spanierman</u>, 711 F. Supp. 749, 758 (S.D.N.Y. 1989), <u>vacated in part and remanded on other grounds</u>, 894 F.2d 28 (2d Cir. 1990) (holding that the mere purchase of a painting from defendant gallery owner and subsequent appraisals with "no bearing on the relationship between the parties at the relevant time" did not create the special relationship necessary to maintain a negligent misrepresentation claim).

Equally unavailing is Plaintiff's attempt to compare his relationship with Zachys to that of a "highly-trained professional and a purchaser." Pl. Mem. at 20. The differences between the duties flowing from the attorney-client relationship and the duties of a company's chief financial officer in preparing financial projections for use by potential investors in the company, on the one hand, and that of an auction house and bidder, on the other, are overwhelming. Plaintiff further argues that Koch's participation in Zachys' Auctions was "actively solicited," thereby taking the relationship outside the realm of "merely a contractual relationship." Plaintiff's argument, however, is undermined by the applicable law. In <u>Foxley</u>, for example, the court failed to find a "special relationship" between a bidder and an auction house sufficient to state a claim for negligent misrepresentation notwithstanding personal visits, viewings of the bidder's personal collection, introductions to Sotheby's key personnel and private luncheons. 893 F. Supp. at 1232.[8] In any event, the mere contention that Zachys mailed a copy of a Catalogue to Plaintiff (Compl. ¶ 41) does not suffice to allege the requisite "special relationship."

---

[8]     Plaintiff attempts to discredit Zachys' reliance on <u>Foxley</u> by stating that the court in <u>Foxley</u> failed to follow the broader rule that a claim for negligent misrepresentation can be based not only on a special

DOCSNY-292830

Plaintiff makes a last ditch effort to create a "special relationship" with Zachys (where none exists) by arguing that the relationship between Zachys and Plaintiff was a special one, because Zachys knew that Plaintiff would use the Catalogues for the "special purpose" of "determin[ing] which wine he would seek to purchase at the auctions."  Pl. Mem. at 21-22.  This argument is likewise flawed.  Clearly, the purpose of every catalogue in every auction is for every potential bidder to make such determinations.   This does not, however, elevate the auctioneer-bidder relationship beyond that of a mere contractual one between a seller and a buyer.  The law is clear that no "special relationship" exists between an auction house and a bidder at an auction.   See T.T. Exclusive Cars, 1996 WL 737204, at *4 (dismissing negligent misrepresentation claims pursuant to Fed. R. Civ. P. 12(b)(6) and finding no evidence of a special relationship between bidder and auction house because as an agent for the consignor, the auction house's fiduciary duties, if any, were owed to the consignor, not its bidders); Foxley, 893 F. Supp. at 1232 (holding that a "special relationship" sufficient to state a claim for negligent misrepresentation was not created between a bidder and an auction house); Rosen, 711 F. Supp. at 758 (holding that the mere purchase of a painting from defendant gallery owner and subsequent appraisals with "no bearing on the relationship between the parties at the relevant time" did not create the special relationship necessary to maintain a negligent misrepresentation claim).

Finally, absent the requisite special relationship (which Plaintiff has failed to allege), Plaintiff must allege that Zachys was in the possession of knowledge that was unavailable to Plaintiff in order to state a negligent misrepresentation claim.  As set forth in Point I.C. above,

---

or fiduciary relationship, but also on a "confidential relationship."  Pl. Mem. at 22-23.  Plaintiff has not alleged any facts that would support the finding of a "confidential relationship" between Plaintiff and Zachys.  Plaintiff's argument is therefore illogical or irrelevant.

18

Plaintiff has failed to do so. Accordingly, Plaintiff's claim for negligent misrepresentation must be dismissed in its entirety.

## IV. PLAINTIFF'S FAILURE TO ALLEGE ANY IMPACT OR POTENTIAL IMPACT ON CONSUMERS AT LARGE IS FATAL TO HIS CLAIMS FOR VIOLATIONS OF SECTIONS 349 AND 350 OF THE NEW YORK GENERAL BUSINESS LAW

As set forth in Zachys' moving papers, to state a claim under New York General Business Law ("NYGBL") section 349 or 350, Plaintiff must allege, inter alia, that "the act, practice or advertisement was consumer-oriented." Leider v. Ralfe, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005). Indeed, "the gravamen of the complaint must be consumer injury or harm to the public interest." U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158, 175 (S.D.N.Y. 2001). Plaintiff's Complaint, however, questions the authenticity of a few bottles of extremely expensive, rare wine that he purchased at two Auctions that took place in 2004 and 2005. Other than vague and conclusory accusations (that are insufficient to withstand a motion to dismiss) that there "may" or "likely are" other victims of wine that was counterfeit or "possibly counterfeit," Plaintiff's Complaint contains no allegations that the transactions at issue are consumer transactions within the meaning of the NYGBL sections 349 and 350, or that such transactions are "consumer oriented" and thus within the ambit of the NYGBL. Plaintiff's private contract dispute with Defendants is therefore insufficient to state a claim under the NYGBL, and such claims should be dismissed in their entirety.

As a threshold matter, with respect to the transactions at issue in the Complaint, Plaintiff does not fit within the contemplated definition of "consumer" for the purposes of the NYGBL. "Consumer" has been defined by New York courts as "one who purchase[s] goods and services for personal, family or household use." Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc., 328 F. Supp. 2d 443, 448 (S.D.N.Y. 2004) (alteration in original). For example:

19

> Courts have routinely found Section 349 inapplicable to claims concerning securities based on the following:  [P]eople do not generally buy securities in the same way that they buy an automobile, a television set, or the myriad consumer goods found in supermarkets.  For one thing, securities are purchased as investments, not as goods to be "consumed" or "used."

In re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006) (alteration in original).  Purchasers of bottles of wine averaging $20,000 per bottle are, like purchasers of securities, outside the contemplated definition of "consumer" for purposes of NYGBL.  Indeed, Plaintiff refers to himself as a "serious" "purchaser[ ] and collector[ ] of rare wines."  Compl. ¶¶ 41, 61.  While a $20,000 bottle of wine may be bought by a collector (who spends millions of dollars at a wine auction) and perhaps ultimately opened and drunk, such a collector is hardly the type of purchaser that the NYGBL consumer protection laws were intended to protect.

Further, Plaintiff has failed to show that the transactions at issue have an impact on "consumers at large," as required to establish a claim under NYGBL.  See Canario v. Gunn, 300 A.D.2d 332, 332, 751 N.Y.S.2d 310, 311 (2d Dep't 2002) ("General Business Law article 22-A, of which [New York] General Business Law §§ 349 and 350 are a part, is addressed to practices which have a broader impact on consumers at large" (internal quotation marks omitted)).  Contrary to Plaintiff's contention, he has not (because he cannot) allege that the Auctions which occurred in 2004 and 2005 – auctions of specific rare collections of wine – potentially affect similarly situated consumers in New York.  See Pl. Mem. at 25.  Plaintiff has not identified any other purchaser of wine at the Auctions that has raised any question regarding the authenticity of any wine purchased at the Auctions.  Moreover, Plaintiff's Complaint does not contain general allegations about the conduct of the Auctions, or the contents of the Catalogues, that may occur in future wine auctions.  Rather, Plaintiff's Complaint deals with the authenticity of a very small subset of the total wine that even he purchased at the Auctions – approximately $230,000 of the $3.7 million.  Compl. ¶¶ 42, 44-49.

20

While Plaintiff correctly notes that a plaintiff may also state a claim under NYGBL by alleging "harm to the public interest" (Pl. Mem. at 26), Plaintiff's argument that he has <u>alleged</u> "harm to the public interest" (<u>id.</u>) is unavailing.  In support of his argument that auctions, by their nature impact the public interest, Plaintiff cites <u>New York v. Feldman</u>, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002), which is readily distinguishable.  The <u>Feldman</u> case, brought by the attorneys general of New York, Maryland and California, concerned allegations that "defendants conspired for at least seventeen years to rig bids at public stamp auctions."  <u>Id.</u> at 298.  Indeed, it was alleged that "Defendants . . . conducted their own secret bidding sessions prior to the actual public auctions. . . .   At the secret session, the highest bidder for a particular lot of stamps agreed to bid up to that price at the public auction and the losing bidders agreed to refrain from bidding on that particular lot."  <u>Id.</u>  Further, the court in <u>Feldman</u> stated that "[a] large majority of sellers at these auctions are individuals, many of whom are elderly or one time participants in the auction market and have neither the means nor the information to detect collusive bidding."  <u>Id.</u> It is easy to see that the type of massive, continuing fraud against elderly, one time participants described in <u>Feldman</u> would be the type of transactions contemplated by the NYGBL.  Here, in contrast, the transactions at issue were isolated (not continuing) and impacted individuals, such as Plaintiff, who were knowledgeable about wine and had the means to competently inspect the wine prior to the Auction.  Such transactions do not have an impact on the "public interest," as contemplated by the NYGBL.[9]

Thus, the transactions about which Plaintiff complains are limited, do not have the potential to impact "consumers at large," and therefore are not sufficient to state a claim under the NYGBL. See <u>Bologna v. Allstate Ins. Co.</u>, 138 F. Supp. 2d 310, 324 (E.D.N.Y. 2001) ("[p]rivate

---

[9]    As set forth in Zachys' moving papers, because Plaintiff has failed to allege fraud aimed at the public generally or gross, wanton or willful fraud, his claim for exemplary, or punitive, damages should be dismissed as a matter of law.  <u>See</u> Zachys' Mem. at 16 n.6.

transactions not of a recurring nature or without ramifications for the public at large are not a proper subject of a claim under" NYGBL (internal quotation marks omitted)); <u>Exxonmobil</u>, 328 F. Supp. 2d at 449 ("transactions involving complex arrangements, knowledgeable and experienced parties and large sums of money . . . are different in kind and degree from those that confront the average consumer who requires the protection of a statute against fraudulent practices" (omission in original)).

<u>**CONCLUSION**</u>

For the foregoing reasons, as well as those in their moving papers, defendants Zachys Wine & Liquor Store, Inc. and Zachys Wine Auctions, Inc. respectfully request that this Court enter an order dismissing the Complaint against them in its entirety with prejudice and granting such other and further relief as it may deem proper.

Dated:  New York, New York
        February 15, 2008

                              Respectfully submitted,


                              DICKSTEIN SHAPIRO LLP


                              By:___s/Deborah A. Skakel_____
                                   Deborah A. Skakel (DS8599)
                                   Lindsay A. Bush (LB0391)
                              1177 Avenue of the Americas
                              New York, New York 10036
                              (212) 277-6500
                              Attorneys for Defendants
                                Zachys Wine & Liquor Store, Inc. and
                                Zachys Wine Auctions, Inc.