UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM I. KOCH, an individual,                    :

         Plaintiff,                               :

   vs.                                             :

                            :   **No.: 07 Civ. 9600 (BSJ) (DCF)**

ERIC GREENBERG, an individual, ZACHYS     **ECF Case**
WINE & LIQUOR STORE, INC., a New York  :
corporation; and ZACHYS WINE AUCTIONS,  :
INC., a New York corporation,

         Defendants.                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ERIC GREENBERG'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FEDERAL RULE 12(b)(1) OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE 12(b)(6)

ANTHONY P. COLES (AC 7942)
DLA PIPER US LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500
anthony.coles@dlapiper.com

*Of Counsel*
ARTHUR J. SHARTSIS
TRACY L. SALISBURY
RICHARD F. MUNZINGER
AMY L. HESPENHEIDE
SHARTSIS FRIESE LLP
1800 Maritime Plaza, 18th Floor
San Francisco, California 94111
(415) 421-6500

Attorneys for Defendant
ERIC GREENBERG

## TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................1

ARGUMENT ............................................................................................................3

    GREENBERG'S OFFER TO PAY KOCH EVERYTHING HE LEGALLY IS
    ENTITLED TO RECOVER MANDATES DISMISSAL OF THIS ACTION ..................3

A.     Greenberg Was Not Required to Make a Rule 68 Offer to Moot This Case ..........3

B.     Greenberg Compensated Koch for All of His Potential Damages ..........................6

    1.     Plaintiff is not entitled to injunctive relief under New York General
        Business Law sections 349 and 350 ...................................................................6

        a.     Sections 349 and 350 do not apply to Koch's claims ......................6

        b.     Koch has not pleaded and cannot plead an imminent threat
            of irreparable harm or that the equities favor him ........................11

    2.     Plaintiff Is Not Entitled To Punitive Damages ...........................................14

        a.     The auction contract's limitation on liability bars a claim
            for punitive damages ...................................................................14

        b.     Plaintiff cannot state a fraud claim that is separate from a
            contract claim ..............................................................................17

        c.     Koch is not entitled to punitive damages under either a
            contract or fraud claim because he cannot meet the strict
            standard for the extraordinary remedy of punitive damages
            under New York law ....................................................................21

CONCLUSION........................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.,*
　　485 F.3d 85 (2d Cir. 2007)..................................................................................2, 4, 5, 6

*Abrams v. Interco, Inc.,*
　　719 F.2d 23 (2d Cir. 1983)...........................................................................................3, 14

*Ambalu v. Rosenblatt,*
　　194 F.R.D. 451 (E.D.N.Y. 2000) .....................................................................................3

*Appio v. Mel Lyn Office Supplying,*
　　222 A.D.2d 541, 635 N.Y.S.2d 651 (2d Dep't 1995).......................................................13

*Barbara Z. v. Obradovich,*
　　937 F. Supp. 710 (N.D. Ill. 1996) ...............................................................................4, 5

*Brass v. American Film Technologies, Inc.,*
　　987 F.2d 142 (2d Cir. 1993)........................................................................................18, 19

*Bridger v. Goldsmith,*
　　143 N.Y. 424, 38 N.E. 458 (1894)...............................................................................16, 17

*Bridgestone/Firestone v. Recovery Credit Services, Inc.,*
　　98 F.3d 13 (2d Cir. 1996)............................................................................................17, 21

*Busters Cleaning Corp. v. Frati,*
　　180 A.D.2d 705, 580 N.Y.S.2d 363 (2d Dep't 1992).......................................................13

*Canario v. Gunn,*
　　300 A.D.2d 332, 751 N.Y.S.2d 310 (2d Dep't 2002)........................................................11

*Christie's Inc. v. Dominica Holding Corp.,*
　　2006 WL 2012607 (S.D.N.Y. July 18, 2006) .................................................................19

*Citibank v. Plapinger,*
　　66 N.Y.2d 90, 495 N.Y.S.2d 309 (1985)......................................................................18, 19

*Cresswell v. Prudential-Bache Sec., Inc.,*
　　675 F. Supp. 106 (S.D.N.Y. 1987) ..............................................................................4, 14

*Dallas Aerospace, Inc. v. CIS Air Corp.,*
　　352 F.3d 775 (2d Cir. 2003).....................................................................................18, 19, 20

*Dannan Realty Corp. v. Harris,*
　　5 N.Y.2d 317, 184 N.Y.S.2d 599 (1959) ....................................................................18, 19

## TABLE OF AUTHORITIES

**Page**

*Donovan v. Aeolian Co.*,
    270 N.Y. 267, 200 N.E. 815 (1936)...........................................................................20

*Dyncorp v. GTE Corp.*,
    215 F. Supp. 2d 308 (S.D.N.Y. 2002)...........................................15, 18, 19, 20

*Fed. Express Corp. v. Fed. Espresso, Inc.*,
    201 F.3d 168 (2d Cir. 2000)..............................................................................12

*Gates v. Towery*,
    456 F. Supp. 2d 953 (N.D. Ill. 2006) ...........................................................4, 5

*Genesco Entm't v. Koch*,
    593 F. Supp. 743, 752 (S.D.N.Y. 1984)............................................................8

*Holstein v. City of Chicago*,
    29 F.3d 1145 (7th Cir. 1994) ..........................................................................4, 5

*Int'l Motor Sports Group, Inc. v. Gordon*,
    1999 U.S. Dist. LEXIS 12610 (S.D.N.Y. Aug. 16, 1999).........................18, 19

*Ladenburg Thalmann & Co., Inc. v. Imaging Diagnostic Sys., Inc.*,
    176 F. Supp. 2d 199 (S.D.N.Y. 2001)..............................................................22

*Leo v. Levi*,
    304 A.D.2d 621, 759 N.Y.S.2d 94 (2d Dep't 2003)........................................13

*MaGee v. Paul Revere Life Ins. Co.*,
    954 F. Supp. 582 (E.D.N.Y. 1997) ..................................................................11

*MacPhee v. Verizon Commc'n's, Inc.*,
    2008 U.S. Dist. LEXIS 3230 (S.D.N.Y. Jan. 15, 2008)...................................20

*McDonald v. North Coast Yacht Sales, Inc.*,
    134 Misc. 2d 910, 513 N.Y.S.2d 590 (N.Y. Sup. Ct. 1987).............................11

*Metro Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
    84 N.Y.2d 430, 618 N.Y.S.2d 882 (1994) .......................................................15

*Murphy v. Equifax Check Serv., Inc.*,
    35 F. Supp. 2d 200 (D. Conn. 1999)........................................................3, 4, 5, 24

*New York Univ. v. Continental Ins. Co.*,
    87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) .........................................................7

## TABLE OF AUTHORITIES

**Page**

*New York v. Feldman,*
    210 F. Supp. 2d 294 (S.D.N.Y. 2002).................................................................8, 9

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
    85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) ...................................................7, 8, 10

*Papa's-June Music, Inc. v. McLean,*
    921 F. Supp. 1154 (S.D.N.Y. 1996)...........................................................................20

*Quinn v. Aetna Life & Casualty Co.,*
    96 Misc. 2d 545, 409 N.Y.S.2d 473 (N.Y. Sup. Ct. 1978) ................................11

*Rand v. Monsanto Co.,*
    926 F.2d 596 (7th Cir. 1991) ...............................................................................5

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.,*
    893 F. Supp. 285 (S.D.N.Y. 1995) .....................................................................21

*Rocanova v. Equitable Life Assurance Soc'y of U.S.,*
    83 N.Y.2d 603, 612 N.Y.S.2d 339 (1994) ........................................................23

*S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.,*
    84 F.3d 629 (2d Cir. 1996)......................................................................................9

*Samsung Elec. Co., Ltd. v. Rambus, Inc.,*
    398 F. Supp. 2d 470 (E.D. Va. 2005) ..................................................................4

*Securitron Magnalock Corp v. Schnabolk,*
    65 F.3d 256 (2d Cir. 1995)..........................................................................7

*Shelborne Beach Club v. Hellman,*
    49 A.D.2d 933, 372 N.Y.S.2d 227 (2d Dep't 1975)..........................................11

*Sichel v. Unum Provident Corp.,*
    230 F. Supp. 2d 325 (S.D.N.Y. 2002)..................................................................10

*Solomon v. Pepsi-Cola Co.,*
    140 A.D.2d 323, 527 N.Y.S.2d 556 (2d Dep't 1988)..................................12, 13

*Teller v. Hayes,*
    213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995)................................6, 7, 10

*Tesoro Petroleum Corp. v. Holborn Oil Co. Ltd.,*
    108 A.D.2d 607, 484 N.Y.S.2d 834 (1st Dep't 1985)........................................20

## TABLE OF AUTHORITIES

**Page**

*Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,*
    103 F. Supp. 2d 711 (S.D.N.Y. 2000)..................................................................23

*Turkish v. Kasnetz,*
    27 F.3d 23 (2d Cir. 1994)..........................................................................16, 17

*Walker v. Sheldon,*
    10 N.Y.2d 401, 233 N.Y.S.2d 488 (1961) ................................................21, 23

*Weiss v. Fein, Such, Kahn & Shepherd P.C.,*
    2002 U.S. Dist. LEXIS 4783 (S.D.N.Y. Mar. 22, 2002) ..................................3

*Zandman v. Nissenbaum,*
    53 A.D.2d 837, 385 N.Y.S.2d 562 (1st Dep't 1976) ......................................13

*Zimmerman v. Bell,*
    800 F.2d 386 (4th Cir. 1986) ....................................................................5, 14

## Statutes and Other Authorities

Fed. R. Civ. P. 12(b)(1)............................................................................................5

N.Y. CPLR § 6301 (McKinney 2007)....................................................................12

N.Y. U.C.C. § 2-328 (McKinney 2002) ..................................................................15

N.Y. U.C.C. § 2-715(1) (McKinney 2002)..............................................................21

N.Y. U.C.C. § 2-719(1) (McKinney 2002)..............................................................15

N.Y. General Business Law § 349 (McKinney 2004) ....................................... passim

N.Y. General Business Law § 350 (McKinney 2004)....................................6, 10, 11

## INTRODUCTION

This case is now about a billionaire wine collector indulging in unnecessary and expensive litigation over a $228,603.33 claim for eleven bottles of allegedly counterfeit and "possibly counterfeit" wine – all after being sent a full refund for his auction purchase. Stretching for some way to justify rejecting the amount tendered, Plaintiff claims that "he is now saddled with storage and disposal costs" for the bottles, *de minimus* costs that would disappear if he just had cashed the tendered check and allowed defendant Greenberg to pick up his bottles. Given Plaintiff's aggressive and expansive view of his case, the costs of this litigation will dwarf the alleged amount of the loss, which Greenberg already has attempted to pay in full.

Although Plaintiff claims legal entitlement to protract this now pointless litigation, his opposition brief ignores a key fact: Plaintiff sued for, and now has obtained, rescission. Plaintiff also does not and cannot dispute that he agreed by contract, and in accordance with the New York Uniform Commercial Code, that his "damages are limited exclusively to the original purchase price paid . . . ," and that he has already received the return of his purchase price, and more. These two undisputed and complementary points compel dismissal of this action.

Plaintiff bases his alleged entitlement to punitive damages and relief under the New York General Business Law Sections 349 and 350 on his unpleaded assertion that Greenberg has perpetrated a widespread fraud on the public, but Plaintiff has not alleged a single other buyer who has sued Greenberg over the auction, which occurred in *2005*. While Plaintiff argues that his fraud claim "alleges misrepresentations extraneous to the agreement" (Plaintiff's Memo. at 18), the complaint identifies no extraneous communications with Greenberg and Plaintiff argues only "implicit representations" by Zachys in the auction contract (*id.* at 17). Nor can Plaintiff in good faith allege that Greenberg had any communication with him before the wine auction.

Moreover, the auction agreement explicitly informs every potential buyer that the wine is offered "'AS IS' without any representations or warranties by Zachys Wine Auctions or the Consignor as to . . . correctness of [the] catalog [or the] description, size, quality, condition, rarity, importance [or] provenance . . . " of the wine.  Agreement at 238 ¶ 1.  The agreement explicitly states that the sole remedy for a disputed purchase is return of the purchase price. *Id.* at 240 ¶ 11.  Plaintiff does not claim the agreement is unconscionable or ambiguous, and freely admits that he carefully read it.  In addition, there is no extraneous representation by Greenberg that contradicts the auction agreement.

Faced with no longer having a claim or damages, it is no surprise that Plaintiff cannot cite a single case involving:

1.    An auction buyer who refused to accept a full refund.

2.    An injunction arising out of an auction.

3.    Omission liability for an auction consignor.

4.    Punitive damages awarded as a result of a disputed auction item.

Plaintiff voluntarily submitted to the well-recognized, standard terms of the New York wine auction and purchased very rare bottles of wine for as much as $33,000 per bottle, which he characterizes as commodities.  Unlike the other purchasers of the balance of the 17,000 auctioned bottles, Plaintiff is on a personal campaign to change the luxury wine industry.[1] Courts, however, address the resolution of specific grievances, and Plaintiff's grievance already has been fully resolved in accordance with the parties' contract, without having to further burden this Court or Greenberg with senseless and costly litigation.  In the words of the Second Circuit, this Court should not "mandate[ ] trial on an issue that [has] no practical consequence." *ABN Amro Verzekeringen BV v. Geologistics Ams, Inc.*, 485 F.3d 85, 94 (2d Cir. 2007).

---

[1]    Patrick Radden Keefe, *The Jefferson Bottles*, The New Yorker, Sept. 3, 2007.

Because Plaintiff has been fully compensated for all his potentially recoverable losses, because punitive damages cannot be awarded, and because there is no basis for any injunction, this case should be dismissed. Plaintiff's claim that a consent to judgment is required to moot this action is incorrect and also immaterial. The Court can enter a judgment of rescission if desired. Greenberg has submitted a proposed judgment as an alternative to dismissal alone. *See* Tab 1. As Plaintiff consciously and strategically chose to reject full payment for his losses, however, dismissing the case without a judgment is appropriate, and this Court has the power to do so.

## ARGUMENT

### GREENBERG'S OFFER TO PAY KOCH EVERYTHING HE LEGALLY IS ENTITLED TO RECOVER MANDATES DISMISSAL OF THIS ACTION

#### A.    Greenberg Was Not Required to Make a Rule 68 Offer to Moot This Case

It is well established that an offer of the complete relief to which Plaintiff would be entitled at trial moots the case and deprives the court of jurisdiction. Plaintiff cites no Second Circuit authority holding that an offer ***must*** be made under Rule 68 to moot a case, and there is none. The Second Circuit cases involving Rule 68 offers do not hold, discuss or suggest that the decision to dismiss depended on the form of the offer.[2] To the contrary, although there was a Rule 68 offer in *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 453 (E.D.N.Y 2000), the court in dismissing that case cited *Murphy v. Equifax Check Servs., Inc.*, 35 F. Supp. 2d 200, 203 (D. Conn. 1999), in which the defendant did not make a Rule 68 offer but instead only made an offer

---

[2]    *See Abrams v. Interco, Inc.*, 719 F.2d 23, 33-34 (2d Cir. 1983); *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 453 (E.D.N.Y. 2000); and *Weiss v. Fein, Such, Kahn & Shepherd P.C.*, 2002 U.S. Dist. LEXIS 4783, at *9 (S.D.N.Y. Mar. 22, 2002).

by letter that "agreed to give the plaintiff full relief." There also was no Rule 68 offer in *Cresswell v. Prudential-Bache Sec., Inc.*, 675 F. Supp. 106, 107-08 (S.D.N.Y. 1987).[3]

Plaintiff cites only one case from the Eastern District of Virginia, *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 398 F. Supp. 2d 470, 486 (E.D. Va. 2005), in which the court ruled that a settlement offer could not moot the case because it was not made under Rule 68. The court's rationale in *Samsung* has no application to the facts of this case and ignores the compelling reasons for dismissing a case when full payment has been delivered to the plaintiff.[4] As the court observed in *Murphy*, "[w]ere this case to proceed to trial, plaintiff could lose, but [he] could not win more than what is now being offered to [him] by defendant. Thus, continuing the instant case serves no legitimate purpose whatsoever." 35 F. Supp. 2d at 204.

Plaintiff inexplicably cites *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d at 85, as authority for his argument that this case cannot be dismissed without a Rule 68 offer. *ABN Amro* does not address this issue. Moreover, *ABN Amro* establishes that this case should be dismissed based on Greenberg's satisfaction of Plaintiff's claims.

In *ABN Amro*, plaintiff claimed damages of approximately $500,000, but the district court ruled that plaintiff's damages were limited to $50 from each defendant as a matter of law. 485 F.3d at 92. When the defendants accepted the district court's invitation to offer Plaintiff

---

[3] *See also Holstein v. City of Chicago*, 29 F.3d 1145, 1147-1149 (7th Cir. 1994); *Gates v. Towery*, 456 F. Supp. 2d 953, 969 (N.D. Ill. 2006); *Barbara Z. v. Obradovich*, 937 F. Supp. 710, 717 (N.D. Ill. 1996).

[4] The court in *Samsung* noted that, unlike offers of judgment, an offer of settlement may be withdrawn at any time. 398 F. Supp. 2d at 486. That distinction is immaterial here, where Greenberg did not merely offer to settle, but sent Koch a check for the full amount of his recoverable damages. The court's concern that absent a judgment, questions remain about the prevailing party's attorneys' fees and costs is resolved here, where Greenberg included interest and costs in his tender and Plaintiff is not entitled to attorneys' fees; moreover, Greenberg offered to pay reasonable attorneys' fees if required by law and ordered by the Court, although Plaintiff does not argue any basis for the recovery of attorneys' fees. An attorneys' fees claim "does not avert mootness of the underlying action on the merits." *Murphy*, 35 F. Supp. 2d at 202 (citing cases from numerous circuits and dismissing case as moot while retaining jurisdiction to determine fees and costs). Finally, that a judgment may be more enforceable than a settlement is immaterial when the plaintiff has been tendered *in cash* the full amount of his damages.

$50, the court dismissed the case and entered a judgment for plaintiffs. *Id.* Plaintiff states, incorrectly, that the Second Circuit "reversed the district court's decision." (Plaintiff's Memo. at 5.) In fact, the court ***affirmed*** the judgment, finding that once the defendants tendered payment, "nothing of significance remained to adjudicate;" thus, "the district court correctly rejected [plaintiff's] claim that the court should have mandated trial on an issue that had no practical consequence." 485 F.3d at 93-94.

Here, too, there remains "nothing of significance" to be adjudicated in this matter, *id.*, and the case should be dismissed. By unreasonably choosing to prolong this pointless litigation by refusing payment for the full amount of his recoverable damages, Plaintiff "loses outright," and hardly can complain of a dismissal. *Murphy*, 35 F. Supp. 2d at 203 (plaintiff's claims dismissed as moot) (citing *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991)). A judgment is not required. *Id.* at 204. Clearly, there is no uniform federal rule that a judgment is required when a case is dismissed as moot. *See Zimmerman v. Bell*, 800 F.2d 386, 391-92 (4th Cir. 1986) (affirming dismissal of claim under Rule 12(b)(1), but no indication that judgment for plaintiff compelled); *Rand*, 926 F.2d at 598 ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate . . . and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake."); *Holstein v. City of Chicago*, 29 F.3d 1145, 1147, 1149 (7th Cir. 1994) (dismissing complaint as moot because of defendant's offer to pay all damages to plaintiff); *Gates*, 456 F. Supp. 2d at 969 (restitution-based claims mooted by tender of payment made before suit filed, so claims dismissed with prejudice); *Barbara Z.*, 937 F. Supp. at 717 (two counts dismissed as moot).

Should the Court conclude that a judgment is even necessary, however, Greenberg has submitted a proposed order and judgment of rescission, *see* Tab 1, which includes the appropriate and accurate explanation that the judgment is not based on a finding of fault or liability, *see ABN Amro*, 485 F.3d at 96 n.11.

## B.    Greenberg Compensated Koch for All of His Potential Damages

Plaintiff does not deny that Greenberg tendered full payment of his total purchase price, plus interest and court costs, and does not dispute that Greenberg's tender exceeded his recoverable damages under New York General Business Law ("GBL") sections 349 and 350 (McKinney 2004). Although Plaintiff now seeks certain additional damages (inspection costs, storage and disposal costs), these claims are barred by the auction contract.[5] Plaintiff's only remaining claims are for an injunction and punitive damages, and as a matter of law, he cannot obtain either.

### 1.    Plaintiff is not entitled to injunctive relief under New York General Business Law sections 349 and 350.

#### a.    Sections 349 and 350 do not apply to Koch's claims.

GBL sections 349 and 350 were enacted to protect consumers harmed by unfair conduct affecting multiple buyers in cases where each individual purchase is so small that individual consumers would otherwise be discouraged from litigating. The statutes were intended to protect individuals with modest amounts of money at stake in order "to even the playing field in [consumers'] disputes with ***better funded*** and ***superiorly situated*** fraudulent businesses." *Teller*

---

[5]    It is a measure of how absurd Plaintiff's position is for him to suggest that this case should not be dismissed because he has not been reimbursed for storing 11 bottles of wine in his three private wine cellars, which hold 40,000 bottles, or that there will be measurable costs in handing the bottles to whoever comes to retrieve them. Of course, had he promptly returned the bottles to Greenberg at Greenberg's expense, as Greenberg offered along with $272,555.72 in cash, his "storage" and "disposal" damages would have been mitigated. In any event, plaintiff contractually agreed that he is not entitled to recover such "indirect" or "consequential" damages in his auction agreement with Greenberg and Zachys. Agreement at 240 ¶ 11.

6

*v. Hayes*, 213 A.D.2d 141, 147-48, 630 N.Y.S.2d 769, 774 (2d Dep't 1995) (stating that the statute's provisions allowing the greater of actual damages or $50 and its limit of $1,000 for treble damages indicate this goal) (emphasis added).  The goal of these statutes was to protect the public from acts or practices with "a broad impact on consumers at large."  *New York Univ. v. Cont'l. Ins. Co.*, 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 290 (1995).  Plaintiff's claims here do not remotely serve these purposes, or further these goals.  As established in Greenberg's opening brief, this case far more closely resembles the cases where courts have dismissed claims based on these statutes and bears little resemblance to the cases upon which Plaintiff relies.

Thus, Plaintiff argues that, under the authority of *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995), and *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995), he can state GBL claims arising out of an exclusive multi-million dollar wine auction.  These cases are nothing like this case.

In *Securitron*, defendant made, among other misrepresentations, multiple false statements to a regulatory agency charged with protecting public safety.  The defendant in *Securitron* caused the regulatory agency "to undertake unnecessary investigations and interfered with its decision making process by complaining of non-existent 'potential danger . . . in fire safety situations.'"  65 F.3d at 264.  The fact that an approved testing agency was forced to take time from its normal activities to address the defendant's false statements also was detrimental to the public interest.  The Second Circuit therefore found that the defendant's false statements were contrary to the public interest within the meaning of GBL section 349.  There is a clear and material distinction between the public interest implicated by threatened physical harm to the

general public and alleged economic injury to a billionaire or the select group of bidders at an exclusive high-end wine auction.

*Oswego* also involved the type of unsophisticated and broad-based consumers the GBL statutes were designed to protect. The plaintiffs in *Oswego* were non-profit union funds who were provided with inaccurate information about interest caps on their savings accounts. The unions' members whose funds were involved were a part of the public group of consumers of banking services, even though large amounts of money in the aggregate were at stake. Moreover, the union funds' claims raised broad issues affecting retail banking customers generally:

> The record indicates that defendant Bank dealt with plaintiffs' representatives as any customer entering the bank to open a savings account, furnishing the Funds with standard documents presented to customers upon the opening of accounts. *The account openings were not unique to these two parties, nor were they private in nature or a "single shot transaction."* Thus, plaintiffs have satisfied the threshold test in that the acts they complain of are consumer-oriented in the sense that they potentially affect similarly situated consumers.

*Oswego*, 85 N.Y.2d at 26-27 (quoting *Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984)).[6] In contrast, Plaintiff's purchase of wine at the Zachys October 2005 auction was: (a) a transaction unique to those two parties; (b) private in nature; and (c) a single shot transaction.

The underlying facts in *New York v. Feldman*, 210 F. Supp. 2d 294 (S.D.N.Y. 2002), the only case cited by Plaintiff regarding the application of GBL Section 349 to an auction, bear no relationship to this case. *Feldman* involved a complaint by three states' Attorneys General claiming price fixing at public stamp auctions over at least a 17-year period. *Id.* at 297-98. In

---

[6]  Although Plaintiff attempts to downplay the importance of *Genesco*, *Oswego* cited it approvingly and affirmed its holding that GBL claims "must charge conduct of the defendant that is consumer-oriented" and, further, that a plaintiff "must demonstrate that the [challenged] acts or practices have a broader impact on consumers at large. Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute . . . ." *Oswego*, 85 N.Y.2d at 25.

8

holding that the plaintiff sellers had stated a claim under GBL Section 349, the court found: "[A] large majority of sellers at these auctions are individuals, many of whom are elderly or one-time participants in the auction market and have neither the means nor the information to detect collusive bidding." *Id.* at 298. The court specifically noted that "courts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals." *Id.* at 301. These facts and circumstances bear no relationship to the Plaintiff's claim here. Unlike the plaintiffs in *Feldman*, which involved auctions in three states over 17 years, Plaintiff is unable to plead "repeated acts of deception directed at a broad group of individuals." Of course, Plaintiff cannot allege that he is either an unsophisticated seller or buyer, or that this single Zachys auction involved "the elderly and one-time participants." An exclusive auction involving the sale of wine for $30,000 a bottle is a far cry from 17 years of bid-rigging in *Feldman*. Most critically, *Feldman* had nothing to do with the Uniform Commercial Code and the specific agreed-upon terms of a single auction contract.

Finally, Plaintiff's reliance on *S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629 (2d Cir. 1996), is misplaced. The court in *S.Q.K.F.C.* did not determine whether the conduct alleged was sufficiently consumer-oriented to state a claim under GBL section 349; rather, it affirmed the district court's dismissal of the GBL claim on the ground that a reasonable consumer would not have been misled by the defendant's oral representations or conduct because of the disclaimers in the defendant's guaranty documents. *Id.* at 636-37. The plaintiff in *S.Q.K.F.C.* also had the option to choose not to enter into the contract with the defendant: "[A]t the time it learned of this [guaranty] term, S.Q.K.F.C. was still free to decline to accept TriCon's terms and to receive a refund of its deposit money (as it did), and to seek more favorable terms with another lender." *Id.* at 637. These facts bear a striking similarity to Plaintiff's claims.

Here, the auction contract contained an "AS IS" disclaimer which Plaintiff admits he read before bidding on and buying the wine, and Plaintiff could have declined to accept the clear and unambiguous terms of the auction contract and refrained from bidding on the wine.

While having essentially nothing in common with the cases on which Plaintiff relies, Plaintiff's GBL claims readily fall within the scope of cases where such claims are dismissed. In *Teller*, the court dismissed a GBL section 349 claim because the commercial relationship between the parties was closer to a large single shot transaction than a typical consumer fraud case:

> *[T]his dispute arises out of a contract between the parties with a stated value of $350,000, and on which the plaintiff allegedly paid in excess of $1,000,000.* Thus, as in *Quail Ridge*, the size of the disputed amount alone is evidence of the complexity of the transaction. The contract was negotiated at arm's length; the plaintiff had no obligation to contract with the defendants to do her renovations. . . . Stated differently, *there was not the disparity of bargaining power present in this case that is a signature of the more run-of-the-mill consumer fraud case.*

213 A.D.2d at 149 (emphasis added). The *Teller* court specifically rejected the plaintiff's request to expand the holding in *Oswego*:

> *As the case law makes clear, this enactment was not intended to turn a simple breach of contract into a tort.* . . . The statute was intended to empower consumers; to even the playing field in their disputes with better funded and superiorly situated fraudulent businesses. It was not intended to supplant an action to recover damages for breach of contract between parties to an arm's length contract.

*Id.* at 148 (emphasis added). The court therefore rejected the plaintiff's attempt to transform a basic contract claim into a fraud claim and dismissed the GBL section 349 claim accordingly. *Id.* at 150. *See also Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 330 (S.D.N.Y. 2002) (dismissing GBL section 349 claim because injury belonged to plaintiff alone, who could not establish a "national policy" or "extensive scheme" by the insurance companies to falsify

disability examinations); *MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) ("The injury must be to the public generally as distinguished from the plaintiff alone."); *Canario v. Gunn*, 300 A.D.2d 332, 333, 751 N.Y.S.2d 310, 311 (2d Dep't 2002) (dismissing GBL section 349 claim involving individual buyer of unique real estate).

Examination of the facts of this case in light of the case law and the clearly explicated consumer protection goals of GBL sections 349 and 350 demonstrates that those statutes simply were not designed for this type of case. Nothing in this case – a case involving a private contract between two parties with equivalent bargaining power engaging in a single shot transaction – satisfies those goals.

> **b.    Koch has not pleaded and cannot plead an imminent threat of irreparable harm or that the equities favor him.**

The standard for injunctive relief under GBL sections 349 or 350 is the same as the traditional standard. A plaintiff must still prove that irreparable injury will result absent injunctive relief and that the balance of equities favors him:

> Section 350-d [now section 350-e] of Article 22-A of the General Business Law, which permits a private party to bring an action in his own name to enjoin false advertising, specifically states that article 22-A "neither enlarges nor diminishes the rights of the parties in private litigation except as provided in this section." Therefore, *the criteria which a party must meet to obtain a preliminary injunction are those traditionally required for such relief.* This "drastic" remedy will not be granted unless a plaintiff has met the heavy burden of demonstrating a clear right to it, by showing that he is likely to succeed on the merits of his claim, *that irreparable injury will result absent injunctive relief and that the equities balance in his favor.*

*McDonald v. North Coast Yacht Sales, Inc.*, 134 Misc. 2d 910, 913, 513 N.Y.S.2d 590, 593 (N.Y. Sup. Ct. 1987) (emphasis added).[7] *See also Quinn v. Aetna Life & Cas. Co.*, 96 Misc. 2d 545, 559, 409 N.Y.S.2d 473, 481 (N.Y. Sup. Ct. 1978); *Shelborne Beach Club v. Hellman*, 49

---

[7]    Section 349 also falls within Article 22-A of the General Business Law.

A.D.2d 933, 933, 372 N.Y.S.2d 227, 228 (2d Dep't 1975). Koch has not met and cannot meet this standard. There is no threat to him of imminent future harm, and he has alleged no "irreparable" injuries; indeed, he has no recoverable damages because he has been made whole by Greenberg's payment in accordance with his contract with Greenberg and Zachys. The equities clearly do not favor the plaintiff where the defendant has fully, promptly and without any dispute, honored the contract between the parties.

Plaintiff cannot establish that irreparable injury to him will result "absent injunctive relief" because his complaint is based entirely on alleged injuries that were caused in the past and which he easily can avoid in the future. Injunctions address *imminent future* harm, not past, completed acts. *See* N.Y. CPLR § 6301 (McKinney 2007); *Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000); *Solomon v. Pepsi-Cola Co.*, 140 A.D.2d 323, 323, 527 N.Y.S.2d 556, 556 (2d Dep't 1988) (plaintiff failed to establish threatened irreparable harm where action for monetary damages was available for past injury and plaintiff could avoid alleged future injury).

As in *Solomon,* Plaintiff has it entirely within his control to avoid any future harm he alleges simply by declining to buy rare wines where the contractual terms of sale are not to his liking – or by negotiating for different contract terms before making his purchase. Moreover, Plaintiff's complaint is directed to an auction that occurred in *October 2005*, well over two years ago, and no specific, imminent act is alleged. Plaintiff has not alleged, and cannot allege, that other purchasers have filed claims against Greenberg, demonstrating the speculative and hyperbolic nature of Plaintiff's claims that others were harmed by their purchase of "possibly counterfeit" wine. Even if this occurred (which Greenberg vehemently denies), any alleged harm arises not from future conduct, but from a completed, past sale, and all damages would be

fully compensable through the contractually-provided remedy of rescission, as were Plaintiff's alleged losses.

Plaintiff also cannot possibly show "irreparable" injury. As established by Plaintiff's own complaint, his entire loss is compensable in, and already has been compensated by, the payment of money; there is no element of his claimed loss that cannot be quantified and compensated in cash. The alleged damages can be determined down to the penny. Plaintiff therefore cannot obtain injunctive relief. *Solomon*, 140 A.D.2d at 323; *Zandman v. Nissenbaum*, 53 A.D.2d 837, 837, 385 N.Y.S.2d 562, 562 (1st Dep't 1976) (plaintiff could not show irreparable injury since defendants could respond in money damages if plaintiff ultimately prevailed); *Busters Cleaning Corp. v. Frati*, 180 A.D.2d 705, 706, 580 N.Y.S.2d 363, 364 (2d Dep't 1992) (plaintiffs may be fully recompensed with monetary award and have therefore failed to demonstrate an irreparable injury); *Appio v. Mel Lyn Office Supplying*, 222 A.D.2d 541, 541-42, 635 N.Y.S.2d 651, 651 (2d Dep't 1995) (plaintiffs failed to show irreparable injury because they could be adequately compensated in damages); *Leo v. Levi*, 304 A.D.2d 621, 623, 759 N.Y.S.2d 94, 96 (2d Dep't 2003) (plaintiff law partners failed to show irreparable injury because they could be adequately compensated in damages).

The equities decidedly do not favor plaintiff. Plaintiff has been offered the full amount of his purchase price, plus interest and court costs. Greenberg fully lived up to his contractual obligations to Plaintiff. Plaintiff, on the other hand, has not lived up to his contract. He has refused to return the wine he purchased, even though he demanded rescission and, accordingly,

13

he must preserve the wine so the transaction can be undone.[8] Plaintiff is not threatened with an imminent loss or, indeed, with any loss at all; he has been made whole. Plaintiff maintains this action without regard for the public or private costs, which easily will dwarf his purchase price. There is no rule of law or equity that requires the Court or the parties to litigate a case that already is over.

Finally, Plaintiff's claim to be acting for the public's benefit in seeking injunctive relief is an insufficient basis for maintaining this now pointless litigation. As the court observed in *Abrams v. Interco Inc.*, 719 F.2d 23, 33 n.9 (2d Cir. 1983), "[W]e know of no principle that a plaintiff must be allowed to pursue litigation in which he no longer has an interest merely because this could benefit others." *See also Cresswell*, 675 F. Supp. at 108 ("[D]espite [plaintiff's] eloquent protestations concerning the wrong allegedly practiced by Bache on unknowing investors, like himself, and his fervent desire to have Bache brought to justice, neither the common law nor the CEA [Commodity Exchange Act] permits a previously aggrieved party to act as a private attorney general where the party seeking to litigate can no longer show damage."); *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (plaintiff's individual claim dismissed when she rejected offer to pay all her damages: "[F]ederal courts do not sit simply to bestow vindication in a vacuum.").

**2.     Plaintiff Is Not Entitled To Punitive Damages.**

**a.     The auction contract's limitation on liability bars a claim for punitive damages.**

*Plaintiff's brief entirely ignores the Uniform Commercial Code, which is the*

---

[8]     Plaintiff, of course, is obliged to preserve the wine on which he bases his claims for evidentiary reasons as well. He could only bring his rescission claim by being ready, willing and able to return the wine. Plaintiff's asserted reluctance to return the wine because of Greenberg's intent to re-sell it is disingenuous and misleading to the Court, as Greenberg made clear in his offer letter that if Plaintiff accepted his check Greenberg intended to use the wine for charitable purposes. Declaration of Arthur J. Shartsis ¶ 2 and Exhibit A.

*controlling law here.* However, Koch himself labels the wine he purchased at auction a "commodity" (Plaintiff's Memo. at 11), thereby admitting that the wines he contracted to purchase are "goods" and the purchase here is governed by the U.C.C. as enacted in New York State. New York law (like the U.C.C. generally) expressly contemplates the application of the U.C.C. in the auction context. N.Y. U.C.C. § 2-328 (McKinney 2002).

Because the U.C.C. applies to this sale, the unambiguous limitation on liability in the contract is valid. Koch has not alleged and has not argued that the limitation on liability is unconscionable, and it clearly is not. It provides a fair remedy for breach – full return of the purchase price. This provision is exactly the type of limitation of remedy authorized under the U.C.C. N.Y. U.C.C. § 2-719(1)(a) (McKinney 2002) ("[T]he agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, *as by limiting the buyer's remedies to return of the goods and repayment of the price* or to repair and replacement of nonconforming goods or parts.") (emphasis added).

Federal and state courts within New York routinely enforce limitation clauses like the one in this agreement, even in cases falling outside the scope of the U.C.C.:

> "A limitation on liability provision in a contract represents the parties' agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor" if the limitation is not the result of unconscionable conduct or unequal bargaining power between the parties.

*Dyncorp v. GTE Corp.*, 215 F. Supp. 2d 308, 317 (S.D.N.Y. 2002) (quoting *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436, 618 N.Y.S.2d 882, 885 (1994)). The court in *Dyncorp* specifically considered and rejected the claim by the plaintiff that the limitation on liability clause in the parties' contract should not be enforced if the breach was fraudulent, as the plaintiff had alleged. *Dyncorp*, 215 F. Supp. 2d at 317-18.

Plaintiff does not dispute that he expressly agreed that his "damages are limited exclusively to the original purchase price paid for the lot." Nor does Plaintiff dispute that the New York Uniform Commercial Code makes enforceable Plaintiff's express agreement to the terms of Zachy's commercial auction contract. *See* discussion of the Agreement's limitation of damages, the New York Uniform Commercial Code, and supporting cases in Greenberg's Opening Memo. at 12-14.

Plaintiff cites only two cases as authority for avoiding his express written agreement to limit his damages to the price paid. Unlike this case, Plaintiff's two cases do not deal with auction contracts, commodities, the U.C.C or commercial transactions and involve direct prior relationships between the contracting parties resulting in highly negotiated and individually crafted agreements. In *Bridger v. Goldsmith*, 143 N.Y. 424, 38 N.E. 458 (1894), the parties had negotiated over the purchase of defendant's business and other property, and the dispute arose over the insertion of a clause after the "the terms and conditions of the sale had been settled." *Id.* at 430. *Turkish v. Kasnetz*, 27 F.3d 23 (2d Cir. 1994), was a complex RICO claim for "settlement fraud" about the terms of a settlement agreement that had been heavily negotiated after years of extensive business relationships and litigation.

In contrast, the instant case involves a standard auction contract with standard representations and limitations of damages, all in accordance with the New York Uniform Commercial Code and New York auction law. In Plaintiff's own words in this case: "The catalogue was identical for every recipient and, far from being negotiated, was filled with *boilerplate language that applied to transactions with all auction participants*." (Plaintiff's Memo. at 23) (emphasis added.) Moreover, Plaintiff has not alleged and cannot honestly allege that before he purchased the wine he had any communications whatsoever with defendant

Greenberg about the auction, or anything else.[9]   Accordingly, Greenberg could not have made any extraneous representation to induce Plaintiff to enter into the agreement.

Unlike the plaintiffs in *Bridger* and *Turkish*, Plaintiff here bought commercial goods at auction "'AS IS'" without any representations or warranties as to . . . correctness of [the] catalog [or the] description, size, quality, condition, rarity, importance [or] provenance . . . ." of the wine. Agreement at 238 ¶ 1.  With notice of this clear limitation, Plaintiff also agreed that his exclusive remedy was "the original purchase price paid . . . ."  *Id.* at 240 ¶ 11.  The auction contract provides that, by refunding the purchase price, Plaintiff will be fully restored to his same position before the auction was ever conducted.  Greenberg, of course, has taken every possible step to fulfill the auction contract.

### b.    Plaintiff cannot state a fraud claim that is separate from a contract claim.

Plaintiff cannot maintain a fraud claim separate from a contract claim under the facts he has alleged:

> To maintain a claim of fraud in such a situation, a plaintiff must either:  (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.

*Bridgestone/Firestone v. Recovery Credit Svcs, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (vacating finding of fraud).  Koch cannot succeed under any of these three options.

First, Greenberg had no legal duty to Koch separate from the duty to perform under the contract.  Koch tries to cloud the issue by citing cases involving fraudulent inducement.  These are inapposite.  There is not, and factually could not be, an allegation that Koch was told either to

---

[9]    Plaintiff argues that his fraud claim "alleges misrepresentations extraneous to the agreement."  (Plaintiff's Memo. at 18.)  However, there is no such extraneous misrepresentation by Greenberg found in the complaint, and it could not be alleged in good faith.

ignore the terms of the contract, or that the terms "that applied to transactions with all auction participants" (Plaintiff's Memo. at 23) somehow did not apply to him. The law is clear that Koch cannot reasonably have relied on any omissions or representations given the express "AS IS" disclaimer in the contract, by which Plaintiff specifically agreed that Zachys and Greenberg were making no representations or warranties as to "merchantability, fitness for a particular purpose, correctness of catalog, description, size, quality, condition, rarity, importance, provenance . . . or historical relevance" of the wines up for auction. Agreement at 238 ¶ 1. *See Dannan Realty Corp. v. Harris*, 5 N.Y.2d 317, 321-23, 184 N.Y.S.2d 599, 599-600, 602-04 (1959) (person who has read and understood disclaimer in written contract is bound by it); *Citibank v. Plapinger*, 66 N.Y.2d 90, 94-95, 495 N.Y.S.2d 309, 311-12 (1985); *Int'l Motor Sports Group, Inc. v. Gordon*, 1999 U.S. Dist. LEXIS 12610, at *20 (S.D.N.Y. Aug. 16, 1999) ("Under New York law, where a party specifically disclaims reliance upon a particular representation in a contract, that party cannot, in a subsequent action for common law fraud, claim it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon.") (internal quotations omitted); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 319 (S.D.N.Y. 2002) ("DynCorp's particularized disclaimers make it impossible for it to prove one of the elements of a claim of fraud: that it reasonably relied on the representations that it alleges were made to induce it to enter into the Purchase Agreement."); *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 785 (2d Cir. 2003) (plaintiff could not justifiably rely on representation about engine's airworthiness because it specifically disclaimed such reliance in the "AS IS" provision of the receipt).

The explicit "AS IS" provision also makes it impossible for Plaintiff to establish that Greenberg had a "duty to speak." Under *Brass v. American Film Technologies, Inc.*, 987 F.2d

142 (2d Cir. 1993), such a duty arises only in three limited circumstances, two of which are not at issue here.[10] To establish that Greenberg had any duty to speak, Plaintiff must establish that Greenberg knew that Koch was acting on the basis of mistaken knowledge. *Id.* at 150. Given the explicit "AS IS" disclaimer and the contractual invitation to bidders to inspect the wines, Agreement at 238 ¶ 1, Plaintiff could not reasonably have acted on the basis of mistaken information about any warranty or representation about the wines – and Greenberg cannot have known that Koch was acting (choosing to purchase certain wines at auction) other than on the basis set forth in the contract. *See, e.g., Dannan,* 5 N.Y.2d at 321-23; *Plapinger,* 66 N.Y.2d at 93; *Int'l Motor Sports Group, Inc.,* 1999 U.S. Dist. LEXIS 12610, at *20; *DynCorp,* 215 F. Supp. 2d at 322; *Dallas Aerospace, Inc.,* 352 F.3d at 785.[11] Of course, it cannot be alleged that Greenberg made any separate representations to Koch that would lead Koch to believe he could ignore the provisions of the contract.

Second, Koch has not alleged any fraudulent misrepresentation to him by Greenberg that is collateral or extraneous to the contract. Further, Koch alleges only *implicit representations made to him* in the contract:

> For instance, Greenberg represented to Zachys "that the wines he was offering for sale to the public, including those ultimately purchased by Koch, were genuine when they were not." Complaint ¶ 61. Further, Zachys' 2005 auction catalogue contained *implicit representations* (by Zachys as Greenberg's conduit) that the wine being auctioned was genuine and described accurately.

---

[10] Thus, Plaintiff does not and cannot allege that Greenberg made partial or ambiguous statements to him or that Greenberg and Plaintiff had a fiduciary or confidential relationship. *Brass,* 987 F.2d at 150. Although the court in *Brass* found that the defendant there had a "duty to speak," the ruling was based on the facts of that case, including the direct conversations between the parties over a two-year period and the obligations that arose during the course of those communications. *Id.* at 152. *Brass* also did not involve written disclaimers or damage limitations, and is therefore distinguishable from this action on that and other grounds.

[11] Plaintiff's reliance on *Christie's Inc. v. Dominica Holding Corp.,* 2006 WL 2012607 (S.D.N.Y. July 18, 2006), is misplaced. *Christie's Inc.* is the exact reverse of this case. In *Christie's Inc.,* the auction house sued to force the buyer to pay for non-conforming goods that the buyer rejected and returned. It is entirely distinguishable from this case, where an auction consignor has been frustrated in his attempt to refund the buyer's purchase price and get the goods back according to the terms of the auction contract.

(Plaintiff's Memo. at 17) (emphasis added).    Allegations of "*implicit representations*" are insufficient to overcome an unambiguous and *explicit* disclaimer as a matter of law. *Dannan*, 5 N.Y.2d at 321-23; *DynCorp*, 215 F. Supp. 2d at 322; *Dallas Aerospace, Inc.*, 352 F.3d at 785; *see also* additional citations, *supra* p. 18.  Moreover, the genuineness of the good sold – the good that is the very subject of the contract – cannot possibly be "collateral" or "extraneous" to the contract.  "[A] false statement which goes to the 'root' of an agreement is of course not a false statement which can be deemed 'collateral' to that agreement." *MacPhee v. Verizon Commc'n's, Inc.*, 2008 U.S. Dist. LEXIS 3230, at *13-14 (S.D.N.Y. Jan. 15, 2008) (internal quotation omitted).

Plaintiff claims he contracted for a specific wine under the contract but did not receive it – in other words, that he received nonconforming goods.  Koch's claim is thus for breach of warranty – a straight breach of contract claim, squarely within the limitation on damages in the written contract that Plaintiff admits he read and relied upon. *Cf. Donovan v. Aeolian Co.*, 270 N.Y. 267, 271-73, 200 N.E. 815, 816-17 (1936) (finding that defendant seller of used piano had fraudulently failed to disclose condition of piano, yet construing claim as breach of warranty claim and limiting plaintiff buyer's damages to breach of warranty contract damages).

Finally, Koch has alleged no "special damages" – *i.e.*, damages proximately caused by the alleged false representations and not recoverable as contract damages. *Tesoro Petroleum Corp. v. Holborn Oil Co. Ltd.*, 108 A.D.2d 607, 607, 484 N.Y.S.2d 834, 835 (1st Dep't 1985) (holding fraud claim should have been dismissed); *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996) (dismissing fraud claim).  The only "special" damages he now claims – inspection, storage and disposal costs – unquestionably are contract damages as defined in the U.C.C.:

(1)    Incidental damages resulting from the seller's breach include expenses reasonably incurred in *inspection*, receipt, transportation and *care and custody of goods rightfully rejected*, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

N.Y. U.C.C. § 2-715(1) (McKinney 2002) ("Buyer's Incidental and Consequential Damages") (emphasis added). While these contract damages are not recoverable in this particular case because the written contract expressly excluded them (as Plaintiff agreed before bidding and buying the wine), they are, in fact, contract and not "special" damages. *Id.*

Plaintiff has not met and cannot meet the *Bridgestone/Firestone* requirements for maintaining a fraud claim arising out of a breach of contract. His claim for punitive damages based on fraud is therefore invalid as a matter of law.

> **c.    Koch is not entitled to punitive damages under either a contract or fraud claim because he cannot meet the strict standard for the extraordinary remedy of punitive damages under New York law.**

Even assuming that Plaintiff has stated a fraud claim, he cannot receive the extraordinary remedy of punitive damages. In arguing to the contrary, Plaintiff entirely ignores the holding in *Walker v. Sheldon*, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 491 (1961), which sets the bar for recovery of punitive damages in New York extremely high:

> Although they have been refused in the "ordinary" fraud and deceit case, we are persuaded that, on the basis of analogy, reason and principle, there may be a recovery of exemplary damages in fraud and deceit actions where the fraud, *aimed at the public generally, is gross and involves high moral culpability.* And this court has – in line with what appears to be the weight of authority – sanctioned an award of such damages in a fraud and deceit case where the *defendant's conduct evinced such a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations.*

*Id.* at 405 (internal citations omitted) (emphasis added). *See also Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 291-92 (S.D.N.Y. 1995) (punitive damages require "fraud

aimed at the public generally" evincing a "high degree of moral turpitude" and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations"); *Ladenburg Thalmann & Co., Inc. v. Imaging Diagnostic Sys., Inc.*, 176 F. Supp. 2d 199, 207 (S.D.N.Y. 2001) (to be awarded punitive damages on fraud claim, plaintiff must show that "fraud involved egregious conduct, directed not only at the plaintiff but also at the public at large"). Plaintiff cannot meet this stringent standard as a matter of law, based on the undisputed facts of this case.

Plaintiff admits that as soon as Greenberg learned that Koch was unhappy with some of the wine Koch purchased at auction, Greenberg offered Koch full rescission and full refund of Koch's purchase price. (Plaintiff's Memo. at 3; Declaration of Bruce Wessel ¶ 2.) Greenberg's prompt tender does not reflect "such wanton dishonesty as to imply a criminal indifference to civil obligation" – exactly the opposite. Greenberg immediately did everything within his power to meet his civil obligation, which was to honor the terms of the auction contract, which provides that the buyer may obtain damages limited exclusively to the original purchase price paid for alleged nonconforming goods. Agreement at 240 ¶ 11; *see also id.* at 239 ¶ 10 ("The Buyer's sole and exclusive remedy against Zachys Wine Auctions and the Consignor under this provision shall be the rescission of the sale and the refund of the original purchase price paid for the lot."). Rather than "moral turpitude" or "criminal indifference," Greenberg demonstrated complete commitment to meeting his civil obligations under the parties' written contract, even refunding the purchase price of wine that the buyer described as only "possibly counterfeit." Punitive damages simply are not available under these circumstances.

If Plaintiff's logic is followed, Greenberg would be equally exposed to punitive damages whether he promptly honored the contract or completely disputed Plaintiff's claim. This, of course, would create strong disincentives for consignors to honor their contracts because doing

so would be construed as an admission of liability.  As a matter of policy, this would wreak

havoc with long-established auction terms and practices, and open up both auction houses and

consignors to protracted fraud litigation every time there is an allegation of non-conforming

goods.[12]

As established above, Plaintiff has in fact alleged a breach of contract, not fraud.

Accordingly, his burden in obtaining punitive damages is even greater:  he must establish both

the "wanton dishonesty" required by *Walker* and a pattern of conduct affecting a public interest:

> Punitive damages are available where the conduct constituting, accompanying, or
> associated with [a] breach of contract is first actionable as an independent tort for
> which compensatory damages are ordinarily available, and is sufficiently
> egregious under the *Walker* standard to warrant the additional imposition of
> exemplary damages.  ***Thus a private party seeking to recover punitive damages
> must not only demonstrate egregious tortious conduct by which he or she was
> aggrieved, but also that such conduct was part of a pattern of similar conduct
> directed at the public generally.  Clearly then, the standard for awarding
> punitive damages [ ] is "a strict one" and this extraordinary remedy will be
> available "only in a limited number of instances."***

*Rocanova v. Equitable Life Assurance Soc'y of U.S.*, 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 343

(1994) (internal citations omitted) (emphasis added).

While Koch tries to concoct other "victims" of the alleged fraud here, he does not and

cannot identify a single other individual who bought allegedly counterfeit wine (or even

"possibly counterfeit" wine, whatever that means) over two years ago at the Zachys auction.  A

private auction of expensive vintages does not involve the public generally.  On the contrary, the

public has an interest in normalizing commercial transactions that are made pursuant to written

contract.  *See Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d

711, 740 (S.D.N.Y. 2000) ("[T]here is a strong public interest in protecting the reliance that

---

[12]    Plaintiff takes his argument to the absurd extreme, likening Greenberg's honoring of the refund term of the
contract to a bank robber offering to return stolen funds after being caught.  (Plaintiff's Memo. at 20.)  Rather than
indicating criminal behavior, Greenberg's full compliance with contract terms should be encouraged and supported,
particularly when the alternative is costly civil – not criminal – litigation.

23

contracts induce."). Moreover, Greenberg's conduct in promptly fulfilling the terms of his contract with Plaintiff cannot possibly constitute "egregious tortious conduct." Punitive damages are not available to Koch on his breach of contract claim as a matter of law.

## CONCLUSION

Plaintiff received a check for the entire amount he legally can recover in this action. He is not entitled to an injunction as a matter of law, and there is no basis at law for an award of punitive damages, given the contractual nature of his claim and New York State's rigorous standard for such an award, even in fraud and deceit claims. Yet Plaintiff asks this Court "to continue the litigation when there is nothing more that [plaintiff] could possibly receive, which would not only waste this Court's time, but that of the attorneys and parties, as well . . . . 'Defendants, like the courts, have an interest in peace; once there is no more dispute, there is no case.'" *Murphy,* 35 F. Supp. 2d at 204 (citation omitted). This case should be dismissed.

Dated: New York, New York.
      this 15th day of February, 2007

Respectfully submitted,

            s/
_____
Anthony P. Coles (AC 7942)
DLA PIPER US LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500
anthony.coles@dlapiper.com

*Of Counsel*
Arthur J. Shartsis
Tracy L. Salisbury
Richard F. Munzinger
Amy L. Hespenheide
SHARTSIS FRIESE LLP
1800 Maritime Plaza, 18th Floor
San Francisco, California 94111
(415) 421-6500

NEWY1\8199321.2

TAB 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
WILLIAM I. KOCH, an individual,                    :

        Plaintiff,                    :    **No.: 07 Civ. 9600 (BSJ) (DCF)**
                                            **ECF Case**

        vs.                    :

ERIC GREENBERG, an individual, ZACHYS    :    **[PROPOSED] ORDER GRANTING**
WINE & LIQUOR STORE, INC., a New York         :    **DEFENDANT ERIC GREENBERG'S**
corporation; and ZACHYS WINE AUCTIONS,    :    **MOTION TO DISMISS COMPLAINT**
INC., a New York corporation,

        Defendants.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

    This Court has considered Defendant Eric Greenberg's Motion to Dismiss for Lack of

Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) or, in the Alternative, to Dismiss Pursuant

to Federal Rule 12(b)(6), all the papers filed in support of and in opposition to the motion and the

arguments of counsel. The Court finds that defendant Greenberg has voluntarily tendered

$272,555.72 to Plaintiff, this amount representing a full refund of Plaintiff's purchase price of

$228,603.33 for the eleven bottles of wine at issue in Plaintiff's claims against Greenberg,

pursuant to the agreement of the parties, $42,952.39 in interest at the rate of 9% per annum from

October 28, 2005 to November 28, 2007 and estimated court costs of $1,000.00. Plaintiff is not

entitled to any further relief. As a matter of law, therefore, there is no claim of any practical

significance requiring resolution by the Court, amendment would be futile and the complaint

against Greenberg should be dismissed.

    IT IS HEREBY ORDERED that defendant Greenberg's motion to dismiss the complaint

against him is hereby GRANTED without leave to amend. Plaintiff's complaint against

defendant Greenberg is hereby DISMISSED WITH PREJUDICE.

Dated: _____, 2008

                                      _____
                                   UNITED STATES DISTRICT COURT
                                            JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
WILLIAM I. KOCH, an individual,                    :

        Plaintiff,                               :          **No.: 07 Civ. 9600 (BSJ) (DCF)**
                                                              **ECF Case**
     vs.                                            :

ERIC GREENBERG, an individual, ZACHYS              **[ALTERNATIVE PROPOSED] ORDER**
WINE & LIQUOR STORE, INC., a New York              **GRANTING DEFENDANT ERIC**
corporation; and ZACHYS WINE AUCTIONS,  :          **GREENBERG'S MOTION TO DISMISS**
INC., a New York corporation,                      **COMPLAINT**
                                                   :
        Defendants.                              :
------------------------------------ X

     This Court has considered defendant Eric Greenberg's Motion to Dismiss for Lack of

Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) or, in the Alternative, to Dismiss Pursuant

to Federal Rule 12(b)(6), all the papers filed in support of and in opposition to the motion and the

arguments of counsel.  The Court finds that defendant Greenberg has voluntarily tendered

$272,555.72 to Plaintiff, this amount representing a full refund of Plaintiff's purchase price of

$228,603.33 for the eleven bottles of wine at issue in Plaintiff's claims against Greenberg,

pursuant to the agreement of the parties, $42,952.39 in interest at the rate of 9% per annum from

October 28, 2005 to November 28, 2007 and estimated court costs of $1,000.00.  Plaintiff is not

entitled to any further relief.  As a matter of law, therefore, there is no claim of any practical

significance requiring resolution by the Court, amendment would be futile and the complaint

against Greenberg should be dismissed.

     IT IS HEREBY ORDERED that defendant Greenberg's motion to dismiss the complaint

against him is hereby GRANTED without leave to amend.  Plaintiff's complaint against

defendant Greenberg is hereby DISMISSED WITH PREJUDICE.  IT IS FURTHER ORDERED

that judgment shall be entered by the Clerk as follows:  (1) for rescission of Plaintiff's purchase

of the eleven bottles of wine identified in paragraphs 44 through 51 of the complaint against Greenberg; (2) for payment of $272,555.72 by defendant Greenberg to Plaintiff; and (3) for the return of the eleven bottles of wine by Plaintiff to Greenberg.  This judgment is not based on any finding of fault or liability by defendant Greenberg.

Dated: _____, 2008        _____

UNITED STATES DISTRICT COURT
JUDGE