```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
WILLIAM I. KOCH,                     :
                                     :
                Plaintiff,           :
          v.                         :   07 Civ. 9600 (BSJ)(DF)
                                     :
ERIC GREENBERG; ZACHYS WINE &        :
LIQUOR STORE, INC.; and              :   Opinion & Order
and ZACHYS WINE AUCTIONS, INC.,      :
                                     :
                Defendants.          :
                                     :
------------------------------------ X
```
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Plaintiff William Koch ("Plaintiff") commenced this diversity action on October 26, 2007 against defendants Zachys Wine & Liquor Stores, Inc. and Zachys Wine Auctions, Inc. (together "Zachys"), alleging fraud, negligent misrepresentation, and violations of New York General Business Law Sections 349 and 350. Zachys now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's complaint in its entirety for failure to state a claim upon which relief may be granted. For the reasons that follow, Zachys motion is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND

### A. Allegations in the Complaint

Plaintiff's claims against Zachys arise out of his purchase of $3,700,000 worth of wine at a single auction in October 2005

1

with eleven bottles at a cost of $228,603.33 forming the basis of Plaintiff's allegations (Compl. ¶¶ 42, 44-51) and his purchase of another eight bottles of wine for nearly $127,000 at an auction one year earlier. (Compl. ¶¶ 53-59). Plaintiff alleges that these nineteen bottles of wine are counterfeit. (Compl. ¶¶ 42-59). Plaintiff discovered that the bottles were counterfeit in 2007 when he hired William Edgerton, a noted wine expert, to review the wine in his cellar. (Compl. ¶ 24-26). Plaintiff asserts that Zachys conducted both the October 2004 and October 2005 auctions (the "Auctions") at which Plaintiff purchased the allegedly counterfeit bottles of wine in question. (Compl. ¶¶ 41, 52).

According to the Complaint, Plaintiff received catalogues for each of the Auctions prepared by Zachys (the "Catalogues"), identifying the wine that would be offered. (Compl. ¶¶ 41, 53-59). Throughout the Complaint, Plaintiff quotes from and includes descriptions contained in the 2004 and 2005 Catalogues to support his claims that the wines he purchased are not the wines described in the Catalogues and, therefore, are counterfeit. (Compl. ¶¶ 44-59). With regard to the 2005 Catalogue, Plaintiff alleges that "[t]his catalogue, by its nature, constituted representations that the wine being auctioned was genuine and described accurately." (Compl. ¶ 41). Plaintiff claims that he studied and relied on the 2005

2

Catalogue "in making decisions as to which wines he wanted to bid on at the auction." (Compl. ¶ 41). Plaintiff further alleges that "[t]he representations by Zachys in the 2005 Catalogue were made either with knowledge of their falsity or with reckless disregard for the indicators that such representations were false, and were made without adequate investigation or authentication." (Compl. ¶ 43).

**B. Conditions of Sale**

Each of the Catalogues, copies of which are attached as Exhibits B and C to Zachys's motion, contained "Conditions of Sales & Limited Warranty" (the "Conditions of Sale"). (*See* Zachys Motion, Ex. B at 215; Ex. C at 233).[1] The first of the Conditions of Sale states, in pertinent part:

> The authenticity of property listed in the catalog is guaranteed only as stated herein and otherwise all property is sold "AS IS" without any representations or warranties by Zachys Wine Auctions or the Consignor as to merchantability, fitness for a particular purpose, correctness of catalog, description, size, quality, condition, rarity, importance, provenance, exhibition history, literature, previous storage conditions or historical relevance of any property. No statement set forth in this catalog, made at the auction, or in the bill of sale, posting, announcement, or otherwise, whether oral or written, shall be deemed such a warranty, representation or assumption of liability.

---

[1] The Conditions of sale contained in the Catalogues, while outside of the four corners of the complaint, are nonetheless appropriate to consider on this Rule 12(b)(6) motion because the content of the Catalogues is integral to the complaint and was relied upon by Plaintiff in drafting the complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991).

(Zachys Motion, Ex. B at 220; Ex. C at 238). The Catalogues also expressly mandate that by participating in the auction, the auction participant agrees to be bound by the terms and conditions set forth in the Catalogues.[2] (*See* Zachys Motion, Ex. B at 215, 220; Ex. C at 233, 238).

In addition, in two separate provisions, the Catalogues invite prospective buyers to examine the wine prior to submitting bids. Specifically, the Buying and Bidding information states that "[p]rospective Buyers are invited by appointment to examine any lots prior to the auction at our temperature-controlled warehouse." (Zachys Motion, Ex. B at 215; Ex. C at 233).

## II. DISCUSSION

**A. Standard Governing Motions to Dismiss**

Under Rule 12(b)(6), a complaint will be dismissed if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court must read the complaint generously, accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations. *See York v. Ass'n of Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002); *see also Mills v. Polar Molecular Corp.*, 12 F.3d

---

[2] Specifically, the "Buying & Bidding Information" states: "By participating in an auction, an auction participant agrees to be bound by the Conditions of Sale and Limited Warranty, printed in this catalog." (Zachys Motion, Ex. B at 215; Ex. C at 233). Likewise, the Conditions of Sale reiterate, "By participating in an auction, you agree to be bound by these terms and conditions." (Zachys Motion, Ex. B at 220; Ex. C at 238).

4

1170, 1174 (2d Cir. 1993). A court should dismiss a complaint only "if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir. 1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *see also Jenkins v. McKeithen,* 395 U.S. 411, 422 (1969). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007)).

**B. Fraud and Negligent Misrepresentation Claims**

In support of his fraud and negligent misrepresentation claims, Plaintiff asserts that Zachys made material misrepresentations in the Catalogues upon which Plaintiff relied in purchasing the allegedly counterfeit wine. (*See*, *e.g.*, Compl. ¶ 41). Specifically, Plaintiff asserts that Zachys misrepresented to the public that some of the wines it was offering for sale were genuine when Zachys knew or should have known they were not. (*See* Compl. ¶ 61). Under New York law, in order to sustain a claim for fraud, a plaintiff must adequately establish each of five fundamental elements, namely: (1) representation of a material fact; (2) falsity; (3) scienter; (4) reasonable reliance; and (5) injury. *Levin v. Gallery 63*

5

*Antiques Corp.*, No. 04 CV 1504, 2006 WL 2802008, at *8 (S.D.N.Y. Sept. 28, 2006). In order to maintain a claim for negligent representation, a plaintiff must demonstrate the following: (1) the defendant negligently provided inaccurate information; (2) the plaintiff reasonably relied on the inaccurate information; and (3) a "special relationship" existed between the plaintiff and the defendant that imposed a duty of care on the defendant to convey accurate information to plaintiff. *Western Intermodal Services, Ltd., v. Singamas Container Indus. Co. Ltd.,* No. 98 Civ. 8275, 2000 WL 343780, at *3 (S.D.N.Y. Mar. 31, 2000); *Dimon Inc. v. Folium, Inc.,* 48 F. Supp. 2d 359, 373 (S.D.N.Y. 1999). Thus, reasonable reliance is a key element required for both claims. *See, e.g.*, *Belin v. Weissler*, No. 97 Civ. 8787, 1998 WL 391114, at *9 (S.D.N.Y. July 14, 1998).

As set forth above, the Catalogues upon which Plaintiff purportedly relied each contain an express disclaimer of any representations or warranties as to merchantability or fitness for a particular purpose. It is well established that a general, boilerplate disclaimer of a party's representations cannot defeat a claim for fraud. *See Bridger v. Goldsmith,* 143 N.Y. 424, 428-29 (1894); *Jackson v. State of New York,* 205 N.Y.S. 658, 662 (App. Div. 1924). However, a party cannot justifiably rely on a representation that has been *explicitly* disclaimed in the agreement. *See Danann Realty Corp. v. Harris,*

184 N.Y.S.2d 599, 601-02 (App. Div. 1959); *see also Taormina v. Hibsher,* 626 N.Y.S.2d 559, 560 (App. Div. 1995) ("a specific disclaimer defeats any allegation that the contract was executed in reliance upon the representations to the contrary."). Here the Conditions of Sale in the Catalogues specifically disclaims responsibility for the "correctness of [the] catalog" and also the "description, size, quality, condition, rarity, importance, provenance, exhibition history, literature, previous storage conditions or historical relevance of any property." (Zachys Motion, Ex. B at 220; Ex. C at 238).[3] The disclaimer further states, "[n]o statement set forth in this catalog [sic], made at the auction or in the bill of sale, posting, announcement or otherwise, whether oral or written, shall be deemed such a warranty, representation or assumption of liability." (Zachys Motion, Ex. B at 220; Ex. C at 238). Under New York law, disclaimers like the Conditions of Sale here have been held to be sufficient to preclude claims of fraudulent and negligent misrepresentation in the context of auction sales. *See T.T. Exclusive Cars, Inc. v. Christie's Inc.*, No. 96 Civ. 1650, 1996

---

[3] Plaintiff argues that the language of the disclaimer is insufficient to preclude his fraud claim. Specifically, Plaintiff asserts that the phrase "as stated herein" implies that the Conditions of Sale guarantees the correctness of the descriptions contained in the Catalogues. However, the very terms of the Conditions of Sale expressly disclaim "the correctness of [the] catalog" or "description . . . [or] provenance . . . of any property." (Zachys Motion, Ex. B at 220; Ex. C at 238). Thus, the Court finds that the fair and reasonable interpretation of the phrase "as stated herein" is that it refers to the contents of the Conditions of Sale and Limited Warranty, not the contents of the Catalogues in their entirety.

7

WL 737204, at *6 (S.D.N.Y. Dec. 24, 1996); *see also Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224, 1230 (S.D.N.Y. 1995) ("even if provenance were misrepresented, a fraud claim is precluded because the auction catalogue stated that Sotheby's made no representations or warranties of provenance").

There is, however, an exception: a specific disclaimer will not defeat a fraudulent misrepresentation claim if the allegedly misrepresented facts are "peculiarly" within the defendant's knowledge. *See Warner Theatre Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998); *Danann,* 5 N.Y.2d at 322; *Steinhardt Group Inc. v. Citicorp*, 708 N.Y.S.2s 91, 93 (App. Div. 2000). In order for this "peculiar knowledge" exception to vitiate the terms of an express disclaimer, courts consider two factors: (1) the sophistication of the buyer; and (2) the accessibility of the underlying information. *See DIMON, Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 368-69 (S.D.N.Y. 1999).

Here, Plaintiff is a self-proclaimed "serious" collector and purchaser of rare wines (Compl. ¶¶ 41, 61) who has access to the opinions of noted wine experts (Compl. ¶ 24). However, putting aside the sophistication and resources of Plaintiff, of greater significance is the undisputed fact that Plaintiff made no effort to access information regarding the authenticity of the wine before placing bids of nearly $4 million. As stated in

the Catalogue, Plaintiff had the opportunity and was specifically invited by Zachys to inspect the wines before placing bids at the Auction. (Zachys Motion, Ex. B at 215, 220; Ex. C at 233, 238). Plaintiff acknowledges that he had such an opportunity and does not dispute that he opted not to inspect the wine. (Pl.'s Opp. at 14). Instead, Plaintiff argues that he was at a comparative disadvantage to Zachys because as a prospective bidder he could not taste the wine.[4] However, as Zachys points out, it also was unable to taste specific bottles of wine as a means of ascertaining their authenticity and then place those same bottles up for auction. (Zachys Reply at 10-11). Thus, to the extent that Plaintiff is arguing that tasting the wine — as compared to inspecting the wine — was the only way to ascertain the authenticity of the wine, Zachys was at the same comparative disadvantage as Plaintiff.

This case is readily distinguishable from *Christie's Inc. v. Domenica Holding Corp.*, No. 05 Civ. 8728, 2006 WL 2012607 (S.D.N.Y. Jul. 18, 2006), upon which Plaintiff heavily relies. In *Domenica Holding*, Christie's specifically represented in the auction catalogue that the pictures at issue had been "examined

---

[4] Plaintiff also justifies his decision not to inspect the wine by arguing that there is no basis for concluding that a mere visual inspection of the wine would have determined the authenticity of the wine because "certain underlying knowledge were [sic] clearly not accessible through an inspection of the bottles, because such an inspection could not have revealed that Greenberg's collection had been previously inspected and found to contain counterfeit wine." (Pl.'s Opp. at 10). However, Plaintiff has not alleged any facts which support a determination that Zachys had any knowledge of any previous inspections of Greenberg's collection.

9

out of the frames." *Id*. at *1.  Had the pictures, in fact, been inspected out of their frames, the defects would have been discoverable by Christie's.  *Id.* at *5.  Given Christie's representations, a potential purchaser had no reason to attempt to remove the prints from their frames.  *Id*.  Furthermore, it was unclear whether a purchaser would have been permitted to do so.  *Id*.

Here, Plaintiff had an opportunity to inspect all of the wine he purchased at the auctions prior to bidding in the same manner as Zachys.  Plaintiff's failure to inspect the wine is fatal to his argument that this case falls within the "peculiar knowledge" exception.  *See T.T. Exclusive Cars*, 1996 WL 737204, at *6 ("T.T. was a sophisticated purchaser engaged in a business transaction, access to information acts as a bar to any claims of reliance on misrepresentations.").  Whatever observations have led Plaintiff to his present belief that certain bottles are counterfeit were equally available and accessible to him prior to the auction.[5]  Accordingly, the Court grants Zachys's motion to dismiss Plaintiff's fraud and negligent misrepresentation claims.[6]

### C. New York General Business Law Sections 349 and 350

---

[5] Plaintiff does not allege anywhere in his complaint that he actually opened and tasted any of the bottles of wine.
[6] Because the Court finds that Plaintiff's fraud claim is without merit, the Court need not address Zachys's argument that Plaintiff's fraud claim is really an improper breach of contract claim.

Zachys claims that Plaintiff has failed to sufficiently plead a claim under New York General Business Law Sections 349 and 350 ("Sections 349 and 350"). Sections 349 and 350 prohibit respectively "deceptive acts or practices" and "false advertising" "in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Although claims under Section 349 "cover conduct 'akin' to common-law fraud," the statute "encompasses a far greater range of claims that were never legally cognizable before its enactment." *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 209 (2001). Most relevant to this case, liability may be found under Sections 349 and 350 even in the presence of an explicit disclaimer like the one present here. *See DeAngelis v. Timberpeg E., Inc.*, 858 N.Y.S.2d 410, 414-15 (App. Div. 2008) (rejecting the argument that "plaintiffs could not have been deceived or misled because the contract they signed contained a merger clause and specifically disclaimed liability" and thus upholding plaintiff's claims under § 349 and § 350); *see also Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 349 (1999) (concluding that "defendants' disclaimers, although insufficient to defeat plaintiffs' section 349 claims, are sufficient to absolve them of fraud"). Thus, at the outset, the Court observes that the dismissal of Plaintiff's fraud and

negligent misrepresentation claims does not necessitate the dismissal of Plaintiff's claims under Sections 349 and 350.

Zachys's primary argument as to why Plaintiff's General Business Law claims should be dismissed is that Plaintiff's complaint concerns a private contract dispute and does not involve conduct directed at consumers at large. A claim under Sections 349 or 350 must allege deceptive conduct that was "consumer-oriented." *See, e.g.*, *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006). Consumer-oriented conduct "need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large." *N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320 (1995). This broad impact requirement is met where the acts complained of "potentially affect similarly situated consumers." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). Thus, "private contract disputes that are unique to the parties involved . . . do not fall within the ambit of sections 349 and 350." *Nadel v. Play by Play Toys & Novelties, Inc.*, 34 F. Supp. 2d 180, 186 (S.D.N.Y. 1999).

Although Zachys attempts to portray Plaintiff's claims as a private contract dispute that does not fall within Sections 349 and 350 (Zachys Motion at 17-18), the Court finds otherwise. This action does not merely concern a private contract over a

single shot transaction that is unique to the parties. Instead, Plaintiff alleges Zachys offered fraudulent wine for sale to the public at two separate auctions and "widely disseminated" a catalog containing false statements. (Compl. ¶ 41). Although Plaintiff states that he "does not know whether other participants" at the Zachys auctions "also bought counterfeit wine," he asserts that this "may have occurred" and "[t]here may be many other victims."[7] (Compl. ¶ 40). Assuming the allegations of the complaint to be true, it is reasonable to conclude that the conduct complained of affected other similarly situated consumers — other purchasers at the Zachys auctions — and thus had a broad impact on consumers at large.

Zachys further argues that Plaintiff should not be permitted to recover under Section 349 because his transaction with Zachys is one "involving complex arrangements, knowledgeable and experienced parties and large sums of money" and thus is not the typical consumer transaction contemplated by Section 349. (Zachys Motion at 20 (quoting *Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984)) (internal quotation mark omitted)). However, case law indicates that Plaintiff's

---

[7] Zachys argues that Plaintiff's "conclusory allegations" (Zachys Motion at 19) that "[t]here may be many other victims" (Compl. ¶ 40) are insufficient to demonstrate broad consumer impact. The Court disagrees. In order to survive a motion to dismiss, Plaintiff must merely allege that Zachys's conduct "potentially" impacted other consumers. *See In re Evergreen*, 423 F. Supp. 2d at 264; *Oswego*, 85 N.Y.2d at 26. By alleging that he was deceived by Zachys's actions and alleging that other consumers at the auctions were also possibly deceived, Plaintiff's pleadings are sufficient on this point.

13

claims do not fail simply because he is a wealthy and sophisticated purchaser.[8]  In *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995), the Second Circuit upheld claims under Section 349 despite the fact that the Plaintiff was a wealthy corporation and the damages included $200,000 for the Section 349 claims.  Similarly, in *Oswego*, although the damages exceeded $30,000, the court found the conduct at issue to be consumer-oriented.  *Oswego*, 85 N.Y.2d at 26.

Accordingly, for the reasons discussed above, Zachys' motion to dismiss Plaintiff's NYGBL claims is DENIED.

### III. CONCLUSION

Zachys's motion to dismiss Plaintiff's claims is GRANTED with respect to the fraud and negligent misrepresentation claims but DENIED with respect to the NYGBL claims.

---

[8] Likening the wine Plaintiff purchased to securities, which "[c]ourts have routinely found" to be outside the scope of Section 349, Zachys contends that Plaintiff's General Business Law claims fail because the wine he purchased was an investment rather than a consumer good. (*See* Zachys Reply at 20 (quoting *In re Evergreen*, 423 F. Supp. 2d at 264)).  Zachys's argument is without merit.  While securities are only purchased for investment purposes, wine — even very expensive wine — is a good that may be opened and consumed.

14

**SO ORDERED:**

                                              _____
                                              Barbara S. Jones
                                              **UNITED STATES DISTRICT JUDGE**

Dated:     New York, New York
              September 30, 2008