UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
WILLIAM I. KOCH,

              Plaintiff,

    v.

ERIC GREENBERG; ZACHYS WINE &
LIQUOR STORE, INC.; and
and ZACHYS WINE AUCTIONS, INC.,

              Defendants.
------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/31/08

07 Civ. 9600 (BSJ)(DF)

**Opinion & Order**

Plaintiff William I. Koch ("Plaintiff") commenced this diversity action on October 26, 2007, alleging causes of action for fraud and for violations of New York General Business Law Sections 349 and 350 against defendant Eric Greenberg ("Greenberg"). Greenberg now moves pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's claims on the grounds that (1) this Court lacks subject matter jurisdiction over the action and (2) Plaintiff has failed to state a claim upon which relief may be granted. For the reasons that follow, Greenberg's motion is DENIED.

### FACTUAL BACKGROUND[1]

During the late 1990s, Defendant Greenberg amassed one of the largest wine collections in the United States. (Compl. ¶ 13). Plaintiff alleges that when Greenberg decided to sell part

---

[1] The following facts are taken from the allegations in Plaintiff's complaint. They are assumed to be true only for the purposes of Greenberg's motion to dismiss.

1

of his collection in or around 2002, he approached Sotheby's to handle the sale. (Compl. ¶¶ 3, 15-16). Sotheby's sent Serena Sutcliffe ("Sutcliffe"), the head of its wine department, to inspect Greenberg's cellar. (Compl. ¶¶ 3, 16). After her review, she informed Greenberg that many of his bottles were counterfeit. (Compl. ¶¶ 4, 16). As a result, Sotheby's refused to auction Greenberg's wine. (Compl. ¶¶ 4, 16). According to Plaintiff, Greenberg then retained William Edgerton ("Edgerton"), a noted wine expert, to inspect his cellar. (Compl. ¶ 17). Edgerton examined Greenberg's collection and confirmed Sutcliffe's conclusion that some of the wine was counterfeit. (Compl. ¶¶ 4, 17). Despite the assessments of both Sutcliffe and Edgerton, Greenberg consigned his wine to Zachys Wine & Liquor Store ("Zachys") to sell at a public auction on October 28, 2005.[2] (Compl. ¶¶ 26-33). Plaintiff alleges that Greenberg made this consignment knowing that some of the wine he was auctioning was not genuine. (Compl. ¶ 33).

To advertise the wines for sale at the October 2005 auction, Zachys produced a catalogue describing the wines being offered. (Compl. ¶ 41). Plaintiff alleges that the descriptions of some of the wines offered were false. (Compl. ¶ 43). Plaintiff attributes these falsities, at least in part, to

---

[2] Plaintiff additionally alleges that before Greenberg consigned his wine to Zachys for sale at auction, he received a settlement on the counterfeit bottles from Royal Wine Merchants, Ltd., the company that had sold the counterfeit wine to him. (Compl. ¶¶ 17-23, 33).

2

Greenberg, who Plaintiff alleges misrepresented the authenticity of his wine to Zachys. (Compl. ¶¶ 61).

In addition to the descriptions of the wine offered for sale, the catalogue contained several disclaimers and limitations of liability. Specifically, the catalog stated:

> The authenticity of property listed in the catalog is guaranteed only as stated herein and otherwise all property is sold "AS IS" without any representations or warranties by Zachys Wine Auctions or the Consignor as to merchantability, fitness for a particular purpose, correctness of catalog, description, size, quality, condition, rarity, importance, provenance, exhibition history, literature, previous storage conditions or historical relevance of any property. No statement set forth in this catalog, made at the auction, or in the bill of sale, posting, announcement, or otherwise, whether oral or written, shall be deemed such a warranty, representation or assumption of liability.

(Greenberg Decl., Ex. A at 238). An additional condition in the catalogue declared that a "Buyer's sole and exclusive remedy against Zachys Wine Auctions and the Consignor . . . shall be the rescission of the sale and the refund of the original purchase price paid for the lot." (Greenberg Decl., Ex. A at 239). The catalogue also invited prospective buyers "to examine any lots prior to the auction at [Zachys] temperature-controlled warehouse." (Greenberg Decl., Ex. A at 233).

After reviewing the wine being offered for sale in the catalogue, Plaintiff purchased $3,700,000 worth of wine at Zachys's October 2005 auction. (Compl. ¶¶ 41-42). Plaintiff

alleges that he has since discovered that some of the wine he purchased at the auction from Greenberg's cellar is counterfeit. (Compl. ¶¶ 1, 42). In the complaint, Plaintiff specifically identifies seven Greenberg bottles of wine that he purchased at the Zachys auction as "counterfeit" and four bottles as "possibly counterfeit." (Compl. ¶¶ 44-51). Plaintiff purchased these eleven bottles for $228,603.33. (Compl. ¶¶ 44-51).

Plaintiff now seeks damages for the fraud and violations of New York General Business Law sections 349 and 350 Plaintiff alleges Greenberg perpetrated by selling his allegedly counterfeit wine at the Zachys auction.

## DISCUSSION

### I. Greenberg's Motion to Dismiss Pursuant to Rule 12(b)(1).

Greenberg moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(1)[3] on the grounds that he has delivered Plaintiff full payment plus interest and costs[4] for all damages he legally may recover under the claims alleged in the Complaint, thus rendering the case moot. It is true that dismissal based on lack of jurisdiction is appropriate when a plaintiff tenders the entire amount to which a defendant claims entitlement. *See ABN*

---

[3] "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).
[4] It is undisputed that Greenberg sent Plaintiff a check (to take the wine back) for $272,555.72, representing Plaintiff's total purchase price plus 9% interest and $1000 for courts costs.

4

*Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 95-96 (2d Cir. 2007); *Abrams v. Interco Inc.*, 719 F.2d 23, 32 (2d Cir. 1983). However, the Second Circuit has also made clear that mootness of the sort that deprives a court of subject matter jurisdiction does not arise when a defendant tenders less than that to which a Plaintiff claims entitlement. *See ABN Amro*, 485 F.3d at 94-95. In the present case, Plaintiff claims entitlement to more than the reimbursement of the purchase price of the counterfeit wines listed in the Complaint. Specifically, Plaintiff seeks punitive damages, injunctive relief, and attorneys fees.[5] Therefore, Greenberg's offer to refund Plaintiff's purchase price plus interest and costs does not create the sort of mootness that deprives the Court of jurisdiction.

However, if as Greenberg contends he has tendered the full amount to which Plaintiff is legally entitled, "a different kind of mootness" arises because "all litigable *issues* pertaining to the defendants' liability cease[] to have practical importance." *Id.* at 95. This "different kind of mootness" may result in a case's resolution through an entry of judgment against the offering defendant. *Id.* at 96. For the reasons that follow, the Court finds that Greenberg's tender does not cover the

---

[5] It is also possible that Plaintiff seeks consequential damages. In the Complaint, Plaintiff states that he has "suffered damages in an amount to be proved at trial." (Compl. ¶ 66).

maximum amount of damages to which Plaintiff may be entitled. Thus, Greenberg's motion to dismiss on the ground that his offer to pay moots Plaintiff's case is denied.

Greenberg's tender is insufficient because, based on the allegations in the Complaint, Plaintiff is entitled to punitive damages. Greenberg argues that Plaintiff is not entitled to punitive damages for four reasons: (1) Plaintiff's recoverable damages are limited to his purchase price under the express terms of the auction catalog; (2) under the terms of the auction catalog Plaintiff purchased the allegedly counterfeit wine "as is"; (3) Plaintiff may not re-cast a breach of contract claim as a fraud claim; and (4) Plaintiff cannot satisfy the New York state standard for an award of punitive damages. The Court finds each of these arguments to be without merit.

### A. Arguments Based on the Auction Catalog

Greenberg's first two arguments against the availability of punitive damages are based on the premise that Greenberg's liability is limited or eliminated by the terms of the auction catalog. It is true that by bidding at auction a bidder "consent[s] to be bound by the terms in the catalog governing the auction." *Hessel v. Christie's Inc.*, 399 F. Supp. 2d 506, 514 (S.D.N.Y. 2005) (quoting *Csaky v. Meyer*, No. 94 Civ. 8117, 1995 WL 494574, at *1 (S.D.N.Y. Aug. 18, 1995)) (alteration in original). However, it is also true that a disclaimer such as

6

the one listed in the Zachys auction catalogue will not defeat a claim for fraud when the allegedly misrepresented facts are "peculiarly" within the defendant's knowledge.[6] *See Warner Theatre Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998); *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 322 (N.Y. 1959); *Steinhardt Group Inc. v. Citicorp*, 708 N.Y.S.2d 91, 93 (App. Div. 2000). In order for this "peculiar knowledge" exception to vitiate the terms of an express disclaimer, courts consider two factors: (1) the sophistication of the buyer; and (2) the accessibility of the underlying information. *See DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 368-69 (S.D.N.Y. 1999).

In this case, although Plaintiff is a sophisticated buyer,[7] it clear that information material to Plaintiff's purchase of the wine was not accessible to him at the time of bidding. Plaintiff does not dispute that he did not take advantage of the opportunity provided by Zachys to inspect the wines being offered, and thus did not gather any information about the wines

---

[6] Greenberg argues that because wine is a commercial good the U.C.C. governs this action, and under the U.C.C. an unambiguous limitation on liability is valid. Although it is true that limitations on liability are valid under the U.C.C., *see* N.Y. U.C.C. § 2-719(1)(a) (McKinney 2002), the Court sees no indication in the case law that the "peculiar knowledge" exception to the availability of limited liability via disclaimer does not apply in the circumstance of consumer goods. Indeed, at least one court has allowed fraud claims involving consumer goods for sale at auction to proceed because of the "peculiar knowledge" exception. *See Christie's Inc. v. Dominca Holding Corp.*, No. 05 Civ. 8728, 2006 WL 2012607 (S.D.N.Y. July 18, 2006).
[7] Plaintiff is a self-proclaimed "serious" collector and purchaser of rare wines who has access to the opinions of noted wine experts. (Compl. ¶¶ 24, 41, 61).

that could have been obtained from inspection. However, even if Plaintiff had examined the wines before purchasing, he would not have discovered that two experts commissioned by Greenberg — Sutcliffe and Edgerton — had previously examined the wine and determined it to be counterfeit. Therefore, because Plaintiff alleges that the results of the Sutcliffe and Edgerton inspections were peculiarly within Greenberg's possession, Greenberg's liability is not limited by the terms of the auction catalogue.[8]

### B. Argument that Plaintiff's Fraud Claim is Actually a Breach of Contract Claim.

Greenberg's next argument against punitive damages is that Plaintiff's fraud claim is actually a contract claim for which punitive damages are not recoverable. New York law precludes fraud claims when the "only fraud charged relates to a breach of contract." *R.H. Damon & Co., Inc. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986, 992 (S.D.N.Y. 1993) (quoting *Miller v. Volk & Huxley Inc., et al.*, 355 N.Y.S.2d 605, 606-07 (App. Div. 1974)) (internal quotation marks omitted). Contrary to Greenberg's assertion, however, New York courts have upheld claims of fraud in situations in which a plaintiff purchased an item because the defendant concealed material information that,

---

[8] Greenberg's knowledge of the Sutcliffe and Edgerton inspections distinguishes his position from that of Zachys. *See Koch v. Greenberg*, No. 07 Civ. 9600, 2008 WL 4450273, at *4 n.4 (S.D.N.Y. Sept. 30, 2008). Thus, the fact that the Court dismissed Plaintiff's fraud claim against Zachys does not necessitate dismissal of Plaintiff's fraud claim against Greenberg.

8

if known by the plaintiff, would have affected his decision to purchase. *See Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 151-52 (2d Cir. 1993) (finding a fraud cause of action valid where a defendant-broker concealed from a buyer that securities in question were encumbered because buyer likely would not have bought the securities had he known of the encumbrance); *Donovan v. Aeolian Co.*, 270 N.Y. 267 (1936) (holding that a piano manufacturer fraudulently concealed a material fact when selling a piano because the salesman was silent regarding the fact that the piano in the showroom was used and partially rebuilt, and the manner in which the instrument was displayed implied it was new); *see also TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 92 (2d Cir. 2005) (observing that courts have allowed fraud damages in cases in which a seller concealed a material defect in the product it sold). Furthermore, courts have upheld fraud claims that are related to a contract when a plaintiff alleges that the defendant made an affirmative misrepresentation of present fact. *See Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992); *Deerfield Comm'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (N.Y. 1986); *see also Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 265 (S.D.N.Y. 2005) (stating that "New York courts clearly distinguish between a 'promissory statement as to what will be done in the future,' which gives

rise only to a breach of contract claim, and a false 'representation of present fact,' which gives rise to a separable claim of fraudulent inducement"). In this case, Plaintiff alleges not only that Greenberg was silent about the results of the Sutcliffe and Edgerton inspections, but that Greenberg affirmatively misrepresented (both to Zachys and to the public via Zachys) that some of the wines he was auctioning were authentic when he knew they were not. (Compl. ¶¶ 41, 61). Because Plaintiff alleges that Greenberg hid the results of these inspections from bidders — including Plaintiff — so as not to dissuade them from bidding on his wine, Plaintiff has sufficiently stated a claim in fraud against Greenberg. Thus, Greenberg's argument that Plaintiff has merely stated a claim in contract is without merit.

### C. The New York Standard for Punitive Damages

Greenberg also maintains that Plaintiff cannot make out a claim for punitive damages because Plaintiff cannot meet the New York standard for an award of punitive damages. "[U]nder New York law, punitive damages are not available in an ordinary fraud case." *Ladenburg Thalmann & Co., Inc. v. Imaging Diagnostic Sys., Inc.*, 176 F. Supp. 2d 199, 207 (S.D.N.Y. 2001). Greenberg asserts that to warrant punitive damages in fraud and deceit actions, a defendant must exhibit fraud "aimed at the public generally," evincing a "high degree of moral turpitude,"

10

and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations".[9] *Walker v. Sheldon*, 10 N.Y.2d 401, 405 (N.Y. 1961). In this case, Greenberg's alleged actions meet all three requirements for punitive damages. Greenberg's fraudulent conduct was directed at the public because he consigned counterfeit bottles of wine to Zachys for sale at a public auction. (Compl. ¶¶ 26, 80). Although Plaintiff has not specifically cited any other bidder who purchased counterfeit wine from Greenberg's cellar at the auction, Plaintiff has alleged that there "may be many other victims." (Compl. ¶ 40). Additionally, the particularly egregious nature of Greenberg's alleged conduct is demonstrated by his decision to sell at auction wine that he knew two experts had determined to be counterfeit. (Compl. ¶¶ 16, 17). Plaintiff's further allegation that Greenberg only sold this counterfeit wine at the Zachys auction after recovering a settlement on the wine from the company (Royal Wine) that had sold the wine to him highlights the wantonly dishonest nature of Greenberg's conduct. (Compl. ¶¶ 17-23). Thus, the Court finds Greenberg's alleged conduct evinces that high degree of moral turpitude and wanton dishonesty to warrant the imposition of

---

[9] Plaintiff argues that Greenberg's standard for punitive damages is incorrect because a plaintiff need not prove a public wrong to warrant such a recovery. The Court need not reach this issue, however, because even under Greenberg's standard Plaintiff is eligible to receive punitive damages.

11

punitive damages.[10] *See Barrett v. U.S. Banknote Corp*, 806 F. Supp. 1094, 1101 (S.D.N.Y. 1992) (finding punitive damages appropriate where Christie's auction house knowingly or with reckless indifference misrepresented facts about an item up for auction).

Therefore, because Plaintiff is entitled to punitive damages, Greenberg's tender of $272,555.72 — representing Plaintiff's total purchase price plus 9% interest and $1000 for courts costs — does not moot Plaintiff's claims. Accordingly, Greenberg's motion to dismiss on the ground that his offer moots the case is denied.[11]

## II. Greenberg's Motion to Dismiss Pursuant to Rule 12(b)(6).

Greenberg additionally moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(6). Under Rule 12(b)(6), a complaint will be dismissed if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court must read the complaint generously, accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations. *See York v. Ass'n of Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002); *see also Mills v. Polar Molecular*

---

[10] Greenberg argues that his conduct does not demonstrate the requisite moral turpitude for punitive damages because once Greenberg learned about Plaintiff's claim Greenberg promptly offered to refund Plaintiff his money. Greenberg's after-the-fact offer, however, cannot vitiate his moral culpability for his prior conduct.
[11] Given the Court's finding with respect to punitive damages, the Court need not reach the issue of whether Plaintiff is entitled to injunctive relief.

12

Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). A court should
dismiss a complaint only "if 'it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim
which would entitle him to relief.'" *Valmonte v. Bane*, 18 F.3d
992, 998 (2d Cir. 1994) (quoting *Conley v. Gibson*, 355 U.S. 41,
45-46 (1957)); *see also Jenkins v. McKeithen*, 395 U.S. 411, 422
(1969). "To survive dismissal, the plaintiff must provide the
grounds upon which his claim rests through factual allegations
sufficient 'to raise a right to relief above the speculative
level.'" *ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87,
98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.
Ct. 1955, 1965 (2007)). For the reasons that follow,
Greenberg's motion to dismiss under Rule 12(b)(6) is denied.

### A. The Fraud Claim

Greenberg argues that Plaintiff's fraud claim must be
dismissed because it is "merely a breach of contract claim
dressed up with fraud allegations." (Movant's Mem. L. at 23).
As addressed in section I.B, however, the Court finds that
Plaintiff has sufficiently stated a claim in fraud — and not
merely in contract — against Greenberg. Thus, Plaintiff's
argument that the fraud claim should be dismissed on this ground
is without merit.

Greenberg additionally asserts that Plaintiff's fraud claim
should be dismissed because Plaintiff cannot prove justifiable

13

reliance. Under New York law, in order to sustain a claim for fraud, a plaintiff must adequately establish each of five fundamental elements, namely: (1) representation of a material fact; (2) falsity; (3) scienter; (4) reasonable reliance; and (5) injury. *Levin v. Gallery 63 Antiques Corp.*, No. 04 CV 1504, 2006 WL 2802008, at *8 (S.D.N.Y. Sept. 28, 2006). Although a party cannot justifiably rely on a representation that has been explicitly disclaimed in an agreement such as the auction catalogue at issue here, see *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-21 (App. Div. 1959); see also *Taormina v. Hibsher*, 626 N.Y.S.2d 559, 560 (App. Div. 1995) ("a specific disclaimer defeats any allegation that the contract was executed in reliance upon the representations to the contrary."), a disclaimer will not defeat a fraudulent misrepresentation claim if the allegedly misrepresented facts are "peculiarly" within the defendant's knowledge, see *Warner Theatre Assocs. Ltd. P'ship*, 149 F.3d at 136; *Danann*, 5 N.Y.2d at 322; *Steinhardt Group Inc.*, 708 N.Y.S.2d at 93.

In this case, the Zachys auction catalogue explicitly disclaimed the correctness of any description of the wine listed for sale and explained that all wine was being sold "as is." The catalogue also invited potential bidders to inspect the wine before purchasing. Greenberg argues that because the catalogue explicitly disclaimed liability and because Plaintiff had the

14

right to inspect all wines from Greenberg's collection before bidding at auction, Plaintiff cannot prove that he justifiably relied on Greenberg's representations (via Zachys) about the authenticity of the wine. Greenberg asserts that whatever observations led Plaintiff to his belief that certain bottles of Greenberg's wine are counterfeit were equally accessible to him prior to the auction. The Court finds Greenberg's justifiable reliance argument to be without merit. As addressed in detail in section I.A, facts material to Plaintiff's decision to purchase the wine — that two renowned experts had inspected the wine and determined it to be counterfeit — were peculiarly within Greenberg's knowledge. Therefore, Greenberg's motion to dismiss Plaintiff's fraud claim based on lack of justifiable reliance is denied.

**B. The New York General Business Law Sections 349 and 350 Claims**

Greenberg asserts that Plaintiff has failed to sufficiently state a claim under New York General Business Law Sections 349 and 350 ("Sections 349 and 350"). Sections 349 and 350 prohibit respectively "deceptive acts or practices" and "false advertising" "in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Although claims under Section 349 "cover conduct 'akin' to common-law fraud," the statute "encompasses a far greater range of claims that were never legally cognizable before its enactment."

15

*Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 209 (2001).

Greenberg's primary argument as to why Plaintiff's General Business Law claims should be dismissed is that Plaintiff's complaint involves a private transaction, not conduct directed at consumers at large. A claim under Sections 349 or 350 must allege deceptive conduct that was "consumer-oriented." *See, e.g., In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006). Consumer-oriented conduct "need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large."[12] *N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320 (1995). This broad impact requirement is met where the acts complained of "potentially affect similarly situated consumers." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 27 (1995). Thus, a "single shot transaction" that is unique to the parties does not create an actionable claim. *Id.* at 25-26.

---

[12] Relying on *New York v. Feldman*, 210 F. Supp. 2d 294 (S.D.N.Y. 2002), Greenberg asserts that to satisfy the requirements of Section 349 a plaintiff's allegations of injury to the public interest must include "repeated acts of deception directed at a broad group of individuals." *Id.* at 301. *Feldman*, however, states that demonstrating "repeated acts of deception" is merely one way in which a plaintiff can demonstrate the injury to the public interest Section 349 requires. The New York Court of Appeals has explicitly recognized that the conduct at issue "need not be repetitive or recurring" to state a claim under Section 349. *N.Y. Univ.*, 87 N.Y.2d at 320.

16

The Court finds that this action does not merely concern a private, single shot transaction that is unique to the parties. Although Plaintiff states that he "does not know whether other participants" at the October 2005 auction "also bought counterfeit wine," from Greenberg's cellar, he asserts that this "may have occurred" and "[t]here may be many other victims." (Compl. ¶ 40). Given the large number of bottles Greenberg consigned[13] for the October 2005 auction, and the fact that Plaintiff's purchase of a small percentage of those bottles contained counterfeits, it seems possible that other consumers at the auction were impacted by Greenberg's alleged misconduct. Thus, assuming the allegations of the complaint to be true, it is reasonable to conclude that the conduct complained of affected other similarly situated consumers — other purchasers at the October 2005 auction — and, therefore, had a broad impact on consumers at large.

Greenberg further argues that Plaintiff should not be permitted to recover under Section 349 because Plaintiff is a "vastly wealthy, sophisticated magnate[]" who engaged in a transaction involving "huge sums of money" and thus is not the typical consumer contemplated by Section 349. (Movant's Mem. L. at 24-25). This argument also fails. In *Securitron Magnalock*

---

[13] The cover of the auction catalogue indicates that Greenberg consigned 17,000 bottles to Zachys for sale at its October 2005 auction. (Greenberg Decl., Ex. A).

*Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995), the Second Circuit upheld claims under Section 349 despite the fact that the Plaintiff was a wealthy corporation and the damages included $200,000 for the Section 349 claims. Similarly, in *Oswego*, although the damages exceeded $30,000, the court found the conduct at issue to be consumer-oriented. *Oswego*, 85 N.Y.2d at 26.

Accordingly, for the reasons discussed above, Greenberg's motion to dismiss Plaintiff's NYGBL claims is denied.

### III. CONCLUSION

For the reasons stated above, Greenberg's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) is hereby DENIED.

**SO ORDERED:**

Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated: New York, New York
October 31, 2008