**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| WILLIAM I. KOCH, an individual, | ) ) ) |
| Plaintiff, | ) ) |
| -against- | ) ) **Case No. 07 CIV 9600 (BSJ) (DCF)** **ECF Case** |
| ERIC GREENBERG, an individual; ZACHYS WINE & LIQUOR STORE, INC., a New York corporation; and ZACHYS WINE AUCTIONS, INC., a New York corporation, | ) ) ) ) ) ) |
| Defendants. | ) ) |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANT ERIC GREENBERG'S MOTION FOR SUMMARY JUDGMENT</u>

ANTHONY P. COLES
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY  10020
anthony.coles@dlapiper.com
(212) 335-4500

ARTHUR J. SHARTSIS (pro hac vice)
FRANK A. CIALONE (pro hac vice)
SHARTSIS FRIESE LLP
One Maritime Plaza, 18th Floor
San Francisco, CA  94111
ashartsis@sflaw.com
(415) 421-6500

Attorneys for Defendant
ERIC GREENBERG

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

I.  STATEMENT OF FACTS ............................................................................................ 3

    A.  The Difficulty Of Authenticating Wine. .......................................................... 3

    B.  Greenberg Has No Authentication Expertise. ................................................... 5

    C.  No Expert Told Greenberg That The Wines At Issue Were Counterfeit,
        With One Exception. .......................................................................................... 6

    D.  Greenberg Believed That The Wines At Issue Were Genuine. .......................... 8

    E.  Koch Cannot Prove A Triable Issue Of Fact Using Greenberg's Insurance
        Claim. ................................................................................................................ 11

    F.  There Is No Evidence That Any Other Wines Greenberg Sold In the
        Auctions At Issue Were Counterfeit. ................................................................ 12

    G.  Koch Was A Sophisticated Wine Buyer, Assisted By Wine Experts, Who
        Was Aware Of The Problem Of Wine Counterfeiting. ....................................... 13

    H.  Koch Failed To Exercise His Inspection Rights Before The Auction. ................ 14

II. ARGUMENT ................................................................................................................ 15

    A.  Greenberg Is Entitled To Summary Judgment On All Claims; Koch
        Cannot Meet His Burden Of "Clear And Convincing Evidence." ....................... 15

    B.  Greenberg is Entitled to Summary Judgment on Koch's Fraud Claim. .............. 16

        1.  Koch Cannot Prove Fraud Because He Cannot Establish that
            Greenberg had Peculiar Knowledge that the 36 Wines at Issue
            were Counterfeit. ................................................................................... 17

        2.  Koch Cannot Prove Fraud Based On Representations Regarding
            Other Wines In The Same Auctions. ...................................................... 21

        3.  Koch Cannot Prove Fraudulent Concealment. ....................................... 22

    C.  Greenberg is Entitled to Summary Judgment on Koch's GBL Claim. ................ 23

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) .............................................................16

*Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38 (2d Cir. 1986) .......................................16

*Banque Arabe et Int. d'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146 (2d Cir.
    1995) .........................................................................................................................22

*Celotex Corp. v. Catrett*, 47 U.S. 317 (1986) ...................................................................16

*Dallas Aerospace Inc. v. CIS Air Corp.*, 2002 WL 31453789 (Jones, J.) (S.D.N.Y. Oct.
    31, 2002) ............................................................................................................20, 21

*DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359 (S.D.N.Y. 1999) ................................20

*Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224 (S.D.N.Y. 1995) ........................................17

*Grumman Allied Industries, Inc. v. Rohr Industries, Inc.*, 748 F.2d 729 (2d Cir. 1984)..............20

*Manuel v. Gembala*, 2010 U.S. Dist. LEXIS 105167 (E.D.N.C. Sept. 30, 2010) ...........18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574 (1986)........................16

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171 (2d Cir. 2007) ...............16

*Reisner v. Gen. Motors Corp.*, 671 F.2d 91 (2d Cir. 1982) .............................................18

*Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998) ..............................................................16

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) .................................18

*T.T. Exclusive Cars, Inc. v. Christie's Inc.*, 1996 WL 737204 (S.D.N.Y. Dec. 24, 1996) ...........17

*Warner Theatre Assocs. Ltd. Psp. v. Metropolitan. Life Ins. Co.*, 149 F.3d 134 (2d Cir.
    1998) .........................................................................................................................17

## STATE CASES

*Dannan Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959) .....................................................17

*Koch v. Acker, Merrall & Condit Co.*, 901 N.Y.S.2d 271 (1st Dep't 2010) ...................24

*Moustakis v. Christie's Inc.*, 892 N.Y.S.2d 83 (1st Dep't 2009) .....................................24

*St. Patrick's Home for the Aged and Infirm v. Laticrete Int'l*, 696 N.Y.S.2d 117 (1st Dep't
    1999) .........................................................................................................................24

## STATUTES

Fed. R. Civ. P. 56(c) .........................................................................................................16

Defendant Eric Greenberg ("Greenberg") submits this Memorandum in support of his Motion for Summary Judgment on all claims.

## PRELIMINARY STATEMENT

Plaintiff William Koch ("Koch") has sued Eric Greenberg ("Greenberg") for allegedly knowingly selling him 36 bottles of counterfeit wine, for which Koch paid $688,238.47, at two auctions conducted in 2004 and 2005 by Zachys Wine Auctions, Inc. ("Zachys"). Koch's claim rests on the theory that Greenberg had "peculiar knowledge" that each wine was counterfeit and that Koch could not have learned that on his own or with the assistance of experts.

Greenberg is entitled to summary judgment on all claims. Greenberg has conclusively disproven the allegation on which this Court relied in denying Greenberg's motion to dismiss Koch's original Complaint: That "two experts commissioned by Greenberg - [Serena] Sutcliffe and [William] Edgerton - had previously examined the wine and determined it to be counterfeit." Order Denying Motion to Dismiss [Dkt. No. 37] at 8. The undisputed facts are that *no* expert told Greenberg that any of the 36 wines at issue was counterfeit, except for a single bottle of 1928 Chateau Latour, which Edgerton himself stated was included in Greenberg's 17,000 bottle 2005 auction by oversight, and for which Koch paid only $2,873.[1]

Koch cannot prove that Greenberg knew that any of the 36 wines at issue were counterfeit. Greenberg was not an expert in authenticating fine wine, an expertise that Koch's expert testified requires a decade of full-time experience to develop. Greenberg consigned to Zachys only those wines he believed were genuine. And Greenberg knew and expected that

---

[1] That bottle has what appears to be an authentic Latour cork, as Koch's expert admits. Declaration of Frank A. Cialone in Support of Defendant Eric Greenberg's Motion for Summary Judgment ("Cialone Dec.") Ex. 1 at 497:20-499:15. Greenberg therefore did not believe it was counterfeit when he consigned it for auction; his cellar-manager or assistant included it in the auction by error. The fact that one expert told Greenberg the bottle was counterfeit, two years earlier, may create a triable issue as to Greenberg's knowledge concerning this one bottle, but Greenberg is nonetheless entitled to summary judgment, on two bases: First, because it is undisputed that a visual inspection (available to Koch before purchase) by an expert was sufficient to reveal questions about the authenticity of the bottle, and second, because that single bottle is insufficient to support diversity jurisdiction.

Zachys--then the top wine auction house in the world--would inspect each wine, and accept for auction only the wines it believed were genuine. Greenberg necessarily relied on Zachys' superior expertise, as Koch's own expert admits a consignor like Greenberg is entitled to do.

Koch's claims also fail because visual examination by an expert of each bottle--and nothing more--was sufficient to reveal every question about authenticity that Koch's wine authentication expert, Michael Egan, now asserts. Egan relied entirely on a visual inspection and his own expertise to reach his conclusions. He did not consider the scientific testing or other data developed through Koch's worldwide investigation, and did not need any information about Greenberg's collection, Greenberg's sources for wines, or what other experts might have told Greenberg in the past. In fact, Egan determined that several wines were questionable by looking at the wines for just a few seconds, and testified that he could have made such determinations merely by looking at the photographs in the auction catalog that Koch reviewed. Because Koch had the right to inspect the wines before bidding, personally and/or through an agent, Koch cannot prove that Greenberg had "peculiar knowledge"--knowledge of information not available to Koch through the means at his disposal--that any of the 36 wines were counterfeit.

Nor can Koch prove his claims by showing that Greenberg failed to disclose that other wines in his large collection were counterfeit, as Koch's response to various motions suggests he intends to argue. Koch cannot base his claims on wines that he did *not* buy, on wines that Greenberg did *not* sell, or on general information about Greenberg's collection that Greenberg had no duty to disclose. Every serious collector, including Koch, knew that large collections frequently contain counterfeit or questionable wines. That is precisely why auction houses inspect wines, a practice that Koch was familiar with and expected. Koch's buying agent at the auctions, Brian Orcutt, was also familiar with this practice, having personally conducted such inspections while employed at Christie's. Koch did not know that Greenberg was the consignor

at these auctions, both of which were anonymous, and Koch cannot claim that he reasonably believed that some unknown consignor had a collection--especially a collection large enough for a 17,000 bottle auction--in which there were no counterfeit or questionable wines.

Because no expert told Greenberg that the wines at issue were counterfeit, because Greenberg believed that Zachys would sell only genuine wines, because Koch's claims rest on an inspection he could have conducted before buying, and because it was widely known that large collections often contain counterfeit wines, Greenberg did not have the "peculiar knowledge" that is an essential element of Koch's claims.[2]  Summary judgment should be granted.

## I.    STATEMENT OF FACTS

This lawsuit concerns 36 bottles of wine that Koch bought at auctions in December 2004 and October 2005 for a total of $688,238.47.  Amended Complaint [Dkt. No. 117], ¶¶ 56-78.  No other wines or auctions are at issue.[3]  *Id.*  Koch alleges that these wines are either "counterfeit" or "possibly counterfeit."  *Id.*  Greenberg was one of many consignors at the 2004 auction, and the sole consignor of some 17,000 wines at the 2005 auction.  Declaration Of Eric Greenberg In Support Of Motion For Summary Judgment ("Greenberg Dec."), ¶ 18.  Both consignments were anonymous.  *Id.*  Koch, who bought millions of dollars of wine from Greenberg through these auctions, did not learn or even ask the consignor's identity until 2006, after Koch came to believe that some of the wines he had purchased were counterfeit.  *Id.*; *see* Cialone Dec., Exs. 2 and 3.

### A.    The Difficulty Of Authenticating Wine.

Koch's wine authentication expert, Michael Egan, needed merely to look at the wines at

---

[2]  Koch had a contractual right to return disputed bottles for a full refund, which Greenberg honored by repeatedly tendering full payment.  Koch declined those refunds, and chose instead to pursue this case as part of his "crusade" against counterfeit wine and auction house practices.  Greenberg Dec., ¶¶ 30-31.

[3]  Greenberg emphasizes this fact because Koch, who knows that he cannot prove that Greenberg knew the 36 wines at issue were counterfeit, will likely devote his Opposition to discussing wines he did not buy, auctions he did not attend, and wines that Greenberg did not sell, as Koch has done before.  For example, Koch has repeatedly sought to distract the Court by discussing (baseless and disputed) accusations of Maureen Downey concerning two auctions that took place in 2003, which Koch did not attend and which are outside the applicable limitations period.

issue to determine that there were enough indicia of inauthenticity that the wines could not be marketed as genuine. Cialone Dec., Ex. 1 at 155:23-156:9, Ex. 4 at 2. But Egan's testimony shows that identifying such indicia requires a wealth of expertise. And Koch's other efforts in this litigation demonstrate that it is enormously difficult, if not impossible, to know for certain whether a collectible wine is actually counterfeit--*i.e.*, that the wine inside the bottle is not from the chateau and vintage indicated on the labels on the bottles.

According to Egan, it takes ten years of full-time work in an auction house or similar business, under the guidance of mentors, to develop the expertise necessary to authenticate wine. *Id.*, Ex. 1 at 79:25-81:17. Collectible wines come from a huge range of vintages--those at issue here run from 1805 to 1961--during which the chateaux' practices concerning the design and markings of labels, corks, capsules, and bottles varied and evolved. *See, e.g., id.* at 73:4-74:6. The variations then multiplied because chateaux often sold wines in bulk to third parties (or "negociants") who bottled and labeled the wines in yet other ways. *Id.* at 74:7-76:11. Many wines have also been "reconditioned" by chateaux, negociants, and even individual collectors, a process that can include replacing old corks, capsules and labels with versions that are inconsistent with the vintage of the wine. *Id.* at 210:2-213:25. A wine authenticator must understand all these practices, must be deeply familiar with the characteristics (in all their myriad variations) of genuine wines from the chateaux and vintages in question, and must rely on that expertise when examining corks, capsules, labels and bottles for indicia of inauthenticity. He must also know how to visually examine the wine itself, for color, sediment, and other features visible through the bottle that are indicative of age and origin. *Id.* at 115:24-124:3. Egan--who, despite having such expertise, *still* cannot say with certainty that the wines in the bottles are not what the labels say they are (*see id.*, Ex. 4 at 2, defining "counterfeit" without reference to the contents of the bottles)--repeatedly cited his vast experience in looking at hundreds or thousands

of wines from the chateaux and vintages at issue as the basis for his opinions, and cited off-hand knowledge of such details as the number of hectares planted by Chateau Lafleur in a particular year and the amount of wine it produced. *E.g.*, *id.*, Ex. 1 at 314:12-19, 383:16-384:20.

To prove that the wines at issue are actually counterfeit, Koch has had five experts examine them, including Egan, David Molyneux-Berry (the former head of Sotheby's international wine department; *id.*, Ex. 5A at 100:13-101:2), William Edgerton (a long-time wine appraiser who claims to be an authentication expert; *id.*, Ex. 31 at 19), James Martin (a chemist with twenty years' experience conducting forensic examinations of art and artifacts for museums and collectors; *id.*, Ex. 6), and Philippe Hubert (a nuclear physicist from the University of Bordeaux; *id.*, Ex. 7). Koch's experts examined the wines with magnifying glasses, high-intensity lights, a research stereomicroscope, a $100,000 "Raman" microscope, a $100,000 "Fourier transform infrared microspectroscope" (*id.*, Ex. 8 at 37:20-24, 54:10-14, 251:12-19) and a "low-background gamma spectrometer"--a pure germanium crystal, enclosed in a shield of "archaeological lead" (retrieved from an ancient Roman shipwreck) and housed in an underground laboratory, that detects the presence of the Cesium-137 isotope (*id.*, Ex. 9 at 53:3-55:2; 61:15-62:14). Koch's worldwide team of investigators has contacted chateaux and other witnesses, brought wines and photographs to chateaux and label-makers in France for review, and more.[4]

**B.      Greenberg Has No Authentication Expertise.**

Despite what Koch's expert says is required to be able to authenticate wine, Koch alleges that Greenberg *knew* that each of the 36 wines at issue was counterfeit when he sold them through Zachys in 2004 and 2005. Greenberg was not an authentication expert, and had only

---

[4] As stated above, Egan did not rely on anything other than a visual inspection and his own expertise to reach his conclusion that the wine was counterfeit--a term he defined as meaning that a wine has enough indicia of inauthenticity that it cannot be marketed as genuine. *See id.*, Ex. 1 at 155:23-156:9, Ex. 4 at 2.

been collecting wines since 1998.  Greenberg Dec., ¶ 2 & 11-13.  He had no training in wine authentication, no experience working in an auction house, and none of the expert mentoring that Egan described as essential.  *Id.*, ¶ 11; *see also* Cialone Dec., Ex. 5A  at 128:2-11.

Unlike Koch, Greenberg did not engage a forensic examiner, like Martin, to conduct a chemical analysis of  the paper, dyes, inks and glues used on the labels of the wines at issue, or on any other wines.  In fact, no wine collector or auction house has ever engaged an expert to conduct such an analysis.  Cialone Dec., Ex. 8 at 22:25-24:21, Ex. 1 at 129:17-130:14. Greenberg did not engage Hubert to test wines for Cesium-137, a process that can take three months for a single bottle, that no collector or auction house has ever used, and that, like Martin's chemical analysis of labels and glues, fails to account for the common practice of reconditioning.[5]  *Id.*, Ex. 9 at 51:7-52:9.  Greenberg never employed a team of investigators to bring any wines to chateaux or label printers for review.  Greenberg Dec., ¶ 14.  In short, there is no evidence that Greenberg had any of the information on which Koch relies here.

## C.     No Expert Told Greenberg That The Wines At Issue Were Counterfeit, With One Exception.

Discovery has proven false the allegation that was at the heart of the Court's Order denying Greenberg's motion to dismiss Koch's original Complaint:   That "two experts commissioned  by Greenberg - [Serena] Sutcliffe and [William] Edgerton - had previously examined the wine and determined it to be counterfeit."  Dkt. No. 37 at 8.  In fact, Sutcliffe made no such determination, while Edgerton determined that just one of the 36 wines was counterfeit.

On April 29, 2002, Sutcliffe (the head of Sotheby's wine department, and among the foremost wine experts in the world) and two colleagues visited Greenberg's home for a

---

[5] During reconditioning, wines may be "topped-off" to reduce air content in the bottle, sometimes with wine of a different vintage.  Martin determined that labels were printed later than the vintage of the wines, but admitted this was consistent with reconditioning.  *Id.*, Ex. 8 at 70:11-72:12.  Hubert determined that bottles contained wine from the post-atomic era, but cannot say whether that was a result of reconditioning.  *Id.*, Ex. 9 at 71:4-72:11.

marketing visit.  During that visit, Sutcliffe informed Greenberg that one of his vendors, Royal Wine Merchants ("Royal"), had a reputation for selling counterfeits.  Greenberg Dec., ¶ 7. ████████████████████████████████████████████████ Cialone Dec., Ex. 10 at 22:17-23:11.  Sutcliffe did not tell Greenberg that any of the 36 wines at issue in this litigation were counterfeit or questionable, and there is no evidence that she even looked at any of those wines.[6]  *Id.*, Ex. 10 at 11:16-12:12, Ex. 11; Greenberg Dec., ¶ 7.  After the April 29 visit, Sutcliffe and Sotheby's actively pursued a major consignment from Greenberg, sent him a proposal and draft contract, and Sutcliffe personally authored a glowing review of Greenberg's cellar for a proposed auction catalog.  Cialone Dec., Ex. 10 at 60:5-15, Exs. 12, 13 and 14; Greenberg Dec., ¶ 8.

Greenberg was shocked and outraged to have a person as important as Sutcliffe emphatically suggest that Royal may have sold him counterfeits.  *Id.*, ¶ 9.  He immediately retained counsel, who later retained Edgerton as a consultant.  In late 2002, Edgerton examined certain wines in Greenberg's collection.  *Id.*, ¶ 15. ████████████████████████ ████████████████████████████████████████████████████

Edgerton did not determine that any of the wines at issue in this lawsuit were counterfeit, with one exception. ████████████████████████████████████

████████████████████████████████████████████████

██ ████████████████████████████████████████

████████████████████████████████

██ ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[6] Sutcliffe testified that she did not tell Greenberg that any of his wines were counterfeit, or even questionable.  *Id.*, Ex. 10 at 11:16-12:12, 52:11-53:2.  Greenberg recalls that Sutcliffe identified four specific wines as questionable, none of which are at issue in this case.  Greenberg Dec., ¶ 7.



In sum, no authentication expert looked at all 36 wines at issue--other than Zachys, which accepted the wines for auction--and no one told Greenberg that all of them were counterfeit.

## D.    Greenberg Believed That The Wines At Issue Were Genuine.

In the weeks following Sutcliffe's visit, Greenberg examined some of his wines on his own; this was before Edgerton was retained, and Greenberg had no authentication expertise.[8] He did not measure or examine the labels, glass, capsules, or other features considered by experts. Greenberg Dec., ¶ 13. Instead, Greenberg focused on cork markings, looking for wines where the corks were blank, where he could not see any markings, or where the vintage date was obviously altered. *Id.*, ¶ 12.

*Id.*, ¶¶ 12, 24; Cialone Dec., Ex. 18 at 95:17-96:23, Ex. 17 at 87:9-88:2.

Greenberg had a further problem beyond lack of expertise: He believed, based on Sutcliffe's statements, that Royal might have sold him questionable wines, but he did not know which wines in his collection he had purchased from Royal and which from his many other

---

[8] Greenberg was assisted by two sommeliers, Thierry Lovato and Andrew Dombrowski. Neither has the training and experience necessary to authenticate wines. Cialone Dec., Ex. 17 at 91:9-92:18; Greenberg Dec., ¶ 10.

sources. He assembled his large collection over a very short period of time. Greenberg Dec., ¶ 2. He did not use a bar code system or any other method of assigning a unique identifier to each bottle, and so could not identify the source of a particular bottle. *Id.*, ¶ 3. █████████

███████████████████████████████████████████████████

███████████████████████████ *Id.* and Exs. 1 & 6. ███████████████

███████████████████████████████████████████████████

██████████████████████████████████████

Greenberg only offered wines to Zachys that he believed were genuine. Witnesses who worked for Greenberg--including a hostile witness--acknowledged that Greenberg never instructed them to include wines he believed were counterfeit in a consignment. *Id.*, Ex. 19 at 118:16-21, Ex. 17 at 255:8-19. Greenberg did not include wines that he knew had no cork markings, and the corks on all 36 wines at issue have marks (sometimes correct, sometimes with variations that only an expert would recognize). *See* Appendix. This includes the 1928 Latour that Edgerton had determined was counterfeit (and which Edgerton acknowledged was included in Greenberg's 17,000-bottle auction by oversight; Cialone Dec., Ex. 20).[9] In fact, Greenberg cut the capsules on valuable bottles, to expose the corks for inspection by potential buyers, which Edgerton (testifying as Koch's expert) admitted contradicts Koch's claim that Greenberg was knowingly purveying counterfeits. *Id.*, Ex. 5A at 72:21-73:7.

Greenberg's belief that these wines were genuine is further evidenced by, and was reinforced by, the many tastings that he attended. For example, when Jeff Zacharia (the owner of Zachys) and Fritz Hatton (an auctioneer and wine expert working for Zachys) visited his

---

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

home, Greenberg opened a magnum of 1947 Lafleur for them to taste.  *Id.*, Ex. 21 at 22:19-24:4.

He provided another 1947 Lafleur magnum, and a 1950 Lafleur magnum, for a tasting just

before the 2005 auction that was attended by collectors and experts (including Koch and Orcutt).

*Id.*, Ex. 22 at 258:12-19, Ex. 23 at 74:17-75:9.  Those wines had features similar to the Lafleur

magnums that are at issue herein, including the large labels that led Koch's expert, Egan, to

conclude immediately that they were counterfeit.  Greenberg Dec., ¶ 29.  And yet, none of the

experts who tasted those wines questioned their authenticity to Greenberg.  *Id.*

Most importantly, Greenberg relied on Zachys independently to review his wines for

authenticity before including them in the auction.  Koch's own expert, Michael Egan, admits that

a consignor like Greenberg is entitled to rely on an accredited fine wine auction house:

> Q.    And do you believe that, in your experience, that the consignor of the wine
> is entitled to rely upon an accredited fine wine auction house to examine
> the wine and remove questionable bottles?
>
> MR. SPIRO:   Objection.
>
> A.    I would think so, because if you're selling your wine, I think you're relying
> on just -- you're reliant on the expertise of the auction house or the expert,
> if it's not an auction house or a fine wine merchant, who can tell you that
> these wines, the wines which can be sold are saleable, and if there are any
> issues with other wines, point them out to the vendor [*i.e.*, the consignor,
> like Greenberg].

Cialone Dec., Ex. 1 at 101:4-18.  Egan acknowledged that Zachys is an "accredited fine wine

auction house."  *Id.* at 222:24-223:9.  Greenberg knew that Zachys had a staff of experts who

would rigorously examine his wines before including them in an auction.  Greenberg Dec., ¶¶

19-23; *see* Cialone Dec., Ex. 24 at 17:15-18:4; Ex. 17 at 255:20-256:3.  He knew from previous

auctions that Zachys would not only examine bottles visually, but would contact importers,

wine-makers, and other experts for assistance where appropriate.  Greenberg Dec., ¶ 20.  Before

the 2005 auction, four or five Zachys employees examined and packed wines at Greenberg's

home for two weeks.  *Id.*, ¶ 23.  Greenberg then shipped the wines to New York, where Zachys

examined them again. Zachys inspected all wines at least twice, and paid particular attention to rare and expensive wines such as the 36 at issue here. Cialone Dec., Ex. 24 at 86:16-87:4. If Zachys had doubts about a wine, Zachys returned it to Greenberg and the wine was not included in the auction. *Id.* at 57:8-18. Hatton, who assisted in the inspection of Greenberg's wines and █████████████████████████████████████ testified that he would never "wield the hammer" on a wine he did not believe to be genuine. *Id.*, Ex. 23 at 48:21-49:4; Ex. 21 at 26:6-15.

There is no evidence that Greenberg knew that any of the wines at issue, all of which had cork markings and all of which passed review by Zachys, were counterfeit when they were sold to Koch. The fact that Greenberg had bought some (but only some[10]) of the same types of wines from Royal does not change this. Greenberg had other sources for all of these wines, and neither he nor Koch can say that any wine at issue came from Royal. *See* Appendix. And even if the wines did come from Royal, Koch cannot point to evidence to show that Greenberg knew that they were counterfeit when he consigned them to Zachys. In consigning wines to Zachys, Greenberg did not consider or rely on guesses about the source of individual wines. He relied on the examinations that he and his assistants had conducted of cork markings and, more importantly, he relied on the expert review by Zachys. *See* Greenberg Dec., ¶¶ 19-23.

In fact, Koch ***has admitted in interrogatory responses*** that Greenberg did not consign ***any*** wines to Zachys that he knew were "other than Genuine," except for, according to Koch, the bottle of 1928 Latour that Edgerton reviewed. Cialone Dec., Ex. 25 at 11. Koch has never supplemented that response, nor explained why he sued Greenberg on so many other bottles without any evidence that Greenberg knew they were counterfeit. *Id.*, ¶ 27.

E.    <u>Koch Cannot Prove A Triable Issue Of Fact Using Greenberg's Insurance Claim.</u>

On August 16, before the instant Motion was filed, Magistrate Judge Freeman

---

[10] Of the 36 wines at issue, nine are of types that Greenberg never purchased from Royal. Greenberg Dec., ¶ 38.

recommended that this Court preclude Koch from relying on the "Fireman's Fund documents" in any substantive motion. Report and Recommendation (the "Recommendation") at 37. Those documents relate to an insurance claim, and Koch circulated them to his agents, the press, and the FBI in "willful disregard" of the Court's Protective Order. *Id.* at 20. Greenberg believes that Judge Freeman's Recommendation is correct, and that this Court should adopt it. Accordingly, and to avoid any argument from Koch that Greenberg has "opened the door" to use of the Fireman's Fund documents, Greenberg will not cite or discuss those documents or the evidence relating to them here.

Greenberg is entitled to summary judgment whether or not this Court adopts the Recommendation. Koch cannot show that the Fireman's Fund documents refer to the specific wines at issue in this case. Even if he could, that would only demonstrate that a visual inspection would have led Koch to decide not to buy those wines. Any effort by Koch to rely on the Fireman's Fund documents in his Opposition would be futile because those documents do not create a triable issue of fact on the central issue of whether Greenberg had "peculiar knowledge" as to the 36 wines at issue.

F.    **There Is No Evidence That Any Other Wines Greenberg Sold In the Auctions At Issue Were Counterfeit.**

While Koch has alleged that "there likely are many other victims" of Greenberg's alleged misconduct, Koch has no evidence to support that allegation. ███████████████████ ██████████████████████████████████ Koch and his team of experts have identified only the 36 at issue here as counterfeit, or even "possibly counterfeit." Cialone Dec., Ex. 26 and Ex. 4 at 4. In his Amended Complaint, filed more than three years after this action commenced, ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████ Koch's interrogatory responses further confirm that he is unaware of any other "victim" of Greenberg's alleged misconduct. Cialone Dec., Ex. 25 at 7. None of Koch's experts have offered an opinion about any bottles allegedly sold by Greenberg, other than the 36 at issue. *Id.*, ¶ 4. In short, there is no evidence that any wines sold in the two auctions at issue, other than the 36 specifically identified in the Amended Complaint, were counterfeit.

**G.** **Koch Was A Sophisticated Wine Buyer, Assisted By Wine Experts, Who Was Aware Of The Problem Of Wine Counterfeiting.**

Koch is a longtime major collector of wines, arts, antiques, and other objects, and has purchased such items at numerous auctions. Cialone Dec., Ex. 22 at 24:4-33:18. He has 30,000-40,000 wines in his collection. *Id.* at 7:11-8:7. He owned a 50% interest in a wine auction house, the Chicago Wine Company, long before the auctions at issue here. *Id.* at 342:3-5.

Koch was not an authentication expert, but he had access to such expertise. In the two auctions at issue, Koch was represented by Brian Orcutt, ████████████████████



████████████████████████. *Id.*, Ex. 23 at 23:3-24:4. ████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████ *Id.* at 12:2-8, 18:18-24. ██████████

████████████████████████████████████ *Id.* at 112:7-11.

Koch and Orcutt were deeply familiar with auction practices. They each knew that auction houses inspected consignments for potential counterfeits. ████████████████

████████████████████████ and Koch expected auction houses to review for authenticity. *Id.*, Ex. 23 at 25:7-18, Ex. 22 at 125:15-21. They each realized, then, that the wine collections of consignors (like art collections, or any other collection of valuable objects) potentially included counterfeits. *Id.*, Ex. 23 at 54:16-55:23, Ex. 22 at 216:4-9. In fact, wine expert Robert Parker had written an essay concerning counterfeits, *In vino Veritas?*, which was

13

published in his Wine Buyers Guide before the auctions at issue, and which specifically discussed the importance of caution when buying rare and expensive wines. *Id.*, Ex. 27. Koch and Orcutt had reviewed enough catalogs to know that, while auction houses remove questionable wines from consignments, the catalogs *never* state that the wines in a consignor's collection that were *not* being auctioned included questionable or counterfeit wines. *Id.*, Ex. 22 at 163:21-164:15, Ex. 23 at 131:8-132:6; *see id.*, Ex. 28 at 21:7-21, Ex. 1 at 23:25-26:22, Ex. 5A at 27:5-20.[11]

Koch himself believed that he had personally been a victim of wine counterfeiting, at least by the time of the 2005 auction. Before that auction, Koch discovered that the famous "Thomas Jefferson" wines that he had purchased for hundreds of thousands of dollars in the 1980s were likely counterfeit. *Id.*, Ex. 22 at 135:23-136:25. Koch also owned a magnum of 1921 Petrus that he drank and believed was counterfeit. *Id.* at 90:5-19.

## H.    Koch Failed To Exercise His Inspection Rights Before The Auction.

The catalogs for each of the auctions at issue, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Amended Complaint, ¶ 54), expressly disclaim any representations regarding the authenticity of the wines offered, and allow prospective bidders to inspect before purchasing:

> The authenticity of property listed in the catalog is guaranteed only as stated herein and otherwise all property is sold "AS IS" without any representations or warranties by Zachys . . . or the Consignor as to merchantability, fitness for a particular purpose, correctness of catalog, description, size, quality, condition, rarity, importance, provenance, exhibition history, literature, previous storage conditions or historical relevance of any property. . . Prospective bidders are invited to inspect the property before bidding.

*Id.*, Ex. 29 at ZACHYS007067, Ex. 30 at GRE000240. Koch and Orcutt, his buying agent, were familiar with such provisions given their extensive experience with wine auctions. Through

---

[11] Greenberg also knew that auction catalogs never state that a consignor has questionable wines that are not part of the auction. Greenberg Dec., ¶ 29. Greenberg had sold wine through Zachys before the 2004 auction, and Zachys had rejected wines as questionable. Despite knowing that Greenberg owned some questionable wines, Zachys never even suggested stating this in a catalog. *Id.* Greenberg had no reason to believe that any buyer was relying on information, or misinformation, about wines in his cellar that were not among those being sold.

Orcutt, Koch agreed to the terms and conditions of the auction catalogs, which this Court has determined are binding on Koch.  Dkt. No. 33 at 2-3; Cialone Dec., Ex. 23 at 122:17-123:18; *see id.*, Ex. 24 at 144:3-145:24 (Zachys required bidders to acknowledge terms and conditions in writing before allowing them to bid).  But Koch made no attempt to inspect the wines, or have anyone do so on his behalf.  *Id.*, Ex. 22 at 47:25-48:8, 50:11-20, Ex. 23 at 96:17-97:8.

While Greenberg did not have the expertise to know that the wines at issue were counterfeit, Koch's experts could have identified indicia of counterfeiting through a visual inspection, and determined that Koch should not buy the wines at issue.  Koch's expert Egan inspected all 36 wines at issue, took 552 photographs, and drafted 40 pages of his expert report describing those wines in detail, in just 15 hours (at an hourly rate of 100 Euros) over two days.  *Id.*, Ex. 1 at 8:12-20, 93:2-7**,** 145:7-148:12.  He relied entirely on visual inspection and his own experience; he did not consider Hubert's gamma ray testing, Martin's chemical analysis, or any other information.  In many instances, he knew ***within seconds*** of looking that a wine was questionable. *E.g.*, *id.*, Ex. 1 at  366:20-367:16.  In fact, in many instances he could have made that determination from looking at the catalog alone, based on features evident in the photographs of the wines, such as the shape of the bottle or the size of the label.  *Id.*  Had Koch engaged Egan or a comparable expert before buying the wines, Egan could have inspected all 36 at issue (and many more besides) in much less than two days, for much less than $2500--and vastly less than the $300,000-plus that Koch paid Orcutt to lift an auction paddle for two days.

## II.   ARGUMENT

**A.   Greenberg Is Entitled To Summary Judgment On All Claims; Koch Cannot Meet His Burden Of "Clear And Convincing Evidence."**

Greenberg is entitled to summary judgment, because the undisputed facts demonstrate that he reasonably relied on Zachys to inspect, that he did not know that the alleged misrepresentations about the bottles at issue were false, and that Koch did not reasonably rely on

those alleged misrepresentations when he failed to exercise his inspection rights.  *See* Fed. R. Civ. P. 56(c) (Court should grant summary judgment where "there is no genuine issue as to any material fact.").  Koch will bear the burden of proof at trial, and therefore must now provide admissible evidence to support his claims.  *See Celotex Corp. v. Catrett*, 47 U.S. 317, 322-23 (1986) (summary judgment is appropriate where "[the nonmoving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").  The Court must evaluate any such evidence, moreover, in light of the substantive burden of proof: Koch must prove fraud by clear and convincing evidence.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252-254 (1986) ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden"); *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007) (in New York, burden of proof for fraud claims is clear and convincing evidence).  Koch cannot rely on conclusory allegations, unsubstantiated speculation, conjecture, or other rhetorical devices.  *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42 (2d Cir. 1986). And Koch must do "more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, Koch must offer admissible evidence sufficient allow a jury to conclude, by clear and convincing evidence, that Greenberg *knew* that the wines at issue were counterfeit, and that Koch *could not* have reached that same conclusion by exercising his right to inspect, or having an expert inspect, the wines before bidding on them.  Koch cannot meet that burden.

**B.**    **Greenberg is Entitled to Summary Judgment on Koch's Fraud Claim.**

Koch cannot establish that Greenberg knowingly made any actual misrepresentation, or

that Koch reasonably relied on any alleged misrepresentation. Nor can Koch establish that Greenberg concealed any material fact that he had a duty to disclose.

### 1.    Koch Cannot Prove Fraud Because He Cannot Establish that Greenberg had Peculiar Knowledge that the 36 Wines at Issue were Counterfeit.

To prove fraud, Koch must show that Greenberg had "peculiar knowledge" that each of the 36 wines at issue was counterfeit. Koch must therefore prove, by clear and convincing evidence, (1) that Greenberg knew that the 36 wines at issue were counterfeit, and (2) that Koch could not have learned that the 36 wines were counterfeit, or simply determined that he should not buy them, by exercising his right to inspect. Koch's claim fails on both prongs of this test.

████████████████████████████████████████████

████████████████████████████████████████ Amended

Complaint, ¶ 55. But those same catalogs expressly disclaim any such representations. (*See* p. 14, *supra.*) The disclaimer precludes a claim of fraudulent misrepresentation, because a buyer cannot reasonably rely on representations that are expressly disclaimed. *See T.T. Exclusive Cars, Inc. v. Christie's Inc.*, 1996 WL 737204, at \*6 (S.D.N.Y. Dec. 24, 1996); *Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224, 1230 (S.D.N.Y. 1995). The "peculiar knowledge" doctrine provides an exception. *See Warner Theatre Assocs. Ltd. Psp. v. Metropolitan. Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998). That exception, however, is narrow:

> [If] the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.

*Dannan Realty Corp. v. Harris,* 5 N.Y.2d 317, 322 (1959). The undisputed facts demonstrate that the exception does not apply here.

Greenberg did not know that the 36 wines at issue were counterfeit. Greenberg himself did not have the expertise necessary to authenticate wines. And, contrary to Koch's original

allegations, neither Sutcliffe, Edgerton, nor any other expert told Greenberg that any of those wines were counterfeit, with the exception of one bottle.[12]   In fact, Edgerton expressly told Greenberg that three of the bottles on which Koch sues were genuine, or probably genuine.

The mere fact that Greenberg purchased wines from Royal, and believed in 2002 that some of those wines were questionable, does not help Koch.  Koch has no evidence, and certainly no evidence sufficient to make a clear and convincing showing, that the wines at issue here are specific wines that Greenberg purchased from Royal, rather than wines of the same type that Greenberg purchased from other sources.  Even if Koch could show that a wine at issue came from Royal, he cannot show that Greenberg knew it was counterfeit.  Any such contention from Koch, moreover, would directly contradict his interrogatory response, that Greenberg knew only one wine, the 1928 Latour discussed above, was anything other than genuine. *See Reisner v. Gen. Motors Corp.*, 671 F.2d 91, 93 (2d Cir. 1982) (disregarding evidence, submitted in opposition to summary judgment, that contradicted interrogatory responses).  Any such contention, moreover, would contradict the undisputed evidence that it requires expertise to determine that a wine--particularly these wines, all of which had marked corks--is counterfeit. No expert had determined that any of the wines at issue were counterfeit, with a single exception, and in fact Edgerton had reported to Greenberg that three of the wines were genuine.  Greenberg consigned wines to Zachys that he believed were genuine based on his examination of corks, and he relied on Zachys to inspect the wines and include in the sale only those that they believed

---

[12] The single exception, a 1928 Chateau Latour bottle, for which Koch paid less than $3,000, is insufficient to support diversity jurisdiction because the amount in controversy is below the $75,000 threshold.  Thus, if the Court grants summary judgment as to the remaining bottles, the Court should dispose of the entire case.  Koch's prayer for punitive damages does not change this, as an award of more than $72,000 of punitive damages, for an injury of less than $3000, would be presumptively unconstitutional and therefore cannot support subject matter jurisdiction. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003); *Manuel v. Gembala*, 2010 U.S. Dist. LEXIS 105167, at *27-28 (E.D.N.C. Sept. 30, 2010) (no diversity jurisdiction where "the amount of punitive damages necessary to meet the amount in controversy requirement would be unconstitutional if awarded").  Moreover, Greenberg is entitled to summary judgment even as to the 1928 Latour, because visual inspection by an expert was sufficient to deem the wine questionable or counterfeit. *See* pp.19-21, *infra.*

were genuine.  As Koch's own expert admitted, this is precisely what a consignor like Greenberg is entitled to do.

Finally, even if Koch could show that Greenberg knew that some or all of the wines were counterfeit, despite the fact that no expert had so informed Greenberg, the second prong of the peculiar knowledge inquiry would defeat his claims.  If Greenberg could determine on his own, through a visual examination of his wines, that a particular wine was counterfeit, then Koch also could have determined this had he exercised his right to inspect.  It is undisputed that Greenberg is not an expert, and that when he inspected wine in his own cellar he relied solely on visual inspection.  Thus, even if Koch could prove by clear and convincing evidence that, for example, Greenberg examined the 1947 Lafleur magnum at issue here, and determined that it was counterfeit based on his own examination--a showing Koch cannot make--Koch's fraud claim would fail.  If a visual inspection by Greenberg, a collector with no authentication expertise, was sufficient to determine that a wine was counterfeit, then Koch himself could have made the same determination by exercising his inspection rights.

This Court previously dismissed Koch's fraud claim against Zachys on precisely this ground:  That Koch could have determined the wines were counterfeit through a visual inspection.  *See* Order Granting in Part Zachys' Motion to Dismiss [Dkt. No. 33] at 10 ("Whatever observations have led Plaintiff to his present belief that certain bottles are counterfeit were equally available and accessible to him prior to the auction.")  The Court denied a similar motion by Greenberg, based on the contention that "Sutcliffe and Edgerton had previously examined the wine and determined it to be counterfeit" (*see* Dkt. No. 37 at 8), but discovery has proven that Sutcliffe did not make any such determination, and Edgerton made such a determination about just one wine,  for which Koch paid less than $3000.  Indeed, even as to that single wine the Court should find that Greenberg had no peculiar knowledge:  Had Koch or his

19

agents examined the wine before the auction, they would have seen the same things that led Edgerton and Egan to determine that the 1928 Latour was counterfeit. And once Koch and his expert knew that the wine was counterfeit, or suspect, Koch presumably would not have bought the wine.[13] Koch's failure to inspect is fatal to his fraud claim against Greenberg, just as it was fatal to his fraud claim, based on the exact same wines, against Zachys.

Where, as here, a plaintiff claims fraud based on representations that are expressly disclaimed, the court considers two factors in evaluating whether the plaintiff's reliance was justifiable: (1) the sophistication of the buyer, and (2) the accessibility of the underlying information. *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 368-69 (S.D.N.Y. 1999). "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.*, 748 F.2d 729, 737 (2d Cir. 1984). Here, Koch was a major wine collector with access to wine experts and other professionals, who had participated in over one hundred auctions of fine and rare goods. He owned 50% of a fine wine auction house, Chicago Wine Auctions, in the 1980s, before Greenberg even began collecting wine. It is beyond dispute that Koch represents the highest possible standard of a sophisticated buyer. *See also* Dkt. No. 33 at 7 ("Plaintiff is a sophisticated buyer.").

Koch had the right to inspect the wines before buying them, or to have an expert do so on his behalf. Koch agreed to the "as is" provision of the auction contract. As this Court has held, there can be no "peculiar knowledge" when a supposedly defrauded purchaser, bound by an as-is clause, could have learned the truth about the items at issue. *Dallas Aerospace Inc. v. CIS Air Corp.*, 2002 WL 31453789 (Jones, J.) (S.D.N.Y. Oct. 31, 2002) (granting summary judgment

---

[13] Although Koch did exactly that to Christie's--purchase a wine that his expert told him was counterfeit, in order to justify a lawsuit and advance his crusade. Cialone Dec., Ex. 22 at 357:19-358:13.

where transaction had as-is clause and defendant had no peculiar knowledge). In *Dallas Aerospace*, the plaintiff, who bought a damaged aircraft engine, could have contacted the engine's manufacturer, and "could have obtained an 'Engine Event History' report for a nominal fee." *Id.* at *6. Similarly, Koch could have engaged Egan, or a comparable expert, to inspect the wines, at minimal cost. Had he done so, he would not have relied on the alleged (and disclaimed) misrepresentations in the auction catalog, but would have instead decided not to bid on the wines at issue. Koch's failure to inspect or engage an expert, despite knowing of the disclaimer and despite planning to buy millions of dollars worth of wine, is fatal to his claim.

### 2. Koch Cannot Prove Fraud Based On Representations Regarding Other Wines In The Same Auctions.

Koch cannot prove fraud based on Greenberg's alleged sale of other counterfeit wines in the two auctions at issue, because Koch has no evidence that any wines beyond the 36 at issue were counterfeit. Koch himself bought thousands of wines in the two auctions at issue, and has not identified any as counterfeit beyond the 36 at issue. Nor has Koch disclosed any expert analysis on any wine that he or anyone else bought from Greenberg, beyond the 36 at issue. And Koch has admitted that he does not know of any person, other than himself, who claims to have bought counterfeit wine at either auction. In November 2010, Koch filed his Amended Complaint, ███████████████████████████████████████████

███████████████████████████████████████████████████ And in discovery, when asked to identify every other person who was "victimized by Greenberg's and Zachys' misconduct," as Koch had so boldly alleged, Koch identified only himself--a response he has never supplemented, despite claiming that "additional facts may come to light identifying additional individuals who were victimized…." Despite spending millions of dollars on three law firms, a worldwide network of investigators and experts, nearly five years of investigation and three years of discovery, Koch has no evidence to prove his allegation.

21

### 3.    Koch Cannot Prove Fraudulent Concealment.

Koch's arguments in opposition to previous motions suggest that he intends to argue that Greenberg is liable for fraud, because Greenberg did not disclose that there were counterfeit or questionable wines in his collection, or that he had bought wines from Royal and believed some were counterfeit.  Such a theory is untenable, because Koch did not reasonably rely, and Greenberg could not have known that Koch would rely, on any information or misinformation concerning Greenberg's sources or Greenberg's cellar in general.

Fraudulent concealment requires proof, by clear and convincing evidence, that "(1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge."  *Banque Arabe et Int. d'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 155 (2d Cir. 1995).  The third aspect of this test is fatal to any concealment claim by Koch.

It is well known to wine collectors and professionals that most large collections contain counterfeit or questionable wine; this is the very reason why auction houses review consignments, as Koch and his agent Orcutt knew.  Indeed, Koch himself had purchased wines he believed were counterfeit, including the "Jefferson bottles" and the magnum of 1921 Petrus that he consumed in early 2005.  And while every auction house reviews consignments and rejects questionable wines, no auction house ever states in its catalog that a consignor's collection included questionable wines--a fact Koch certainly knew from his extensive experience with wine auctions.  Koch, who did not even know who the consignor at these auctions was (Greenberg consigned anonymously in both auctions), could not reasonably have believed that an unknown consignor had an extraordinary collection without a single questionable wine.  Greenberg, more importantly, could not have known that Koch had made such a baseless assumption.  *See Banque Arabe*, *supra* (fraudulent concealment requires that "the

22

[defendant] knows that the [plaintiff] is acting on the basis of mistaken knowledge.").

Finally, whatever information Koch claims Greenberg concealed was irrelevant, in light of the express disclaimer in the catalogs, and the right to inspect that Koch failed to exercise. If all *actual representations* regarding the authenticity of the wines auctioned were disclaimed, then Koch could not rely on any *presumption* about wines that were not part of the auction. And if Koch and his experts had inspected the wine before buying, they would presumably have declined to buy any counterfeit or questionable wines, notwithstanding whatever Koch believed about the consignor's collection or sources.

C.    **Greenberg is Entitled to Summary Judgment on Koch's GBL Claim.**

Koch cannot prove his claims under New York General Business Law ("GBL") sections 349 and 350, because Greenberg's alleged deceptive conduct was not consumer-oriented, and because there was in fact no deceptive conduct.

Once again, discovery has proven false the allegations in Koch's Complaint, on which the Court relied in denying Greenberg's original motion to dismiss. In October 2008, the Court found that Koch adequately alleged that Greenberg's conduct was consumer-oriented, because persons other than Koch were allegedly injured:

> Although Plaintiff states that he 'does not know whether other participants' at the October 2004 auction 'also bought counterfeit wine," from Greenberg's cellar, he asserts that this 'may have occurred' and '[t]here may be many other victims.'" (Compl. ¶ 40). Given the large number of bottles Greenberg consigned for the October 2005 auction, and the fact that Plaintiff's purchase of a small percentage of those bottles contained counterfeits, it seems possible that other consumers at the auction were impacted by Greenberg's alleged misconduct. Thus, assuming the allegations of the complaint to be true, it is reasonable to conclude that the conduct complained of affected other similar situation consumers - other purchasers at the October 2005 auction - and, therefore, had a broad impact on consumers at large.

Dkt. No. 37 at 17. Discovery is now closed, and Koch still cannot identify any other purchasers

of counterfeit wine from the auctions at issue.  Despite three teams of lawyers, five experts, extensive publicity, and a worldwide investigation team, Koch has failed to garner any evidence of the "other victims" that he alleged might exist.  Koch's GBL claim therefore fails.

Koch's claim also fails because there was no deceptive conduct.  First, a New York court has held, in circumstances identical to those here, that a buyer of wine at auction--specifically, Koch--cannot sustain a GBL claim where the auction catalog expressly disclaims representations of authenticity.  *Koch v. Acker, Merrall & Condit Co.*, 901 N.Y.S.2d 271, 272 (1st Dep't 2010) (in lawsuit over allegedly counterfeit wine, GBL claims dismissed because the auction catalog "contains an 'as is' provision alerting prospective purchasers that defendant makes no express or implied representation . . . regarding . . . authenticity"); *see also Moustakis v. Christie's Inc.*, 892 N.Y.S.2d 83, 83-84 (1st Dep't 2009) (dismissing auction-related GBL claims where catalog "expressly declared that 'all property is sold as is without any representation or warranty of any kind by Christie's or the seller'").  Second, Greenberg did not sell any wine that he believed was counterfeit.  He consigned wines to Zachys that he believed to be genuine and that had marked corks, and he relied on Zachys' superior expertise as Koch's expert admits he was entitled to do.  His actions therefore cannot be found deceitful.  *See St. Patrick's Home for the Aged and Infirm v. Laticrete Int'l*, 696 N.Y.S.2d 117, 122 (1st Dep't 1999) ("While [defendant's] failure to disclose that Duripanel was a component of EP Board may have been less than candid, it cannot, as a matter of law, be found deceitful because there is no evidence in the record to refute [defendant's] assertion that it believed that the epoxy resin coating rendered Duripanel suitable for exterior use.")  Greenberg's belief that the wines were genuine, his reliance on Zachys, the lack of evidence about any other purchasers or bottles, and the clear disclaimer (that Koch also read and agreed to) all preclude this claim.  Greenberg is entitled to summary judgment.

24

## CONCLUSION

This case has gone on far too long. Koch avoided dismissal of his fraud claim only by arguing that two experts had told Greenberg that all of the wines at issue were counterfeit. That contention was false, as discovery has demonstrated. Koch avoided dismissal of his GBL claim only by arguing that "there may be other victims" of Greenberg's alleged misconduct. Once again, Koch has no evidence to support his claim: Koch's own discovery responses conclusively establish that there were no other "victims." The undisputed facts, moreover, show that there was no misconduct and no fraud: Greenberg believed the wines were genuine when he consigned them to Zachys, and that belief was confirmed when Zachys accepted the wines after multiple inspections.

As the Court has already held, in dismissing Koch's fraud claims against Zachys, all of the information on which Koch's expert relied was available to him before the auction. That fact precludes Koch from proving "peculiar knowledge," and conclusively defeats his claim. Koch's expert, Egan, determined that the wines at issue were counterfeit, based solely on a visual inspection that cost just 1500 Euros to conduct. Had Koch retained Egan or some comparable expert before the auction, he would have reached the same conclusions. There was no "peculiar knowledge" here; there was just a plaintiff who was willing to spend $4 million on wine without bothering to inspect it, and who chose to spend millions more on this litigation rather than accept the refund that Greenberg offered and Koch was contractually obligated to accept.

Dated: San Francisco, CA
      August 22, 2011

Respectfully submitted,

By:*/s/ Frank A. Cialone*
    FRANK A. CIALONE
    SHARTSIS FRIESE LLP
      (*Admitted pro hac vice*)

25

**DEFENDANT ERIC GREENBERG'S APPENDIX TO MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Greenberg submits this Appendix to the Memorandum in Support of his Motion for Summary Judgment, to set forth relevant facts regarding the 36 bottles or magnums of wine at issue in this case.[14]  The wines are discussed in the order that Koch's lead authentication expert, Michael Egan, used in his expert report.

1.    **1921 Chateau Cheval Blanc Magnum.**  In paragraph 71 of the First Amended Complaint, Koch alleges that he purchased two magnums of 1921 Chateau Cheval Blanc from Greenberg at the October 2005 Zachys auction, as Lots No. 357 and 358.  Koch has identified one such wine as number 059886.[15]



a.

b.

c.

---

[14] Greenberg uses the term "bottle" herein to refer to a 750--milliliter bottle, and "magnum" to refer to a 1.5-liter bottle.

[15]  Koch affixed a sticker with a unique serial number to each wine at issue, which serial number is used in the Expert Report of Michael Egan, in the Egan deposition, and elsewhere.  Greenberg uses those serial numbers in this Appendix in order to distinguish between wines of the same type.  No such numbering system or method of distinguishing between wines of the same type was in place before Koch purchased the wines. *See* Greenberg Dec., ¶ 3.

d.      As to wine number 059880, Egan testified that the cork was 5.7 centimeters, longer than the norm, and that the branding was visible and goes almost completely around the cork. Those facts did not lead him to conclude that the wine was counterfeit. Cialone Dec., Ex. 1 at 284:11-15; 299:12-300:11.

2.      **1921 Chateau Cheval Blanc Magnum.** In paragraph 71 of the First Amended Complaint, Koch alleges that he purchased two magnums of 1921 Chateau Cheval Blanc from Greenberg at the October 2005 Zachys auction, as Lots No. 357 and 358. Koch has identified one other such wine as number 059887.

a.      Greenberg incorporates Paragraph 1(a) herein by reference.

b.      Greenberg incorporates Paragraph 1(b) herein by reference.

c.      Greenberg incorporates Paragraph 1(c) herein by reference.

d.      As to wine number 059887, Egan testified that the vintage was visible on the cork. Nothing about the cork caused him to believe that the wine was inauthentic. Cialone Dec., Ex. 1 at 306:6-21; 312:18-313:24.

3.      **1945 Chateau Clos L'Eglise Clinet Magnum.** In Paragraph 78 of the First Amended Complaint, Koch alleges that he purchased a magnum of 1945 Chateau Clos L'Eglise Clinet from Greenberg at the December 3, 2004 Zachys auction. Koch has identified the wine as number 049462.

a.

b.

c.    As to wine number 049462, Egan testified that branding was visible on the cork. Nothing about the cork caused him to believe that the wine was inauthentic. Cialone Dec., Ex. 1 at 316:18-317:3; 325:25-326:20.

4.    **1805 Chateau Lafite Bottle.** In Paragraph 73 of the Amended Complaint, Koch alleges that he purchased a bottle of 1805 Chateau Lafite from Greenberg, which was lot number 379 at the October 2005 Zachys auction. Koch has identified that wine as number 059934.

a.    █████████████████████████████████████████
█████████████████████

b.    ████████████████████████████████████████████
████████████████████████████████████████████
██████████████

c.    As to wine number 059934, Egan testified that the cork was branded with all the necessary wording and illustration. However, based on the thousands of Chateau Lafite corks Egan has observed, he opined that the quality of the branding seemed low. Cialone Dec., Ex. 1 at 326:24-327:3; 334:21-337:12.

d.    As to wine number 059934, Egan further testified that based on his experience as an expert, he almost immediately became concerned with the shape of the bottle, which indicated inauthenticity. *Id.* at 327:4-329-3. If Egan had seen a photograph of the bottle, he would have reached the same conclusion. *Id.* A photograph of this bottle appeared in the October 2005 auction catalog. Cialone Dec., Ex. 30 at GRE0047.

5.    **1811 Chateau Lafite Bottle.** In Paragraph 67 of the Amended Complaint, Koch alleges that he purchased a bottle of 1811 Chateau Lafite from Greenberg, which was lot number

3

380 at the October 2005 Zachys auction.  Koch has identified that wine as number 059935.



a. █████████████████████████████████████████████

b. ███████████████████████████████

c. ██████████████████████████

    At deposition, Edgerton testified that he had informed Greenberg that the bottle of 1811 Chateau Lafite at issue in this case, wine number 059935, was probably genuine.  *Id.* Ex. 5A at 297:11-298:4.

d.    As to wine number 059935, Egan testified that the branding on the cork is legible.  *Id.*, Ex. 1 at 338:10-14; 350:22-351:22.

e.    As to wine number 059935, Egan further testified that based on his experience as an expert, he almost immediately became concerned with the shape of the bottle, which indicated inauthenticity.  *Id.* at 338:15-340:22.  If Egan had seen a photograph of the bottle, he would have reached the same conclusion.  *Id.*  A photograph of this bottle appeared in

4

the October 2005 auction catalog.  Cialone Dec., Ex. 30 at GRE0047.

6.    **1870 Chateau Lafite Rothschild Bottle.**  In paragraph 68 of the Amended Complaint, Koch alleges that he purchased a bottle of 1870 Chateau Lafite Rothschild, which was lot number 386 from Greenberg at the October 2005 Zachys auction.  Koch has identified this wine as number 059941.



a.

b.

c.

At deposition, Edgerton testified that one of those was not the bottle at issue in this case and that the other was "unlikely" to be the bottle at issue.  *Id.*, Ex. 5B at 204:13-206:11.

d.    As to wine number 059941, Egan testified that the cork was clearly branded and did not suggest inauthenticity.  *Id.*, Ex. 1 at 353:7-10; 355:14-24.

7.    **1870 Chateau Lafite Rothschild Magnum**.  In Paragraph 69 of the Amended

Complaint, Koch alleges that he purchased an 1870 Chateau Lafite Rothschild magnum from Greenberg at the October 2005 Zachys auction.  Koch has identified this wine as number 059943.

a.

b.

c.

At deposition, Edgerton testified that he had informed Greenberg that the magnum of 1870 Chateau Lafite Rothschild at issue in this case, wine number 059943, was genuine. *Id.*, Ex. 5A at 311:5-312:14.

d.    As to wine number 059943, Egan testified that the illustration and branding on the cork was finely defined and clear, and did not indicate inauthenticity. *Id.*, Ex. 1 at 356:25-357:4; 358:16-24.

8.    **1945 Chateau Lafite Rothschild Magnum.**  In Paragraph 70 of the Amended Complaint, Koch alleges that he purchased a magnum of 1945 Chateau Lafite Rothschild from

Greenberg at the October 2005 Zachys auction. Koch has identified this wine as number 059950.

a.

b.

c. As to wine number 059950, Egan testified that, given the "good quality of the branding," the cork appears to be "genuine and original." Cialone Dec., Ex. 1 at 365:17-24; 368:12-15.

d. As to wine number 059950, Egan further testified that it took a few seconds upon looking at the bottle for him to become suspicious of it because the label is the wrong color. *Id.* at 366:20-367:16. He would have become suspicious within a few seconds if he saw a photograph of the bottle. *Id.*

9. **1921 Chateau Lafleur Magnum.** In Paragraph 61 of the Amended Complaint, Koch alleges that he purchased two magnums of 1921 Chateau Lafleur from Greenberg at the October 2005 Zachys auction, one as Lot. No. 479. Koch has identified one such wine as number 060047.

a.

b.

      c.     As to wine number 060047, Egan testified that nothing about the cork suggested inauthenticity. Cialone Dec., Ex. 1 at 381:8-11; 386:13-25.

      d.     As to wine number 060047, Egan further testified that based on his knowledge and experience, the label was obviously too large. *Id.*, Ex. 1 at 383:16-385-15. A photograph of this magnum appeared in the October 2005 Zachys auction. Cialone Dec., Ex. 30 at GRE0065.

10.     **1921 Chateau Lafleur Magnum.** In Paragraph 61 of the Amended Complaint, Koch alleges that he purchased a magnum of 1921 Chateau Lafleur from Greenberg at the October 2005 Zachys auction, one as Lot No. 480. Koch has identified one such wine as number 060048.

      a.     Greenberg incorporates paragraph 9(a) herein by reference.

      b.     Greenberg incorporates paragraph 9(b) herein by reference.

      c.     As to wine number 060048, Egan testified that nothing about the cork suggested inauthenticity. Cialone Dec., Ex. 1 at 388:8-16; 393:23-394:10.

      d.     As to wine number 060048, Egan further testified that based on his knowledge and experience, the label was obviously too large. *Id.* at 388:17-389:23. If Egan had seen a photograph of this magnum, he would have reached the same conclusion. *Id.* at 392:8-15. A photograph of this magnum appeared in the the October 2005 Zachys auction is attached. Cialone Dec., Ex. 30 at GRE0065.

11.     **1945 Chateau Lafleur Magnum.** In Paragraph 62 of the Amended Complaint, Koch alleges that he purchased a magnum of 1945 Chateau Lafleur from Greenberg at the October 2005 Zachys auction, as Lot No. 481. Koch has identified one such wine as number 060049.

a.

b.

c.

d.     As to wine number 060049, Egan testified that the branding on the cork was visible, and that nothing on the cork indicated inauthenticity. *Id.*, Ex. 1 at 395:12-17; 399:15-20.

e.     As to wine number 060049, Egan testified that he would have quickly noticed the large label during a visual inspection. *Id.* at 395:12-396:3. If Egan had seen a photograph of the bottle, he would have reached the same conclusion. *Id.* at 396:4-8. A photograph of this magnum appeared in the October 2005 Zachys auction catalog. *Id.*, Ex. 30 at  GRE0065.

12.     **1945 Chateau Lafleur Magnum.**  In Paragraph 73 of the Amended Complaint, Koch alleges that he purchased two magnums of 1945 Chateau Lafleur from Greenberg at the

October 2005 Zachys auction, one as Lot No. 482.  Koch has identified  one such wine as number 060050.

    a.    Greenberg incorporates paragraph 11(a) herein by reference.

    b.    Greenberg incorporates paragraph 11(b) herein by reference.

    c.    Greenberg incorporates paragraph 11(c) herein by reference.

    d.    As to wine number 060050, Egan testified that he branding on the cork was visible, and that nothing on the cork indicated inauthenticity.  Cialone Dec., Ex. 1 at  402:6-9; 404:18-405:10.

    e.    As to wine number 060050, Egan further testified that he would have quickly noticed the large label if he had seen the bottle. *Id.*, Ex. 1 at 403:19-404:4. If Egan had seen a photograph of the bottle, he would have reached the same conclusion.  *Id.*

13.    **1945 Chateau Lafleur Magnum.**  In Paragraph 73 of the Amended Complaint, Koch alleges that he purchased two magnums of 1945 Chateau Lafleur from Greenberg at the October 2005 Zachys auction, one as Lot No. 483.  Koch has identified  one such wine as number 060051.

    a.    Greenberg incorporates paragraph 11(a) herein by reference.

    b.    Greenberg incorporates paragraph 11(b) herein by reference.

    c.    Greenberg incorporates paragraph 11(c) herein by reference.

    d.    As to wine number 60051, Egan testified that the branding on the cork was visible, and that nothing on the cork indicated inauthenticity.  Cialone Dec., Ex. 1 at 406:21-407:2; 410:8-411:4.

    e.    As to wine number 60051, Egan further testified that he would have quickly noticed the large label if he had seen the bottle. *Id.* at 407:23-

408:9.    If Egan had seen a photograph of the bottle, he would have reached the same conclusion.  *Id.*  A photograph of this bottle appeared in the October 2005 auction catalog.  *Id.*, Ex. 30 at GRE0065.

14.    **1947 Chateau Lafleur Magnum.**  In Paragraph 75 of the Amended Complaint, Koch alleges that he purchased two magnums of 1947 Chateau Lafleur from Greenberg at the December 2004 Zachys auction.  Koch has identified one such wine as number 049463.



a.

b.

████████████████

c.   ████████████████████████████████████

████████████████████████████████████

████████████

d.   As to wine number 049463, Egan testified that the branding on the cork was clear and that the cork presented no evidence of manipulation. *Id.*, Ex. 1 at 411:12-19; 414:19-415:21.

e.   As to wine number 049463, Egan further testified that the label would have caused him to have immediate concern about the wine's authenticity. *Id.*, Ex. 1 at 412:18-413:14. If Egan had seen a photograph of the bottle, he would have reached the same conclusion. *Id.*

15.   **1947 Chateau Lafleur Magnum.** In Paragraph 75 of the Amended Complaint, Koch alleges that he purchased two magnums of 1947 Chateau Lafleur from Greenberg at the December 2004 Zachys auction as Lot No. 1464A. Koch has identified one such wine as 049464.

a.   Greenberg incorporates paragraph 14(a) herein by reference.

b.   Greenberg incorporates paragraph 14(b) herein by reference.

c.   Greenberg incorporates paragraph 14(c) herein by reference.

d.   As to wine number 049464, the Zachys catalog states that the cork is "fully stamped." Cialone Dec., Ex. 29 at ZACHYS007041. Egan testified that "it's very hard to read the marking on this cork." *Id.*, Ex. 1 at 416:15-23; 422:10-13.

e.   As to wine number 049464, Egan further testified that the label would have caused him to have immediate concern about the wine's authenticity.

12

*Id.*, Ex. 1 at 418:14-419:9.  If Egan had seen a photograph of the bottle, he would have reached the same conclusion.  *Id.*

16.    **1949 Chateau Lafleur Magnum.**  In Paragraph 63 of the Amended Complaint, Koch alleges that he purchased two magnums of 1949 Chateau Lafleur from Greenberg at the October 2005 Zachys auction as Lot No. 488.  Koch has identified one such wine as number 060052.

a.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

b.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮

c.  As to wine number 060052, Egan testified that the cork did not arouse suspicion.  *Id.*, Ex. 1 at 426:5-8; 428:20-429:7.

d.  As to wine number 060052, Egan further testified that he would have immediately been able to recognize the abnormal size of the label.  *Id.*, Ex. 1 at 426:18-427:3.  If Egan had seen a photograph of the bottle, he would have reached the same conclusion.  *Id.*  A photograph of this magnum appeared in the October 2005 auction catalog is attached.  *Id.*, Ex. 30 at GRE0065.

17.    **1949 Chateau Lafleur Magnum.**  In Paragraph 63 of the Amended Complaint, Koch alleges that he purchased two magnum of 1949 Chateau Lafleur from Greenberg at the October 2005 Zachys auction.  Koch has identified one such wine as number 060053.

a.  Greenberg incorporates paragraph 16(a) herein by reference.

b.  Greenberg incorporates paragraph 16(b) herein by reference.

c. As to wine number 060053, In Edgerton's expert report for Koch, Edgerton stated that the branding on the cork was visible but indistinct. Cialone Dec., Ex. 31 at Report Number 67. In Egan's expert report, he stated that the cork "appears to be old" but that "[t]he vintage is not discernible." *Id.*, Ex. 4 at 24.

d. As to wine number 060053, Egan testified that he would have immediately been able to recognize the abnormal size of the label. *Id.*, Ex. 1 at 430:12-16; 430:21-431:11. If Egan had seen a photograph of the bottle, he would have reached the same conclusion. *Id.*

18. **1950 Chateau Lafleur Magnum.** In paragraph 64 of the Amended Complaint, Koch alleges that he purchased five magnums of 1950 Chateau Lafleur from Greenberg at the October 2005 Zachys auction. Koch has identified one such bottle as number 060054.

a. ████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████    ████████████████████████

██████████████████████████████████

████████████████    ██████████████████

██████████████████████████    ███

████████    ████████████████████

████████████████████████

b. ██████████████████████████████

████████████    ████████████████████

14



    c.

d.    As to wine number 060054, Egan testified that the branding on the cork was visible and that nothing about the cork indicates inauthenticity. *Id.*, Ex. 1 at 447:10-448:2.

e.    As to wine number 060054, Egan further testified that he would have noticed problems with the label, relating to the quality of the paper and the quality of the printing, within minutes of seeing the wine. *Id.* at 444:3-446:19.

19.    **1950 Chateau Lafleur Magnum.**  In paragraph 64 of the Amended Complaint, Koch alleges that he purchased five magnums of 1950 Chateau Lafleur from Greenberg at the October 2005 Zachys auction.  Koch has identified one such wine as number 060055.

a.    Greenberg incorporates paragraph 18(a) herein by reference.

b.    Greenberg incorporates paragraph 18(b) herein by reference.

c.    Greenberg incorporates paragraph 18(c) herein by reference.

d.    As to wine number 060055, Egan testified that the branding and vintage were visible on the cork, and that nothing about the cork indicated inauthenticity.  Cialone Dec., Ex. 1 at 448:3-449:2.

e.    As to wine number 060055, Egan further testified that he would have noticed problems with the label, relating to the quality of the paper and the

quality of the printing, within minutes of seeing the wine.  *Id.* at 444:3-446:19.

20.    **1950 Chateau Lafleur Magnum.**  In paragraph 64 of the Amended Complaint, Koch alleges that he purchased five magnums of 1950 Chateau Lafleur from Greenberg at the October 2005 Zachys auction.  Koch has identified one such wine as 060056.

    a.    Greenberg incorporates paragraph 18(a) herein by reference.

    b.    Greenberg incorporates paragraph 18(b) herein by reference.

    c.    Greenberg incorporates paragraph 18(c) herein by reference.

    d.    As to wine number 060056, Egan testified that the branding on the cork was visible and that nothing about the cork indicated inauthenticity. Cialone Dec., Ex. 1 at 449:3-450:3.

    e.    As to wine number 060056, Egan further testified that he would have noticed problems with the label, relating to the quality of the paper and the quality of the printing, within minutes of seeing the wine.  *Id.* at 444:3-446:19.

21.    **1950 Chateau Lafleur Magnum.**  In paragraph 64 of the Amended Complaint, Koch alleges that he purchased five magnums of 1950 Chateau Lafleur from Greenberg at the October 2005 Zachys auction.   Koch has identified one such wine bottle as 060057.

    a.    Greenberg incorporates paragraph 18(a) herein by reference.

    b.    Greenberg incorporates paragraph 18(b) herein by reference.

    c.    Greenberg incorporates paragraph 18(c) herein by reference.

    d.    As to wine number 060057, Egan testified that the branding and vintage on the cork could be easily read, and that nothing about the cork indicated inauthenticity.  Cialone Dec., Ex. 1 at 450:4-17.

16

e.      As to wine number 060057, Egan further testified that he would have noticed problems with the label, relating to the quality of the paper and the quality of the printing, within minutes of seeing the wine.  *Id.* at 444:3-446:19.

22.      **1950 Chateau Lafleur Magnum.**  In paragraph 64 of the Amended Complaint, Koch alleges that he purchased five magnums of 1950 Chateau Lafleur from Greenberg at the October 2005 Zachys auction.   Koch has identified one such wine as number 060058.

a.      Greenberg incorporates paragraph 18(a) herein by reference.

b.      Greenberg incorporates paragraph 18(b) herein by reference.

c.      Greenberg incorporates paragraph 18(c) herein by reference.

d.      As to wine number 060058, Egan testified that the branding and vintage on the cork could be easily read, and that nothing about the cork raised suspicion as to authenticity.  Cialone Dec., Ex. 1 at 450:18-453:5.

e.      As to wine number 060058, Egan further testified that he would have noticed problems with the label, relating to the quality of the paper and the quality of the printing, within minutes of seeing the wine.  *Id.* at 444:3-446:19.

23.      **1961 Chateau Lafleur Magnum.**  In Paragraph 76 of the Amended Complaint, Koch alleges that he purchased a magnum of 1961 Chateau Lafleur Greenberg at the December 2004 Zachys auction.  Koch as identified this wine as 049467.

a.

17



b.

c.

In his report for Koch, Edgerton noted that the cork of the 1961 Chateau Lafleur magnum at issue was "fully branded." *Id.*, Ex. 31 at number 71.

d. As to wine number 049467, Egan testified that the branding and vintage on the cork were visible, and that nothing about the cork raised questions as to authenticity. *Id.*, Ex. 1 at 456:19-22; 460:3-18.

e. As to wine number 049467, Egan further testified that he would have quickly noticed that the label was too large. *Id.*, Ex. 1 at 456:19-457:24.

If Egan had seen a photograph of the bottle, he would have reached the same conclusion. *Id.*

24.     **1864 Chateau Latour bottle.**  In Paragraph 57 of the Amended Complaint, Koch alleges that he purchased a bottle of 1864 Chateau Latour from Greenberg at the October 2005 Zachys auction.  Koch has identified this wine as number 059958.

a.

b.

c.

d.     As to wine number 059958, Egan testified that the cork appeared to have been branded at Chateau Latour, but that it appeared recent. *Id.*, Ex. 1 at 467:5-11; 473:9-13.

25.     **1865 Chateau Latour bottle.**  In paragraph 58 of the Amended Complaint, Koch alleges that he purchased one bottle of 1865 Chateau Latour from Greenberg at the October 2005 Zachys auction.  Koch has identified this wine as number 059959.

a.



    b.

    c.

At deposition, Edgerton testified that there was a "good likelihood" that the bottle in suit was the bottle he identified as genuine to Greenberg. *Id.*, Ex. 5B at 202:6-22.

    d.    As to wine number 059959, Egan testified that the cork appeared to be a modern Chateau Latour cork, and that the branding and vintage were visible. *Id.*, Ex. 1 at 476:2-6; 477:5-16.

26.    **1875 Chateau Latour bottle.**  In paragraph 59 of the Amended Complaint, Koch alleges that he purchased one bottle of 1875 Chateau Latour from Greenberg at the October 2005 Zachys auction.  Koch has identified this wine as number 0599629.

    a.



b.

c.   As to wine number 0599629, Egan testified that the branding on the cork was clear and that the cork did not indicate inauthenticity. *Id.*, Ex. 1 at 483:12-19; 487:9-489:21.

27.   **1928 Chateau Latour bottle.**  In Paragraph 73 of the Amended Complaint, Koch alleges that he purchased two bottles of 1928 Chateau Latour from Greenberg at the October 2005 Zachys auction.  Koch has identified one such wine as 059966.

a.

b.

c.



d. As to wine number 059966, Egan testified that branding on the cork was visible and that the cork did not indicate inauthenticity. *Id.*, Ex. 1 at 493:2-23.

28. **1928 Chateau Latour bottle.**  In Paragraph 73 of the Amended Complaint, Koch alleges that he purchased two bottles of 1928 Chateau Latour from Greenberg at the October 2005 Zachys auction.  Koch has identified one such wine as 059967.

a. Greenberg incorporates paragraph 27(a) herein by reference.

b. Greenberg incorporates paragraph 27(b) herein by reference.

c. 

d. As to wine number 059967, Egan testified that the cork was clearly branded and did not indicate inauthenticity.  Cialone Dec., Ex. 1 at 497:20-24; 498:25-499:15.

29. **1929 Chateau Latour magnum.**  In Paragraph 60 of the Amended Complaint, Koch alleges that he purchased a magnum of 1929 Chateau Latour from Greenberg at the

October 2005 Zachys auction as Lot No. 410.  Koch has identified this wine as number 059970.



a.

b.

c.     As to wine number 059970, Egan testified that the cork was branded.  *Id.*,

Ex. 1 at 500:21-501:3; 503:21-505:2.

30.     **1921 Chateau Petrus Magnum.**  In Paragraph 72 of the Amended Complaint,

Koch alleges that he purchased one magnum of 1921 Chateau Petrus from Greenberg at the

October 2005 Zachys auction as Lot No. 443.  Koch has identified this wine as number 060025.



a.

b.



c. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

d. As to wine number 060025, Egan testified that some branding on the cork was visible and that the cork did not indicate inauthenticity. *Id.*, Ex. 1 at 505:18-24; 511:13-512:11.

e. As to wine number 060025, Egan further testified that he would have been suspicious of the large label if he had seen the bottle. *Id.* at 505:18-507:20. He would have had the same suspicions if he had seen a photo of the bottle. *Id.* A photograph of this magnum appeared in the October 2005 auction catalog and is attached. *Id.*, Ex. 30 at GRE060.

31. **1928 Chateau Petrus Magnum.** In Paragraph 65 of the Amended Complaint, Koch alleges that he purchased two magnums of 1928 Chateau Petrus from Greenberg at the October 2005 Zachys auction as Lot Nos. 445 and 446. Koch has identified one such wine as number 060026.



a. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

b. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



  c. 

  d. As to wine number 060026, Egan testified that some letters on the cork were discernible and that the cork did not indicate inauthenticity.  *Id.*, Ex. 1 at 512:21-25; 517:8-23.

  e. As to wine number 060026, Egan further testified that the size of the label would have given him immediate concerns about the wine's authenticity. *Id.* at 513:2-514:11.  A photograph of this bottle appeared in the October 2005 auction catalog.  *Id.*, Ex. 30 at  GRE0060.

32. **1928 Chateau Petrus Magnum.**  In Paragraph 65 of the Amended Complaint, Koch alleges that he purchased two magnums of 1928 Chateau Petrus from Greenberg at the October 2005 Zachys auction as Lot Nos. 445 and 446.  Koch has identified one such wine as number 060027.

  a. Paragraph 31(a) is incorporated herein by reference.

  b. Paragraph 31(b) is incorporated herein by reference.

  c. Paragraph 31(c) is incorporated herein by reference.

  d. As to wine 060027, Egan further testified that the cork was hard to read, but that several letters were visible and that the cork did not indicate inauthenticty.  Cialone Dec., Ex. 1 at 518:18-21; 521:10-19.

  e. As to wine 060027, Egan testified that the size of the label would have given him immediate concerns about the wine's authenticity.  *Id.* Ex. 1 at

519:5-24.

33.    **1950 Chateau Petrus Magnum.**  In Paragraph 73 of the Amended Complaint, Koch alleges that he purchased a magnum of 1950 Chateau Petrus from Greenberg at the October 2005 Zachys auction.  Koch has identified this wine as number 060029.



a.

b.

c.

d.    As to wine number 060029, Egan testified that the cork was fully branded, and that nothing on the indicated inauthenticity.  *Id.*, Ex. 1 at 524:5-12; 527:17-24.

34.    **1950 Chateau Petrus Magnum.**  In Paragraph 66 of the Amended Complaint, Koch alleges that he purchased two magnums of 1950 Chateau Petrus from Greenberg at the

October 2005 Zachys auction as Lot Nos. 449 and 450.  Koch has identified one such wine as number 060030.

    a.    Paragraph 33(a) is incorporated herein by reference.

    b.    Paragraph 33(b) is incorporated herein by reference.

    c.    Paragraph 33(c) is incorporated herein by reference.

    d.    As to wine number 060030, Egan testified that a letter on the cork was visible and that nothing on the cork indicated inauthenticity.  Cialone Dec., Ex. 1 at 522:22-523:5; 530:19-23; 533:7-25

35.    **1950 Chateau Petrus Magnum.**  In Paragraph 66 of the Amended Complaint, Koch alleges that he purchased a magnum of 1950 Chateau Petrus from Greenberg at the October 2005 Zachys auction as Lot Nos. 449 and 450.  Koch has identified one such wine as 060031.

    a.    Paragraph 33(a) is incorporated herein by reference.

    b.    Paragraph 33(b) is incorporated herein by reference.

    c.    Paragraph 33(c) is incorporated herein by reference.

    d.    As to wine number 060031, Egan testified that writing on the cork was visible, and that nothing on the cork indicated inauthenticity.  Cialone Dec., Ex. 1 at 522:22-523:5; 540:17-541:14.

36.    **1950 Chateau Petrus Magnum.**  In Paragraph 77 of the Amended Complaint, Koch alleges that he purchased one magnum of 1950 Chateau Petrus from Greenberg at the December 2004 Zachys auction.  Koch has identified this wine as 049461.

    a.    Paragraph 33(a) is incorporated herein by reference.

    b.    Paragraph 33(b) is incorporated herein by reference.

    c.    Paragraph 33(c) is incorporated herein by reference.

27

d.      As to wine number 049461, Egan testified that the words "Chateau Petrus" were visible on the cork, that the lettering "is what one would expect on a Chateau Petrus cork," and that nothing he saw on the cork suggested that it was counterfeit.  Cialone Dec., Ex. 1 at 541:15-17; 543:14-545:2.

6006\032\1719929.7