John C. Hueston (admitted *pro hac vice*)
Layn R. Phillips (admitted *pro hac vice*)
Bruce A. Wessel (admitted *pro hac vice*)
Moez M. Kaba (S.D.N.Y. admission pending)
Bradley J. Leimkuhler (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
(310) 277-1010

*Attorneys for Plaintiff*
*WILLIAM I. KOCH*

Elkan Abramowitz
Edward M. Spiro
Adam L. Pollock
MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM I. KOCH, an individual,                    :
                                                   :
            Plaintiff,                             :
                                                   :
                    vs.                            :    07 Civ. 9600 (BSJ) (DCF)
                                                   :    ECF Case
ERIC GREENBERG, an individual; ZACHYS              :
WINE & LIQUOR STORE, INC., a New York              :
corporation; and ZACHYS WINE AUCTIONS,             :
INC., a New York corporation.                      :
                                                   :
            Defendants.                            :
                                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF**
**WILLIAM I. KOCH'S MOTION TO DISMISS OR, IN**
**THE ALTERNATIVE, FOR SUMMARY JUDGMENT**
**PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12 AND 56**

**TABLE OF CONTENTS**

**Page**

Preliminary Statement.................................................................................................................1

I.  Procedural Posture .................................................................................................................2

II.  Statement Of Facts.................................................................................................................3

    A.  Koch Has Uncovered A Network Of Fraud Involving The Sale of Counterfeits Of Which Greenberg Is A Part.................................................................................................... 3

    B.  Greenberg Sues The Victim of His Fraud............................................................................. 4

    C.  Koch Expected to Receive Authentic Wine and Did Not Consider Disclaimers A License to Defraud................................................................................................................ 7

III.  Standard ................................................................................................................................8

IV.  Argument ..............................................................................................................................9

    A.  Greenberg's Retaliatory Claims Are Barred By the First Amendment's Protections............................................................................................................................. 9

        1.  Koch's Lawsuit Was Not Objectively Baseless...................................................... 10
        2.  Koch's Lawsuit Was Not Subjectively Brought in Bad Faith ............................... 15

    B.  The "American Rule" Requires Denial of Greenberg's Claims ...................................... 16

    C.  Greenberg's Causes of Action Are Without Merit ............................................................ 17

        1.  Greenberg's Fraudulent Inducement Claim Fails As A Matter Of Law............... 17
        2.  Greenberg's "Repudiation" Claim is Not Cognizable .......................................... 19
        3.  Greenberg's Breach of Contract Assertions Do Not State an Actionable Breach ................................................................................................................... 20
        4.  Greenberg's Good Faith and Fair Dealing Claim is Redundant .......................... 23

V.  Conclusion ...........................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975)..................................................................................................... 16

*Angerosa v. White*,
24 A.D. 425 (4th Dep't 1936)..................................................................................... 20

*Auerbach v. Amir*,
2008 WL 479361 (E.D.N.Y. Feb. 19, 2008).............................................................. 19

*Bridger v. Goldsmith*,
143 N.Y. 424 (1894) .................................................................................................... 22

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
98 F.3d 13 (2d Cir. 1996) ...................................................................................... 17, 18

*Crane v. Poetic Prods. Ltd.*,
593 F. Supp. 2d 585 (S.D.N.Y. 2009)........................................................................... 8

*CreditSights, Inc. v. Ciasullo*,
2008 WL 4185737 (S.D.N.Y. Sept. 5, 2008)............................................................. 21

*Dingley v. Oler*,
117 U.S. 490 (1886)..................................................................................................... 19

*Fishbein v. Miranda*,
785 F. Supp. 2d 37 (S.D.N.Y. 2011).......................................................................... 8, 9

*Gorham v. Bank of Am.*,
2010 WL 1704829 (N.D.N.Y. Apr. 28, 2010)............................................................ 16

*Hettinger v. Kleinman*,
733 F. Supp. 2d 421 (S.D.N.Y. 2010)......................................................................... 18

*Int'l Bus. Machs. Co. v. Dale*,
2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011) (Briccetti, J.)........................................ 16

*Jackson v. State*,
210 A.D. 115 (4th Dep't 1924)................................................................................... 20

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
552 F.3d 1033 (9th Cir. 2009) .................................................................................... 10

**Page(s)**

*Koch v. Greenberg*,
2008 WL 4778813 (S.D.N.Y. 2008).........................................................................2, 22, 23

*Koch v. Greenberg*,
2011 WL 4552443 (S.D.N.Y. 2011).................................................................................2

*Krasnyi Oktyabr, Inc. v. Trilini Imps.*,
578 F. Supp. 2d 455 (E.D.N.Y. 2008) .........................................................................10

*Lau v. Mezei*,
2011 WL 4501942 (S.D.N.Y. Sept. 29, 2011) (Wood, J.)...............................................19

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
2006 WL 2807213 (S.D.N.Y. Sept. 28, 2006) (Berman, J.)..............................................8

*Manning v. Utils. Mut. Ins. Co.*,
254 F.3d 387 (2d Cir. 2001)..........................................................................................17

*Marriott Int'l, Inc. v. Downtown Athletic Club, Inc.*,
2003 WL 21314056 (S.D.N.Y. June 9, 2003) (Mukasey, J.).........................................18

*Matsushita Elecs. Corp. v. Loral Corp.*,
974 F. Supp. 345 (S.D.N.Y. 1997) (Jones, J.) ......................................................9, 10, 15

*Nathel v. Siegal*,
592 F. Supp. 2d 452 (S.D.N.Y. 2008) (Sand, J.) ...........................................................18

*Odom v. Poirier*,
2004 WL 2884409 (S.D.N.Y. Dec. 10, 2004) ................................................................16

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993)........................................................................................................10

*Riggs v. Palmer*,
22 N.Y. 188 (1889) ......................................................................................................20

*T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*,
312 F.3d 90 (2d Cir. 2002)..............................................................................................9

*United States v. Dekonty Corp.*,
922 F.2d 826 (Fed. Cir. 1991)......................................................................................19

*USS-POSCO Indus. v. Contra Costa County Bldg.*,
31 F.3d 800 (9th Cir. 1994) .........................................................................................10

*Verus Pharms., Inc. v. Astrazeneca AB*,
2010 WL 3238965 (S.D.N.Y. Aug. 16, 2010) (Jones, J.)................................................23

**Page(s)**

*W.B. David & Co., Inc. v. DWA Commc'ns, Inc.*,
　　2004 WL 369147 (S.D.N.Y. Feb. 26, 2004) (Jones, J.)...................................................... 18

*Wolff v. Rare Medium, Inc.*,
　　171 F. Supp. 2d 354 (S.D.N.Y. 2001)............................................................................ 21


**Other Authorities**

Keith A. Rowley, *A Brief History of Anticipatory Repudiation in American Contract
　　Law*, 69 U. CIN. L. REV. 565 (2001)..................................................................... 19


**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................... 1, 8

Fed. R. Civ. P. 56............................................................................................... 1

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, Plaintiff William I. Koch ("Koch") submits this Memorandum of Law in support of his motion to dismiss or, in the alternative, for summary judgment  as to Defendant Eric Greenberg's ("Greenberg") Counterclaims.

## PRELIMINARY STATEMENT

This motion seeks dismissal of Greenberg's late, retaliatory counterclaims against Koch. The counterclaims are without merit.

First, this Court denied Greenberg's motion to dismiss the complaint (Dkt. 37), demonstrating that the complaint stated legitimate claims against Greenberg.  Discovery has confirmed the allegations of the complaint and unearthed additional evidence of Greenberg's wrongdoing.  Thus, Koch's actions in pursuing his claims in this Court are protected under the *Noerr-Pennington* doctrine.  Second, Greenberg has asserted no damages that he has suffered as a result of his claims against Koch other than his legal fees defending this suit, which he cannot recover under applicable law.  Third, under New York law, Greenberg's claims for fraudulent inducement, breach of the covenant of good faith and fair dealing, and repudiation all merge into his meritless breach of contract claim.  Finally, Greenberg's breach of contract claims fail as a matter of law because Greenberg's fraudulent conduct breached any contract between the parties, and Greenberg can identify no actual breach of any term of any contract between Koch and the auction house Zachys arising out of Koch's pursuit of his claims against Greenberg.

Greenberg, who is in the business of buying and selling wine and is likely the world's largest seller of rare and fine wine, asserts that Koch's refusal to overlook Greenberg's fraud renders Koch liable to Greenberg.  Greenberg argues in essence that a wine seller could fill bottles of wine with grape juice and the burden is on the buyer to uncover this fraud before the

auction is held.  Under Greenberg's theory, if the fraud is uncovered after the sale, the buyer is left with no recourse other than to return the counterfeit wine and accept a refund, and that the pursuit of any other relief creates liability in favor of the perpetrator of the fraud and against the victim.  That is not the law.

## I.      PROCEDURAL POSTURE

Koch purchased wine at Zachys Wine Auctions in December 2004 and October 2005. Koch later discovered that the wine he purchased at those Zachys auctions was counterfeit and had been consigned to Zachys by Greenberg.  In 2007, Koch filed suit against Greenberg and Zachys.  Koch settled with Zachys and is continuing to pursue his claims against Greenberg.

Greenberg moved to dismiss, arguing that a contractual rescission provision limited Koch's recovery to only the purchase price if he returned the bottles; that regardless of Greenberg's bad acts, the contract's "as is" provision required Koch to accept Greenberg's counterfeit wine; and that Koch's decision not to inspect the wine excused Greenberg's fraudulent conduct.  That motion was denied.  *See* Dkt. No. 37, reported at 2008 WL 4778813 (S.D.N.Y. 2008) (holding that Koch's complaint stated a viable claim for fraud, that the "particularly egregious nature of Greenberg's alleged" fraudulent conduct would entitle Koch to punitive damages, and that the complaint stated a viable claim under New York's consumer protection statutes).

Koch amended the complaint after discovering more counterfeit wines that he had purchased from Greenberg.  *See* Dkt. No. 117.  Greenberg moved to dismiss, which this Court denied in light of Greenberg's pending motion for summary judgment.  *See* Dkt. No. 225, reported at 2011 WL 4552443 (S.D.N.Y. 2011).  Greenberg then filed an answer to the

complaint and asserted for the first time, four years after Koch's suit was filed, counterclaims against Koch.  *See* Dkt. No. 226.

## II.    STATEMENT OF FACTS

### A.    Koch Has Uncovered A Network Of Fraud Involving The Sale of Counterfeits Of Which Greenberg Is A Part

At the time of the Zachys' auctions, Koch collected fine and rare wine.  Like others who participate in wine auctions, Koch believed that the wine he was bidding on was authentic and as represented.  *See* Declaration of Plaintiff William I. Koch in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment Pursuant to Federal Rules of Civil Procedure 12 and 56 ("Koch Dec."), ¶ 26.  Auction houses and consignors know that when, for example, a bottle of 1947 Chateau Lafleur is offered for sale, bidders will accept as true the representation that the wine offered is, in fact, a 1947 Chateau Lafleur.  Consumers' reliance on these representations is both reasonable and customary.  In purchasing wine, Koch relies on the "reputation of the sellers," and on representations made in the elaborate auction catalogs.  *Id.* ¶ 24.  Consignors, like Greenberg, are uniquely aware of whether the bottles they are selling to unsuspecting consumers are fake.  No consumer could reasonably expect that auctions at places like Zachys are somehow a vast bait-and-switch shell game where wines are advertised in glowing terms in glossy catalogs only to have counterfeits delivered to purchasers.

Greenberg's counterclaims accuse Koch of going on a "crusade" to "clean up" the fine wine industry since Koch discovered that four bottles of wine purportedly owned by Thomas Jefferson were likely counterfeit.  *See* Answer to Amended Complaint and Counter-Claim of Eric Greenberg, Dkt. No. 226 ("Counterclaim"), ¶ 5.  Greenberg alleges that Koch was somehow "embarrassed" about the counterfeit "Jefferson" bottles.  *Id.* ¶ 4.  Greenberg is incorrect.  Indeed, Koch brought a lawsuit and publicized the Thomas Jefferson counterfeits.  Koch Dec. ¶¶ 21-22.

With the help of wine experts and consultants, Koch began investigating certain fine and rare wines in his own cellar.  *Id.* ¶ 17.  As the investigation progressed, Koch discovered that he was the owner of hundreds of bottles of fake wine, worth nearly $4,000,000 ( *id.* ¶ 18), including at least 36 bottles purchased from Greenberg.  *See* Amended Complaint for Fraud and Violations of Sections 349 and 350 of New York General Business Law, Dkt. No. 117, ¶¶ 36, 38.

Through Koch's efforts, it has become apparent that the problem of wine counterfeiting is industry-wide and affects a wide swath of consumers.  In 2010 alone, auction houses sold $408.1 million worth of wine worldwide, and $154 million in the United States.  Plaintiff William I. Koch's Rule 56.1 in Support of his Motion for Summary Judgment ("R. 56.1 Stmt.") ¶ 1.  The sale of fine wine through auction and private sales is a significant economic activity, in which counterfeiters have prospered and consumers have been defrauded for many years.  Koch Dec. ¶¶ 19-20.

Koch has brought lawsuits in various jurisdictions seeking redress for the losses he has suffered and, on behalf of himself and other consumers, to hold accountable those who have committed fraud and deception.  *Id.* ¶ 22.  Koch has settled two of his wine lawsuits based on the defendants' agreements to adopt new, pro-consumer sales practices.  Koch has brought substantial attention to the problem of counterfeit wine.  Other victims have since investigated and pursued their own claims.  *Id.*

### B.      Greenberg Sues The Victim of His Fraud

Greenberg is one of the largest sellers of expensive wine at auction in the world today. R. 56.1 Stmt. ¶ 2.  Greenberg testified in this case that he views wine as an investment or asset class and that he is in the business of buying and selling wine.  *Id.* ¶ 3.

In his answer, Greenberg admits the truth of many of Koch's allegations including that:

(1) Serena Sutcliffe, a wine expert from Sotheby's auction house, "visited his home and, during that visit, raised questions about the authenticity of four wines in [his] cellar and raised questions about one of Greenberg's many sources of wines," (*Id.* ¶ 4);

(2) "[Greenberg] retained counsel to pursue claims against Royal [Wine Company]" (*Id.* ¶ 5);

(3) "[Greenberg] filed a claim for counterfeit wine with Fireman's Fund Insurance Company" (*Id.* ¶ 6);

(4) "Edgerton concluded that a number of the wines that he inspected were counterfeit" (*Id.* ¶ 7); and

(5) "[Greenberg] purchased over $2,000,000 of wine from Royal and that he came to believe that some of those wines were counterfeit." (*Id.* ¶ 8.)

Therefore, it is undisputed that Greenberg knew there were significant authenticity problems with wine in his cellar. The discovery in this lawsuit has further exposed Greenberg's knowing sale of counterfeit wine to others. *Id.* ¶ 9.

To avoid liability and responsibility for his fraud, Greenberg has offered many excuses for his sale of counterfeit wine to Koch. Greenberg blames those who worked for Greenberg, stating that they did not "consistently or accurately" segregate counterfeit wine. Counterclaim ¶ 22. Greenberg blames Zachys for not removing problematic bottles from the auction, asserting that he "relied on Zachys to inspect and authentic [sic] the wines." *Id.* ¶ 43. Greenberg blames Koch for ████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████.[1] Reply Memorandum in Support of

Defendant Eric Greenberg's Motion for Summary Judgment, Dkt. No. 227 ("MSJ Reply") at 4.

And Greenberg repeatedly suggests that Koch, due to his wealth and his commitment to

combating fraud in the marketplace, apparently does not deserve the protection of the law.

Greenberg argues that the Court should reject the overwhelming evidence that he

knowingly sold counterfeit wine. For example, Greenberg claims that Sotheby's' head of wine

Sutcliffe, who told him that he had questionable bottles and triggered Greenberg's threats against

Royal Wine, made statements "████████████████." Memorandum in Support of Defendant

Eric Greenberg's Motion for Summary Judgment, Dkt. No. 203, at 7. Greenberg claims that

Edgerton – ████████████████████████████████████████████████████,

who confirmed that wines that he inspected for Greenberg and deemed were counterfeit were

then sold to Koch, and whom Greenberg claims to have recommended to Koch – was in "███

███," was "sloppy," or was not "an expert at all." Declaration of Adam L. Pollock in

Support of Plaintiff William I. Koch's Motion to Dismiss or, in the Alternative, for Summary

Judgment, Ex. 3 (Deposition of Eric Greenberg, December 2, 2010 ("Greenberg Dep.") at 262:2-

5, 319:21-23; R. 56.1 Stmt. ¶¶ 10, 13(e). Greenberg claims that Maureen Downey, who raised

questions about the authenticity of Greenberg bottles, is someone to whom he "certainly

do[es]n't pay attention." Greenberg Dep. at 297:2-4. Greenberg claims that the testimony of his

former employee J.J. Cortes, who heard Greenberg say that he intended "to do to somebody else"

---

[1] Greenberg ignores that it would have been impractical for Koch and other bidders to make arrangements to visit the offsite temperature-controlled warehouses that store the thousands of bottles of wine being put up at each auction, inspect every one of those bottles within the brief window before the auction is held, and reach conclusions regarding authenticity under those conditions. Auction houses know that such wine inspections do not occur except in the rarest of circumstances and that bidders rely on catalogs as a matter of course. Wine being auctioned is generally not even onsite during auctions, but instead kept in storage facilities. Moreover, to conduct a meaningful inspection, one would need to retain an authentication expert which, given the number of bottles in question, would be extraordinarily expensive and time-consuming. Koch Dec. ¶ 25.

what Royal had done to him (i.e., sell them counterfeit bottles), must be disbelieved because ███████████ "█████████," "████," and "██████." *Id.* at 27:21-22, 194:2-4.

Greenberg makes these arguments despite his own expert's testimony in this case that, due to questions about their authenticity, he would not recommend that any of the 36 bottles at issue in this action be sold. R. 56.1 Stmt. ¶ 11. That is, Greenberg cannot argue that the wine he sold Koch was genuine; to the contrary, it is effectively undisputed that it is not or that it would not be truthful to hold it out as genuine.

Greenberg has now brought frivolous and retaliatory claims against Koch. Greenberg argues that Koch is somehow liable to Greenberg because Greenberg would "not have allowed Koch to purchase Greenberg's [fake] wines at the auctions" if Koch would not "limit his remedy to a refund." Counterclaim ¶ 17.

## C.    Koch Expected to Receive Authentic Wine and Did Not Consider Disclaimers A License to Defraud

Greenberg erroneously contends that Koch deliberately entered into the contract with Zachys with the intent to violate it. Counterclaim ¶¶ 14-19. When Koch decided to bid on bottles of wine at the two Zachys auctions at issue, he intended to pay for and obtain the benefit of his bargain – genuine bottles of rare fine wine. Koch Dec. ¶ 26. Koch was not expecting to purchase counterfeit wine, and did not believe the wine he was buying was fake. *Id.* Greenberg's sale of counterfeit bottles of wine to Koch is what triggered Koch's action. *Id.* ¶ 27.

The Koch testimony that Greenberg cites in support of his contentions, (Counterclaim ¶ 14), does not state that Koch read and understood the boilerplate terms and conditions at the end of catalog when he prepared to bid at the Zachys auction. R. 56.1 Stmt. ¶ 12 ("I don't remember whether I read this language or not, but as I said, I generally ignored this stuff and I consider it BS, what we call boilerplate."). Koch did not think boilerplate clauses inserted in fine

print at the end of lengthy auction catalogs could possibly excuse a seller's fraud and deception. Koch Dec. ¶ 24.  As Koch has explained, auction houses "hold themselves out as experts, give advice to potential clients, publish elaborate and beautiful catalogs with full page pictures and long essays" opining on the rarity, exclusivity, and remarkability of the products they are selling, only to later attempt to "disclaim everything by using terms like an 'as is'" disclaimer, but this cannot give auction houses or sellers a "free pass" to make "fraudulent claims about the high priced items they are selling."  *Id.*

### III.    <u>STANDARD</u>

A complaint must be dismissed if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "Because Fed.R.Civ.P. 12(b) applies equally to claims and counterclaims, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint."  *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 2006 WL 2807213, at *2 (S.D.N.Y. Sept. 28, 2006) (Berman, J.) (quotation marks and citation omitted). "Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Fishbein v. Miranda*, 785 F. Supp. 2d 375, 383 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).  "The moving party must demonstrate the absence of a genuine issue of material fact.  If the moving party does so successfully, the nonmoving party must present specific facts showing that there is a genuine issue for trial."  *Crane v. Poetic Prods. Ltd.*, 593 F. Supp. 2d 585, 589 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).  "Although all reasonable inferences and ambiguities must be drawn or resolved in favor of the nonmoving party, unless the nonmoving party offers some hard evidence showing that its version of the events is not wholly fanciful,

summary judgment is granted to the moving party." *Fishbein*, 785 F. Supp. 2d at 383 (internal quotation marks and citation omitted).

## IV.    ARGUMENT

Greenberg claims that Koch somehow fraudulently induced Greenberg to sell Koch counterfeit goods through the Zachys auctions; Koch breached the auctions' Conditions of Sales (or the covenant of good faith and fair dealing) by refusing to accept the counterfeit wine "as is" and then by refusing to accept a refund and return the wine when Greenberg's fraud was uncovered; and Koch has "repudiated" the contract.  However, this Court has already held that Koch stated viable causes of action against Greenberg, Koch's lawsuit is constitutionally protected under the well-established *Noerr-Pennington* doctrine, Greenberg fails to state any damages he has suffered for which he is entitled to recompense, and Greenberg's fraud and contract claims are without factual or legal basis.

### A.    Greenberg's Retaliatory Claims Are Barred By the First Amendment's Protections

Although Greenberg's causes of action are dressed up by various titles, they all allege the same damages:  Greenberg has supposedly been harmed by having to defend against Koch's lawsuit arising out of Greenberg's fraudulent conduct.  But "parties who maintain civil suits are entitled to immunity for doing so under the *Noerr–Pennington* doctrine of immunity so long as the litigation is not a 'sham.'"  *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 355 (S.D.N.Y. 1997) (Jones, J.); *accord T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.,* 312 F.3d 90, 93 (2d Cir. 2002) ("The *Noerr–Pennington* doctrine generally immunizes from liability a party's commencement of a prior court proceeding.").  The sham exception to the *Noerr-Pennington* doctrine applies to litigation that is objectively baseless and subjectively brought in bad faith.

- 9 -

*See Matsushita Elecs.*, 974 F. Supp. at 355.  Koch's suit against Greenberg is both legally

meritorious and brought in good faith, thus the counterclaims should be dismissed.

### 1.   <u>Koch's Lawsuit Was Not Objectively Baseless</u>

In order to invoke the "sham" exception to *Noerr-Pennington* immunity, the suit "must

be objectively baseless such that no reasonable litigant could reasonably expect success on the

merits.  If an objective litigant could conclude that a lawsuit is reasonably calculated to obtain a

favorable outcome, the suit is immunized under *Noerr*."  *Id.* (quoting *Prof'l Real Estate*

*Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993)).  "This inquiry is

essentially retrospective: If the suit turns out to have objective merit, the plaintiff can't proceed

to inquire into subjective purposes, and the action is perforce not a sham."  *Kaiser Found. Health*

*Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1046 (9th Cir. 2009) (quoting *USS-POSCO*

*Indus. v. Contra Costa County Bldg.*, 31 F.3d 800, 811 (9th Cir. 1994)).  There can be no

credible contention that Koch's lawsuit was objectively baseless either at the time of filing or

now, after discovery has demonstrated the truth of Koch's allegations.

As a preliminary matter, in denying Greenberg's first motion to dismiss, this Court has

already acknowledged the legal merits of Koch's allegations.  *See* Dkt. 37, reported at 2008 WL

4778813 (Oct. 31, 2008); *see also Krasnyi Oktyabr, Inc. v. Trilini Imps.*, 578 F. Supp. 2d 455,

475 (E.D.N.Y. 2008) (finding plaintiff's suit was not a sham as "plaintiff's claims had enough

merit to survive defendants' motion to dismiss," and plaintiff was therefore "immune").

Moreover, the overwhelming evidence shows that Greenberg has perpetrated a fraud:[2]

---

[2] Koch's Memorandum of Law in Opposition to Defendant Greenberg's Motion for Summary Judgment, Dkt. No. 223 ("MSJ Opp."), details extensive evidence of Greenberg's fraudulent and deceptive conduct, and his peculiar knowledge regarding the same.

- Greenberg was told and independently determined that he had many counterfeit wines in his collection. Greenberg was informed in April 2002



. R. 56.1 Stmt. ¶¶ 13(a) - 13(c).





"  " or " ■ ." *Id.* ¶ 13(d). ██████████

████████████████████████

████████████████. *Id.* ¶ 13(e).

- Greenberg behaved consistent with his belief that he owned a large amount of counterfeit wine. ██████████████. *Id.* ¶ 14(a). ██████████

████████████ " ██████████████████

████████████████████████."

*Id.* ¶ 14(a). ████████████████████

██████████████████████. *Id.* ¶ 14(b).

████████████████, *id.,* ██████████

██████████, *id.* ¶ 14(c), ██████████

██████████. *Id.* ¶ 14(d). ██████████

██████████. *Id.* ¶ 14(e). Moreover, claiming that he was the victim of fraud and "theft," Greenberg filed ██ insurance claim██ seeking recovery. *Id.* ¶ 15. ████

████, he alleged he had suffered a minimum loss of $600,000 and a probable loss upwards of $1.6 million. *Id.* ¶ 15(a).

- Greenberg intended to sell counterfeit wine.[3]

  ." *Id.* ¶ 16(a). Later, in 2004, shortly after he settled with

  Royal, Cortes asked Greenberg if he could have a couple of the counterfeit bottles "as a

  trophy for all the hard work that we've done." *Id.* ¶ 16(b). Greenberg declined, saying,

  "what they did to me, I'm going to do to somebody else." *Id.*

- Greenberg wanted to sell counterfeit wine

  . *Id.* ¶ 9(b).

  " *Id.* Greenberg later consigned                      to Zachys for its

  October 2005 auction, where Koch was one of the new buyers.[4] *Id.* Greenberg also did

---



[3] Greenberg recently asserted that "                                    ." *See* MSJ Reply at 1. Far from irrelevant, Greenberg's scienter directly supports Koch's fraud claim.

[4]                                                                                                    . *See* MSJ Reply at 10-11. However,

is belied by Greenberg's documents.

Second, Greenberg's recent reply papers assert                              "                              ." *See* MSJ Reply at 10. But, the issue is not the branding (logo), but the lack of a vintage *year* on the cork.                                                                Likewise, in examining the 1921 Petrus magnum that Koch bought, both Koch's expert and Greenberg's expert could partially view the cork's

(continued . . .)

business with Rudy Kurniawan, whom he considered to be a "█████████" who "████

█████████████████████████████████," and from whom Greenberg had

earlier purchased counterfeit wine. *Id.* ¶¶ 17(a), 17(b), 17(e). ███████████████████

███████████, "██████████████████████████████████

████████████████." *Id.* ¶ 17(f). ██████████████████████████ "████████

██████████████████" *Id.* ¶ 17(g). █████████████████████████████

██████ "███████████████████████." *Id.* Greenberg proceeded to consign

counterfeit wines to Zachys for its December 2004 auction. *Id.* ¶ 17(h). ████████

███████████████████████████████████████████████████████████

████████████ "██████." *Id.* ¶ 17(d).

- Greenberg successfully sold counterfeit wine to Koch and others. For example, Greenberg sold: a bottle of 1928 Latour that Edgerton had told Greenberg was counterfeit, *id.* ¶ 18(a); two magnums of 1921 Petrus that █████████████████████ █████████████████, *id.* ¶ 18(b); 15 magnums of Lafleur that ████████████████ ████████████████████████, *id.* ¶¶ 18(c)(1) - 18(c)(4);[5] a magnum of 1921 Cheval Blanc that ████████████████████████████████████████████ ██████, *id.* ¶¶ 18(d)(1) - 18(d)(3);[6] a magnum of 1945 Lafite that █████████████



branding, but neither saw a year on the cork. *See* R. 56.1 Stmt. ¶ 21. These features, plus the ██████████████████████████████████████████████████████████████████████
████████████████.

[5] In his reply papers, Greenberg does not argue that ████████████████████████████████████. Instead, ████
████████████████████████████. *See* MSJ Reply at 11 ("████████████████████████████████
██████████████████████"). In other words, ████████████████████████████

[6] In his reply papers, Greenberg does not argue that ████████████████████████████████
██████████████████████. Instead, he argues, ████████████████████████████████████████████. *See* MSJ
Reply at 11. On the contrary, ████████████████████████████████████████



(continued . . .)

█████, *id.* ¶¶ 18(e)(1) - 18(e)(3);[7] one counterfeit bottle of 1870 Lafite that Koch purchased and ████████████████████████████████████████████ ████████████████████████████, *id.* ¶ 18(f);[8] a counterfeit bottle of 1864 Latour, for which Greenberg ████████████████ ██████████, *id.* ¶¶18(g)(1) - 18(g)(3);[9] four magnums of 1950 Petrus, for which Greenberg ████████████████████████, *id.* ¶¶ 18(h)(1) - 18(h)(3);[10] and two magnums of 1928 Petrus, ████████████████████████████████, *id.* ¶¶ 18(i)(1) - 18(i)(3).[11]

---

████████████████████████ *See* R. 56.1(b) Stmt. ¶ 18(d)(1). Greenberg's expert indicated that the wine bottle had a "reproduction" label and that he could only see "a few letters" of branding. *See id.* ¶ 18(d)(3). That Greenberg's expert could see a few letters ██████████████ does not indicate that these are different bottles. Indeed, all indications are that they are the same.

[7] In his reply papers, Greenberg does not argue that t█████████████████████████████████████████████ ██████████████████████. Instead, he argues that█████████████████████████████████████████ *See* MSJ Reply at 11; R. 56.1(b) Stmt. ¶¶ 18(e)(1), 18(e)(3). (Greenberg's expert described the label as a "blatant reproduction." *See id.* ¶ 18(e)(3).) Thus, the reply papers misleadingly suggest ████████████████████ ████████████.

[8] After Koch highlighted ██████████████████████████████████████████████████ ████████, *see* MSJ Opp. at 23, Greenberg claimed in his reply papers that "████████████████████████████████ █████████." *See* MSJ Reply at 12. █████████████████████████. *See* R. 56.1(b) Stmt. ¶ 9(a). Koch's opposition also █████████████████████████████████████. *See* MSJ Opp. at 23 n.32. Greenberg does not argue ████████████████. *See* MSJ Reply at 14 n.16 ("████ ████████████████████").

[9] Greenberg asserts ██████████████████████████████████████████████████████ ██████. *See* MSJ Reply at 12. Even assuming Greenberg's disputed statement is correct, Greenberg was nonetheless on notice ██████████████████████████████████. *See* R. 56.1(b) Stmt. ¶¶ 18(g)(1) - 18(g)(3).

[10] Greenberg claims that ██████████████████████████████████████████████████████ ████████. *See* MSJ Reply at 12. Even if true, the four magnums that Koch purchased each have the same █████" that ████████████████████████████. *See* R. 56.1(b) Stmt. ¶¶ 18(h)(1) - 18(h)(3).

[11] Greenberg does not claim ██████████████████████████████████████████ ████████████████. Instead, ██████████████████████████████████████████. *See* MSJ Reply at 12. When he reviewed his 1928 Petrus magnum in 2002, Greenberg could not see markings on the wine's cork. *See* R. 56.1(b) Stmt. ¶ 18(i)(1). In 2010, Greenberg's expert could discern only "parts of the name" and "some other lettering" on

(continued . . .)

Indeed, every expert, including Greenberg's own, has concluded that the 36 bottles of wine at issue in this litigation should not have been put up for sale. Greenberg considered such counterfeit wine "███████" and ███████████████████████████████████

████████████████████████████████████████████████████████

██, "██████████████████████████████████████." *Id.* ¶ 19.

In light of this evidence, Greenberg cannot argue that Koch's suit is objectively baseless.

### 2.  Koch's Lawsuit Was Not Subjectively Brought in Bad Faith

Second, although the objective prong is dispositive of whether *Noerr-Pennington* applies, *see Matsushita Elecs.*, 974 F. Supp. at 357 ("This Court recognizes that its conclusion that the arguments . . . were not objectively baseless ends the inquiry"), Koch's suit was brought in good faith after he engaged in searching inquiry to ascertain the nature and extent of his losses. *Id.* at 355, 357-59 (concluding that suit was brought in good faith because complainant engaged in investigation to determine whether its rights were violated).

Once Koch became aware that he had been the victim of fraud, he determined to bring suit to recover his losses and prevent further fraudulent conduct in the market. Koch's only reason for pursuing claims against Greenberg is that it was Greenberg who sold Koch counterfeit wine.

Koch did not file this suit lightly. Indeed, Koch has spent substantial resources before and during the suit to confirm Greenberg's fraud. Koch Dec. ¶ 27. Koch commissioned experts to examine his wine collection and opine on the authenticity of the wine he purchased from Greenberg. *Id.* ¶ 17. This review has confirmed that each of the 36 bottles at issue is counterfeit,

---

the cork of one magnum of 1928 Petrus. *Id.* ¶ 18(i)(3). Koch's expert was unable to read anything but a few letters. *Id.* The differences hardly suggest that the bottles are different.

and even Greenberg's expert has conceded that these bottles should not have been sold.  R. 56.1(b) Stmt. ¶ 11.  Only after concluding that he had been defrauded and that other consumers were likely also defrauded did Koch file this suit.  Koch Dec. ¶ 27.

Because the "sham" exception to the *Noerr-Pennington* doctrine does not apply in this matter, Greenberg's retaliatory claims against Koch must be denied in their entirety.

### B.        The "American Rule" Requires Denial of Greenberg's Claims

Even if Greenberg could point to a tort or contract claim arising independently of Koch's constitutionally protected lawsuit, that claim must be denied because Greenberg has failed to adequately plead damages.[12]  Greenberg alleges only that he has suffered "damages in an amount according to proof, including but not limited to his attorneys' fees and costs in this action." Counterclaim ¶ 28; *accord id.* ¶¶ 34, 43, 46, 50, 55.  But this claim for damages fails in light of the "American Rule," by which parties must pay their own fees.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975).  By asserting counterclaims in the amount of his litigation expenses, Greenberg is improperly attempting an "end-run" around the American Rule, a practice recently rejected by in this district under very similar circumstances.  *See Int'l Bus. Machs. Co. v. Dale*, 2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011) (Briccetti, J.) (dismissing, on the basis of the American rule, defendant's counterclaims including fraudulent inducement, breach of contract, and breach of covenant of good faith and fair dealing, arising out of

---

[12] Although damages generally need not be specified in a complaint, Greenberg has not alleged *any* legally cognizable damages, and his claims are therefore improper.  *See, e.g.*, *Gorham v. Bank of Am.*, 2010 WL 1704829, at *4 (N.D.N.Y. Apr. 28, 2010) (dismissing claim in which "Plaintiff merely prays for relief without specifying the injury she suffered."); *Odom v. Poirier*, 2004 WL 2884409, at *9 (S.D.N.Y. Dec. 10, 2004) ("Plaintiff's complaint and his myriad of allegations simply do not state with any specificity the actual injury he suffered as a result of these activities.").

defendant's claim that she is "being forced to bear the expense of defending this litigation," because of defendant's "inability to demonstrate legally recognized damages").

### C.    Greenberg's Causes of Action Are Without Merit

#### 1.    Greenberg's Fraudulent Inducement Claim Fails As A Matter Of Law

Greenberg alleges that Koch fraudulently induced Greenberg to sell him counterfeit wine. Greenberg claims that Koch's agent "represented in writing in the Bidder Pre-Registration Forms for the Auctions that he would abide by the Conditions of Sale in Zachys' catalogs," and that "[t]he Bidder Pre-Registration Forms [the 'Form'] were and are separate and distinct from the agreement among the parties set forth in Zachys' catalogs, and such forms are not a part of that agreement." Counterclaim ¶¶ 25-26.  However, contrary to Greenberg's assertion, the Form states in its entirety: " ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ."

(Pollock Dec. Ex. 56.)  Thus, the promise to be bound by the Conditions of Sale – the promise to perform – can only be understood to be an integral part of the agreement.

The law is clear that there can be no claim for fraudulent inducement where the alleged inducement was merely the promise to perform.  Instead, a claim that a plaintiff entered into a contract even intending to breach it, and then did breach the contract, is merely a breach of contract claim.  *See Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 401 (2d Cir. 2001) (a representation that "is merely a statement of intent to perform under the contract cannot constitute fraud").  *See also Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) ("these facts amount to little more than intentionally-false statements by [defendant] indicating his intent to perform under the contract.  That is not sufficient to support a

claim of fraud under New York law."); *Marriott Int'l, Inc. v. Downtown Athletic Club, Inc.*, 2003 WL 21314056, at *6 (S.D.N.Y. June 9, 2003) (Mukasey, J.) ("The Second Circuit has held that, as a general rule, the allegation that a party entered into a contract intending to breach that contract is insufficient to support a claim for fraud under New York law.").

There are three exceptions to this general rule, none of which apply:

> Where a fraud claim is connected to the breach of a contract claim, the plaintiff must either: "(1) demonstrate a legal duty separate from the duty to perform under the contract; (2) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (3) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."

*W.B. David & Co., Inc. v. DWA Commc'ns, Inc.*, 2004 WL 369147, at *3-4 (S.D.N.Y. Feb. 26, 2004) (Jones, J.) (*quoting Bridgestone/Firestone*, 98 F.3d at 22)); *accord Marriott Int'l*, 2003 WL 21314056, at *6. Here, Greenberg is unable to satisfy any exception. Greenberg has not alleged any duty that Koch had to Greenberg separate and apart from the contract. Nor has Greenberg demonstrated any fraudulent misrepresentation that is collateral or extraneous to the contract, notwithstanding Greenberg's incorrect assertion that the Form is separate and distinct from the Conditions of Sale. *See* MSJ Reply at 4 (" ███████████████████████████ ████████████████████████████."); *W.B. David & Co.*, 2004 WL 369147, at *5 ("For a fraudulent misrepresentation to be collateral or extraneous to a contract, it must be a promise to do something other than what is expressly required by the contract.").[13] Finally, Greenberg has not claimed, nor could he, that he is entitled to any special damages.

---

[13] In contrast, the collateral statement exception applies when the defendant makes wholly separate statements that entice or induce a plaintiff to enter into a contract. *See, e.g., Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 440 (S.D.N.Y. 2010) (finding that plaintiffs were fraudulently induced to invest by defendants' extraneous misrepresentation that they were making a $1 million equity investment in the business); *Nathel v. Siegal*, 592 F. Supp. 2d 452 (S.D.N.Y. 2008) (Sand, J.) (claim upheld on motion to dismiss that defendants induced plaintiffs to

(continued . . .)

Greenberg's claim is simply that Koch fraudulently induced Greenberg to sell him counterfeit wine by agreeing to be bound by the Conditions of Sale. The law requires that this claim be rejected.

### 2. Greenberg's "Repudiation" Claim is Not Cognizable

Greenberg's counterclaims allege that Koch "repudiated the Conditions of Sale" of the December 2004 and October 2005 auctions. Counterclaim ¶¶ 36, 45. Greenberg does not allege that Koch refused to uphold the contract *before* the time for performance, but instead that Koch failed to uphold the contract. This is a claim for breach of contract, not repudiation.[14]

To establish a claim for *anticipatory* repudiation, a party must make "a positive, unconditional, and unequivocal declaration of fixed purpose not to perform the contract in any event or at any time." *Dingley v. Oler*, 117 U.S. 490, 502 (1886). *See also United States v. Dekonty Corp.*, 922 F.2d 826, 828 (Fed. Cir. 1991) (an anticipatory breach occurs when one party "'absolutely refuses to perform his contract, and before the time arrives for performance distinctly and unqualifiedly communicates that refusal to the other party.'") (quoting *Dingley*, 117 U.S. at 499-500); *Lau v. Mezei*, 2011 WL 4501942, at *3 (S.D.N.Y. Sept. 29, 2011) (Wood, J.) ("Anticipatory repudiation occurs when a party, before the time for performance under a

---

invest by knowingly false promises of a resulting tax deduction); *Auerbach v. Amir*, 2008 WL 479361, at *7 (E.D.N.Y. Feb. 19, 2008) (upholding counterclaim on motion to dismiss of fraudulent inducement by collateral statements made "prior to the execution of the [contract] regarding the nature of the business, the inventory, facilities and personnel of [the business] that were false, that plaintiff knew were false and that defendant reasonably relied upon in deciding to pursue the contract.").

[14] *See* Keith A. Rowley, *A Brief History of Anticipatory Repudiation in American Contract Law*, 69 U. CIN. L. REV. 565, 568 (2001) ("Whether a promisor repudiates by word, act, silence, or inaction, his anticipatory repudiation will only be actionable if he communicates it to the promisee, in definite and unequivocal terms, and the promisee acts upon it, prior to the time that the promisor's performance is due under the contract. Otherwise, the promisor's repudiation is an actual -- not anticipatory -- breach of contract, and must be prosecuted, defended, and adjudged accordingly.").

contract, clearly and unequivocally manifests an intention not to fulfill a contractual duty.") (quotation & citation omitted).

Even accepting Greenberg's meritless allegation that Koch secretly harbored an intent not to perform according to the Conditions of Sale, there is no allegation that Koch communicated this intent to Greenberg before the time for performance and so no allegation that Koch anticipatorily repudiated the contract. Thus, to the extent that Greenberg maintains that Koch later failed to perform under the contract, he is alleging only a breach of contract claim.

### 3.  <u>Greenberg's Breach of Contract Assertions Do Not State an Actionable Breach</u>

Greenberg's breach of contract allegations ignore New York's longstanding rule that a party who commits fraud may not thereafter rely on a contractual provision to escape liability for that fraud. That is, Greenberg may not "protect himself from the legal effect of [his] misrepresentation by inserting in the contract a clause to the effect that he is not to be held liable for the misrepresentation which induced the other party to enter into the contract. The effect of misrepresentation and fraud cannot be thus easily avoided." *Jackson v. State*, 210 A.D. 115, 119 (4th Dep't 1924); *see also Riggs v. Palmer*, 22 N.Y. 188, 190 (1889) ("No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong…"). Moreover, under New York law, Greenberg's fraud has in fact destroyed the very "contract" he now claims Koch has breached. *Angerosa v. White*, 24 A.D. 425, 431 (4th Dep't 1936) ("[F]raud vitiates everything which it touches, and destroys the very thing which it was devised to support.").

Even assuming a valid contract existed after Greenberg's fraud, none of Greenberg's allegations amounts to an actionable breach of that contract by Koch.

- 20 -

### i. **Bidding Without Intent to Abide by the Conditions of Sale**

First, Greenberg alleges, with respect to the December 2004 auction, that Koch bid "at the Auctions even though he had no intent whatsoever of abiding by the Auction's Conditions of Sale, even though he knew these terms existed."  Counterclaim ¶ 33.  But Koch entered into the Auction with the intent for all parties to abide by their respective obligations.  Even accepting Greenberg's incorrect allegation regarding Koch's mindset (or "intent") as true, Greenberg has stated no breach of contract.  Greenberg cannot identify any relevant term in the Zachys' auction materials that was breached by Koch's alleged lack of intent to abide by the Conditions of Sale, and the Conditions of Sale do not require any particular mental state. *See CreditSights, Inc. v. Ciasullo*, 2008 WL 4185737, at *11 (S.D.N.Y. Sept. 5, 2008) ("New York law is eminently clear that a proper breach of contract claim must identify specifically breached contract terms."); *see also Wolff v. Rare Medium, Inc*., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) ("In pleading [breach of contract], a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue.").

### ii.  **Bidding With the Intent to Disregard the As Is Clause**

Second, Greenberg alleges that Koch breached the Conditions of Sale for the December 2004 auction by "bidding on items knowing that they were subject to an 'as is' clause with the intent of disregarding this clause if it suited him."  Counterclaim ¶ 33.[15]  This claim is another allegation that Koch bid with an improper mental state and should be denied.

---

[15] There is no evidence that Koch actually knew that the Zachys catalog contained the "as is" provision. *See* Counterclaim ¶ 14, quoting from the December 1, 2010 deposition of Koch:

> Q.  . . . So the question is, were you aware of it at the time of the auction?
>
> A.  . . . I don't know.  As I said, I consider this BS and I ignored it.

Even liberally construing Greenberg's claim to mean that Koch breached the contract by refusing to accept the goods "as is," Greenberg is unable to sustain a breach of contract claim.  A defrauded consumer can be under no obligation to accept fake goods and then be denied legal recourse.  As stated above, fraud cannot be excused by the insertion of a contractual term. *Bridger v. Goldsmith*, 143 N.Y. 424, 428 (1894) ("A rogue cannot protect himself from liability for his fraud by inserting a printed clause in his contract.").  Moreover, this Court has already rejected Greenberg's attempts to escape liability for his fraud by relying on the "as is" disclaimer, holding that "a disclaimer such as the one listed in the Zachys auction catalogue will not defeat a claim for fraud when the allegedly misrepresented facts are 'peculiarly' within the defendant's knowledge." *Koch v. Greenberg*, 2008 WL 4778813 at \*3.

### iii. <u>Bidding With the Knowledge that Koch Could Inspect the Wine</u>

Third, Greenberg alleges that Koch breached the Conditions of Sale for the December 2004 auction by "having the knowledge that he could inspect any goods he purchased and return them if he was not satisfied, but instead suing for alleged issues that he would have discovered had he inspected." Counterclaim ¶ 33.  The December 2004 auction catalog's fine print conditions state:  "Prospective bidders are invited to inspect the property before bidding." *See* Counterclaim Exhibit A at ZACHYS 007067.  Greenberg cannot make out a claim that Koch's *knowledge* that he could inspect the wine, even if true, somehow breached the contract, or that Koch's declining the invitation to inspect wines is a breach of contract.

In any event, this Court has already rejected the concept that Greenberg's conduct is protected (and thus not actionable) because Koch did not inspect the wines before purchase. *Koch v. Greenberg*, 2008 WL 4778813, at \*6 ("Greenberg argues that because the catalogue explicitly disclaimed liability and because Plaintiff had the right to inspect all wines from Greenberg's collection before bidding at auction, Plaintiff cannot prove that he justifiably relied

- 22 -

on Greenberg's representations (via Zachys) about the authenticity of the wine. Greenberg asserts that whatever observations led Plaintiff to his belief that certain bottles of Greenberg's wine are counterfeit were equally accessible to him prior to the auction. The Court finds Greenberg's justifiable reliance argument to be without merit.").

### iv.   Non-Acceptance of a Refund

Finally, Greenberg alleges that Koch breached the Conditions of Sale for the December 2004 and October 2005 auctions by "refusing to accept a refund as his remedy in this dispute in three occasions." Counterclaim ¶¶ 33, 41, 42. Essentially, Greenberg argues that Koch must be held liable for refusing to excuse Greenberg's fraud. But, as explained above, any contractual obligation to accept a refund was rendered void by Greenberg's fraudulent consignment of counterfeit goods that were represented to be genuine and that were at the very heart of the alleged contract.[16]

### 4.   Greenberg's Good Faith and Fair Dealing Claim is Redundant

Greenberg asserts that Koch violated the covenant of good faith and fair dealing implied in the "agreements among Greenberg, Zachys and Koch." Counterclaim ¶¶ 48, 53. But this claim must be dismissed because Greenberg has not identified anything unique to his good faith and fair dealing claims and thus the claim is duplicative of Greenberg's breach of contract claims. *Verus Pharms., Inc. v. Astrazeneca AB*, 2010 WL 3238965, at *12 (S.D.N.Y. Aug. 16, 2010) (Jones, J.) ("The majority of courts in this district have found that a claim of breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract

---

[16] Further, this Court has already rejected Greenberg's attempts to dismiss Koch's claims on the basis of Greenberg's offer for a refund. *See Koch v. Greenberg*, 2008 WL 477813, at *2 ("Plaintiff claims entitlement to more than the reimbursement of the purchase price of the counterfeit wines listed in the Complaint. . . . Therefore, Greenberg's offer to refund Plaintiff's purchase price plus interest and costs does not create the sort of mootness that deprives the Court of jurisdiction.").

claim asserted in the same complaint is redundant and must be dismissed on a motion to dismiss." (citation and quotation omitted)).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Koch's motion to dismiss or, in the alternative, for summary judgment as to Greenberg's counterclaims should be granted.

Dated: Los Angeles, California
      November 18, 2011

By: _____
      John C. Hueston (admitted *pro hac vice*)
      Layn R. Phillips (admitted *pro hac vice*)
      Bruce A. Wessel (admitted *pro hac vice*)
      Moez M. Kaba (S.D.N.Y. admission pending)
      Bradley J. Leimkuhler (admitted *pro hac vice*)
      IRELL & MANELLA LLP
      1800 Avenue of the Stars, Suite 900
      Los Angeles, California 90067
      (310) 277-1010

      -and-

      Elkan Abramowitz
      Edward M. Spiro
      Adam L. Pollock
      MORVILLO, ABRAMOWITZ, GRAND,
      IASON, ANELLO & BOHRER, P.C.
      565 Fifth Avenue
      New York, New York 10017
      (212) 856-9600

      *Attorneys for Plaintiff*
      *WILLIAM I. KOCH*