Layn R. Phillips (admitted *pro hac vice*)
Bruce A. Wessel (admitted *pro hac vice*)
Melissa R. McCormick (admitted *pro hac vice*)
Bradley J. Leimkuhler (admitted *pro hac vice*)
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
(949) 760-0991

-and-

Elkan Abramowitz
Edward M. Spiro
Adam L. Pollock
MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

*Attorneys for Plaintiff*
*WILLIAM I. KOCH*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM I. KOCH, an individual,

        Plaintiff,

        vs.

ERIC GREENBERG, an individual; ZACHYS WINE & LIQUOR STORE, INC., a New York corporation; and ZACHYS WINE AUCTIONS, INC., a New York corporation.

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

07 Civ. 09600 (BSJ)(DCF)

AMENDED COMPLAINT FOR FRAUD AND VIOLATIONS OF SECTIONS 349 AND 350 OF NEW YORK GENERAL BUSINESS LAW

**COMPLAINT**

Plaintiff William I. Koch ("Koch"), by counsel, as and for his Amended Complaint against defendants Eric Greenberg ("Greenberg") and Zachys Wine Auctions, Inc. and Zachys Wine & Liquor Store, Inc. (together "Zachys") (Greenberg and Zachys referred to collectively as "Defendants"), alleges upon personal knowledge as to himself and upon information and belief as to Defendants:

**PRELIMINARY STATEMENT**

1. Koch has purchased wine at various Zachys auctions. In 2007, during an inspection of his wine cellar, Koch discovered that some of the wine that he purchased from Zachys was counterfeit. Koch's investigation revealed that some of this counterfeit wine had been consigned to Zachys by Greenberg, and that Greenberg had knowingly injected counterfeit wine into the marketplace.

2. The allegations in this Amended Complaint pertaining to Greenberg are based on non-confidential sources, including non-confidential depositions from other legal proceedings, depositions in this action, and documents already produced in discovery in this matter.

3. In or around 2002, Greenberg had one of the largest wine cellars in the United States. Greenberg decided that he wanted to sell part of his cellar and he contacted internationally known auction house Sotheby's to handle the auction. Because Greenberg's cellar contained tens of thousands of bottles, Sotheby's sent Serena Sutcliffe, the head of Sotheby's international wine department, to examine the wine. Sutcliffe is one of the world's leading authorities on wine.

4. Upon examination of the Greenberg cellar, Sutcliffe raised questions about the integrity of certain bottles of wine and stated that Sotheby's was not interested in auctioning counterfeit or questionable wine. Thereafter, Greenberg was told by another wine expert, William Edgerton, that Greenberg's cellar contained counterfeit wine.

5. Despite knowing that he owned counterfeit wine, in 2004, 2005 and perhaps on additional occasions, Greenberg auctioned part of his wine collection through Zachys,

including counterfeits. Greenberg knew that he was selling counterfeit bottles of wine. Zachys knew, or was reckless or negligent in not knowing, that some of the wine it was auctioning for Greenberg was counterfeit or of questionable authenticity. Greenberg claims that Zachys certified to him that the wine Zachys was offering for sale on his behalf was genuine and that he relied on Zachys' certification. Zachys denies this.

6. This lawsuit is being pursued to demonstrate the culpability of, and recover damages from, Greenberg and Zachys, both of whom deny responsibility.

## PARTIES

7. Plaintiff William I. Koch is a citizen of the State of Florida.

8. Defendant Eric Greenberg is a citizen of the State of California.

9. Defendants Zachys Wine & Liquor Store, Inc. and Zachys Wine Auctions, Inc. are corporations organized under the laws of the State of New York with their principal places of business in Scarsdale, New York.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 as the matter is between citizens of different states and the amount in controversy exceeds $75,000.

11. Venue is proper in this district under 28 U.S.C. § 1391. The acts giving rise to the claims in this action occurred in this district and Zachys conducts wine auctions in New York, New York, including the December 2004 auction and the October 2005 auction described in this complaint. Greenberg consigned wines to Zachys to be auctioned in this district.

12. In addition, Greenberg acquired certain of the wines identified in this complaint from Royal Wine Merchants, Ltd. ("Royal"), which is located in New York, New York.

# FACTUAL ALLEGATIONS

## I. Greenberg's Wine Cellar and His Decision to Sell

13. In the late 1990s, Greenberg was a successful and wealthy entrepreneur. He founded two internet companies taken public on the NASDAQ - Scient and Viant - serving as the Chairman and Chief Executive Officer of both. Greenberg amassed one of the largest wine collections in the United States consisting of tens of thousands of bottles of wine, which he kept in a wine cellar next to his home in Ross, California.

14. Royal assisted Greenberg in building his massive wine collection, including taking him on buying trips to Europe.

15. The NASDAQ peaked in early 2000 and then dropped steadily over the next several years. Greenberg's fortune shrank. In 2002, one of his companies, Scient, filed for bankruptcy. That same year his other company, Viant, which at one time had a market capitalization of over $2 billion, was sold for less than $100 million. Greenberg decided to sell part of his wine collection, which he believed to be worth millions of dollars.

## II. Sotheby's Does Not Auction Greenberg's Collection

16. Greenberg approached Sotheby's to handle the sale of wine from his wine cellar. Sotheby's sent Serena Sutcliffe, the head of its international wine department, to Greenberg's California cellar to view the collection. Upon examination of the Greenberg cellar, Sutcliffe raised questions about the integrity of certain bottles of wine and stated that Sotheby's was not interested in auctioning counterfeit or questionable wine.[1]

17. Jaime J. Cortes ("Cortes"), Greenberg's former property manager, was present when Sutcliffe came to Greenberg's residence to view Greenberg's wine.

---

[1] *See* Koch Production, KOCHGZ 0652-54 (Deposition of Lawrence Stone, Master Sommelier, in Frye v. The Wine Library, June 26, 2007, at 19, stating: "Mr. Greenberg also wanted to hire me as an expert in a case he was bringing against a company regarding wines that, again, Sotheby's said were fraudulent and didn't want to put up for auction."); *id.* at 20-21 (stating: "I know that by Mr. Greenberg's statement that his wines were not included by Sotheby's because their person said that -- the person who came to evaluate the cellar

According to Cortes, Sutcliffe looked at bottles in Greenberg's cellar and informed Greenberg that some of his wine was questionable as to authenticity and Sotheby's would not auction such questionable wine.

18.    The fact that Greenberg was told by "one international auction house" that it had questions as to the authenticity of certain bottles of wine is also set forth in a May 23, 2003 complaint marked "draft" in <u>Eric Greenberg v. Royal Wine Merchants, Ltd. et al.</u>, a lawsuit that Greenberg threatened to file against Royal (the "Draft Complaint"). The Draft Complaint states:

> In the spring of 2002, plaintiff was considering the possibility of arranging an auction sale of part of his wine collection, including a number of bottles of wine that he purchased from Royal. In connection with analyzing whether to proceed with a sale, the representative of one international auction house inspected parts of his wine collection.
>
> During that inspection, the auction house representative, a recognized expert in the industry, raised questions about the integrity of certain bottles of wine, without being aware of the manner in which, or the source from which, plaintiff acquired those bottles of wine.[2]

19.    Following Sutcliffe's visit, on or about May 22, 2002, Greenberg filed a claim for counterfeit wine with the Fireman's Fund Insurance Company ("Fireman's"). Greenberg submitted to Fireman's a list of $912,301 worth of wine that he claimed was counterfeit. Fireman's did not pay the claim.

---

said that they were fraudulent or suspected they might be fraudulent. Some he said were definitely; some he said -- this is Mr. Greenberg's mouth.").

[2] Royal Production, RW00038-45.

### III. Greenberg Pursues Royal and Settles

20. Stung by the news that he had purchased counterfeit wine, while his insurance claim was still pending, Greenberg retained counsel to pursue claims against Royal, the company that sold him the wine.[3]

21. Greenberg also retained William Edgerton, a noted wine expert. According to Jaime Cortes, Edgerton came to inspect certain bottles in Greenberg's cellar in Ross, California and Greenberg chose the bottles that Edgerton should examine.

22. Edgerton confirmed that Greenberg's cellar contained counterfeit wine. Edgerton placed a numbered sticker on each bottle that he inspected (the "Edgerton Stickers"). He then recorded on a spreadsheet, using the number on the sticker for identification, whether the wine was genuine, counterfeit, or questionable. According to Jaime Cortes, the bottles that were identified as counterfeit were put off to the side and separated from the rest of Greenberg's wine collection.

23. Ultimately, Edgerton produced a report detailing his findings, which was given to Royal.

24. ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████.[4]

---

[3] *See* Koch Production, KOCHGZ 0652-54 (Deposition of Lawrence Stone, Master Sommelier, in Frye v. The Wine Library, June 26, 2007, at 20 (stating: "[For] Mr. Greenberg's lawsuit, he was definitely going after Royal Wine Merchants because of the source of the wines that were in his collection that were fraudulent or the vast majority of the wines in his collection that had been considered fraudulent by Sotheby's came from Royal.").

[4] *See* Royal Production, RW00114-15 (██████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████.");
RW00001-2 (█████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████.").

- 5 -

25. These facts are also set forth in the Draft Complaint, which states:

> Beginning in or about January 2000 and continuing through March 2002, defendants sold plaintiff wines in an amount in excess of $2 million. . . .
>
> Concerned about the issues identified by the auction house representative about his purchases from Royal, plaintiff thereafter undertook to inspect all of the wine that he purchased from Royal. In the course of this inspection, plaintiff came to the conclusion that, at a minimum, a substantial portion, if not all, of the bottles of wine purchased from Royal were fake or counterfeit.
>
> . . .
>
> As a result of the above-described disturbing information, plaintiff also retained an independent wine consultant to inspect the authenticity of wines he purchased from Royal on a test audit basis. The independent consultant reviewed a total of 108 bottles of wine (including certain bottles not purchased from Royal to establish base lines) and found that the bottles of wine that he inspected which were purchased from Royal appeared, to a reasonable degree of certainty, to be fake or counterfeit.

26. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

27. In or around February 2004, Greenberg resolved matters with Royal and Greenberg told others that he had done so. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.)

28. Before the filing of this action, Greenberg and Royal took the position, in tandem and through their respective counsel, that they can õneither confirm nor denyö the existence of a settlement agreement between them.

29. Until shortly before the filing of this action, Greenberg was not shy about discussing the settlement. For example, Greenberg discussed the Royal settlement with his cellar master Thierry Lovato and Lovato then told Edward Gelsman, who owns a wine

- 6 -

store in Northern California, that Greenberg had returned bottles to Royal and been refunded his money.

30. Greenberg also discussed Royal with Lawrence Stone, a master sommelier. Greenberg told Stone that Sotheby's had determined that certain wines in Greenberg's cellar, which Greenberg had obtained from Royal, were counterfeit. Greenberg also told Stone that he had hired nuclear scientists and chemists to analyze the bottles and labels, and that they determined that the bottles had been tampered with.

31. It does not appear that Greenberg claimed confidentiality until Koch began asking questions about how Greenberg's counterfeit wine ended up in Koch's cellar. Only then, as Greenberg's wrongdoing was coming to light, did Greenberg begin hiding behind a claim of confidentiality.

32. In or around 2007, Greenberg instructed Lovato not to discuss Greenberg's wines in response to a subpoena Lovato received earlier that year in a different counterfeit wine lawsuit. All this suggests an ongoing cover-up by Greenberg of whatever arrangements he made with Royal and Zachys to sell his counterfeit wine to unsuspecting victims.

## IV.  Greenberg Sells the Counterfeit Wine

33. Cortes has recounted that he had asked Greenberg if he (Cortes) could keep some of the counterfeit wine that was not returned to Royal. Greenberg refused, saying "what they did to me, I'm going to do to someone else." Cortes understood this to mean that Greenberg planned to sell the counterfeit wine to unsuspecting third parties.

34. Having examined the documents received in discovery, Koch has recently learned that there is significant overlap in the bottles that Greenberg claimed were counterfeit in his insurance claim and the bottles that Greenberg consigned to Zachys.

35. In 2006, ███████████████████████████████████
███"[5]

---

[5] *See* Christie's Production, 000072 ███████████████████████████

V.     **Greenberg's Counterfeit Wine Bottles End Up in Koch's Cellar**

36.    In 2007, Koch hired Edgerton to review the wine in Koch's wine cellar to determine whether any of the bottles were counterfeit. During that inquiry, Edgerton was stunned to find in Koch's cellar at least two of the bottles that Edgerton had inspected in Greenberg's cellar in 2002. Edgerton knew that these bottles were from Greenberg's cellar because they still bore the Edgerton Stickers – the stickers that Edgerton had placed on the bottles in 2002. Somehow bottles that were in Greenberg's cellar in 2002 had made their way into Koch's cellar.

37.    The two bottles with the Edgerton Stickers, numbered 41 and 42, were both Chateau Latour 1928, which, if authentic, would have a market value of more than $2,000 a bottle. One of these bottles (number 41) was counterfeit and one (number 42) was genuine. Edgerton told Greenberg these facts in 2002.

38.    Edgerton also discovered other counterfeit wine bottles in Koch's cellar. Koch's staff traced some of these bottles, including the two with the Edgerton Stickers, back to Zachys. Specifically, Koch purchased some of the counterfeit wine in his cellar at Zachys auctions held on December 3, 2004 and October 28, 2005 in New York. Further investigation revealed that Greenberg had consigned wine for sale at the December 3, 2004 and October 28, 2005 Zachys auctions.

VI.    **Greenberg and Zachys Attempt To Explain How Greenberg's Counterfeit Bottles Ended Up In Koch's Cellar**

39.    Koch has given both Zachys and Greenberg an opportunity to explain how Zachys ended up selling Greenberg's counterfeit bottles of wine at auction.

40.    Zachys contended that Greenberg did not tell Zachys that Greenberg's cellar had been inspected by Sutcliffe and Edgerton or that those individuals had concluded that there were counterfeit bottles of wine in Greenberg's cellar. Zachys also contended that it owed a duty of confidentiality to Greenberg not to provide additional information to Koch

███████████████████████████████████████████████████████████████████
█████████ .").

about the Greenberg consignment, which effectively made Zachys part of the Greenberg cover-up.

41. Greenberg contended, through his counsel, that "all wine from Mr. Greenberg's collection that was injected into the marketplace through consignment to Zachys for auction was authenticated by Zachys on at least two occasions prior to sale. Mr. Greenberg only consigned wine which he believed to be authentic and which was reviewed by Zachys, and which Zachys determined to be authentic."

42. In short, Greenberg has pointed the finger at Zachys and Zachys has pointed the finger at Greenberg.

43. Greenberg contends that when he auctioned off parts of his cellar through Zachys, Zachys authenticated the wines and, therefore, Greenberg cannot be held responsible.

44. Zachys contends that it was auctioning off Greenberg's wines as a mere consignee and it should not be held responsible for Greenberg's malfeasance in not disclosing to Zachys and the other bidders at the Zachys auction that Sutcliffe and Edgerton had concluded that Greenberg's cellar contained questionable or counterfeit wine.

45. Koch contends that both Greenberg and Zachys are responsible. Having learned in 2002 that his cellar contained counterfeit wine, Greenberg apparently settled with Royal and then dumped some of his counterfeit bottles on Zachys for auction. That was wrong. Zachys either knew the Greenberg wine was counterfeit or was reckless in not knowing. That, too, was wrong.

46. Koch was victimized by Greenberg's and Zachys' misconduct and there likely are many other victims as well.

## VII.   Greenberg's 2006 Contact with Koch

47. In July of 2006, before Koch knew anything about Greenberg's wrongdoing, Koch was investigating certain counterfeit wine that originated with German

wine aficionado and con man Hardy Rodenstock ("Rodenstock"). Koch has sued Rodenstock in a separate action currently pending in this district.

48. One counterfeit wine in Koch's cellar is a Petrus 1921, which Koch bought from Zachys. Zachys had identified Greenberg as the source of the Petrus 1921 that Zachys sold to Koch. In July of 2006, knowing nothing about Sutcliffe's and Edgerton's examinations of Greenberg's cellar or that Koch's cellar contained other counterfeits that had been in Greenberg's cellar, Koch contacted Greenberg to learn where Greenberg had obtained the counterfeit Petrus 1921 and whether it had any connection to Rodenstock.

49. In that conversation, Greenberg told Koch that he believed that he had obtained the Petrus 1921 from Royal. Greenberg also told Koch that representatives from Royal were friendly with Hardy Rodenstock and that Rodenstock may have been the source of the Petrus 1921.

50. Greenberg then told Koch about Greenberg's decision to settle with Royal rather than proceed with litigation. Greenberg claimed that his investigator, former CIA agent Jack Devine, told him certain information about Royal's connections to Russian organized crime that made Greenberg reluctant to pursue a lawsuit against Royal. Koch has no way of knowing what portions, if any, of Greenberg's story about Royal are true.

## VIII. Koch's Purchase of Counterfeit Wine from Zachys

51. After Greenberg settled with Royal, Greenberg injected at least some of his counterfeit wine into the marketplace for sale.

### A. The Zachys October 28 and 29, 2005 Auction

52. Koch now knows that he bought counterfeit wine that originated from Greenberg at the Zachys 2005 auction. Koch does not know whether other participants in that Zachys auction also bought counterfeit wine that originated from Greenberg. That may have occurred. Koch is one victim of this wrongdoing. There may be many other victims.

53. Prior to the 2005 Zachys auction, Koch received a catalogue prepared by Zachys identifying the wine that would be offered at the auction. This catalogue, by its

nature, constituted representations that the wine being auctioned was genuine and described accurately. There was no reason to believe that the statements in the catalogue concerning the identity and the vintage of the wine were inaccurate. The Zachys catalogue was designed to be read by serious collectors of wine like Koch, it was widely disseminated, and it was, in fact, read by Koch. Koch studied the catalogue and relied on it in making decisions as to which wines he wanted to bid on at the auction.

54. At the Zachys 2005 auction, Koch purchased $3.7 million worth of wine, including many counterfeits. The counterfeits came from Greenberg's cellar and were consigned by Greenberg to Zachys.

55. The representations by Zachys in the 2005 Catalogue were made either with knowledge of their falsity or with reckless disregard for the indicators that such representations were false, and were made without adequate investigation or authentication. For example, the representations made by Zachys in the 2005 Catalogue were made without regard to, or investigation of, the existence or purpose of the Edgerton stickers on some of the Greenberg wines, and without apparent regard for the widespread allegations of counterfeiting then extant in the wine community that had prompted other auction houses, such as Sotheby's, to more closely scrutinize wines it offered for auction.

56. At the Zachys October 28, 2005 auction, Koch purchased two bottles of Chateau Latour 1928. They were both part of Lot 409 at that auction and he paid $2,873 for each bottle. These two bottles came from Greenberg's cellar and had been labeled 41 and 42 by Edgerton in Greenberg's cellar. The Edgerton Stickers were affixed to these bottles with Edgerton's handwritten initials on them. One bottle, labeled 41, is counterfeit. The other bottle, labeled 42, is genuine. The Zachys catalogue describes these two bottles as Chateau Latour 1928 and explains: "A famously tannic wine, yet it's now mellowed wonderfully."

57. At the Zachys October 28, 2005 auction, Koch purchased a bottle of Chateau Latour 1864 for $15,912. It is counterfeit. This bottle came from the Greenberg cellar. This bottle was Lot 401 in the Zachys catalogue.

58. At the Zachys October 28, 2005 auction, Koch purchased a bottle of Chateau Latour 1865 for $15,912. It is counterfeit. This bottle came from the Greenberg cellar. This bottle was Lot 402 in the Zachys catalogue.

59. At the Zachys October 28, 2005 auction, Koch purchased a bottle of Chateau Latour 1875 for $8,169. It is counterfeit. This bottle came from the Greenberg cellar. This bottle was Lot 405 in the Zachys catalogue.

60. At the Zachys October 28, 2005 auction, Koch purchased a magnum of Chateau Latour 1929 for $19,890. It is counterfeit. This bottle came from the Greenberg cellar. This bottle was Lot 410 in the Zachys catalogue.

61. At Zachysø October 28, 2005 auction, Koch purchased two magnums of Chateau Lafleur 1921 for a total of $38,455. The Zachys catalogue represented that these bottles were Chateau Lafleur 1921. They are counterfeit. These two bottles came from the Greenberg cellar. These bottles were Lots 479 and 480 in the October 28, 2005 auction.

62. At Zachysø October 28, 2005 auction, Koch purchased a magnum of Chateau Lafleur 1945 for $19,890. It is counterfeit. This bottle came from the Greenberg cellar. This bottle was Lot 481 in the Zachys catalogue.

63. At Zachysø October 28, 2005 auction, Koch purchased two magnums of Chateau Lafleur 1949 for $33,151. They are counterfeit. These two bottles came from the Greenberg cellar. These bottles were Lots 488 and 489 in the Zachys catalogue.

64. At Zachysø October 28, 2005 auction, Koch purchased five magnums of Chateau Lafleur 1950 for a total of $76,909. They are counterfeit. These bottles came from the Greenberg cellar. These bottles were Lots 492, 493 and 494 in the Zachys catalogue.

65. At Zachysø October 28, 2005 auction, Koch purchased two magnums of Chateau Petrus 1928 for a total of $31,825. They are counterfeit. These two bottles came from the Greenberg cellar. These bottles were Lots 445 and 446 in the Zachys catalogue.

66.     At Zachys' October 28, 2005 auction, Koch purchased two magnums of Chateau Petrus 1950 for a total of $45,084.  They are counterfeit.  These two bottles came from the Greenberg cellar.  These bottles were Lots 449 and 450 in the Zachys catalogue.

67.     At Zachys' October 28, 2005 auction, Koch purchased a bottle of Chateau Lafite 1811 for $29,172.  It is counterfeit.  It came from the Greenberg cellar.  This bottle was Lot 380 in the Zachys catalogue.

68.     At Zachys' October 28, 2005 auction, Koch purchased a bottle of Chateau Lafite Rothschild 1870 for $18,564.  It is counterfeit.  This bottle came from Greenberg's cellar.  It was Lot 386 in the Zachys catalogue and was described as "one of the all time greats . . . ."

69.     At Zachys' October 28, 2005 auction, Koch purchased a magnum of Chateau Lafite Rothschild 1870 for $33,150.  The magnum is counterfeit.  It is from Greenberg's cellar.  This was Lot 389 in the Zachys catalogue.

70.     At Zachys' October 28, 2005 auction, Koch purchased a magnum of Chateau Lafite Rothschild 1945 for $5,569.  The magnum is counterfeit.  It is from Greenberg's cellar.  This bottle was Lot 394 in the Zachys catalogue.

71.     At Zachys' October 28, 2005 auction, Koch purchased two magnums of Cheval Blanc 1921 for a total of $34,477.  The magnums are counterfeit.  These bottles came from the Greenberg cellar.  These bottles were Lots 357 and 358 in the Zachys catalogue.

72.     At Zachys' October 28, 2005 auction, Koch purchased a magnum of Chateau Petrus 1921 for $29,500.  The magnum is counterfeit.  It is from Greenberg's cellar. This was Lot 443 in the Zachys catalogue.

73.     Koch made additional purchases of possibly counterfeit wine at the October 28, 2005 Zachys auction including: two magnums of Chateau Lafleur 1945, which were Lots 482 and 483 in the Zachys catalogue, for a total of $34,476.66; a bottle of Chateau Latour 1928, which was Lot 408 in the Zachys catalogue, for $4,199; a magnum of Chateau Petrus 1950, which was Lot 448 in the Zachys catalogue, for $18,890; and a bottle

of Chateau Lafite Rothschild 1805, which was Lot 379 in the Zachys catalogue, for $22,542.33. These bottles are all from Greenberg's cellar.

### B.     The Zachys December 3, 2004 Auction

74.    Koch also was misled into buying counterfeit wine at a prior Zachys auction held on December 3, 2004.

75.    At Zachys' December 3, 2004 auction, Koch purchased two magnums of Chateau Lafleur 1947 for a total of $42,766. They are counterfeit. These bottles came from the Greenberg cellar. These magnums were Lots 1464 and 1464A in the Zachys catalogue.

76.    At Zachys' December 3, 2004 auction, Koch purchased a magnum of Chateau Lafleur 1961 for $16,849. The magnum is counterfeit. It is from Greenberg's cellar. This magnum was Lot 1472 in the Zachys catalogue.

77.    At Zachys' December 3, 2004 auction, Koch purchased a magnum of Chateau Petrus 1950 for $14,258. The magnum is counterfeit. It is from Greenberg's cellar. This magnum was Lot 1454 in the Zachys catalogue.

78.    At Zachys' December 3, 2004 auction, Koch purchased a magnum of Clos L'Eglise Clinet 1945 for $9,076. The magnum is counterfeit. It is from Greenberg's cellar. This magnum was Lot 1457 in the Zachys catalogue.

### FIRST CLAIM
### (COMMON LAW FRAUD
### (AGAINST GREENBERG)

79.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 78 of this Complaint as if set forth in full herein.

80.    Greenberg made material misrepresentations to and concealed or suppressed material facts from Plaintiff, third parties, and purchasers and collectors of rare wines, a group that includes Plaintiff. Such misrepresentations and suppressed material facts include those listed in paragraphs 1 through 78. Specifically, such misrepresentations included Greenberg's representations to Zachys that the wines he was offering for sale to

the public, including those ultimately purchased by Plaintiff, were genuine when they were not.

81. The omissions or representations by Greenberg were material and were false and misleading, and Greenberg knew they were material and were false and misleading at the time they were made, or, at a minimum, acted with reckless disregard for the truth or falsity of the representations made about the authenticity of the wines offered at auction, including those sold to Plaintiff.

82. Greenberg misrepresented, concealed, or suppressed these facts with the intent to influence the actions of Plaintiff and purchasers and collectors of rare wines, a group that includes Plaintiff, including intending to influence purchases of wine sold by Greenberg.

83. Plaintiff reasonably and justifiably relied on Greenberg's misrepresentations in purchasing the counterfeit wine.

84. At the time Plaintiff acted, Plaintiff was unaware of the concealed or suppressed facts and would have acted differently if Plaintiff had known the true facts.

85. Each of the counterfeit wines purchased by Koch is essentially worthless. As a result of Plaintiff's reliance upon Greenberg's misrepresentations, Plaintiff has suffered damages in an amount to be proved at trial.

86. By virtue of Greenberg's willful, wanton, and morally culpable conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

## SECOND CLAIM

### (VIOLATION OF SECTION 349 OF THE NEW YORK GENERAL BUSINESS LAW)
### (AGAINST ALL DEFENDANTS)

87. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 73 of this Complaint as if set forth in full herein.

88. New York General Business Law ("GBL") § 349 prohibits any business or person from engaging in deceptive business practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York state.

89. As alleged herein, Defendants have engaged in material deceptive or misleading consumer-related business practices that affected consumers, including purchasers and collectors of rare wines, a group that includes Plaintiff, in violation of GBL § 349. Defendants' deceptive or misleading business practices alleged herein are likely to mislead, and have misled, reasonable purchasers and collectors of rare wines.

90. The source of the bottles auctioned by Zachys was Greenberg, although this was not disclosed by Zachys. Greenberg consigned counterfeit wines to Zachys knowing that such wines were not genuine and would be offered for sale by Zachys in New York. Zachys offered Greenberg's counterfeit wines for sale in New York either with the knowledge that they were not genuine or with reckless disregard as to their authenticity. Accordingly, both Greenberg and Zachys violated GBL § 349.

91. Defendants' violation of GBL § 349 has caused Plaintiff to suffer injury including, *inter alia*, paying for counterfeit wine at Zachys auctions, including wine consigned by Greenberg. As a result of Defendants' violation of GBL § 349, Plaintiff has suffered damages in an amount to be proved at trial.

92. Defendants willfully and knowingly engaged in the conduct alleged herein.

93. Plaintiff is entitled to damages, including treble damages, injunctive relief, and attorneys' fees pursuant to New York GBL § 349(h).

## THIRD CLAIM
### (VIOLATION OF SECTION 350 OF THE NEW YORK GENERAL BUSINESS LAW)
### (AGAINST ALL DEFENDANTS)

94. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 73 of this Complaint as if set forth in full herein.

95. GBL § 350 prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in New York state.

96. As alleged herein, Defendants have engaged in material deceptive, misleading or false advertising that was directed at and which affected consumers, including purchasers and collectors of rare wines, a group that includes Plaintiff, in

violation of GBL § 350 and § 350-a.  Defendants' deceptive, misleading or false advertising alleged herein are likely to mislead, and have misled, reasonable purchasers and collectors of rare wines.

97. Plaintiff reasonably and justifiably relied on Defendants' deceptive, misleading or false advertising in purchasing the counterfeit wine.

98. Defendants' violation of GBL § 350 has caused Plaintiff to suffer injury including paying for counterfeit wine.  As a result of Defendants' violation of GBL § 350, Plaintiff has suffered damages in an amount to be proved at trial.

99. Defendants willfully and knowingly engaged in the conduct described above.

100. Plaintiff is entitled to damages, including treble damages, injunctive relief, and attorneys' fees pursuant to New York GBL § 350-e.

**WHEREFORE**, Plaintiff prays for judgment in his favor as follows:

a. Injunctive relief to prohibit further wrongdoing by Defendants;

b. Damages for all injuries suffered as a result of Defendants' unlawful conduct;

c. Exemplary damages in an amount to be determined at trial;

d. Treble damages as appropriate under New York GBL §§ 349(h) and 350-e;

e. Attorney's fees as appropriate under New York GBL §§ 349(h) and 350-e;

f. Pre-judgment interest; and

    g.  Such other and further legal and equitable relief (including rescission as appropriate) as may be just and proper.

Dated: New York, New York    Respectfully submitted,
    November 10, 2010

                By: *Edward M. Spiro*/ect
                Elkan Abramowitz
                Edward M. Spiro
                Adam L. Pollock
                MORVILLO, ABRAMOWITZ, GRAND,
                IASON, ANELLO & BOHRER, P.C.
                565 Fifth Avenue
                New York, New York  10017
                (212) 856-9600

                -and-

                Layn R. Phillips (admitted *pro hac vice*)
                Bruce A. Wessel (admitted *pro hac vice*)
                Melissa R. McCormick (admitted *pro hac vice*)
                Bradley J. Leimkuhler (admitted *pro hac vice*)
                IRELL & MANELLA LLP
                840 Newport Center Drive, Suite 400
                Newport Beach, California  92660-6324
                (949) 760-0991

                *Attorneys for Plaintiff*
                *WILLIAM I. KOCH*

*ND: 4824-0459-9560, v. 1*