UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

WILLIAM I. KOCH, an individual,          :

              Plaintiff,          :

                      :          07 Cv. 9600

       v.                    :          (BSJ)(DCF)

                      :          **Memorandum and Order**

ERIC GREENBERG, an individual, et al.   :

            Defendants.          :

------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/12
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

    The central claims in the present action relate to thirty-six bottles of wine which the parties do not dispute were purchased by Plaintiff William I. Koch ("Koch") from Defendant Eric Greenberg ("Greenberg") at two separate auctions conducted by Zachys Wine Auctions, Inc. ("Zachys") in December 2004 and October 2005.  Koch alleges that these thirty-six bottles are counterfeit and that Greenberg was aware of this when he consigned them to Zachys for sale.  The Amended Complaint accordingly alleges causes of action for common law fraud and violations of New York General Business Law ("GBL").  In his defense, Greenberg contends that: (1) he did not know that any of the bottles at issue were counterfeit; and (2) Koch himself could have determined the bottles' authenticity had he chosen to

1

inspect them prior to the auction.  Greenberg has also filed
counterclaims against Koch alleging fraudulent inducement,
breach of contract, repudiation, and breach of the covenant of
good faith and fair dealing.

Before the Court are Greenberg's motion for summary
judgment and Koch's motion to dismiss or, in the alternative,
for summary judgment on Greenberg's counterclaims.  For the
foregoing reasons, the Court finds that there are disputed
issues of material fact with respect to Koch's causes of action,
but that Greenberg's counterclaims fail as a matter of law.  The
Court accordingly **DENIES** Greenberg's motion for summary judgment
and **GRANTS** Koch's motion to dismiss the counterclaims.

## I. STANDARDS OF REVIEW

### A. Motion for Summary Judgment

In determining whether to grant summary judgment, the trial
court's duty "is carefully limited to discerning whether there
are genuine issues of material fact to be tried, not to deciding
them." Gallo v. Prudential Residential Servs. Ltd. P'ship, 22
F.3d 1219, 1224 (2d Cir.1994).  "The court shall grant summary
judgment if the movant shows that there is no genuine dispute as
to any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v.
Catrett, 477 U.S. 317, 322 (1986).  "The substantive law

2

governing the case will identify those facts which are material and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Admiral Indem. Co. v. Travelers Cas. and Sur. Co. of Am., No. 11 Civ. 1158, 2012 WL 3194881, at *4 (S.D.N.Y. Aug. 8, 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party." Id. "If there are cross motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." Id.

### B. Motion to Dismiss

"Because Fed. R. Civ. P. 12(b) applies equally to claims and counterclaims, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." Louis Vuitton Malletier v. Dooney & Bourke, Inc., No. 04 CV 5316, 2006 WL 2807213, at * 2 (S.D.N.Y. Sept. 28, 2006) (citations omitted.) While "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss," Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir.2006)

(citation omitted), "[a] trial court considering a Rule 12(b)(6) motion must 'accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party.'" In re Elec. Books Antitrust Litig., No. 11 MD 2293, 2012 WL 1946759, *8 (S.D.N.Y. May 15, 2012) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007)).

To survive a motion to dismiss, the plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Dismissal is appropriate 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" In re Elec. Books Antitrust Litig., 2012 WL 1946759, *8 (quoting Ashcroft, 556 U.S. 662).

## II.  **BACKGROUND**

The facts most pertinent to the present action begin in April 2002, when it is undisputed that Serena Sutcliffe ("Sutcliffe"), a wine expert from Sotheby's auction house, visited Greenberg's wine cellar.  (Pl.'s Rule 56.1

4

Counterstatement to Def.'s Statement of Material Facts ("9/27/11
Pl.'s 56.1 Counterstatement") (Dkt. # 269) ¶ 15.)  Although both
parties acknowledge that this visit occurred, the parties
disagree as to what Sutcliffe communicated to Greenberg during
this visit.  Greenberg asserts that, during the visit, Sutcliffe
did not inform Greenberg that any of the wines at issue in this
litigation were counterfeit or questionable.  (Def.'s Statement
Pursuant to Local Rule 56.1 of Undisputed Facts ("8/22/11 Def.'s
56.1 Statement") (Dkt. # 266) ¶ 15.)  In support of this
assertion, Greenberg cites to portions of Sutcliffe's own
deposition.  Id.  Citing the deposition testimony of other
individuals who were present during Sutcliffe's visit, Koch
argues instead that Sutcliffe and her associate informed
Greenberg during the visit that several of his wines were
counterfeit or likely counterfeit.  (9/27/11 Pl.'s 56.1
Counterstatement ¶ 56.)

　　In addition, citing to Greenberg's own deposition
testimony, Koch also alleges that, during Sutcliffe's visit,
Sutcliffe informed Greenberg that one of the distributors from
whom he purchased wine, Royal Wine Merchants ("Royal"), were
"crooks" and that anything purchased from Royal was likely to be

counterfeit.  Id. at ¶ 66.[1]  While Greenberg does not dispute
that Sutcliffe expressed concerns regarding Royal during her
visit, he disagrees with Koch's characterization of her
statements.  (Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.
Mem. Summ. J.") (Dkt. # 265) 7.)  Relying on Sutcliffe's
deposition testimony, Greenberg argues that Sutcliffe's
expressed opinions about Royal were based solely on rumors and
not substantiated concerns.  Id.

     Regardless of what was said by Sutcliffe to Greenberg
during her visit in April 2002, it is undisputed that, after
Sutcliffe's visit, Greenberg took the following actions: (1)
retained counsel to pursue claims against Royal, (Def.'s Resp.
to Pl.'s Statement of Purportedly Undisputed Facts and Def.'s
Statement of Issues to Be Tried Pursuant to Local Rule 56.1
(Dkt. # 278) ("12/30/11 Def.'s 56.1 Counterstatement") ¶ 5); (2)
filed two insurance claims for losses associated with
potentially fraudulent wine that he had purchased from Royal,
Id. at ¶ 15(a) and (b); (3) with the assistance of his cellar
master, Thierry Lovato ("Lovato"), and sommelier, Andrew
Dumbrowsky ("Dumbrowsky"), conducted his own examination of his

_____

[1] The parties do not dispute that Greenberg made significant purchases of wine
from Royal.  (Def.'s Resp. to Pl.'s Statement of Purportedly Undisputed Facts
and Def.'s Statement of Issues to Be Tried Pursuant to Local Rule 56.1 (Dkt.
# 278) ("12/30/11 Def.'s 56.1 Counterstatement") ¶ 8.)

wine collection (Def.'s Reply to Pl.'s Statement of Purported
Material Facts and Issues to Be Tried (Dkt. # 272) ("10/25/11
Def.'s Reply to Pl.'s Statement") ¶ 71)[2]; and (4) retained
William Edgerton ("Edgerton"), who prepared a report titled
"Wine Authentication Report" which summarized Edgerton's opinion
as to the authenticity of 108 bottles of wine from Greenberg's
collection, (Id. ¶ 81.)[3]

Around February 2004, Greenberg and Royal entered into a
Settlement Agreement.  (12/30/11 Def.'s 56.1 Counterstatement ¶
14(c).)

In December 2004 and October 2005, Greenberg consigned to
Zachys for auction the thirty-six bottles of wine at issue in
this litigation.  (9/27/11 Pl.'s 56.1 Counterstatement ¶¶ 17-
52.)  The parties dispute whether Greenberg was aware of any
authenticity issues with these specific bottles.  Greenberg
asserts that he only offered to Zachys wines that he believed
were genuine.  (Def. Mem. Summ. J. 9.)  Relying principally on
his own declaration, Greenberg further asserts that, since he

---

[2] Following Greenberg's own examination of his collection, with assistance from
Lovato and Dumbrowsky, Greenberg prepared a report titled "Royal Wine Fake
Summary Notes."  (10/25/11 Def.'s Reply to Pl.'s Statement ¶ 72.)

[3] Edgerton's report identifies as counterfeit a number of bottles that are not
at issue in this litigation, but were the same vintage as those in this
litigation.  With the exception of a single bottle of 1928 Chateau Latour,
Edgerton did not inform Greenberg that any of the bottles of wine at issue in
this litigation were counterfeit or questionable.  (9/27/11 Pl.'s 56.1
Counterstatement ¶ 16.)

did not have any method of identifying particular bottles, he had no way of differentiating the bottles that he had purchased from Royal from other bottles. (Id.)  Koch disagrees with Greenberg's factual assertions and instead argues that the evidence indicates that Greenberg either: (a) knew that the specific bottles were counterfeit, or (b) was reckless in making representations regarding their authenticity. (Pl.'s Mem. of Law in Opp'n to Def. Greenberg's Mot. for Summ. J. (Dkt. # 267) ("Pl.'s Opp'n to Summ. J.") 20.)  To support his position, Koch cites to: (1) documents associated with Greenberg's prospective litigation against Royal; (2) documents associated with Greenberg's insurance claims; (3) documents associated with Greenberg's own examination of his wine; and (4) e-mail correspondence in which individuals working in the wine industry inform Greenberg that bottles he owns are counterfeit or possibly counterfeit.[4]  (9/27/11 Pl.'s 56.1 Counterstatement ¶¶ 93(a)-(l).)  Koch argues that the aforementioned evidence establishes that Greenberg had knowledge regarding inauthenticity for at least twenty-nine of the thirty-six

---

[4] Although he does not dispute having received these e-mails, Greenberg has objected to the admissibility of these e-mails on the basis that they are either hearsay and/or unqualified expert testimony. (Def.'s Objections to Evid. Submitted in Supp. of Pl.'s Opp'n to Mot. for Summ. J. (Dkt. # 273).) Having reviewed the evidence, however, the Court disagrees and finds that the e-mails are admissible as evidence of Greenberg's state of mind, i.e. his knowledge and intent.

bottles at issue in this litigation.  (Pl.'s Opp'n to Summ. J.
17.)   In addition, Koch also argues that a jury could conclude
based on a totality of the evidence that Greenberg had peculiar
knowledge with respect to all thirty-six bottles and intended to
defraud Koch and others.   Id. 17, 20, 23-24.

Setting aside the parties' disagreement regarding
Greenberg's knowledge of the bottles that were consigned in
Zachys' December 2004 and October 2005 auctions, the parties do
not dispute that the auction catalogs for both auctions
contained the following provisions:

> The authenticity of property listed in the catalog is
> guaranteed only as stated herein and otherwise all property
> is sold "AS IS" without any representations or warranties
> by Zachys...or the Consignor as to merchantability, fitness
> for a particular purpose, correctness of catalog,
> description, size, quality, condition, rarity, importance,
> provenance, exhibition history, literature, previous
> storage conditions or historical relevance of any
> property...Prospective bidders are invited to inspect the
> property before bidding.  (9/27/11 Pl.'s 56.1
> Counterstatement ¶ 5.)

> The Buyer's sole and exclusive remedy against Zachys Wine
> Auctions and the Consignor under this provision shall be
> the rescission of the sale and the refund of the original
> purchase price paid for the lot.  This remedy shall be in
> lieu of any other remedy which might otherwise be available
> to the Buyer as a matter of law or at equity, and neither
> Zachys Wine Auctions, nor the Consignor shall be liable, in
> whole or in part, for any special, incidental or
> consequential damages, including, without limitation, loss
> of profits.  (12/30/11 Def.'s 56.1 Counterstatement ¶ 23.)

The parties also do not dispute that: (1) Koch purchased the
thirty-six bottles of wine at issue in this litigation at those

auctions, (9/27/11 Pl.'s 56.1 Counterstatement ¶¶ 17-52); (2) at the time that he purchased the wines at issue, Koch was unaware that Greenberg was the consignor, (Id. at ¶ 12); and (3) neither Koch nor his agents elected to inspect any of the auctioned wines prior to bidding. (Id. at ¶ 8.)

Regarding Koch's decision not to inspect any of the auctioned wines prior to bidding, the parties dispute the type of inspection that would have revealed the wines to be counterfeit. Greenberg asserts that Koch could have determined the wines' inauthenticity by examining them himself or by having an expert inspect them at minimal cost. (Def. Mem. Summ. J. 20-21.) Koch counters that he personally lacks the expertise to have determined that the wines were counterfeit, and the cost of retaining an expert to make such an assessment would have been unreasonable. (Pl.'s Opp'n to Summ. J. 29-30.)

Beyond the aforementioned facts which relate to Koch's Amended Complaint, Greenberg also asserts additional facts in his counterclaims. The counterclaims allege as an initial matter that, at the time that Koch participated in the auctions, "Koch never intended to abide by the terms and conditions of the Auctions." (Countercl. of Eric Greenberg ("Countercl.") (Dkt. # 226) ¶ 7.) The counterclaims further allege that, in spite of his intent not to abide by the conditions of the auctions, Koch

10

signed the Bidder Pre-Registration Forms, thereby "induc[ing]
Zachys and Greenberg to allow him to participate in the Auctions
and purchase Greenberg's wine." Id. at ¶¶ 7-8.  According to
Greenberg's counterclaims, had "Greenberg [] known that Koch's
promises in the Bidder Pre-Registration Forms were false, and
that Koch in fact had no intent of abiding by his agreement that
he would purchase all wine 'as is' or his agreement to limit his
remedy to a refund," "Greenberg would not have allowed Koch to
purchase Greenberg's wines at the Auctions." Id. at ¶ 17.

     As a result of Koch's decision to pursue litigation rather
than accept the refund proscribed by the conditions of sale,
Greenberg alleges that he has been forced to spend millions of
dollars in attorneys' fees and costs.  Id. at ¶ 21.

## III. DISCUSSION

### A. Greenberg's Motion for Summary Judgment

     Greenberg's principal arguments in support of his motion
are that summary judgment on all claims is warranted because the
evidence: (1) does not establish that Greenberg knew the thirty-
six bottles at issue in this litigation were counterfeit; and
(2) establishes that Koch could have determined the bottles'
authenticity had he chosen to exercise his inspection rights
prior to the auction.  (Def. Mem. Summ. J. 16.)

### 1. *Fraud Claims*

As discussed in this Court's prior decision on Greenberg's motion to dismiss, "a disclaimer such as the one listed in the Zachys auction catalogue will not defeat a claim for fraud when the allegedly misrepresented facts are peculiarly within the defendant's knowledge." Koch v. Greenberg, No. 07 Civ. 9600, 2008 WL 477813, at *3 (S.D.N.Y. Oct. 31, 2008) (citing Warner Theatre Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co., 149 F.3d 134, 136 (2d Cir.1998); Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 322 (N.Y. 1959); Steinhardt Group Inc. v. Citicorp, 272 A.D.2d 255 (N.Y. App. Div. 2000).) "In order for this 'peculiar knowledge' exception to vitiate the terms of an express disclaimer, courts consider two factors: (1) the sophistication of the buyer; and (2) the accessibility of the underlying information." Id.

Giving Koch "the benefit of all reasonable doubts in determining whether a genuine issue of material fact exists," Argus Inc. v. Eastman Kodak Co., 801 F.2d 38, 41 (2d Cir. 1986.), the Court finds that there are disputed issues of material fact both with respect to: (1) whether Greenberg had peculiar knowledge as to the authenticity of the wine purchased by Koch; and (2) whether Koch could have accessed the underlying information by exercising his right to inspect.

12

Accordingly, the Court denies Greenberg's motion for summary judgment with respect to Koch's fraud claims.

### 2. *Fraudulent Concealment*

Greenberg has also moved for summary judgment on Koch's claim for fraudulent concealment.  Fraudulent concealment requires proof, by clear and convincing evidence, that "(1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge."  Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank, 57 F.3d 146, 155 (2d Cir. 1995).

Greenberg argues that Koch's claim for fraudulent concealment must fail because: (1) Koch did not reasonably rely on any representation made by Greenberg; and (2) Greenberg could not have known that Koch would rely on any such representation. (Def. Mem. Summ. J. 22)  In light of the disputed issues of material fact relating to both Greenberg's knowledge and Koch's access to that information, however, the Court finds that granting summary judgment on Koch's fraudulent concealment claim would be improper.

13

### 3. *New York GBL Claims*

Greenberg argues that Koch cannot sustain his GBL claims because: (1) the conditions of sale bar these claims; and (2) the alleged misconduct was not consumer-oriented. (Def. Mem. Summ. J. 13-14.)

With respect to the disclaimers in the conditions of sale, in a case brought by Koch against another wine auctioneer, the New York Court of Appeals has held that "[j]ustifiable reliance by plaintiff is not an element" of GBL claims and "the disclaimers set forth in defendant's catalogs do not bar plaintiffs claims for deceptive trade practices at [the motion to dismiss] stage of the proceedings, as they do not establish a defense as a matter of law." Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941 (N.Y. 2012). Since the disclaimer does not bar Koch's claims as a matter of law, and there are issues of disputed fact as to whether Greenberg made materially misleading representations, summary judgment on this basis would be improper.

To the extent that Greenberg argues for summary judgment on the grounds that Koch has failed to identify any other victims of fraud, the Court finds this argument unavailing because there are issues of disputed fact as to whether Koch has identified other victims. See (9/27/11 Pl.'s 56.1 Counterstatement ¶ 96)

(stating that Greenberg sold a bottle of wine identified by
Edgerton as "definitely counterfeit" in the October 2005 Zachys
auction).  Furthermore, the Court additionally notes that the
Second Circuit has held that "consumer-oriented" conduct under
the statute can be "defined as conduct that potentially affects
similarly situated consumers."  S.Q.K.F.C., Inc. v. Bell Atl.
TriCon Leasing Corp., 84 F.3d 629, 636 (2d Cir. 1996).

### B. Koch's Motion to Dismiss or, in the alternative, for Summary Judgment

Koch has moved to dismiss, or in the alternative, for
summary judgment on Greenberg's counterclaims.

#### 1. Breach of Contract

Greenberg's breach of contract claims allege that Koch
breached the terms of the Conditions of Sale by: (1) bidding
with the intent to disregard the Auction's Conditions of Sale;
(2) bidding with the intent to disregard the "as is" clause; (3)
bidding with the intent to sue Greenberg over issues that would
have been discovered through inspection; and (4) refusing to
accept a refund.  (Countercl. ¶¶ 33, 41-42.)

To the extent that Greenberg's first three breach of
contract claims rest on allegations regarding Koch's mental
state while bidding, the Court finds that these claims cannot
survive a motion to dismiss as Greenberg has not pointed to any
relevant term in the parties' agreements which would have been

15

breached by such behavior.  See Wolff v. Rare Medium, Inc., 171
F. Supp. 2d 354, 358 (S.D.N.Y. 2001) ("In pleading the[]
elements [of a breach of contract], a plaintiff must identify
what provisions of the contract were breached as a result of the
acts at issue.")

With respect to Greenberg's claims of breach based on
Koch's decision to litigate his fraud claim rather than accept a
refund, the Court dismisses these claims as well.  As an initial
matter, the Court notes that Greenberg's Opposition appears to
read the Conditions of Sale as both a covenant not to sue and a
limitation of liability.[5]  This distinction between a covenant
not to sue and a limitation of liability, although somewhat
ambiguous, is not central to the present action.[6]  The Court
finds more compelling the fact that Greenberg's claims rest on
an interpretation of the Conditions of Sale that would bar a
plaintiff from pursuing a cause of action for fraud.

_____

[5] Compare (Def.'s Opp'n to Pl.'s Mot. to Dismiss Or, In the Alternative, for
Summ. J. ("Def.'s Opp'n to Pl.'s Mot. to Dismiss" 17) ("Here, both factors
are present - the clear breach of a covenant not to sue, and bad faith...")
and Id. ("The clear purpose of the auction contract provisions, requiring
Koch to accept a refund and rescission in lieu of all other legal and
equitable remedies.")

[6] The Court notes as an aside that the agreement between the parties in the
instant action is titled "Conditions of Sale & Limited Warranty."  (Decl.
Frank A. Cialone in Supp. of Def.'s Opp'n to Pl.'s Mot. to Dismiss or, in the
Alternative, Mot. for Summ. J. (Dkt. # 277) ("12/30/11 Decl. Cialone"), Ex.
J.)

16

The Second Circuit has held that it "could not uphold any provision intended to insulate parties from their own fraud," as "[i]t is well settled that parties cannot use contractual limitation of liability clauses to shield themselves from liability for their own fraudulent conduct." Turkish v. Kasenetz, 27 F.3d 23, 27-28 (2d Cir. 1994). See also Citibank, N.A. v. Itochu Intern. Inc., No. 01 Civ. 6007, 2003 WL 1797847, at *2 (S.D.N.Y. Apr. 4, 2003) (denying motion to dismiss fraud claim where defendants contended that plaintiffs' allegations were subject to an exclusive remedy provision). The Court finds that such an interpretation must fail as a matter of both law and public policy.[7]

In light of this precedent which discourages precisely the type of contractual reading sought by Greenberg, the Court finds that the breach of contract claim must fail as a matter of law and public policy.

### 2. Fraudulent Inducement

---

[7] The cases relied upon by Greenberg to support his reading of the Conditions of Sale as prohibiting fraud claims are inapposite on the facts. Artvale, Inc. v. Rugby Fabrics Corp., 363 F.2d 1002 (2d. Cir. 1966) (interpreting settlement agreement between parties previously engaged in litigation); Reach Music Pub., Inc. v. Warner/Chappell Music, Inc., No. 09 Civ. 5580, 2011 U.S. Dist. LEXIS 100969, at *13 (S.D.N.Y. Sept. 7, 2011) (interpreting agreement which stated that "Under no circumstances shall [Plaintiff] look to [Defendants] for any payments in connection with [the subject matter of Plaintiff's lawsuit.]"); and Cefali v. Buffalo Brass Co., 748 F. Supp. 1011 (W.D.N.Y. 1990) (interpreting settlement agreement between parties previously engaged in litigation).

To support his claim for fraudulent inducement, Greenberg argues that false representations were made by Koch in the Bidder Pre-Registration Forms, which were separate and distinct to the Conditions of Sale agreement among the parties set forth in the auction catalogs. (Def.'s Opp'n to Pl.'s Mot. to Dismiss Or, In the Alternative, for Summ. J. ("Def.'s Opp'n to Pl.'s Mot. to Dismiss") 23.)  In furtherance of his position, Greenberg cites to the fact that these misrepresentations were: (1) made before the auctions took place, before Koch placed a bid, and before any contracts were formed; (2) necessary for Koch to get an auction paddle; (3) calculated to convey the false impression that Koch had read and understood the Conditions of Sale; and (4) intended to induce Zachys and Greenberg to enter into contracts with Koch.  Id.

The Bidder Pre-Registration forms state in their entirety that: "I agree that I will bid subject to, and hereby agree to be bound by, the Conditions of Sale printed in the catalog for this sale.  I further agree that I will not bid, either on my behalf or in my capacity as an agent for another, on any lot consigned by me for sale by Zachys Wine Auctions."  (Decl. of Adam L. Pollock in Supp. of Pl.'s Mot. to Dismiss Or In The Alternative, for Summ. J. (Dkt. # 276) ("11/18/11 Pollock Decl."), Ex. 56.)  Notably, the plain language of the Bidder

18

Pre-Registration forms makes clear that, the promise to be bound by the Conditions of Sale can only be understood to be an integral part of the agreement between the parties set forth in the auction catalogs.

The law is well settled in this circuit that, "as a general rule, the allegation that a party entered into a contract intending to breach that contract is insufficient to support a claim for fraud under New York law." Marriot Int'l, Inc. v. Downtown Athletic Club, Inc., No. 02 Civ. 3906, 2003 WL 21314056, at *6 (S.D.N.Y. June 9, 2003). Greenberg's reliance on the New York Court of Appeals' decision in Graubard Mollen Dannett & Horowitz v. Moskovitz, 86 N.Y.2d 112 (1995), is misplaced, as the alleged misrepresentation in that case was collateral and extraneous from the contractual agreement between the parties.

Since the alleged misrepresentation in this case can only be understood as part of the contractual agreement between the parties, and the Court has found that the breach of contract claims cannot survive a motion to dismiss, the Court finds that Greenberg's claim for fraudulent inducement must also fail as a matter of law.

### 3. Breach of the Covenant of Good Faith and Fair Dealing and Repudiation

19

Turning next to Greenberg's claims for breach of the covenant of good faith and fair dealing and repudiation, the Court notes that Greenberg has chosen not to respond to Koch's arguments regarding these claims in his Opposition.  Setting that aside, the Court finds on the merits that these claims cannot survive a motion to dismiss.

Examining first the claim for a breach of the covenant of good faith and fair dealing, the Court finds that Greenberg has not distinguished how this claim differs from his claim for a breach of contract, which the Court has now dismissed.  The Court therefore dismisses the good faith and fair dealing claim as well.

The claim for repudiation is similarly deficient.  Having failed to include any allegations that Koch repudiated the contract prior to the time for performance, Greenberg's counterclaims effectively allege only that Koch failed to perform under the agreement.  Having dismissed Greenberg's claims under the agreement itself, the Court accordingly now dismisses the repudiation claim as well.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Greenberg's motion for summary judgment in its entirety and **GRANTS** Koch's motion to dismiss in its entirety.

The Clerk of the Court is directed to terminate motions 202 and 229 from the ECF docket.

SO ORDERED:

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:      New York, New York
            September 30, 2012

21